# CASE NO. 12-57246

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

GABRIEL FELIX MORAN

*Plaintiff-Appellant,*

v.

THE SCREENING PROS, LLC

*Defendant-Appellee.*
_____

**APPELLEE THE SCREENING PROS, LLC'S SUPPLEMENTAL EXCERPTS OF RECORD VOLUME 1 OF 2**

_____

On Appeal From The United States District Court
For The Central District of California
District Court Case 2:12-cv-05808-SVW-AGR

_____

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
MICHAEL J. SALTZ, STATE BAR NO. 189751
COLBY A. PETERSEN, STATE BAR NO. 274387
BLAIR SCHLECTER, STATE BAR NO. 233684 (OF COUNSEL)
10866 WILSHIRE BOULEVARD, SUITE 1550
LOS ANGELES, CALIFORNIA 90023
TELEPHONE: (310) 446-9900
FACSIMILE: (310) 446-9909
*Attorneys for Defendant-Appellee The Screening Pros, LLC*

**TABLE OF CONTENTS AND INDEX**

**FOR APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD**

**Page Numbers**

1.    Defendant The Screening Pros, LLC's Notice of

Motion and Motion to Dismiss Plaintiff's Complaint

Pursuant to *Fed. R. Civ. Proc.* 12(b)(6); Memorandum

of Points and Authorities in Support Thereof

July 16, 2012……………………………………………SER001-SER035

(Number 11 on District Court Docket)

2.    Plaintiff's Opposition to Defendant's Motion to Dismiss

Plaintiff's Complaint Pursuant to *Fed. R. Civ. Proc.*

12(b)(6); Memorandum of Points and Authorities in

Support Thereof

August 20, 2012…………………………………………SER036-SER057

(Number 13 on District Court Docket)

3.    Defendant The Screening Pros, LLC's Reply in Support

Of Defendants' Motion to Dismiss Plaintiff's Complaint

Pursuant to *Fed. R. Civ. Proc.* 12(b)(6); Memorandum

of Points and Authorities in Support Thereof

August 27, 2012………………………………………... SER058-SER087

(Number 14 on District Court Docket)

4.   Defendant The Screening Pros, LLC's Notice of

     Motion and Motion for Reconsideration of Court Ruling

     on Motion to Dismiss Plaintiff's Complaint

     Pursuant to *Fed. R. Civ. Proc.* 12(b)(6); Memorandum

     of Points and Authorities in Support Thereof

     October 8, 2012…………………………………………...SER088-SER104

     (Number 20 on District Court Docket)

5.   Plaintiff's Oppisition [SIC] to Defendant's MotionF[SIC]

     For Reconsideration of Court Ruling on Motion to Dismiss

     Plaintiff's Complaint Pursuant to *Fed. R. Civ. Proc.*

     12(b)(6)

     October 15, 2012……………………………………….SER105-SER113

     (Number 25 on District Court Docket)

6.   Defendant The Screening Pros, LLC's Reply in Support

     Of Motion for Reconsideration of Court Ruling on

     Motion to Dismiss Plaintiff's Complaint Pursuant to

     *Fed. R. Civ. Proc.* 12(b)(6); Memorandum of Points

     and Authorities in Support Thereof

     October 19, 2012………………………………………..SER114-SER124

     (Number 28 on District Court Docket)

7.      Defendant The Screening Pros, LLC's Notice of Motion

        And Motion for Summary Judgment, or Alternatively,

        Summary Adjudication; Memorandum of Points and

        Authorities in Support Thereof

        October 22, 2012…………………………………………...SER125-SER147

        (Number 29 on District Court Docket)

8.      Defendant The Screening Pros, LLC's Separate Statement

        of Uncontroverted Facts and Conclusions of Law in Support

        of Motion for Summary Judgment, or Alternatively,

        Summary Adjudication

        October 22, 2012……………………………………… ..SER148-SER156

        (Number 29-1 on District Court Docket)

9.      Declaration of Michael J. Saltz in Support of Motion for

        Summary Judgment, or Alternatively, Summary Adjudication

        (with attached exhibits)

        October 22, 2012……………………………………… ..SER157-SER201

        (Number 29-2 on District Court Docket)

10.     Declaration of Mark Rodriguez in Support of Motion for

        Summary Judgment, or Alternatively, Summary Adjudication

        (with attached exhibits)

October 22, 2012…………………………………………… ..SER202-SER234

(Number 29-3 on District Court Docket)

11.  Declaration of Gary Glucroft in Support of Motion for

Summary Judgment, or Alternatively, Summary Adjudication

(with attached exhibits)

October 22, 2012…………………………………………...SER235-SER248

(Number 29-4 on District Court Docket)

12.  Declaration of Anne P. Fortney in Support of Motion for

Summary Judgment, or Alternatively, Summary Adjudication

(with attached exhibits)

October 22, 2012………………………………………….. SER249-SER267

(Number 29-5 on District Court Docket)

1  **JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
   Michael J. Saltz, Esq.  SBN 189751
2  msaltz@jrsfllp.com
   Colby A. Petersen, Esq. SBN 274387
3  cpetersen@jrsfllp.com
   G. Austin Sperry, Esq.  SBN 278535
4  asperry@jrsfllp.com
   10866 Wilshire Boulevard, Suite 1550
5  Los Angeles, CA  90024
   Telephone:  (310) 446-9900  Facsimile: (310) 446-9909
6
7  Attorneys for Defendant THE SCREENING PROS, LLC

8                    **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10 

| GABRIEL FELIX MORAN, | Case No.: 2:12-cv-05808-SVW-AGR |
|---|---|
| Plaintiff, | **DEFENDANT THE SCREENING PROS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO *FED. R. CIV. PROC.* 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.** |
| vs. | |
| THE SCREENING PROS, LLC a California Corporation; and DOES 1-10 inclusive, | |
| Defendants. | |
| | Complaint filed: February 2, 2012 |
| | First Amended Complaint Filed: June 7, 2012 |
| | Removed: July 5, 2012 |
| | Trial Date: None |
| | Hearing Date: Sept. 10, 2012 |
| | Time: 1:30 p.m. |
| | Courtroom.: 6 – 2nd Floor |
| | Judge: Hon. Stephen V. Wilson |

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

24 **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

25        PLEASE TAKE NOTICE that on Sept. 10, 2012 At 1:30 PM or as soon as this matter

26 may be heard in Courtroom 6 of the above-entitled court, Defendant The Screening Pros, LLC

27 will and hereby does move the Court for an Order dismissing certain causes of action in the First

28 Amended Complaint in this matter.

Case No.:  2:12-cv-05808-SVW-AGR
File No.:  5.371.001                          i
                        DEFENDANT'S MOTION TO DISMISS

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    Specifically, Defendant will move this Court to dismiss the following causes of action:

2    The First Cause of Action for violation of 15 USC § 1681c for failure to state a claim, as

3    the information reported was timely under the statute;

4    The Second Cause of Action for violation of 15 USC § 1681e for failure to state a claim,

5    as there is no claim that the information reported was inaccurate and there is no violation of 15

6    USC § 1681c;

7    The Fourth Cause of Action for violation of *Civ. Code* § 1786.18 for failure to state a

8    claim, as the report at issue is not an Investigative Consumer Report, the Investigative Consumer

9    Reporting Agencies Act does not apply because it is unconstitutionally vague, and any

10   prohibition against the truthful reporting of public court records unconstitutionally violates the

11   First Amendment right to free speech;

12   The Fifth Cause of Action for violation of *Civ. Code* § 1786.20 for failure to state a

13   claim, as the report at issue is not an Investigative Consumer Report, the Investigative Consumer

14   Reporting Agencies Act does not apply because it is unconstitutionally vague, and any

15   prohibition against the truthful reporting of public court records unconstitutionally violates the

16   First Amendment right to free speech;

17   The Sixth Cause of Action for violation of *Civ. Code* § 1786.24 for failure to state a

18   claim, as the report at issue is not an Investigative Consumer Report, and the Investigative

19   Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

20   The Seventh Cause of Action for violation of *Civ. Code* § 1786.12(e) for failure to state a

21   claim, as the report at issue is not an Investigative Consumer Report, and the Investigative

22   Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

23   The Eighth Cause of Action for violation of *Civ. Code* § 1786.28 for failure to state a

24   claim, as the report at issue is not an Investigative Consumer Report, and the Investigative

25   Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

26   The Ninth Cause of Action for violation of *Civ. Code* § 1786.29 for failure to state a

27   claim, as the report at issue is not an Investigative Consumer Report, and the Investigative

28   Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

1   The Tenth Cause of Action for violation of *Bus. & Profs. Code* § 17200 et. seq. because

2   Plaintiff lacks standing, there is an adequate remedy at law, and injunctive relief is preempted;

3   and

4   The Eleventh Cause of Action for violation of *Bus. & Profs. Code* § 17200 et. seq.

5   because Plaintiff lacks standing, there is an adequate remedy at law, and injunctive relief is

6   preempted.

7   The motion will be made under *Fed. R. Civ. Proc.* 12(b)(6) and is based on the fact that

8   Plaintiff has failed to state a proper claim for relief on the aforementioned causes of action.

9   The motion will be based on the memorandum of points and authorities, the records on

10  file in this action, those matters of which this Court may and must take judicial notice, and any

11  further evidence and argument that may be presented at the hearing on this motion.

12  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took

13  place on June 7, 2012 and again on July 11, 2012.

15  Dated: July 16, 2012              **Jacobson, Russell, Saltz & Fingerman LLP**

17  _____/S/_____

18  Michael J. Saltz, Esq.
    Attorneys for Defendant The Screening Pros, LLC

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# MOTION TO DISMISS

Defendant The Screening Pros, LLC moves for an Order under FRCP 12(b)(6) dismissing certain causes of action in the operative First Amended Complaint.

Specifically, Defendant moves for dismissal of the following:

The First Cause of Action for violation of 15 USC § 1681c for failure to state a claim, as the information reported was timely under the statute;

The Second Cause of Action for violation of 15 USC § 1681e for failure to state a claim, as there is no claim that the information reported was inaccurate and there is no violation of 15 USC § 1681c;

The Fourth Cause of Action for violation of *Civ. Code* § 1786.18 for failure to state a claim, as the report at issue is not an Investigative Consumer Report, the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague, and any prohibition against the truthful reporting of public court records unconstitutionally violates the First Amendment right to free speech;

The Fifth Cause of Action for violation of *Civ. Code* § 1786.20 for failure to state a claim, as the report at issue is not an Investigative Consumer Report, the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague, and any prohibition against the truthful reporting of public court records unconstitutionally violates the First Amendment right to free speech;

The Sixth Cause of Action for violation of *Civ. Code* § 1786.24 for failure to state a claim, as the report at issue is not an Investigative Consumer Report, and the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

The Seventh Cause of Action for violation of *Civ. Code* § 1786.12(e) for failure to state a claim, as the report at issue is not an Investigative Consumer Report, and the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

The Eighth Cause of Action for violation of *Civ. Code* § 1786.28 for failure to state a claim, as the report at issue is not an Investigative Consumer Report, and the Investigative Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

1    The Ninth Cause of Action for violation of *Civ. Code* § 1786.29 for failure to state a

2   claim, as the report at issue is not an Investigative Consumer Report, and the Investigative

3   Consumer Reporting Agencies Act does not apply because it is unconstitutionally vague;

4    The Tenth Cause of Action for violation of *Bus. & Profs. Code* § 17200 et. seq. because

5   Plaintiff lacks standing, there is an adequate remedy at law, and injunctive relief is preempted;

6   and

7    The Eleventh Cause of Action for violation of *Bus. & Profs. Code* § 17200 et. seq.

8   because Plaintiff lacks standing, there is an adequate remedy at law, and injunctive relief is

9   preempted.

10    The motion will be made under *Fed. R. Civ. Proc.* 12(b)(6) and is based on the fact that

11   Plaintiff has failed to state a proper claim for relief on the aforementioned causes of action.

12    The motion will be based on the memorandum of points and authorities, the records on

13   file in this action, those matters of which this Court may and must take judicial notice, and any

14   further evidence and argument that may be presented at the hearing on this motion.

16   Dated: July 16, 2012                **Jacobson, Russell, Saltz & Fingerman LLP**

18                                   _____/S/_____

19                                   Michael J. Saltz, Esq.

20                                   Attorneys for Defendant The Screening Pros, LLC

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# TABLE OF CONTENTS

1.  INTRODUCTION ....................................................................... 1

    A.  THE UCL CLAIM .............................................................. 3

    B.  THE ICRAA CLAIMS ....................................................... 3

    C.  THE FCRA ........................................................................ 5

2.  PROCEDURAL HISTORY ........................................................ 6

3.  STANDARD OF REVIEW ........................................................ 6

4.  ARGUMENT ............................................................................. 7

    A.  THE FIRST CAUSE OF ACTION FOR VIOLATION OF 15 USC § 1681c(a) FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ......................................................................... 7

    B.  THE SECOND CAUSE OF ACTION FOR VIOLATION OF 15 USC § 1681e FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED. ......................................................................... 8

    C.  THE FOURTH CAUSE OF ACTION FOR VIOLATION OF CIV. CODE § 1786.18 FAILS TO STATE ANY CLAIM FOR WHICH RELIEF CAN BE GRANTED. ....................................................... 10

        1)  THE HISTORY OF CCRAA AND ICRAA ......................................... 11

        2)  THE SUBJECT REPORT ATTACHED TO THE ORIGINAL COMPLAINT IS NOT AN ICR AS A MATTER OF LAW. ................ 14

            a.  The Mere Presence Of Public Criminal And Civil Court Records Does Not Make A Tenant Screening Report An ICR, Or Else ICRAA Becomes Unconstitutionally Vague As A Matter of Law. ......................................................................... 15

        3)  THE APPLICATOIN OF ICRAA AND CCRAA STATUTES TO RESTRICT THE REPORTING OF TRUTHFUL PUBLIC RECORD INFORMATION IS INHERENTLY UNCONSTITUTIONAL AND CANNOT BE THE BASIS OF A VIOLATION OF ICRAA OR AN AMENDED CCRAA CLAIM. ...... 18

    D.  PLAINTIFF'S FIFTH THROUGH NINTH CAUSES OF ACTION FAIL TO STATE ANY CLAIM FOR WHICH RELIEF CAN BE GRANTED, AS ICRAA DOES NOT APPLY TO TSP'S TENANT SCREENING REPORTS CONTAINING PUBLIC COURT RECORDS CONTAINING CRIMINAL INFORMATION. .................................................. 21

    E.  THE FAC FAILS TO PROPERLY ALLEGE A CLAIM UNDER *BUS. & PROFS. CODE* § 17200 et. seq. ................................................ 21

        1)  PLAINTIFF HAS NO STANDING TO BRING A UCL CLAIM. ....... 21

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel: 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001

DEFENDANT'S MOTION TO DISMISS

2)   NO UCL CLAIM EXISTS WHEN CLAIMANTS HAVE AN
         ADEQUATE REMEDY AT LAW. ...................................................... 23

3)   PLAINTIFF'S UCL CLAIMS ARE PREEMPTED FOR FCRA
         VIOLATIONS. ............................................................................................ 24

5.   CONCLUSION ...................................................................................................... 25

JACOBSON, RUSSELL, SALTZ, & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No.:  2:12-cv-05808-SVW-AGR
File No.:  5.371.001                                vii

DEFENDANT'S MOTION TO DISMISS

## TABLE OF AUTHORITIES

### Cases

*Batdorf v. Trans Union* (N.D. Cal. May 8, 2000) 2002 U.S. Dist. LEXIS 9489 ...................... 9

*Bittick v. Experian Information Solutions, Inc.* (N.D. Tx. 2006) 419 F.Supp.2d 717 ............. 25

*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798 ..................................... 22

*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 ........................... 22

*Citizens of Humanity, LLC v. Costco Wholesale Corp.* (2009) 171 Cal.App.4th 1 ............ 22, 23

*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163 .................................. 23

*Forsythe v. Wells Fargo Bank, N.A.* (2012, CD Cal) 2012 US Dist LEXIS 44031 .................. 22

*Gauci v. Citi Mortgage* (C.D. Cal. Apr. 30, 2012)  2012 U.S. Dist. LEXIS 60153 ................. 9

*Goodman v. Praxair, Inc.* (4th Cir. 2007) 494 F.3d 458 ......................................................... 6

*Guimond v. Trans Union Credit Info. Co.* (9th Cir. Cal. 1995) 45 F.3d 1329 .......................... 9

*Hall v. Time Inc.* (2008) 158 Cal.App.4th 847 ....................................................................... 22

*Hasbun v. County of L.A.* (9th Cir. Cal. 2003) 323 F.3d 801 ................................................. 8

*Heighly v. J.C. Penney Life Ins. Co.* (C.D. Cal. 2003) 257 F.Supp.2d 1241 ....................... 3, 23

*Hogan v. PMI Mortg. Ins. Co.*, (N.D. Cal. May 12, 2006) 2006 U.S. Dist. LEXIS 32179 ...... 25

*Howard v. Blue Ridge Bank* (N.D. Cal. 2005) 371 F.Supp. 2d 1139 .................................. 3, 25

*In re Tobacco II Cases* (2009) 46 Cal.4th 298 ....................................................................... 22

*Jarrett v. Bank of America, et. al.* (D. Kan. 2006) 421 F. Supp.2d 1350 ................................ 25

*Kansa Reins. Co. v. Congressional Mortgage Corp.* (5th Cir. 1994) 20 F.3d 1362 .................. 6

*Medina v. Safe-Guard Products, Int'l., Inc.* (2008) 164 Cal.App.4th 105 .............................. 22

*National Association for the Advancement of Psychoanalysis v. California Board of Psychology*
(9th Cir. 2000) 228 F.3d 1043 ............................................................................................ 6

*Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604 ............ 4, 5, 14, 15, 16, 17

*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583 .............................................. 22

*Poulson v. Trans Union, LLC* (E.D. Tx. 2005) 370 F.Supp.2d 592 ........................................ 25

*Provincial Horne Mortgage Co. v, Superior Court* (1998)  66 Cal.App.4th 1236 ................... 23

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

*Sorrell v. IMS Health Inc.* (2011) 131 S.Ct. 2653 ........................................ 5, 20

*Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979 ...................... 6

*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628 ............... 4, 5, 15

*U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405 .................... 5, 6, 12, 19

*U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107 ............... 6, 12, 18, 19, 21

*Washington v. Credit Services, Inc.* (5th Cir. 2000) 199 F.3d 263 .................. 24

## Statutes

15 USC § 1681a(d) .......................................................................... 11

15 USC § 1681c(a) ........................................................................... 7

15 USC § 1681e(b) ........................................................................... 9

15 USC § 1681o ............................................................................ 24

15 USC §1681c(a)(5) ..................................................................... 7, 8

*Bus. & Prof. Code* § 17200 ........................................................ 3, 22, 24

*Bus. & Prof. Code* § 17203 ........................................................... 21

*Civ. Code* § 1785.1(d) .................................................................. 13

*Civ. Code* § 1785.11 .................................................................... 12

*Civ. Code* § 1785.11(a)(3)(E) ......................................................... 13

*Civ. Code* § 1785.11.2 .................................................................. 19

*Civ. Code* § 1785.13 ................................................................. 4, 10, 15, 17

*Civ. Code* § 1785.13(a)(3) ........................................................... 12, 18

*Civ. Code* § 1785.13(a)(6) ........................................................ 3, 18, 20

*Civ. Code* § 1785.3(a)(3) ............................................................... 13

*Civ. Code* § 1785.3(c)(3) ............................................................... 13

*Civ. Code* § 1786(a) ..................................................................... 13

*Civ. Code* § 1786(f) ..................................................................... 13

*Civ. Code* § 1786.12(d)(5) ............................................................. 13

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

*Civ. Code* § 1786.18 ............................................................................................ 4, 12, 15

*Civ. Code* § 1786.18(a)(7) ........................................................................................ 10, 20

*Civ. Code* § 1786.2(b) ............................................................................................. 12, 13

*Civ. Code* § 1786.2(c) .......................................................................................... 11, 12, 14

*Civ. Code,* § 1785.3(c) ......................................................................................... 11, 12, 14

*Civ. Code,* former § 1785.3(c) ................................................................................ 4, 11, 14

*Civ. Code,* former § 1786.2(c) ................................................................................ 4, 12, 14

*Penal Code* § 1203.4 ................................................................................................... 1

Other Authorities

Legislative Counsel's Digest of Senate Bill 1406 (1981-1982 Reg. Sess.) as introduced on
    February 1, 1982 .................................................................................................. 13

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.:  2:12-cv-05808-SVW-AGR
File No.:  5.371.001

x

DEFENDANT'S MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

Plaintiff Gabriel Felix Moran ("Plaintiff") has sued Defendant The Screening Pros, LLC ("TSP") for claims arising out of one tenant screening report issued by TSP containing truthful information about Plaintiff's criminal history and convictions, as obtained from publicly available court records ("Subject Report").

Specifically, Plaintiff alleges that "TSP is a background check company that routinely provide[sic] screening services to landlords in connection with the leasing of residential properties." [First Amended Complaint ("FAC") ¶ 5]. Plaintiff then claims that said screening reports, including the Subject Report, are issued for tenant screening purposes [See FAC ¶¶ 26, 27, 34 & 35], and that those reports contain information including public court records about criminal cases. [See FAC ¶¶ 36, 46, and Complaint Exb. "1"].

Plaintiff then alleges that on or about February 5, 2010, TSP furnished the Subject Report in response to Plaintiff's application to seek housing at a development owned by Affirmed Housing Group named Maple Square. [See FAC ¶¶ 33, 34 & 35]. A copy of the Subject Report is attached to the Original Complaint as Exhibit "1" [Complaint Exb. "1"].[1]

According to the FAC, the Subject Report contained truthful information from public court records regarding Plaintiff's criminal history. [FAC ¶¶ 36, 39, 40, 46, 47 & 49; Complaint Exb. "1"], including that on or about 5-16-00, Plaintiff was charged in Case Number 188935 for the misdemeanor of being "under the influence of a controlled substance", and that charge was dismissed years later on 3-2-04 (presumably pursuant to *Penal Code* § 1203.4 after a guilty plea was entered and probation served). [See FAC ¶ 37; Complaint Exb. "1"].

The Subject Report also truthfully reported that on or about 6-4-06, Plaintiff was charged in Case Number 217842 with: Count 1, Burglary in the 2nd degree; Count 2, Forgery; and Count

---

[1] In Plaintiff's haste to file the FAC in response to TSP's dispositive Demurrer to the Original Complaint, Plaintiff forgot to attach a copy of the Subject Report that was attached to the Original Complaint as Exhibit "1", despite claiming that Plaintiff did attach said the Subject Report to the FAC therein. [See FAC ¶ 35]. Thus, reference is made herein to Exhibit "1" in the Original Complaint a copy of which is attached hereto as Exhibit "1".

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001

1

3, Embezzlement for theft by a non-caretaker from an older or dependent adult.   On 6-7-06, Plaintiff pled "Guilty" to Count 3 in exchange for the dismissal of Counts 1 and 2. [See FAC ¶¶ 46,47; Complaint Exb. "1"]. That plea bargain resulted in Plaintiff receiving - 60 days in jail, 3 years probation and a fine of $500. [See Complaint Exb. "1"]. Therefore, Case No. 217842, resulted in a conviction.

The FAC does not allege that any of the information in the Subject Report about Plaintiff's criminal history was inaccurate or incomplete.

The Subject Report also includes Plaintiff's negative credit history consisting of 4 collection accounts with: Medicredit in 2008 for $3,345.00; AT&T West in 2009 for $66.00; Mel Ramstead Metzger Management in 2007 for $298.00; and Bank of The West in 2006 for $302.00. [Complaint Exb. "1"].

Plaintiff alleges that the inclusion of his criminal history in the Subject Report caused his application for housing to be denied resulting in the loss of a housing opportunity (to which Plaintiff does not allege an automatic entitlement) and having to "spend time, money and energy to clean up" TSP's truthful reporting of public records. [FAC ¶¶ 17, 36, 39, 40, 46, 47, 48].

However, after acknowledging that TSP is a consumer reporting agency ("CRA") under the Fair Credit Reporting Act ("FCRA"), and a Consumer Credit Reporting Agency under the Consumer Credit Reporting Agencies Act ("CCRAA") [FAC ¶ 5], the FAC then makes the incorrect legal conclusion that all tenant screening reports under California law containing criminal history information are automatically entirely regulated under the California Investigative Consumer Reporting Agencies Act ("ICRAA") [FAC ¶ 7], and are thus Investigative Consumer Reports ("ICR" singular; "ICRs" plural). [FAC ¶ 7, 24, 25].

The FAC alleges that TSP thereby violated provisions of the FCRA and ICRAA[2], and entitlement to injunctive relief through the Unfair Competition Law ("UCL") under *Bus. & Prof. Code* § 17200 et. seq.

---

[2] Plaintiff appears to be suing TSP under the ICRAA (which does not apply to TSP's tenant screening reports), and not the CCRAA (which does apply to TSP's tenant screening reports) to benefit from the ICRAA's $10,000 statutory penalty provision in lieu of proving damages for any violation of (footnote continued)

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel: 310.446.9900 · Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001

2

SER012

## A.  THE UCL CLAIM

Working backwards, Plaintiff's 10th and 11th Causes of Action are based on the UCL. The UCL claims fail for three independent reasons. First, the FAC fails to allege that TSP took any money or property *from Plaintiff* that is subject to disgorgement, or that Plaintiff directly gave TSP money or property. Thus, Plaintiff has failed to allege any standing to sue under the UCL [*Bus. & Prof. Code* § 17204]. Secondly, the UCL claims are defective for failure  to allege that Plaintiff has no adequate remedy at law [*Heighly v. J.C. Penney Life Ins. Co.* (C.D. Cal. 2003) 257 F.Supp.2d 1241, 1259-60]. Third, claims for injunctive relief for FCRA violations and related state claims are federally preempted [*Howard v. Blue Ridge Bank* (N.D. Cal. 2005) 371 F.Supp.2d 1139, 1146].

## B.  THE ICRAA CLAIMS

Plaintiff's 4th, 5th, 6th, 7th, 8th, and 9th Causes of Action are predicated on the application of ICRAA to TSP and its tenant screening reports, on the alleged and incorrect assumption that "criminal history reports are regulated under the ICRAA." [FAC ¶ 7].  However, tenant screening reports in California that contain such public court records and that do not otherwise use them to make conclusions about a consumer's character, general reputation, personal characteristics or mode of living are actually Consumer Credit Reports ("CR" singular; "CRs" plural) regulated by CCRAA [See *Civ. Code* § 1785.13(a)(6)].[3]

---

ICRAA [See *Civ. Code* § 1786.50(a)(1)]. CCRAA has no statutory penalty and requires proof of actual damages. [See *Civ. Code* § 1785.31].

[3] Also see *U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405, 410 ("Plaintiff is a credit reporting agency that issues consumer credit reports within the meaning of section 1785.3, subdivisions (c) and (d) of the Consumer Credit Reporting Agencies Act (the act). (§ 1785.2 et seq.) Plaintiff collects credit-related public record information about individuals including unlawful detainer, foreclosure, bankruptcy, and tax lien data. Plaintiff sells consumer credit reports to its members—landowners, property managers, and others. Plaintiff's members consider the reports in deciding whether to lease real property to prospective tenants."); Also see *U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107, 109 ("UDR gathers information regarding unlawful detainer cases from municipal and superior court files, and sells that information to subscribers, including the Apartment Association. Both plaintiffs are credit reporting agencies within the meaning of section 1785.13.")

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

The main difference between a CR controlled by CCRAA and an ICR controlled by ICRAA is that a CR is a report that provides information "bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used...for the purpose of serving as a factor in establishing the consumer's eligibility for ... hiring of a dwelling unit...." [*Civ. Code* § 1785.3(c)], while an ICR is a report "in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means." [*Civ. Code* § 1786.2(c)].

Ignoring the distinction between a CR and an ICR, the FAC alleges that the Subject Report is an ICR because the reporting of a consumer's criminal record *automatically* is information about Plaintiff's "general reputation, character, mode of living or other personal characteristics." [FAC ¶¶ 7, 9 ("Criminal history reports are regulated under the ICRAA because they are reports that bear on a consumer's character, general reputation, personal characteristics, or mode of living...")]. That claim is false as a matter of law.

The Subject Report neither says nor infers anything about Plaintiff's "general reputation" (e.g, what people in the community think about Plaintiff), "character" (e.g., Plaintiff's moral fiber), "mode of living" (e.g., how Plaintiff supports himself) or other "personal characteristics" (e.g., Plaintiff's height, hair color, etc.). [See Complaint Exb. "1"]. Therefore, the allegations that the Subject Report is an ICR is directly contradicted by the contents of the Subject Report.

The presence (or absence) of public record information in a tenant screening report does not *automatically* make it a CR or ICR, and that to imply otherwise makes ICRAA void for being unconstitutionally vague. [See *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 640; *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604, 615-619].

Public criminal court records, like public unlawful detainer court records, are items of information that may be included in a CR to determine a consumer's credit worthiness or capacity [see *Civ. Code* § 1785.13(a)(6)] as well as in an ICR to determine general reputation or character information [*Civ. Code* § 1786.18(a)(7)]. Accordingly, the presence of such information in a tenant screening report, without more, cannot be the determining factor as to whether CCRAA or ICRAA govern the subject tenant screening report. Appellate Courts have determined that ICRAA is unconstitutionally vague on this point and is otherwise void

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1  concerning the reporting of such public records. [See *Trujillo v. First American Registry, Inc.*
2  (2007) 157 Cal.App.4th 628, 640; *Ortiz v. Lyon Management Group, Inc.* (2007) 157
3  Cal.App.4th 604, 615-619]. Therefore, ICRAA does not apply to TSP's tenant screening reports
4  as a matter of law.

5      Finally, any prohibition on the reporting of public records in tenant screening reports is
6  unconstitutional. [See *U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107, 116,
7  Review Denied 1996 Cal. LEXIS 769 (Cal. Jan. 31, 1996); Cert. Denied 516 U.S. 1074, 116 S.
8  Ct. 777 (1996) (Finding *Civ. Code* § 1785.13(a)(3), which attempted to prohibit the reporting of
9  unlawful detainer cases that did not result in a judgment for the Plaintiff, is unconstitutional); *see*
10 *also, e.g., U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405 (finding *Civ. Code* §
11 1785.11.2 unconstitutional to the extent it interfered with the reporting of all public court records
12 – including criminal court records); also see *Sorrell v. IMS Health Inc.* (2011) 131 S.Ct. 2653].

13     Plaintiff admits that "The central issue in this litigation are[sic] the various statutory
14 violations relating to the criminal history report on Plaintiff, issued by Defendant TSP." [FAC ¶
15 8]. Thus, all of the claims based on the assumption that ICRAA restricts the reporting of truthful
16 criminal court records are unconstitutional and Plaintiff cannot amend his FAC to state any claim
17 under CCRAA.

   **C. THE FCRA**
18     Plaintiffs 1st, 2nd, and 3rd, causes of action are premised upon alleged FCRA violations.
19 This motion does not address the 3rd Cause of Action for violation of 15 USC § 1681i because the
20 defenses thereto are based upon facts that do not appear in the FAC.

21     However, the 1st and 2nd Causes of Action are addressed because they fail to state that any
22 violation of FCRA occurred: The reports of the two criminal cases are timely on their face under
23 15 USC § 1681c, and because accuracy of the information reported is not at issue in this case, 15
24 USC § 1681e does not apply.

25     As such, for the reasons stated herein, Plaintiff's 1st, 2nd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and
26 11th Causes of Action fail as a matter of law.

27

28

## 2. PROCEDURAL HISTORY

Plaintiff's original Complaint, filed on February 2, 2012, alleges only two violations of ICRAA and two claims under the UCL [See Complaint]. TSP demurred to the Complaint on the basis that: ICRAA did not apply and that it was unconstitutionally vague; any prohibition upon the truthful reporting of public records is unconstitutional. [*See U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107 (declaring *Civ. Code* § 1785.13(a)(3) unconstitutional); also see *U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405 (declaring *Civ. Code* § 1785.11.2 unconstitutional)]. In response, Plaintiff filed the FAC, which added 3 causes of action under FCRA and 4 additional ICRAA causes of action. This case was removed on or about July 5, 2012 because the FAC contains a Federal question as to the FCRA causes of action.

## 3. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) must be granted when the facts as pleaded are not legally sufficient to set forth a claim for relief. [*See National Association for the Advancement of Psychoanalysis v. California Board of Psychology* (9th Cir. 2000) 228 F.3d 1043, 1049]. Dismissal under Rule 12(b)(6) may also be appropriate when a successful affirmative defense or other bar to relief appears on the face of the complaint, such as the absolute immunity of a defendant, claim preclusion, or the statute of limitations. [*See Kansa Reins. Co. v. Congressional Mortgage Corp.* (5th Cir. 1994) 20 F.3d 1362, 1366 (dismissal under *Fed. R. Civ. Proc.* 12(b)(6) may be appropriate when successful affirmative defense appears on face of pleadings); *Goodman v. Praxair, Inc.* (4th Cir. 2007) 494 F.3d 458, 464 (affirmative defense such as statute of limitations may be reached on motion to dismiss under *Fed. R. Civ. Proc.* 12(b)(6))].

Allegations of material fact are accepted as true, but conclusory allegations of fact or law are not. [*Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979, 988].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001

6

DEFENDANT'S MOTION TO DISMISS

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

## 4. ARGUMENT

### A. THE FIRST CAUSE OF ACTION FOR VIOLATION OF 15 USC § 1681c(a) FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff claims that TSP violated 15 USC § 1681c(a)(2) and (5) because the Subject Report contains records of arrest and other adverse information that antedate the date of the report by more than 7 years. [FAC ¶ 57]. However, the Subject Report contains no such records.

15 USC § 1681c(a) states in relevant part:

(a) Information excluded from consumer reports. Except as authorized under subsection (b), no consumer reporting agency may make any consumer report containing any of the following items of information:

(2) Civil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.

…

(5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

[15 USC § 1681c(a) (emphasis added)].

The Subject Report contains no records of or other information about any arrests of Plaintiff. The Subject Report *only* contains information derived from two criminal cases filed against Plaintiff, both of which reached a certain disposition. Therefore, 15 USC § 1681c(a)(2) cannot be applicable to this case.

Furthermore, the information in the Subject Report is timely under 15 USC §1681c(a)(5), as the reporting date triggers on both reported cases are within the applicable 7 year time period. The criminal information in Case No. 217842 was timely reported under 15 USC §1681c(a)(5), as it was filed on June 4, 2006 and it was disposed of through a conviction on June 7, 2006. The FAC does not claim that information is false. The Subject Report was issued on February 5, 2010 – about 3 years later. Thus, under both the previous and current versions of 15 USC §1681c(a)(5), all information relating to Case Number 217842 is timely.[4]

---

[4] Prior to 1998, the FCRA restricted the reporting of conviction records older than seven years from the date of disposition, release or parole. However, the amended statute since 1998 permits the reporting of conviction records *indefinitely*. [15 U.S.C. § 1681c(a)(5)].

The reporting of Case Number 188935 is also timely under 15 USC §1681c(a)(5). The Subject Report states that, although the criminal case against Plaintiff was filed on May 16, 2000, it was not disposed of by way of Dismissal until March 2, 2004. This means that the Subject Report was made just 6 years from the disposition of said case (i.e., within the 7 year time period).

As to the computation of the reporting of such information, the Federal Trade Commission ("FTC") included this comment on the Fair Credit Reporting Act:

> The seven year reporting period runs <u>from the date of disposition</u>, release or parole, as applicable. For example, <u>if charges are dismissed at or before trial, or the consumer is acquitted, the date of such dismissal or acquittal is the date of disposition.</u> [16 C.F.R. Pt. 600, App. § 605 (emphasis added)].[5]

Since the FAC confirms that the date of disposition of Case No. 188935 does not antedate the subject report by more than 7 years, said reporting of this case is timely under 15 USC §1681c(a)(5).

Finally, the FAC does not claim that any other adverse information in the Subject Report is untimely. To the contrary, the only information at issue in the FAC is the reported criminal record of Plaintiff. [FAC ¶ 8 ("The central issue in this litigation are the various statutory violations relating to the criminal history report on Plaintiff, issued by Defendant TSP.")].

Thus, the FAC fails under all circumstances to state any cause of action under 15 USC § 1681c and should be dismissed without leave to amend.

## B. THE SECOND CAUSE OF ACTION FOR VIOLATION OF 15 USC § 1681e FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

Plaintiff claims that TSP violated 15 USC § 1681e in two specific ways: 1) TSP does not maintain reasonable procedures to avoid violations of 15 USC § 1681c [FAC ¶ 63]; and 2) TSP does not follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. [FAC ¶ 64]. Plaintiff is incorrect as a matter of law on both counts.

---

[5] The Ninth Circuit has previously found the FTC Commentary on the FCRA persuasive authority. [See *Hasbun v. County of L.A.* (9th Cir. Cal. 2003) 323 F.3d 801, 803 ("We think the Federal Trade Commission's (FTC) commentary is persuasive.")].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

First, 15 USC § 1681e(b)[6] is an accuracy of information statute, not a statute that otherwise controls the type of information that may be included in a consumer report, which is controlled by 15 USC § 1681c.

The FAC does not allege that any of the information is inaccurate or that any information reported is somehow incomplete or misleading. To the contrary, Plaintiff is complaining that the information about his prior criminal history is too complete in that it contains the dismissed charges in said cases along side his convictions. [FAC ¶¶ 36, 38, 45, 47]. The only issue raised by Plaintiff as to the subject criminal information in the FAC is that his criminal records should be considered obsolete – not that any information reported was inaccurate. [FAC ¶¶ 36, 38, 45, 47].

Thus, at the outset, there are no allegations attacking the *accuracy* of the information reported, which Plaintiff concedes is both truthful and complete.  As such, Plaintiff has failed to state a cause of action under 15 USC § 1681e. [*See, Guimond v. Trans Union Credit Info. Co.* (9th Cir. Cal. 1995) 45 F.3d 1329, 1333   ("In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."); *see also, Gauci v. Citi Mortgage* (C.D. Cal. Apr. 30, 2012)  2012 U.S. Dist. LEXIS 60153  at *10 ("To establish a prima facie violation under § 1681e(b), a plaintiff must first present evidence demonstrating that a credit reporting agency prepared a report containing inaccurate information."); *see also, Batdorf v. Trans Union* (N.D. Cal. May 8, 2000) 2002 U.S. Dist. LEXIS 9489  at *7].

Furthermore, although the inclusion of obsolete information as delineated in 15 USC § 1681c is not an *accuracy* issue, Plaintiff has failed to identify any obsolete information in the Subject Report. As shown above, all of the information in the Subject Report is timely under 15 USC § 1681c(a)(2) and (5) as set forth by the FTC. Thus, even if the inclusion of truthful and complete obsolete information in a consumer report could be considered an inaccuracy (which it

---

[6] 15 USC § 1681e(b) states: "Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

is not), the FAC fails to allege that any such information was so included in the report at issue in this case.

Plaintiff attempts to try and parse out certain pieces of information from each case in order to make parts of each case appear obsolete. However, failing to include all of the information in a case that is timely reported, including the dismissal of certain causes of action as part of a plea deal, would otherwise itself be violation of 15 USC § 1681e(b) by reporting "incomplete" information about a case. Plaintiff's efforts in this regard to create a cause of action where none exists requires an absurd application of the FCRA and should be ignored.

Therefore, as Plaintiff has failed to allege any inaccuracy in the Subject Report under any circumstance, the Second Cause of Action fails to state a claim and should be dismissed without leave to amend as a matter of law.

## C. THE FOURTH CAUSE OF ACTION FOR VIOLATION OF CIV. CODE § 1786.18 FAILS TO STATE ANY CLAIM FOR WHICH RELIEF CAN BE GRANTED.

The 4th Cause of Action is based upon the allegation that TSP issued a report containing records of arrest that did not result in a conviction and other adverse information that antedate the date of the report by more than 7 years in violation of *Civ. Code* § 1786.18(a)(7) and (8). For the following reasons, this cause of action, and all other ICRAA claims, fail as a matter of law.

First, by issuing reports containing public records for tenant screening purposes, TSP is a consumer credit reporting agency under *Civ. Code* § 1785.3(d), not an investigative consumer reporting agency under 1786.2(d). It seeks only to report relevant public record information in its tenant screening reports that bears on a consumer's credit capacity, credit worthiness, and credit standing for the purposes of hiring a dwelling unit. The inclusion of criminal records in a CR is expressly authorized by the California Legislature to assist in the evaluation of a consumer's credit capacity, credit standing or credit worthiness for the hiring of a dwelling unit. [See *Civ. Code* § 1785.13]. Thus, contrary to the false allegation of law in the FAC that criminal history reports are *only* regulated under ICRAA [FAC ¶ 7], the law is clear that the Legislature has mandated that criminal history information also serves as a factor in determining a consumer's

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

credit capacity, credit standing or credit worthiness and are thus equally regulated under CCRAA as well.

The FAC does not allege that TSP intended to sell an ICR, or that its client intended to receive an ICR, or that any court has ever found any of its reports to be an ICR. To the contrary, the FAC alleges that TSP intentionally did not include any of the required notices for an ICR (notices which are not required for a CR) [See FAC ¶ 98], and the report on its face complies with the reporting requirements of CCRAA.  [See Exb. "1"]. For this reason alone, the FAC fails to plead a proper cause of action under ICRAA.

Second, Plaintiff concedes that the Subject Report is not an investigative consumer report under the FCRA, but rather a consumer report. [FAC ¶ 23]. Nonetheless, Plaintiff claims that the Subject Report is an ICR rather than a consumer report under the FCRA as. However, the ICRAA does not and cannot apply to the facts alleged in this case.

### 1)  THE HISTORY OF CCRAA AND ICRAA

In 1975, California enacted a dual statutory scheme for the regulation of the consumer reporting industry in this State. "[W]hen California enacted its own version of the [federal] act in 1975, it drew a distinction between 'consumer credit reporting agencies' and 'investigative consumer reporting agencies.' The former were covered by CCRAA, the latter under ICRA[A]." [*Cisneros v. The U.D. Registry, Inc.* (1995) 39 Cal.App.4th 548, 559].

Because the California Legislature divided the regulation of consumer reporting agencies into CCRAA and ICRAA, the federal definition of consumer report was similarly divided. [Compare *Civ. Code,* § 1785.3(c) & *Civ. Code* § 1786.2(c) with 15 USC § 1681a(d)]. CCRAA governed "consumer credit reports," defined as "any written, oral, or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity . . ." [*Civ. Code,* former § 1785.3(c)]. ICRAA by comparison, governed "investigative consumer reports," which, until 1999, were defined as "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained <u>through personal interviews</u> with neighbors, friends, or associates of the consumer reported on, or others with whom he or she is acquainted or who

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

may have knowledge concerning any of these items of information." [*Civ. Code*, former § 1786.2(c)].

In order to effectuate the distinction between the two statutory schemes, the definition of a consumer credit report *expressly excludes* ICRs. A "consumer credit report" under CCRAA does not include "any report containing information *solely* on a consumer's character, general reputation, personal characteristics, or mode of living which is obtained through personal interviews with neighbors, friends or associates of the consumer reported on, or others with whom he is acquainted or who may have knowledge concerning those items of information." [*Civ. Code* § 1785.3(c)]. Likewise, an ICR "does not include a consumer report or other compilation of information which is limited to specific factual information relating to a consumer's credit record or manner of obtaining credit obtained directly from a creditor of the consumer or from a consumer reporting agency when that information was obtained directly from a potential or existing creditor of the consumer or from the consumer." [*Civ. Code* § 1786.2(c)].

CCRAA, at its inception, applied to consumer credit reports used to determine eligibility for credit for personal, family or household purposes, or employment purposes, insurance, licensing and other legitimate purposes. [*Civ. Code* § 1785.3(c), *Civ. Code* §1785.11]. ICRAA, in turn, applied to applications for employment purposes and for insurance for personal, family or household purposes. [*Civ. Code* § 1786.2(b)].

In addition, both CCRAA and ICRAA expressly authorize the reporting of unlawful detainer actions and public criminal court records. [see *Civ. Code* § 1785.13(a)(3) & (6); also see *Civ. Code* § 1786.18(a)(4) & (7)].[7]

In 1982, the Legislature added "hiring of a dwelling unit" to both CCRAA and ICRAA, thereby regulating the use of consumer credit reports and investigative consumer reports to

---

[7] In 1995, the California Court of Appeal declared *Civ. Code* § 1785.13(a)(3) unconstitutional to the extent it limited the information obtained from court records that a consumer reporting agency may report regarding a tenant's involvement in an unlawful detainer action. [*U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107, 116, Review Denied 1996 Cal. LEXIS 769 (Cal. Jan. 31, 1996); Cert. Denied 516 U.S. 1074, 116 S. Ct. 777 (1996)]. Under the Court's reasoning therein, any limitation or prohibition on the reporting of any public court records is likewise unconstitutional. [See for example *U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1   determine a prospective tenant's eligibility for rental housing (i.e., tenant screening reports). [*Civ.*

2   *Code* §§ 1785.1(d); 1785.3(a)(3); 1785.3(c)(3); 1785.11(a)(3)(E); 1786(a); 1786(f); 1786.2(b);

3   and 1786.12(d)(5)].

4   The 1982 amendments maintained the clear distinction between CRs and ICRs by

5   contemplating and providing for the possible use of both reports in connection with a prospective

6   tenant's eligibility for rental housing:

7   [SB 1406] would include within the term 'consumer credit report' any communication
    of any information by a consumer credit reporting agency bearing on a consumer's
8   credit worthiness, credit standing, or credit capacity which is used or expected to be
    used, or collected in whole or in part, for the purpose of serving as a factor in
9   establishing the consumer's eligibility for the hiring of a dwelling unit, for purposes of
    the Consumer Credit Reporting Agencies Act; and would include the hiring of a
10  dwelling unit as an activity which would cause a person who meets other specified
    criteria to be a 'consumer' or an 'investigative consumer reporting agency' for purposes
11  of the Investigative Consumer Reporting Agencies Act.

12  [Legislative Counsel's Digest of Senate Bill 1406 (1981-1982 Reg. Sess.) as introduced on

13  February 1, 1982]. Thus, since the enactment of CCRAA and ICRAA, the Legislature has

14  maintained the distinction between consumer CRs and ICRs and expressly recognized that

15  reports on unlawful detainer actions and criminal court cases, or information derived therefrom,

16  might be included in both kinds of reports, but are otherwise not the defining factor. Rather, it is

17  the nature and subject matter of the report, not simply the inclusion of information of unlawful

18  detainer actions or criminal court records that is determinative of its classification. Each

19  classification is then subject to its own set of regulatory provisions.

20  The distinction between the two types of reports took center stage in a 1995 decision of

21  the Court of Appeal. There, the court addressed whether "[the] practice of soliciting written

22  comments from its subscriber landlords concerning tenants' treatment of rental premises, then

23  passing that information on to other subscribers, brings it under ICRA[A]." [*Cisneros*, 39

24  Cal.App.4th at 567]. The Court of Appeal noted that "[t]he issue is significant because ICRA[A]

25  imposes stricter notice and verification requirements than CCRAA." [*Id.*] The Court of Appeal

26  in *Cisneros* concluded that the reports the tenant screening agency assembled and disseminated

27  were not "investigative consumer reports" because the information it received from the landlords

28  was not obtained through "personal interviews." [*Cisneros*, 39 Cal.App.4th at 569]. The appellate

    court reasoned that the landlords obtained the information through personal observation of the

1   premises and petitioner obtained the information by means of written responses to forms, not

2   personal interviews. [*Id.*].

3          However, in 1998, the Legislature deleted the "personal interview" requirement for ICRs

4   and revised *Civ. Code* § 1786.2(c) to permit an ICR to include information on character, general

5   reputation, personal characteristics, or mode of living obtained through "any means." [*Civ. Code*

6   § 1786.2(c)].[8] The purpose of the amendment was to broaden the means by which reputation and

7   character information included in an ICR might be obtained, not to change the nature or use of

8   public records in a CR or ICR.

9          **2)   THE SUBJECT REPORT ATTACHED TO THE ORIGINAL
               COMPLAINT IS NOT AN ICR AS A MATTER OF LAW.**

10         As stated above, the distinguishing factor between a CR controlled by CCRAA and an

11  ICR controlled by ICRAA is that a CR is a report that provides information "bearing on a

12  consumer's credit worthiness, credit standing, or credit capacity, which is used…for the purpose

13  of serving as a factor in establishing the consumer's eligibility for … hiring of a dwelling

14  unit…." [*Civ. Code* § 1785.3(c)]. In contrast, an ICR is a report "in which information on a

15  consumer's character, general reputation, personal characteristics, or mode of living is obtained

16  through any means." [*Civ. Code* § 1786.2(c)]. CRs and ICRs are supposed to be mutually

17  exclusive [See *Civ. Code* § 1785.3(c); *Civ. Code* § 1786.2(c); See *Ortiz v. Lyon Management

18  Group, Inc.* (2007) 157 Cal.App.4th 604, 614-615 ("any one item of information may be

19  classified as either creditworthiness or character information, but not both.")].

20         Here, the Subject Report says nothing about Plaintiff's "general reputation" (e.g, what

21  people in the community think about Plaintiff), "character" (e.g., Plaintiff's moral fiber), "mode

22  of living" (e.g., how Plaintiff supports himself) or other "personal characteristics" (e.g.,

23  Plaintiff's height, hair color, etc.). [Complaint Exb. "1"]. Therefore, the subject tenant screening

24  report is not an ICR and ICRAA has no application to this case. Any other finding would make

25  ICRAA unconstitutionally vague and unenforceable as discussed below.

26

27  _____

28  [8] The Legislature failed to similarly amend the *Civil Code* § 1785.3(c) exclusion of investigative consumer reports from the definition of consumer credit reports.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

**a. The Mere Presence Of Public Criminal And Civil Court Records Does Not Make A Tenant Screening Report An ICR, Or Else ICRAA Becomes Unconstitutionally Vague As A Matter of Law.**

Public criminal court records, like public unlawful detainer court records, are items of information that may be included in a CR to determine a consumer's credit worthiness or capacity [see *Civ. Code* § 1785.13] as well as in an ICR to determine general reputation or character information [*Civ. Code* § 1786.18]. Accordingly, the mere presence of such information in a tenant screening report (or lack thereof), without more, cannot be the determining factor as to whether CCRAA or ICRAA govern the subject tenant screening report.[9] However, if this Court should find that public court records are inherently character/general reputation information, TSP cannot be liable under ICRAA for the inclusion of that information in the Subject Report as application of ICRAA in that context is unconstitutionally vague and otherwise void.

> "[T]he ICRAA is unconstitutionally vague as applied to tenant screening reports containing unlawful detainer information. The statute governs reports containing "information on a consumer's character, general reputation, personal characteristics, or mode of living ... obtained through any means." (§ 1786.2, subd. (c).) Plaintiffs asserts their tenant screening reports are subject to the ICRAA because they indicated unlawful detainer actions had been filed against them, and thus contained "character information."
>
> As we explain in a companion case, the ICRAA is unconstitutionally vague <u>because persons of reasonable intelligence cannot determine whether unlawful detainer information is character information subject to the ICRAA or creditworthiness information subject to the CCRAA.</u> (*Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604 (*Ortiz*).) The Legislature intended to differentiate between character information and creditworthiness information, but ever since a 1998 ICRAA amendment, <u>it is hopelessly uncertain on which side of the fence unlawful detainer information falls.</u> (*Id.* at pp. 615–619.) Accordingly, defendant is entitled to summary adjudication on the ICRAA claims."

[*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 640 (footnote omitted).]

*See also, Ortiz v. Lyon Management Group, Inc. (2007) 157 Cal.App.4th 604, 615-619*].

---

[9] The reporting of the absence of unlawful detainer cases or criminal court cases, likewise says nothing about a person's character or general reputation. Yet reporting the absence of information is still information being reported. [See *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604, 612 fn.3]. However, it is axiomatic that there are bad people who have never been a defendant in an eviction case or criminal matter, as there are good people that have been a defendant in such cases due to hard times or poor choices as an adolescent. Thus to assume the mere reporting of such information is automatically one or the other is folly.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

With regard to unlawful detainer information, which is inherently derogatory, the Court in *Ortiz* found that such could arguably be classified as information on creditworthiness or character. [*Id.* at 617-619]. Despite this overlap, the Court found that prior to the 1998 amendment, the distinction between a CR and an ICR was still clear because of the personal interview component. [*Id.* at 616]. However, when the legislature removed the personal interview component, it made ICRAA unconstitutionally vague [*Id.* at 617].

> This statutory scheme—two separate statutes governing two kinds of tenant screening reports depending on the type of information they contain—indicates a legislative intent to distinguish between creditworthiness information and character information. (See *Dyna-Med, supra*, 43 Cal.3d at pp. 1386–1387 [statutes must be harmonized].) Nothing in the statutes suggests any *one* item of information may constitute *both* creditworthiness and character information such that it alone subjects a tenant screening report to *both* statutes. Rather, any one item of information may be classified as either creditworthiness or character information, *but not both.* Construing the two statutes to govern discrete items of information harmonizes the statutes, rather than collapsing them into one. (*Ibid.*)

> While the statutes require a distinction between creditworthiness and character information, the line between the two is not readily apparent. On the one hand, a consumer's creditworthiness *itself* pertains to the consumer's character or personal characteristics. Creditworthiness is a personal attribute, the quality of being "financially sound enough that a lender will extend credit in the belief that the chances of default are slight; fiscally healthy." (Black's Law Dict. (7th ed. 1999) p. 377, col. 1.) Creditworthiness information is a *type* of character information. On the other hand, certain types of character information may also constitute creditworthiness information. Information that a consumer has the character traits or personal characteristics of (or a general reputation for) dishonesty, profligacy, carelessness, or absentmindedness would reasonably relate to the consumer's financial soundness, likelihood of default, or fiscal health. At least these types of character information pertain to the consumer's creditworthiness.

[*Id.* at 614-615 (italics in original)]. The *Ortiz* Court concluded:

> Our challenge arises not because unlawful detainer information is somehow paradoxical, but because the statutory scheme fails to set forth truly distinct categories. It presents a false dichotomy between creditworthiness and character. The ICRAA's nebulous reference to character information, as applied to tenant screening reports containing unlawful detainer information, is unconstitutionally vague.

[*Id.* at 612-613].

> We are left with no rational basis to determine whether unlawful detainer information constitutes creditworthiness information subject to the CCRAA or character information subject to the ICRAA. We doubt any "person of ordinary intelligence" can do so either. (*Cranston, supra*, 40 Cal.3d at p. 763.) Rather, credit reporting agencies and landlords "must necessarily guess at [the ICRAA's] meaning and differ as to its application." (*Connally, supra*, 269 U.S. at p. 391.) Worse, landlords must make their guesses when they request tenant screening reports, *before* they learn whether the report will contain any unlawful detainer information or exactly what kind of unlawful detainer

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    information it will include. (See § 1786.16 [listing conditions that must be met *before* procuring investigative consumer reports].)

2

3    The ICRAA thus fails to provide adequate notice to persons who compile or request tenant screening reports that may contain unlawful detainer information. (*Gallo, supra*, 14 Cal.4th at p. 1115 [noting "the core due process requirement of adequate *notice*"]; *Lockheed, supra*, 28 Cal.2d at p. 484 ["A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions …"].) The 1998 amendment rendered the ICRAA unconstitutional as applied to tenant screening reports containing unlawful detainer information. Accordingly, the court correctly granted summary judgment to defendant.

4

5

6

7    [*Id.* at 619 (italics in original)].

8    Here, criminal court records fair no better than unlawful detainer information as to

9    creating a distinction between credit capacity and worthiness information and personal character

10   information. The legislature has already deemed criminal record information to be information on

11   a consumer's credit worthiness or capacity [see *Civ. Code* § 1785.13(a)(6)].  Therefore, criminal

12   information *does* have a bearing on a consumer's credit worthiness or capacity and is therefore

13   beyond contestation. Further, allowing criminal record information to be used in determining a

14   consumer's credit capacity and worthiness makes sense, as criminal records can be used to

15   establish a person's credit capacity (e.g., the ability to get a job, the payment of criminal fines,

16   the lack of a criminal history, etc.). Although criminal records, like unlawful detainer records,

17   may also imply something about the person's character (e.g., dishonest, untrustworthy, etc.), it

18   does not always do so. One would not know until after the requested report came back, which

19   very well may fail to contain any such information. However, it is for this reason that the Court in

20   *Ortiz* found ICRAA to be unconstitutionally vague.

21   Therefore, for the same reason that the reporting of unlawful detainer court information

22   (or lack thereof) cannot be found to constitute an ICR, criminal court information (or the lack

23   thereof) likewise cannot alone invoke ICRAA. As such, Plaintiff has failed to state a claim in the

24   FAC against TSP under ICRAA in the 4th through 9th causes of action because the application of

25   ICRAA over the Subject Report to CCRAA's exclusion is constitutionally uncertain, and is

26   therefore unconstitutionally vague in its application to this case.

27

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

### 3)   THE APPLICATION OF ICRAA AND CCRAA STATUTES TO RESTRICT THE REPORTING OF TRUTHFUL PUBLIC RECORD INFORMATION IS INHERENTLY UNCONSTITUTIONAL AND CANNOT BE THE BASIS OF A VIOLATION OF ICRAA OR AN AMENDED CCRAA CLAIM.

In addition to the restrictions of reporting public records in the currently untested ICRAA sections purporting to do so [See *Civ. Code* § 1786.18(a)(1)-(8)], Plaintiff may try to argue that the reporting of a criminal court case that was ultimately dismissed also constitutes a violation of CCRAA [See *Civ. Code* § 1785.13(a)(6)], and as such, Plaintiff should be given leave to amend to allege a CCRAA claim. This anticipated argument fails because any limitation on the reporting of any truthful information derived from court records is unconstitutional.

In1995, the California Court of Appeal declared *Civ. Code* § 1785.13(a)(3) unconstitutional to the extent it limited the information obtained from court records that a consumer reporting agency may report regarding a tenant's involvement in an unlawful detainer action:

> Concern about the availability of rental housing for those needing housing, and particularly those facing eviction, is a valid and significant state interest. But it does not justify a ban on publication by credit reporting agencies of lawfully obtained truthful information contained in court records open to the perusal of everyone. The information is in the custody of the state. If the state is concerned about dissemination of this information, it has the power to control its initial release. As explained in *Florida Star*, *supra*, the government may classify the information, establish procedures for its redacted release, and extend a damages remedy against the government if the government's mishandling of sensitive information leads to its dissemination. "Where information is entrusted to the government, a less drastic means than punishing truthful publication *almost always exists* for guarding against the dissemination of private facts." (491 U.S. at p. 534 [105 L. Ed. 2d at pp. 455-456].)
>
> Section 1785.13, subdivision (a)(3) contains the same flaw found in the *Daily Mail* and *Florida Star* cases--the restriction against dissemination is limited to one type of publication, thereby failing to achieve its purpose of protecting the subject from other modes of broadcast of the same information. In *Daily Mail*, the restriction applied only to newspapers; in *Florida Star*, it applied only to "any instrument of mass communication"; in our case, the restriction applies only to consumer credit reporting agencies. In all three instances, the information can be disseminated in countless other ways. No justification is advanced for limiting one form of dissemination while permitting broadcast of the same information by other methods.

[*U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107, 114 -115].

SER028

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

As suggested by several of the opinions we have discussed, there are any number of things the state may lawfully do to protect renters who are subject to or who have suffered an eviction. What it cannot do is to act in violation of the Constitution. That is the effect of section 1785.13, subdivision (a)(3), the statute before us. We conclude it violates the First Amendment, and therefore is unconstitutional. The trial court was right to so declare.

[*Id.* at 116].

Likewise, in *U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405, the Appellate Court found that any prohibition or curtailment in CCRAA (and specifically *Civ. Code* § 1785.11.2 that prohibited the reporting of any information, including public court record information such as criminal reports) that in anyway interfered with the truthful reporting of public court records by a tenant screening company *in any manner* was inherently unconstitutional, especially since public court records are readily available to all members of the public through a multitude of other sources.

We conclude that section 1785.11.2 is unconstitutional as applied to plaintiff who, the agreed facts prove, provides credit reports drawn in material part from public records including court documents.

[*Id.* at 410 (emphasis added)].

Defendants do not dispute that section 1785.11.2 prevents plaintiff from disseminating information about unlawful detainer, bankruptcy, tax lien, foreclosure, and other public proceedings against individuals; all of it secured from public records. The bulk of the sources of records referred to on plaintiff's Web site are publicly produced documents. Nor do defendants dispute the public nature of that information; it is available to members of the public without resort to plaintiff's reports. Moreover, preventing plaintiff from disseminating *all* of the public record information does not serve the asserted state interest. The knowledge that an individual has been the subject of an unlawful detainer action by a lessor, a tax lien imposed by the government, or a foreclosure action by a lender does not facilitate identity theft. Even if that information could be of some use to a potential identity thief, it would be available without resort to plaintiff's credit reports.

[*Id.* at 424-425 (emphasis added)].

As held by both *U.D. Registry* cases, there can be no compelling state interest in suppressing the truthful reporting by tenant screening companies of any information derived from public court records. Thus, courts have consistently held that ICRAA or CCRAA may not be applied to curtail a tenant screening company's reporting of public court records available to the public through a multitude of other sources (e.g., criminal court case information), such restrictions are unconstitutional as a matter of law.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    Consistent with the foregoing, the Supreme Court decided *Sorrell v. IMS Health Inc*.

2  (2011) 131 S.Ct. 2653, a landmark First Amendment decision that redefined the constitutional

3  protection for disclosure of truthful commercial information.

4    In *Sorrell*, the State of Vermont enacted a statute prohibiting pharmacies and data brokers

5  from selling doctors' prescription information to drug companies, and prohibited drug companies

6  from using that information to market their drugs. The Supreme Court invalidated the statute on

7  First Amendment grounds, holding that its content-based, speaker-based restrictions on truthful

8  commercial speech did not survive "heightened" constitutional scrutiny. *Sorrell* marks a

9  substantial shift in the protection afforded to commercial speech. Under *Sorrell*, many existing

10  laws limiting disclosure of truthful commercial information are now unconstitutional.  Although

11  the speech at issue here is not commercial speech as indicated by the two *U.D. Registry* cases

12  cited above, the fact that commercial speech was at issue in *Sorrell* is most instructive in this

13  case, as commercial speech receives less constitutional protection.

14    Sections  1786.18(a)(7) and  1785.13(a)(6) fall squarely within *Sorrell*'s holding.

15  Conveying truthful information about an individual's criminal record is a form of protected

16  speech. [*Sorrell*, 131 S. Ct. at 2667]. Moreover, Sections 1786.18(a)(7) and 1785.13(a)(6) are

17  content-based and speaker-based restrictions on that speech. The statute targets a particular type

18  of information—arrest and adverse records that are more than seven years old—and therefore is

19  content-based. [Ci*v. Code* §§ 1786.18(a)(7) and 1785.13(a)(6)].

20    Sections 1786.18(a)(7) and 1785.13(a)(6) are also speaker-based. Like the Vermont

21  statute in *Sorrell*, which applied only to drug marketers, the restrictions in Sections 1786.18(a)(7)

22  apply only to investigative consumer reporting agencies and the restrictions in 1785.13(a)(6) only

23  apply to CRAs. Government agencies, publicly-accessible online databases, news organizations,

24  and countless other services provide access to the same information but are not subject to

25  Sections 1786.18(a)(7) and 1785.13(a)(6). The statutes thus "disfavors specific speakers" and is a

26  "speaker-based" restriction. [*Sorrell*, 131 S. Ct. at 2663].

27    Thus, *Civ. Code* § 1786.18(a)(7) and (8) are unconstitutional as applied to the reporting of

28  truthful public criminal court information.  Further, Plaintiff cannot amend his complaint to add

  CCRAA causes of action for the same violation because *Civ. Code* § 1785.13(a)(6) is

unconstitutional for the same reasons stated in *Sorrell* and for the same reasons *Civ. Code* § 1785.13(a)(3) has already been declared unconstitutional in *U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107.

Therefore, as Plaintiff's Fourth Cause of Action is entirely based on the unconstitutional application of statutes to prohibit the reporting of certain public court case information, and as any potential amendment to the Complaint would likewise seek an unconstitutional restriction on the reporting of public court case information, Plaintiff cannot amend his FAC to state a cause of action.

## D. PLAINTIFF'S FIFTH THROUGH NINTH CAUSES OF ACTION FAIL TO STATE ANY CLAIM FOR WHICH RELIEF CAN BE GRANTED, AS ICRAA DOES NOT APPLY TO TSP'S TENANT SCREENING REPORTS CONTAINING PUBLIC COURT RECORDS CONTAINING CRIMINAL INFORMATION.

Plaintiff's 5th through 9th Causes of Action allege violations of different reporting and investigating requirements as mandated by ICRAA. [See FAC ¶¶ 78-99]. It is axiomatic that if ICRAA does not apply to TSP's tenant screening report because it is void for being unconstitutionally vague, then such causes of action for violation of ICRAA likewise fail.

ICRAA does not apply to the Subject Report just because it contains criminal record information. To the extent that ICRAA may apply, it is unconstitutionally vague and thus unenforceable in this case.

Thus, because ICRAA has no application to this case under any circumstance, the 5th through 9th causes of action should be dismissed without leave to amend.

## E. THE FAC FAILS TO PROPERLY ALLEGE A CLAIM UNDER *BUS. & PROFS. CODE* § 17200 et. seq.

### 1) PLAINTIFF HAS NO STANDING TO BRING A UCL CLAIM.

Plaintiff has no standing to bring a UCL claim against TSP because Plaintiff has failed to allege that TSP took money or property from Plaintiff that would otherwise be subject to disgorgement or restitution.

"Section 17204 of the UCL governs a plaintiff's standing to assert a UCL claim. [*Bus. & Prof. Code* §§ 17203, 17204]. Prior to the enactment of Proposition 64 in November 2004, the UCL "did not predicate standing 'on a showing of injury or damage'" and was thus "subject to

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

abuse by attorneys who used it as the basis for legal "'shakedown'" schemes" and frivolous lawsuits. [*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 812; *see Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228]. To address this problem, Proposition 64 amended section 17204 to accord standing only to certain specified public officials and to any person who "'has suffered injury in fact and has lost money or property as a result of such unfair competition.'" [*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1590; also see *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 32; also see *Forsythe v. Wells Fargo Bank, N.A.* (2012, CD Cal) 2012 US Dist LEXIS 44031 at *12.

The FAC fails to allege an injury in fact to including any loss of money or property to TSP.

Standing under section 17200 requires allegations of a "distinct and palpable injury" suffered "'as a result of the defendant's actions'" and "'an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) actual or imminent, not 'conjectural' or 'hypothetical,' [citations].'" [*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 814; *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1591-1592]. The mere violation of a law does not automatically give rise to a cause of action under section 17200. [*Medina v. Safe-Guard Products, Int'l., Inc.* (2008) 164 Cal.App.4th 105; *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583].

Further, a private plaintiff must also show a causal connection between the alleged wrongful conduct and the actual injury sustained. [*Bus. & Prof. Code* § 17204; *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 855]. If the cause of action is based on an unlawful business practice, plaintiff cannot predicate standing to sue on an injury caused by lawful conduct of the defendant that is somehow connected to defendant's unlawful conduct, if that unlawful conduct does not itself cause actionable injury to plaintiff. [*Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1099].

In *Citizens of Humanity, LLC v. Costco Wholesale Corp.* (2009) 171 Cal.App.4th 1, plaintiff Citizens attempted to bring a cause of action against Costco for selling its premium denim when Citizens had not approved Costco as an appropriate retailer for its products. Citizens

claimed harm to its goodwill as its damages. The court in *Citizens* summed up the "lost money or property" based on reputation damages as follows:

> The question arises whether an individual who has not lost "money or property" of the type that would be subject to a restitution order under Business and Professions Code section 17203 could still have "lost money or property" of the type that would confer standing under Business and Professions Code section 17204. Stated more concretely, Citizens alleges harm to its goodwill, which would not entitle Citizens to restitution. [Citations.] <u>Is the alleged harm to its goodwill nonetheless a loss of "money or property as a result of the unfair competition" sufficient to confer standing on Citizens, so that Citizens may pursue solely an injunctive remedy?</u>
>
> <u>It is not.</u> "<u>Because remedies for individuals under the [unfair competition law] are restricted to injunctive relief and restitution, the import of the [Business and Professions Code section 17204 loss of money or property] requirement is to limit standing to individuals who suffer losses of money or property *that are eligible for restitution*.</u>" (Buckland v. Threshold Enterprises, Ltd., supra, 155 Cal.App.4th at p. 817; see Walker v. USAA Cas. Ins. Co. (E.D. Cal. 2007) 474 F.Supp.2d 1168, 1172.) As Citizens could not allege having suffered losses which would entitle it to restitution, it has no standing to pursue a cause of action for unfair competition.

[*Citizens of Humanity, LLC v. Costco Wholesale Corp*. (2009) 171 Cal.App.4th 1, 22-23].

Here, Plaintiff's only allegation regarding his damages is that "As a result of Defendant TSP's wrongful acts and omissions, Plaintiff has been injured, including, without limitation, by virtue of having lost housing opportunities and by having been forced to spend time, money and energy to clean up after Defendant's errors." [FAC ¶ 17].  But none of this is the loss of "money or property" to TSP as is needed to have standing. As such, Plaintiff has no standing to bring a UCL claim because he has lost no money or property to TSP.

### 2) NO UCL CLAIM EXISTS WHEN CLAIMANTS HAVE AN ADEQUATE REMEDY AT LAW.

"A UCL action is an equitable action . . . It is not an all-purpose substitute for tort or contract causes of action, Damages are not available under section 17203." [*Cortez v. Purolator Air Filtration Products Co*. (2000) 23 Cal.4th 163, 173]. Where the plaintiff has an adequate remedy at law, UCL relief is not proper. [*Provincial Horne Mortgage Co. v, Superior Court* (1998) 66 Cal.App.4th 1236, 1249-50; *Heighly v. J.C. Penney Life Ins. Co*. (C.D. Cal. 2003) 257 F.Supp.2d 1241, 1259-60 (Plaintiff's complaint is fatally defective because it failed to allege that he had no adequate remedy at law)].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

The FAC does not allege that Plaintiff lacks an adequate remedy at law. To the contrary, each cause of action is tied to a statute and a statutory remedy. For this reason alone, the UCL claims must be dismissed.

If this motion is granted, only the 3rd Cause of Action for violation of 15 USC § 1681i for failing to respond to an alleged dispute letter sent by someone other than the consumer will remain. [See FAC ¶ 49]. Plaintiff has an adequate remedy at law under 15 USC § 1681n and 15 USC § 1681o, both of which provide for actual damages, attorneys' fees and potential statutory damages.

### 3) PLAINTIFF'S UCL CLAIMS ARE PREEMPTED FOR FCRA VIOLATIONS.

The FAC alleges the FCRA statutory violations, and the corresponding ICRAA statutory violations that mirror the FCRA claims, as UCL predicates [See FAC ¶¶ 100, 103, 107, 109, 110, 111] for which Plaintiff seeks injunctive relief. [See FAC ¶¶ 106,112]. However, such UCL claims seeking injunctive relief for FCRA violations, and state statutes parroting FCRA violations, are federally preempted.

The FCRA does not provide private consumers with a private right of action for injunctive relief [*see* 15 USC §§ 1681n & 1681o], but reserves that right solely for government entities. Therefore, no state may pass or enforce any law bestowing upon a consumer the right to obtain injunctive relief against anyone for violating FCRA, or a similar subservient state statute (i.e. ICRAA or UCL), as to do so would place the state law in direct conflict with Congress' scheme under FCRA to reserve that right solely for the government. This includes claims under *Bus. & Prof. Code* § 17200 for injunctive relief for violations of state laws that are otherwise subservient to FCRA (i.e. ICRAA, CCRAA, UCL, etc.). Case law throughout the United States, including California's Federal Courts, are in accord with this maxim. [See *Washington v. Credit Services, Inc.* (5th Cir. 2000) 199 F.3d 263, 268 ("We hold that the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."); *Howard v. Blue Ridge Bank* (N.D. Cal. 2005) 371 F.Supp.2d 1139, 1146 ("Because the Court

1  finds that plaintiff's § 17200 claim is preempted by the FCRA, he cannot obtain an injunction for

2  this claim."); *Hogan v. PMI Mortg. Ins. Co.,* (N.D. Cal. May 12, 2006) 2006 U.S. Dist. LEXIS

3  32179 at *35-*36 ("injunctive relief, is preempted by the FCRA.")].

4       The list of cases across the Country declaring that no consumer may sue for injunctive

5  relief for violations of such state statutes for FCRA violations (and its subservient state

6  counterparts) is nearly endless, even under state statutes that allow for injunctive relief.[10]

7  Regardless, it is with certainty that Plaintiff's attempt to seek injunctive relief here is preempted.

8  Thus, Plaintiff cannot succeed on his UCL claims as a matter of law under any circumstance.

9  **5.  CONCLUSION**

10      Based on the foregoing, the  1st, 2nd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th causes of action

11  of the FAC fail to state a claim upon which relief can be granted and this motion should be

12  granted without leave to amend.

14  Dated: July 16, 2012              **Jacobson, Russell, Saltz & Fingerman LLP**

16                                    _____/S/_____

16                                    Michael J. Saltz, Esq.,

17                                    Attorneys for Defendant The Screening Pros, LLC

[10] For example, also see *White v. First Am. Registry, Inc.,* (S.D.N.Y. 2005) 378 F.Supp.2d 419, 424
*Jarrett v. Bank of America, et. al.* (D. Kan. 2006) 421 F. Supp.2d 1350, 1353-55; *Bittick v. Experian
Information Solutions, Inc.* (N.D. Tx. 2006) 419 F.Supp.2d 717; *Poulson v. Trans Union, LLC* (E.D.
Tx. 2005) 370 F.Supp.2d 592, 593.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

THE LAW OFFICES OF DEVIN H. FOK
Devin H. Fok, Esq. (SBN #256599)
511 S. Monterey St., Unit C.
Alhambra, California 91801
Ph: (310) 430-9933
Fax: (323) 563-3445
devin@devinfoklaw.com

A NEW WAY OF LIFE REENTRY PROJECT
Joshua Kim, Esq. (SBN #257260)
PO Box 875288
Los Angeles, California 90087
Ph: (323) 563-3575
Fax: (323) 563-3445
joshua@anewwayoflife.org

Attorneys for Plaintiff
GABRIEL FELIX MORAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GABRIEL FELIX MORAN,<br><br>Plaintiff,<br><br>vs.<br><br>THE SCREENING PROS, LLC., a California Corporation; and DOES 1-10 inclusive;<br><br>Defendants. | CASE NO.: 2:12-CV-05808-SVW-AGR<br><br>HON. STEPHEN V. WILSON<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO *FED. R. CIV. PROC. 12(b)(6);* MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Complaint Filed: February 2, 2012<br>Removed: July 5, 2012<br><br>Hearing Date: Sept. 10, 2012<br>Time: 1:30 p.m.<br>Courtroom: 6-2nd Floor |

//
//

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ET AL. – i

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

     PLEASE TAKE NOTICE THAT on Sept. 10, 2012, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the above-entitled Court, Plaintiff GABRIEL F. MORAN ("PLAINTIFF") will and hereby does oppose Defendant THE SCREENING PROS, INC.'s Motion to Dismiss

DATED: August 18, 2012

                               DEVIN H. FOK ESQ.
                               THE LAW OFFICES OF DEVIN H. FOK

                        By: _____/S/_____
                           Devin H. Fok
                           Attorneys for Plaintiff GABRIEL F. MORAN

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

LEGAL ANALYSIS..............................................................................................3

    A.    Standard of Review.................................................................................3

    B.    Plaintiff's First Cause of Action States Sufficient Facts to Constitute a Violation of 15 U.S.C. §1681c(a)(2) and (5) Because the Reported Information Related to Case 188935 Was An Arrest that Antedate the Report By More Than 7 years.....4

    C.    Defendant's Background Check Report Violates 15 USC §1681e Because It Failed To Use Reasonable Procedures To Avoid Violation of 15 USC §1681c And Failed to Use Reasonable Procedures to Ensure the Maximum Possible Accuracy of the Information Reported..................................................7

    D.    A Criminal History Report is Not a Credit Report Because It Does Not Bear On A Consumer's Credit Worthiness..........................................................8

    E.    The ICRAA Is Not Unconstitutionally Vague as Applied to the Subject "- Criminal Report-" As Any Reasonable Person Will Know That It Has Nothing To Do With Plaintiff's Credit Worthiness.................................................10

    F.    The ICRAA and CCRAA Does Not Violate the First Amendment Because Compiled Criminal History Information is Private Information And Both the FCRA And the CCRAA Directly Advances the Privacy Interest Therein By Broadly Prohibiting Its Disclosure Except For Recent 7-Year Old Conviction Records..........................................................................................11

    G.    Plaintiff Sufficiently Alleged that Plaintiff Was Denied Housing As a Result of the Illegal Report and the UCL Is Not Preempted by the FCRA..................15

CONCLUSION..............................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page**

Bd. Of Trs. Of SUNY v. Fox (1989) 492 U.S. 469……………………………………..…12

Bell Atlantic Corp. v. Twombly (2007) 127 S.Ct. 1955……………………….....……………3

Brown v. Mortensen (2011) 51 Cal.4th 1052……………………………...….…………….....16

Citizens United v. Fed Election Comm'n (2010) 130 S.Ct. 876…………………………..…12

Conley v. Gibson (1957) 335 U.S. 41……………………………………….....…………………3

Central Hudson Gas & Electric Corp. v. Pub. Serv. Comm'n of N.Y. (1980) 447 U.S. 557..11, 12

Dun & Bradstreet v. Greenmoss Builders (1985) 472 U.S. 749…………………………12, 14

Gilliespie v. Equifax Info. Serv., LLC (7th Cir. Ill. 2007) 484 F.3d 938…………..…….....…6

Gilliespie v. Equifax Info. Serv., LLC (N.D. Ill. 2008) 2008 U.S. Dist. LEXIS 85150…………..6

Gorman v. Wolpoff & Abramson, LLP (9th Cir. 2009) 584 F.3d 1147……………..……...8, 16

Guimond v. Trans Union Credit Info. Co. (9th Cir. 1995) 45 F.3d 1329……………………..…7

Ortiz v. Lyon Management Group, Inc. (2007) 157 Cal.App.4th 604………..…...………....9, 10

Sanai v. Saltz (2009) 170 Cal.App.4th 746………………………………………16

Serrano v. Sterling Testing Systems, Inc. (E.D. Pa 2008) 557 F.Supp.2d 688…….…………...3, 4

Sorrell v. IMS Health, Inc. (2011) 131 S.Ct. 2653 ………………………….........11, 12, 14

Snyder v. Phelps (2011) 131 S. Ct. 1207……………………………….…..………....………12

Trans Union Corp. v. FTC (D.C. Cir. 2001) 267 F.3d 118……...…………………....…12, 14

U.D. Registry, Inc. v. State of California (1995) 34 Cal.App.4th 107 ………………………11, 14

United States v. Smith (3d Cir. 1985) 776 F.2d 1104………………………………….........12

US DOJ v. Reporters Committee for Freedom of the Press et al. (1989) 489 U.S. 749…….12, 13

Westbrook v. County of Los Angeles (1994) 27 Cal.App.4th 157…………………….....12, 13


**Statutes**

15 U.S. C. §1681………………………………………………..………….…1, 4

15 U.S. C. §1681c………………………………………………….1, 2, 4, 5, 6

15 U.S. C. §1681e…………………………………………………………..1, 7

15 U.S. C. §1681i………………………………………………………………..1

15 U.S. C. §1681t…………………………………………………………15, 16

California Civil Code §1785.1.................................................................11, 12

California Civil Code §1785.2....................................................................2, 9

California Civil Code §1785.3.........................................................................2

California Civil Code §1785.13......................................................................9

California Civil Code §1786...................................................................2, 11, 12

California Civil Code §1786.12..............................................................1, 2, 8

California Civil Code §1786.18........................................................1, 2, 4, 13, 14

California Civil Code §1786.24..................................................................1

California Civil Code §1786.29..................................................................1

California Penal Code §1203.4....................................................................4

California Penal Code §13300....................................................................13

California Rules of Court Rule 2.500..........................................................14

**Secondary Resources**

Federal Trade Commission, <u>40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations</u> (July, 2011) available at

www.ftc.gov/os/2011/07/110720fcrareport.pdf.......................................5, 6

SER040

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On or about February 5, 2010, Plaintiff sought affordable housing with a housing development called Maple Square. In connection with Plaintiff's rental application, Defendant issued three reports. Defendant issued the first two reports on February 5, 2010, which are entitled "-Eviction- Rental History Report-"[1] and "-Reformatted Transunion Credit Report-"[2]. On or about February 11, 2010, Defendant issued a third report, a "-Criminal Report-"disclosing information related to Plaintiff's criminal history. The "-Criminal Report-" ("subject report") is the subject of this litigation.

In the operative First Amended Complaint ("FAC"), Plaintiff alleges that Defendant's report contains numerous clear Federal and State law violations including: disclosure of dated and obsolete arrest and indictment records that did not result in conviction (15 USC §1681c(a)(2), (5); 15 USC §1681e(a); Cal. Civ. C. §1786.18(a)(7));  misleadingly presenting dismissed counts of the same case as though they are different cases (15 USC §1681e(b)); failure to investigate despite Plaintiff's written dispute (15 USC §1681i; Cal. Civ. C. §1786.24); failure to obtain proper certification from the landlord prior to issuance of the report (Cal. Civ. C. §1786.12); and failure to provide required statutory disclosures on the face of the report (Cal. Civ. C. §1786.29). Most of these violations are readily observed on the face of the report.

In response, Defendant argues that the information is reportable because it is not an arrest record; that it is not obsolete because it was reported within 7 years from the date of dismissal; and that the two cases disclosed on the report are arrests resulting in conviction because Plaintiff was convicted in both cases and the 188935 case was dismissed "presumably" following conviction, successful completion of probation, and expungement.

Defendant's arguments are wrong both factually and legally. Plaintiff was never convicted of any charges related to Case No. 188935, and the case was not dismissed pursuant to an expungement petition. Case No. 188935 is clearly records relating to an arrest for purposes of 15 USC §1681c(a)(2), and the arrest occurred in 2000, more than 10 years from the date of the report . Reporting it is clearly prohibited. Even if it is not a record of arrest, it clearly falls under

---

[1]  *See* Complaint, Exhibit "1", p.1 of 7 of the report.
[2]  *See* Complaint, Exhibit "1", p.3-6 of 7 of the report.

the catch-all provision of 15 USC §1681c(a)(5) where all other adverse information, other than records of conviction, is prohibited from disclosure if it antedates the report by more than 7 years. Since, Plaintiff was never convicted in Case No. 188935, it is not a record of conviction. In any case, any record of arrest and indictment that did not result in a conviction is strictly prohibited from disclosure in California under Cal. Civ. C. §1786.18(a)(7). Information related to Case No. 188935 and the two dismissed counts of 217842 falls in this category and is therefore prohibited.

In an attempt to avoid liability on clear California law violations, Defendant argues that that the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. C. §1786 *et seq*,. does not apply to the subject criminal report because it "neither says nor infers anything" about Plaintiff's character. Defendant goes on to argue, despite clear statutory language and case law to the contrary, that all tenant screening reports are subject to the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. C. §1785.2 *et seq*., and not to the ICRAA because they only seek to evaluate a tenant's credit, not character.

Defendant also argues that criminal history reports are like unlawful detainer reports because both reports contain credit and character information and a reasonable person cannot hope to know which act (CCRAA or ICRAA) applies. As a last ditch argument, Defendant argues that any restriction on Defendant's ability to report information on Plaintiff violates the First Amendment and is therefore unconstitutional.

Tenant screening reports are not automatically credit reports subject to the CCRAA. Both the CCRAA and the ICRAA recognize that credit and character report may be utilized in the process of "hiring of a dwelling unit." (*See* Cal. Civ. C. §1785.3(c)(3); Cal. Civ. C. §1786.12(d)(5)). Certainly, a landlord has an interest in knowing that a prospective tenant will not destroy, or commit crimes on the property. This information has nothing to do with credit or the applicant's ability to timely pay rent. The sole factor that determines which of the two acts applies to a particular report is whether the information is credit or character in nature. Clearly, a criminal report that discloses records of dismissed arrests and indictment has nothing to do with credit but has everything to do with Plaintiff's character. It is therefore clearly subject to the ICRAA. Any reasonable person looking at the "-Criminal Report-" will know that it is not a credit report, especially when Defendant separately issued a credit report, *i.e.* "-Reformatted Transunion Report-".

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ET AL. - 2

Finally neither the ICRAA nor the CCRAA violates the First Amendment as they are modeled after the FCRA which has withstood numerous constitutional challenges for the 40 years since its existence. Screening reports are commercial speech that may be constitutionally subject to content-based regulation so long as the regulation directly advances an important government interest. Similar to the FCRA, both the ICRAA and the CCRAA directly advance consumer's privacy interest by prohibiting disclosure of compiled obsolete, outdated, irrelevant, and inaccurate criminal history information.

## LEGAL ANALYSIS

### A.   Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. (*Conley v. Gibson* (1957) 355 U.S. 41, 45-46). A complaint needs only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." (*Bell Atlantic Corp. v. Twombly* (2007) 127 S. Ct. 1955, 1964-1965). "Specifically, factual allegations must be enough to raise a right to relief above the speculative level." (*Serrano v. Sterling Testing Systems, Inc.* ( E.D. Pa 2008) 557 F.Supp.2d 688 citing *Bell Atlantic Corp., supra,* at 1965)).

Clearly, Plaintiff's First Amended Complaint ("FAC") provides Defendant with sufficient notice of the claims against it. Indeed, Defendant understands the claims well enough to ask the Court to allow Defendant to exceed the page limit in bringing the instant motion to dismiss (which the Court denied).  Rather than allowing this case to proceed to discovery, Defendant argues, through misunderstanding of the facts and law, that it is entitled to relief. For the reasons set forth below, Plaintiff requests that the Court deny Defendant's motion in its entirety.

//
//
//
//
//
//

**B.**   **Plaintiff's First Cause of Action States Sufficient Facts to Constitute a**
**Violation of 15 U.S.C. §1681c(a)(2) and (5) Because the Reported**
**Information Related to Case 188935 Was An Arrest that Antedate the**
**Report By More Than 7 years.**

In its report, Defendant discloses information related to two criminal cases. For Case Number 188935, Plaintiff alleges that this information relates to "a May 16, 2000 arrest for 'under the influence of a controlled substance'," and that Plaintiff was "never convicted of this crime."(FAC ¶36). Therefore, it is not reportable under the FCRA as either information relating to an arrest that is older than 7 years (15 USC §1681c(a)(2)), or under the catch-all provision for non-conviction records (15 USC §1681c(a)(5)). In addition, under the ICRAA, any records of "arrest, indictment, information, or misdemeanor complaint" cannot be reported if it is learned that "a conviction did not result." (Cal. Civ. C. §1786.18(a)(7)).

In its motion, Defendant argues that this is not an arrest record because it "reached a certain disposition." (D's Mtn, P.7, Lns. 13-16). Defendant does not know exactly what this "certain disposition" is but "presumes" that it was a dismissal pursuant to Cal. Pen. C. §1203.4 following a conviction and completion of probation. Defendant is factually incorrect because Plaintiff was never convicted of "under the influence of a controlled substance." The fact that Plaintiff was never convicted will be easily proven, and, in any case, Defendant cannot contradict the allegations in a complaint under motion to dismiss. (FAC ¶16).

The FCRA does not define what constitutes an arrest record. It can be construed either narrowly to mean only booking records retrieved from the relevant law enforcement agency or broadly to include any records related to an arrest. Certainly, the information that Plaintiff was charged with a criminal offense relates to his initial arrest. In *Serrano v. Sterling Testing Systems, Inc*, 557 F.Supp.2d 688 (E.D. Pa. 2008), the District Court interpreted "records of arrest" broadly to include any information that "even *suggest the existence of obsolete information*." (*Id.* at 691-692). Based on this definition, the Court found that the background check's company's suggestion of the existence of an obsolete arrest record to the employer violated both 15 USC §§1681c(a)(2) and (5). In reaching its decision, the Court found the following FTC opinion persuasive:

> "A consumer reporting agency may not furnish a consumer reporting *indicating*
> *the existence of obsolete adverse information, even if no specific item is reported.*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ET AL. – 4

For example, a consumer reporting agency may not communicate the existence of a debt older than seven years by reporting that a credit grantor cannot locate a debtor whose debt was charged off ten years ago." (*Id.* at 691-692 citing 16 C.F.R. Pt. 600, App. §605)

Here, Defendant did more than merely suggest the existence of an arrest record.  It actually disclosed the fact that Plaintiff was charged with a crime some 10 years from the date of the report.  Short of disclosing the actual booking information, one would be hard pressed to find information more directly related to "records of arrest."

Under 15 USC §1681c(a)(2), the 7-year period for records of arrest is calculated "***from the date of entry***" not the date of dismissal. This is similar to "civil suits" and "civil judgments" where the "'date of entry' means the date the suit was filed." (Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* (July 2011), p.55, *available at* www.ftc.gov/os/2011/07/110720fcrareport.pdf; *see also* 15 USC §1681c(a)(2)). Here, according to Defendant, the charge was filed on May 16, 2000. The report was made in 2010.  Accordingly, it is prohibited from disclosure.

Even assuming that the reported information is not an arrest record, it is nevertheless prohibited from disclosure under the catch-all provision of 15 USC §1681c(a)(5), because Plaintiff was never convicted of the crime. It prohibits from disclosure: "[a]ny other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years."

Defendant argues that it should be allowed to report the arrest/charge because it was dismissed in 2004, within the 7-year period. Defendant argues, relying on an outdated FTC commentary that interpreted an old version of 15 USC §1682c(a)(2), that the calculation of the 7-year period starts from the date of "disposition."

The FTC commentary cited by Defendant is based on the pre-1998 version of 15 USC §1681c(a)(2),  which used to prohibit the reporting of the following information:

"Records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that from the date of disposition, release, or parole, antedate the report by more than seven years."

The pre-1998 version of 15 USC §1681c(a)(5) also prohibited from disclosure:

"Any other adverse information that antedates the report by more than seven years."

1   Defendant's cited FTC opinion has absolutely no significance because it has been

2   superseded by statute following 1998 and it was included only to mislead the court. In its most

3   recent commentary, which interprets the current 15 USC §1681c(a)(2), the FTC states: "The

4   seven year reporting period for criminal record information 'other than convictions of crimes'

5   runs from the date of the reported event." *FTC Staff Report, supra*, p.57. Obviously, the date of

6   the reported event here is the date Plaintiff was arrested or charged for the offense of "under the

7   influence of a controlled substance." Both the arrest and the charge occurred in 2000. Under the

8   current law, the dismissal date of the charge has no significance independent of the underlying

9   event that occurred more than 10 years ago.

10   By calculating the reporting period from the date of dismissal, Defendant attempts to

11   prolong the reporting period by tacking it on a neutral or even positive event. Such attempt has

12   already been rejected by the 7th Circuit in *Gillespie v. Equifax Info. Serv. LLC ("Gillespie I")*

13   (7th Cir. Ill., 2007) 484 F.3d 938. In *Gillespie I*, the background check company used the "Date

14   of Last Activity" to report consumers' adverse credit history despite that the initial delinquency

15   occurred more than 7 years prior to the date of the report. The 7th Circuit was troubled by the use

16   of this information because "this practice might allow Equifax to advance the 'Date of Last

17   Activity' on a delinquent account following a belated payment by a consumer while

18   simultaneously leaving the negative history on file, thus enabling Equifax to retain the negative

19   information for longer than the permitted statutory period." (*Gilliespie v. Equifax Info. Serv.*

20   *LLC,* 2008 U.S. Dist. LEXIS 85150, 10-11 (N.D. Ill., Oct. 15, 2008) (citing *Gilliespie I*, *supra*,

21   at 942)).

22   Similarly here, by calculating the 7-year period from the date of dismissal, Defendant

23   wants to prolong the reporting period to some 11 years from the date of the underlying activity

24   when such an attempt is clearly prohibited by both the letter and spirit of 15 USC §1681c(a)(2)

25   and (5).

26   //

27   //

28   //

29   //

30   //

31   //

32   //

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ET AL. - 6

**C.    Defendant's Background Check Report Violates 15 USC §1681e Because It
Failed to Use Reasonable Procedures to Avoid Violation of 15 USC §1681c
And Failed to Use Reasonable Procedures to Ensure the Maximum Possible
Accuracy of the Information Reported.**

15 USC §1681e has two requirements relevant to the present case. First, under
subdivision (a), "[e]very consumer reporting agency shall maintain reasonable procedures
designed to avoid violations of section 1681c..." Second, under subdivision (b), it establishes an
accuracy requirement that, "[w]henever a consumer reporting agency prepares a consumer report
it shall follow reasonable procedures to assure maximum possible accuracy of the information
concerning the individual about whom the report relates." Plaintiff alleged violations of these
subdivisions in paragraphs 63 and 64 of the operative complaint, respectively.

Because Plaintiff has successfully asserted the existence of obsolete information in
violation of 15 USC §1681c(a)(2) and (5), he has established a *prima facie* case of unreasonable
procedure under 15 USC §1681e(a). (*See Guimond v. Trans Union Credit Info. Co.* (9th Cir.
1995) 45 F.3d 1329 [alleging errors in a report establishes a *prima facie* case of unreasonable
procedure]). Moreover, as the facts will bear out, Defendant failed to use any procedure to
prevent the disclosure of the prohibited information. Defendant likely purchased Plaintiff's
criminal history information from some third-party vendor and did not obtain relevant court
records prior to disclosure of the prohibited information. Defendant realized for the first time,
following the initiation of this lawsuit, that the court records in Case No. 188935 had long been
purged and destroyed by the Alameda County Superior Court due to its policy of destroying
dated arrest records. (FAC ¶40).

Indeed, Defendant does not know for certain when Plaintiff was arrested and whether the
reported information is accurate in the first instance. In fact, Defendant does not even know how
the 188935 case was dismissed. Defendant "presumes" that the case was dismissed pursuant to
an expungement petition under Cal. Pen. C. §1203.4 following conviction and successful
completion of probation. (D's Mtn, P. 1, Lns. 18-21). Defendant presumes incorrectly. As
Plaintiff alleged in his complaint, Plaintiff was never convicted of the crime in the first place,
and the dismissal was not the result of any post-conviction expungement.  (FAC ¶36).

Secondly, Plaintiff alleges that Defendant violated the accuracy prong of 15 USC
§1681e(b) where "Defendant flooded the report with dismissed criminal charges when in fact,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ET AL. – 7

1    the only reportable conviction was count 3 of Case No. 217842 for petty theft of a dependent

2    adult." (FAC ¶47). Rather than not reporting the dismissed counts or reporting the three

3    dismissed counts under the same heading and same case information, Defendant reported each

4    dismissed count under its own set of case information with the same level of prominence and

5    spacing, thus misleading the reader that Plaintiff had been charged with three separate crimes

6    instead of one.

7          It is well-settled that, under 15 USC §1681e(b), an entry can be "incomplete or

8    inaccurate" either "because it is patently incorrect, or because it is misleading in such a way and

9    to such an extent that it can be expected to adversely affect credit [or in this case, rental]

10   decisions." (*Gorman v. Wolpoff & Abramson, LLP* (9th Cir. Cal. 2009) 584 F.3d 1147). Here,

11   while the report with respect to Case No. 217842 is technically correct, it is nevertheless

12   misleading to the extent that a reader can be misled into believing that Plaintiff committed more

13   criminal acts than was actually involved and thus deny his rental application. In any case, this is

14   a factual question not properly resolved in a 12(b)(6) motion before Plaintiff had an opportunity

15   to conduct discovery.

16

17   **D.    A Criminal History Report is Not a Credit Report Because It Does Not Bear**

18         **On A Consumer's Credit Worthiness**

19

20         Defendant cannot and does not dispute the fact that the subject report violated the alleged

21   provisions of the ICRAA. Instead, Defendant's defense is that the ICRAA does not apply. It

22   argues that tenant screening reporting agencies are always consumer reporting agencies regulated

23   by the CCRA and  are never investigative consumer reporting agencies regulated by the ICRAA,

24   because their reports only seek to evaluate a consumer's credit worthiness for the hiring of a

25   dwelling unit. Defendant also argues that the inclusion of criminal history information does not

26   automatically make its presumptive credit reports character reports because "the inclusion of

27   criminal records in a [consumer report] is expressly authorized by the California Legislature to

28   assist in the evaluation of a consumer's credit capacity, credit standing or credit worthiness for

29   the hiring of a dwelling unit. (D's Mtn. P. 10, Ln. 18-27).[3]

30

31   _____

32   [3]  To support this last proposition, Defendant cites to Cal. Civ. C. §1785.13(a)(6) which Defendant's own report
violated. The section is identical to Cal. Civ. C. §1786.18(a)(7) which prohibits, among other types of information,
records of arrest and indictment that did not result in conviction.

1    Despite inclusion of Plaintiff's criminal history information, Defendant goes even further

2    to argue that "the Subject Report says nothing about Plaintiff's 'general reputation' (e.g., what

3    people in the community think about Plaintiff), 'character' (e.g., Plaintiff's moral fiber), 'mode

4    of living' (e.g., how Plaintiff supports himself) or other 'personal characteristics' (e.g., Plaintiff's

5    height, hair color, etc.)." According to Defendant, a criminal history report, particularly

6    information related to dismissed cases and charges has everything to do with credit but nothing

7    to do with a person's character, or (as Defendant defines it) "moral fiber." (D's Mtn P. 4, Lns.

8    14-18; P. 14, Lns. 20-25). Defendant's arguments are preposterous and defy both common sense

9    and legal authority (including its own cited authority). They will be addressed in turn.

10    Defendant's first argument that tenant screening reports are always credit reports is false

11    as a matter of law. Defendant admits in its own motion that "[p]ublic criminal court

12    records...may be included...in an ICR to determine general reputation or character information."

13    (D's Mtn. P.15, Lns. 3-11). Landlords routinely conduct character screening to prevent damage

14    to, and crimes committed on, their rental properties. "Renting an apartment is not truly a credit

15    transaction." *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604, 618-619. ***The***

16    ***ICRAA expressly allows landlords to obtain tenant screening reports that bear on a***

17    ***consumer's character.*** (Cal. Civ. C. §1786.12(d)(5)). Second, Defendant's own cited authority

18    in *Ortiz, supra*, 157 Cal.App.4th *at* 613 holds that a tenant screening report may be subject to

19    either the CCRAA or ICRAA depending on the type of information they contain. The *Ortiz*

20    Court goes on to state: "any one item of information may be classified as either creditworthiness

21    or character information, but not both." (*Id.*).

22    In 1998, the California legislature expressly amended the ICRAA to include character

23    reports obtained through "any means" except where the information "is limited to specific

24    factual information relating to a consumer's credit record or manner of obtaining credit obtained

25    directly from a creditor of the consumer or from a consumer reporting agency when that

26    information was obtained directly from a potential or existing creditor of the consumer or from

27    the consumer." (Cal. Civ. C. 1786.2(d)).

28    Clearly, the disclosed criminal history in the subject report, particularly dismissed cases

29    and charges, are ***not*** "specific factual information relating to a consumer's credit record or

30    manner of obtaining credit...obtained directly from a potential or existing credit of the

31    consumer..." It has nothing to do with Plaintiff's credit, and there is no evidence that criminal

32    history information such as dismissed cases and charges would have any bearing on an applicant

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ET AL. - 9

1   tenant's credit worthiness. All information related to Plaintiff's credit evaluations was disclosed
2   on Defendant's "-Reformatted Transunion Report". And the "-Criminal Report-" is clearly
3   character information subject to the ICRAA.

6   **E.    The ICRAA Is Not Unconstitutionally Vague as Applied to the Subject "-**
7   **Criminal Report-" As Any Reasonable Person Will Know That It Has**
8   **Nothing To Do With Plaintiff's Credit Worthiness**

10   Defendant argues that a criminal record has a bearing on a consumer's credit because it is
11   mentioned in Cal. Civ. C. §1785.13(a)(6) of the CCRAA.  This argument does not help
12   Defendant, because the CCRAA, like the ICRAA, also prohibits disclosure of records of arrest
13   and indictment that antedate the report by more than 7 years or where no conviction has resulted.
14   In addition, Defendant does not explain why criminal records such as the dismissed cases and
15   charges in the subject "-Criminal Report-" have any bearing on Plaintiff's credit worthiness. It
16   simply assumes the truth of its argument.

17   It is well established "[t]o determine whether a statute is unconstitutionally vague, it must
18   be applied in a specific *context*. Thus, in judging the constitutionality of a statute, we must
19   determine not whether it is vague in the abstract but, rather, whether it is vague as applied to the
20   appellant's conduct in light of the specific facts of this particular case. Also, the challenged
21   statute need only be reasonably certain or specific. It cannot be held void for uncertainty if any
22   reasonable and practical construction can be given to its language. Finally all presumptions and
23   intendments favor the validity of a statute" (internal citations omitted) (emphasis in original).
24   (*Ortiz*, *supra*, 157 Cal.App.4th *at* 613).

25   In *Ortiz*, the Court found that unlawful detainer actions may constitute both credit
26   worthiness and character information. It reasoned that "[a] typical, perhaps *the* typical, basis for
27   a residential unlawful detainer action is the late payment or nonpayment of rent." (*Id. at* 618). It
28   also relates to character information because an unlawful detainer action may be brought for
29   holdovers, waste, nuisance, and other non-rent related activities. *Id.* Thus, the Court was left
30   with "no rational basis to determine whether unlawful detainer action constitutes
31   creditworthiness information subject to the CCRAA or character information subject to the
32   ICRAA." (*Id*).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ET AL. - 10

Unlike the unlawful detainer information in *Ortiz,* criminal history information has no bearing on a consumer's credit worthiness. A consumer cannot be subject to criminal prosecution for his failure to make timely payments. In fact, the debtor's prison has long been abolished in California and the Federal Government. There is nothing vague about the application of the ICRAA when it comes to criminal history information. One would be hard pressed to imagine when ICRAA would ever apply if it does not apply to criminal history information.

**F.     The ICRAA and CCRAA Does Not Violate the First Amendment Because Compiled Criminal History Information is Private Information And Both the FCRA And the CCRAA Directly Advances the Privacy Interest Therein By Broadly Prohibiting Its Disclosure Except For Recent 7-Year Old Conviction Records**

Defendant argues that it should be lawfully allowed to report dismissed cases because any prohibition in this regard is unconstitutional. Defendant does not specify which section of the ICRAA or CCRAA it wants invalidated.[4] Rather, Defendant wants a whole-sale finding of unconstitutionality of two key pieces of legislation that regulate the background reporting industry where the California Legislature has found "a need to insure that [they] exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." (*Cal. Civ. C. §§1786(b); 1785.1(c)*).

In support of its motion, Defendant cites to *U.D. Registry, Inc. v. State of California,* 34 Cal.App.4th 107 (1995) and *Sorrell v. IMS Health Inc,.* 131 S. Ct. 2653 (2011), and it argues broadly that any restriction on truthful disclosure of public information violates the First Amendment. Defendant's argument lacks merit. When it comes to commercial transactions such as tenant screening, the ICRAA and the CCRAA violates the First Amendment only if it does not meet the intermediate scrutiny standard under *Central Hudson.* (*Central Hudson Gas & Electric*

---

[4]  A majority of the regulations in both ICRAA and CCRAA are procedural rather than content-based regulation. *See* Cal. Civ. C. §1786.20 (reasonable procedures to avoid violations of Cal. Civ. C. 1786.18; reasonable procedures to ensure the maximum possible accuracy of the information reported); Cal. Civ. C. §1786.24 (duty to reinvestigate inaccurate information); Cal. Civ. C. §1786.12 (duty to obtain certification prior to disclosure); Cal. Civ. C. §1786.28 (duty to identify the particular court the information originates); Cal. Civ. C. §1786.29 (duty to provide disclaimer). CCRA has Similar provisions under Cal. Civ. C. §1785.14 (reasonable procedures to avoid violations of Cal. Civ. C. §1785.13; to obtain certification and verify uses by recipient of report; reasonable procedures to ensure the maximum possible accuracy of the information reported); Cal. Civ. C. §1785.16, 16.1 (duty to investigate); Cal. Civ. C. §1785.18 (duty to identify the particular court the information originates).

1  *Corp. v. Pub. Serv. Comm'n of N.Y.* (1980) 447 U.S. 557)—the same standard endorsed and

2  applied in *Sorrell v. IMS Health Inc.*

3          The FCRA has withstood the test of First Amendment challenges in both the United

4  States Supreme Court and other Federal Circuit Courts over the last 40 years of its existence.

5  Both the ICRAA and the CCRAA which were modeled after the FCRA should fare no

6  differently.

7          In the seminal case in *Dun & Bradstreet v. Greenmoss Builders*, *472 U.S. 749*, 759-760

8  (1985), the U.S. Supreme Court held that consumer report information (which, as defined under

9  the FCRA, includes both credit and character information) is "of purely private concern" and

10 therefore receives "less stringent" First Amendment protection.  Moreover, as the Supreme Court

11 confirmed following *Sorrell*, a credit report "sent to only five subscribers…, who were bound not

12 to disseminate it further" is "speech solely in the individual interest of the speaker and its

13 specific business audience." (*Snyder v. Phelps*, 131 S. Ct. 1207, 1215-16 (2011) [describing with

14 approval the Court's holding in *Dun & Bradstreet*]). Following *Dun & Bradstreet* and invoking

15 the Supreme Court's commercial speech doctrine, the D.C. Circuit also concluded that content-

16 based regulation under the FCRA is constitutionally sound. (*Trans Union Corp. v. FTC*, 267

17 F.3d. 1138 (D.C. Cir. 2001) ("*Trans Union II*")).

18          Similar to the FCRA, any First Amendment challenge to either the ICRAA or the

19 CCRAA receives "less stringent" protection.  These laws that regulate commercial reporting of

20 information of purely private concern should be upheld as long as they directly advance a

21 substantial government interest and are no more extensive than necessary to serve that interest.

22 (*Central Hudson*, 447 U.S. at 566; *accord Sorrell*, 131 S. Ct. at 2667-68). The "fit" between a

23 legislature's goal and the means chosen to accomplish that goal need "not necessarily [be]

24 perfect, but reasonable," and the law's scope be "in proportion to the interest served." (*Bd. Of

25 Trs.of SUNY v. Fox*, 492 U.S. 469, 480 (1989)).

26          The government's interests in the prohibition against disclosure of arrest, indictment, and

27 outdated convictions are privacy and rehabilitation. (*Cal. Civ. C. §§1786(b); 1785.1(c)*).  A

28 finding that the statute directly advances either one of these two interests is sufficient to

29 withstand constitutional scrutiny. (*Central Hudson*, 447 U.S. *at* 569-70; *cf. Citizens United v.

30 Fed Election Comm'n*, 130 S.Ct. 876, 915-16 (2010)).

31          First, there is a privacy interest in compiled criminal records. They are, as a matter of

32 law, not public information due to "practical obscurity". In *US DOJ v. Reporters Committee for*

1   *Freedom of the Press et al.*, 489 U.S. 749 (1989), the U.S. Supreme Court held that, where

2   criminal records information is compiled rather than scattered through courthouse files, county

3   archives and local police stations throughout the country, such information is not "freely

4   available" and it is private. (*Id. at* 761, 763). The United States Supreme Court coined this

5   privacy interest in old records "the practical obscurity" doctrine, and held that such privacy

6   interest extends to records that "may have been at one time public". (*Id.* at 767). This is a

7   "bright-line rule" that must be adhered. (*Id.* at 780). Indeed, the Third Circuit has recognized that

8   individuals' privacy interest can be not only substantial but compelling where disclosure of

9   information could inflict serious reputational injury and even be "career ending." (*United States

10  v. Smith* (3d Cir. 1985) 776 F.2d 1104 [affirming decision to deny the press access to a list of

11  unindicted co-conspirators, concluding that protecting those individual's privacy and reputations

12  trumped the media's First Amendment right to access]).

13       Moreover, in California, "[t]he state constitutional right of privacy extends to protect

14  [criminal] defendants from unauthorized disclosure of criminal history records." *Westbrook v.

15  County of Los Angeles,* 27 Cal.App.4th 157, 165-66 (2nd App. Dist. 1994) (citing *US DOJ,

16  supra,* with approval). The Court reasoned that, if compiled criminal history records are not

17  prohibited from wide dissemination, records that are otherwise not made available (e.g., records

18  subject to destruction due to factual innocence or completion of diversion programs) would be

19  available for sale by consumer reporting agencies. (*Westbrook, supra*, 27 Cal.App.4th *at* 167).

20       The danger that the *Westbrook* court sought to guard against is exactly what transpired

21  here. The records underlying Plaintiff's Case No. 188935 had been purged and destroyed by the

22  Alameda County Superior Court, but Defendant somehow obtained this information and

23  included it in its compiled criminal history database. And it sold this information to Plaintiff's

24  landlord, thereby invading his privacy. (FAC ¶40).

25       Under both the ICRAA and the CCRAA, such records are prohibited from disclosure.

26  These two statutes advance the goal of protecting a consumer's privacy by broadly prohibiting

27  compiled criminal history information except recent (7 year old) conviction records: "any

28  investigative consumer reporting agency may not make or furnish any investigative consumer

29  report containing any of the following items of information...[r]ecords of arrest,

30  indictment...that...antedate the report by more than seven years. These items of information

31  shall no longer be reported if at any time it is learned that...a conviction did not result...and *(8)*

32

1  *[a]ny other adverse information that antedates the report by more than seven years*" (Cal. Civ.

2  C. §1786.18(a)(7)).

3      Compiled criminal history information is not available to the general public *anywhere*

4  *else* outside of consumer reporting agencies or investigative consumer reporting agencies. (*See*

5  *US DOJ*, 489 U.S. 489 U.S. at 753 ["[a]ll other 47 States [including California] place substantial

6  restrictions on the availability of criminal-history summaries even though individual events in

7  those summaries are matters of public record."]; *See also Cal. Pen. C. §1330 et seq.* [prohibiting

8  the disclosure of master record of "criminal offender record information"]; *accord Westbrook*,

9  *supra*, 27 Cal.App.4th at 164 [reversing an order mandating Los Angeles County Superior Court

10  to sell complied criminal history information to consumer screening companies]; *Cal. Rules of*

11  *Court 2.500* et seq. [prohibiting disclosure of defendant identifying information such as birth

12  date, social security number, and driver's license in all of its criminal records databases]).

13      While an interested landlord or employer may search court by court and county by

14  county, outside of reporting agencies, they cannot obtain a compiled list of all criminal history

15  information on the prospective tenant by consulting a single source. Accordingly, both the

16  ICRAA and the CCRAA directly advance a consumer's privacy interest in his/her criminal

17  records by broadly prohibiting its dissemination unless the crime occurred within 7 years from

18  the date of the report. By limiting disclosure of potentially harmful or "career-ending"

19  information, the statutes necessarily and automatically protect individuals' interest in keeping

20  that information private. And it is appropriately drawn to serve that interest. In fact, "there is no

21  possibility that some less-restrictive or nonspeech-related regulation could achieve the identified

22  state interest" because "the speech itself (dissemination of…data) causes the very harm the

23  government seeks to prevent" (invasion of privacy). (*Trans Union II*, 267 F.3d at 1142.)

24      While the Court in *U.D. Registry, Inc.* wrongly applied strict scrutiny to screening reports

25  as it goes against the weight of the U.S. Supreme Court opinions on this issue[5], it is nevertheless

26  distinguishable because unlike the public information analyzed in *U.D. Registry,* compiled

27  criminal history has been held to be private information.

28      Contrary to Defendant's arguments, nothing in *Sorrell* mandates a finding of

29  unconstitutionality. *Sorrell* confirms the importance of protecting privacy and recognizes that

30  "[t]he capacity of technology to find and publish personal information…presents serious and

31  unresolved issues with respect to personal privacy and the dignity it seeks to secure." (*Sorell*,

32

---

[5]  *See discussion supra re Dun v. Bradstreet, Transunion II.*

1   131 S.Ct. at 2672). The Court acknowledged that the state could advance this important privacy

2   interest with an appropriately tailored law. (*See Sorrell*, 131 S. Ct. at 2668 [noting that Vermont

3   could have advanced its privacy interest "through a more coherent policy" (quotations

4   omitted)]).

5        The Vermont law in *Sorrell* which "restricted the sale, disclosure, and use of pharmacy

6   records that reveal the prescribing practices of individual doctors" was found to be incoherent

7   because the statute made prescriber-identifying information available to an almost limitless

8   audience except a narrow class of disfavored speakers." (*Id.* at 268). As a result, the law did not

9   actually materially advance the asserted privacy interest and instead burdened pharmaceutical

10  marketing on the basis of its content and viewpoint.

11        Neither the ICRAA nor the CCRAA shares this fatal flaw.  The restriction on disclosure

12  of obsolete or nonconviction information coherently works with existing California and Federal

13  law to prevent access to compiled criminal history summaries to all except under a narrow set of

14  circumstances where the legislature deemed that landlords, employers, and insurers have a right

15  to know about an applicant's recent conviction history. (*See* Cal. Civ. C. §1786.18(a)(7)). This

16  broad prohibition directly advances the government's interest in protecting privacy. In fact, the

17  prohibition under the ICRAA and the CCRAA is the *exact opposite* of the law in Vermont where

18  the prohibited information is available to all except a few disfavored speakers.

19

20        **G.    Plaintiff Sufficiently Alleged that Plaintiff Was Denied Housing As a Result**

21              **of the Illegal Report and the UCL Is Not Preempted by the FCRA**

22

23        Defendant argues that Plaintiff failed to properly allege a loss of "money or property" to

24  properly confer himself standing to bring a UCL claim. However, Plaintiff alleged that "[a]s a

25  result of Defendant TSP's wrongful acts and omissions, Plaintiff has been injured, including,

26  without limitation, by virtue of having lost housing opportunities and by having been forced to

27  spend time, money, and energy to clean up after Defendant's errors." (FAC ¶17). This allegation

28  sufficiently confers standing upon Plaintiff as Plaintiff lost "money" not only in the form of a

29  lost housing opportunity but also in the form of spending time to "clean up after Defendant's

30  errors." Obviously, if Defendants wants to argue that the housing opportunity was denied due

31  solely to Plaintiff's credit history rather than criminal history, this is a factual question properly

32  resolved in summary judgment after Plaintiff has had an opportunity to depose the landlord.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ET AL. - 15

Secondly, Defendant argues that a UCL is a private right of action for injunctive relief and that such actions are expressly preempted by the FCRA. Again, Defendant is wrong. 15 USC §1681t preempts state law only if they are inconsistent with the FCRA (15 USC §1681t(a)) or imposes a "requirement or prohibition" with respect to a regulated subject matter (15 USC §1681t(b)). Clearly, there is nothing inconsistent between the FCRA and the UCL as the UCL is an additional private enforcement mechanism that provides injunctive relief for violation of any existing law including the FCRA or the ICRAA.

For it to be preempted under the FCRA, it must impose a "requirement or prohibition" with respect to a regulated subject matter. Whether an enforcement mechanism under State law is preempted by the FCRA is an issue that has been long put to rest in the consumer's favor by the California Supreme Court (*Brown v. Mortensen*, 51 Cal.4th 1052 (2011)), the Ninth Circuit Court (*Gorman v. Wolpoff &Abramson*, 552 F.3d 1008, 1031 (9th Cir. Cal. 2009)), and the California Appellate Court in a case with which Defendant's counsel Mr. Michael Saltz is personally familiar (*Sanai v. Saltz*, 170 Cal.App.4th 746, 775 (2nd App. Dist. 2009)).

In *Sanai, supra*, 170 Cal.App.4th *at* 775, the California Appellate Court held that the FCRA does not preempt state law providing for injunctive relief.  It states: "the Supreme Court recognized that federal law preempting state statutory or common law requirements different from, or in addition to, the requirements imposed by federal law does not prevent a State from providing a damages remedy for claims premised on a violation of federal regulations; the state duties in such a case parallel, rather than add to, federal requirements." *Id. at* 778 (internal quotations and citations omitted).

In *Gorman*, the Ninth Circuit held that "[p]rivate enforcement of [even preempted obligations] does not impose requirements or prohibitions" and is therefore not preempted. (*Id.* at 1031). The Court reasoned that enforcement mechanics which do not require the regulated entities to obey "any additional rules of law" is not an additional "requirement or prohibition" for purposes of 15 USC §1681t. (*Id.*). Similarly, the UCL causes of action merely provides private enforcement mechanisms of laws that are already in existence and do not impose any "requirements or prohibitions". Therefore, it is not preempted.

//
//
//
//

**CONCLUSION**

For the foregoing reasons, Plaintiff Gabriel Felix Moran respectfully requests that the Court deny Defendant's motion to dismiss in its entirety and allow this action to proceed on the merits.


DATED: August 18, 2012                         DEVIN H. FOK ESQ.
                                               THE LAW OFFICES OF DEVIN H. FOK

                                        By: _____/S/_____
                                               Devin H. Fok
                                               Attorneys for Plaintiff GABRIEL F. MORAN

1   **JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
2   Michael J. Saltz, Esq.  SBN 189751
    msaltz@jrsfllp.com
3   Colby A. Petersen, Esq. SBN 274387
    cpetersen@jrsfllp.com
4   G. Austin Sperry, Esq.  SBN 278535
    asperry@jrsfllp.com
5   10866 Wilshire Boulevard, Suite 1550
    Los Angeles, CA  90024
6   Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

7   Attorneys for Defendant THE SCREENING PROS, LLC

8
                        **UNITED STATES DISTRICT COURT**
9
                       **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| GABRIEL FELIX MORAN,<br><br>                    Plaintiff,<br><br>          vs.<br><br>THE SCREENING PROS, LLC a California Corporation; and DOES 1-10 inclusive,<br><br>                    Defendants. | Case No.: 2:12-cv-05808-SVW-AGR<br><br>**DEFENDANT THE SCREENING PROS, LLC'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO *FED. R. CIV. PROC.* 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>Complaint filed:  February 2, 2012<br>First Amended<br>Complaint Filed:  June 7, 2012<br>Removed:           July 5, 2012<br>Trial Date:        None<br><br>Hearing Date:  Sept. 10, 2012<br>Time:          1:30 p.m.<br>Courtroom.:    6 – 2nd Floor<br>Judge:         Hon. Stephen V. Wilson |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California  90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                    i

**TABLE OF CONTENTS**

1.   INTRODUCTION ................................................................................ 1

2.   ARGUMENT ..................................................................................... 1

A.   AS THE SEVEN YEAR TIME PERIOD TO REPORT CRIMINAL RECORDS ACCRUES FROM THE LAST DISPOSITION, THE FIRST CAUSE OF ACTION MUST BE DISMISSED AS A MATTER OF LAW. ..... 1

B.   THE SECOND CAUSE OF ACTION FAILS AS A MATTER OF LAW BECAUSE NO INACCURACY CAN BE ALLEGED. ................................... 5

C.   THE ICRAA CAUSES OF ACTION MUST BE DISMISSED AS A MATTER OF LAW. ............................................................................. 7

   1)   ICRAA Does Not Apply As A Matter of Law To Consumer Credit Reports Just Because They Contain Criminal Record Information. ........ 7

   2)   ICRAA Is Unconstitutionally Vague As To Its Application To Tenant Screening Reports Containing Any Public Record Information That May Be Contained In A Consumer Credit Report, Including Criminal Reports. ........................................................ 10

   3)   Consumer Reports Are Not Commercial Speech, And Even If They Were, *Civ. Code* § 1786.18(a)(7) Would Still Be Unconstitutional On Its Face Because It Only Applies to One Segment of Society While Allowing All Others To Freely Report The Exact Same Information With Impunity. ......................................................... 11

      a.   Consumer Reports Containing Public Record Information Are Not Commercial Speech. ...................................................... 12

      b.   Credit Reports About Public Criminal Court Records Are A Matter of Public Concern. ....................................................... 16

      c.   Even if the Reports Were Considered Commercial Speech, Heightened Scrutiny Still Applies. ........................................... 17

D.   PLAINTIFF'S UCL CLAIMS MUST BE DISMISSED BECAUSE HE HAS NO STANDING AND THEY ARE FEDERALLY PREEMPTED. ....... 22

   1)   Plaintiff Has No Standing. .................................................................. 22

   2)   UCL Claims Are Preempted. .............................................................. 24

3.   CONCLUSION .................................................................................. 25

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

## TABLE OF AUTHORITIES

<u>Cases</u>

*Cal. Pro-Life Council, Inc. v. Getman* (9th Cir. 2003) 328 F.3d 1088 ............................................ 10

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n* (1980) 447 U.S. 557 ........................ 17

*Cox Broadcasting Corp. v. Cohn* (1975) 420 U.S. 469 .......................................................... 16, 17

*Craig* v. *Harney* (1947) 331 U.S. 367.................................................................................... 17

*Dun & Bradstreet, Inc.* v. *Greenmoss Builders* (1985) 472 U.S. 749 ....................... 13, 15, 16, 17

*Duncan* v. *Walker* (2001) 533 U.S. 167................................................................................... 1

*First Nat'l Bank v. Bellotti* (1978) 435 U.S. 765.................................................................... 21

*Gauci v. Citi Mortgage*, 2012 U.S. Dist. LEXIS 60153 ........................................................ 6, 7

*Gillespie v. Equifax Info. Servs., L.L.C.* (7th Cir. Ill., 2007) 484 F.3d 938 ................................ 5

*Gorman v. Wolpoff & Abramson* (9th Cir. Cal. 2009) 552 F.3d 1008............................... 24

*Hammons v. Scott* (1976) 423 F.Supp. 618.......................................................................... 3

*Johnson v. Frankell* (1997) 520 U.S. 911 ............................................................................ 10

*Kearns v. Ford Motor Co.* (9th Cir. 2009) 567 F.3d 1120............................................... 23

*Medina v. Safe-Guard Products, Int'l., Inc.* (2008) 164 Cal.App.4th 105 ................................ 22

*Mohammed Subhani v. JPMorgan Chase Bank*, 2012 U.S. Dist. LEXIS 76447 ...................... 24

*Montclair* v. *Ramsdell* (1883) 107 U.S. 147 ....................................................................... 1

*Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604 ................................ 9, 10, 11

*Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*,
    2012 U.S. Dist. LEXIS 108597............................................................................ 23, 24, 25

*San Francisco County Democratic Cent. Committee v. March Fong Eu* (1987, 9th Cir.)
    826 F.2d 814 ............................................................................................................ 21

*Serrano v. Sterling Testing Systems, Inc.* (E.D. Pa. 2008) 557 F.Supp.2d 688 .............................. 3

*Trans Union Corp. v. FTC* (D.C. Cir. 2002) 295 F.3d 42 ............................................. 17

*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628.......................... 10

*TRW Inc.* v. *Andrews* (2001)  534 U.S. 19 .................................................. 1, 9, 11

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

*U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405 ................................. 12

*United States* v. *Menasche* (1955) 348 U.S. 528 ................................................... 1

*United States v. Smith* (3d Cir. 1985) 776 F.2d 1104 ........................................... 20

*US DOJ v. Reporters Committee for Freedom of the Press et al.* (1989) 489 U.S. 749 ........... 18, 19

*Ward v. Rock Against Racism* (1989) 491 U.S. 781 ................................................ 18

*Westbrook v. County of Los Angeles* (1994) 27 Cal.App.4th 157 ............................ 18, 19, 20


<u>Statutes</u>

15 USC § 1681c(a) .................................................................................... 2

15 USC § 1681c(a)(2) .......................................................................... 1, 3, 5

15 USC § 1681c(a)(5) ................................................................................. 5

15 USC § 1681e(b) ................................................................................. 5, 6

*Civ. Code* § 1785.13(a)(3) ......................................................................... 12

*Civ. Code* § 1785.13(a)(6) ...................................................................... 8, 11

*Civ. Code* § 1785.25(a) ............................................................................ 24

*Civ. Code* § 1785.3(c) ............................................................................... 8

*Civ. Code* § 1786.18(a)(4) ........................................................................ 12

*Civ. Code* § 1786.18(a)(7) .......................................................... 4, 17, 18, 21, 22

*Civ. Code,* former § 1785.3(c) .................................................................. 7, 9

*Pen. Code* § 290.46(*l*)(2)(E) ..................................................................... 22


<u>Other Authorities</u>

9 Witkin Cal. Proc. Appeal § 974 ................................................................. 14

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

Plaintiff's Opposition to The Screening Pros, LLC's ("TSP") Motion to Dismiss fails to demonstrate that the attacked causes of action should not be dismissed.

As stated *infra,* no actual violation of Fair Credit Reporting Act ("FCRA") has been alleged. Further the Investigative Consumer Reporting Agencies Act ("ICRAA") does not apply because the subject report is  a consumer credit report ("CR") regulated by the Consumer Credit Reporting Agencies Act ("CCRAA") and not an investigative consumer report ("ICR") under ICRAA. ICRAA is also unconstitutionally vague and it seeks to violate TSP's right to free speech.  Finally, Plaintiff has failed to allege enough facts, versus conclusions, as to standing for its claims under *Bus. & Prof. Code* § 17200 et. seq. ("UCL"), and any attempts to obtain private injunctive relief thereunder are federally preempted under FCRA.

Thus, TSP requests that it Motion to Dismiss be granted as prayed.

## 2. ARGUMENT

### A. AS THE SEVEN YEAR TIME PERIOD TO REPORT CRIMINAL RECORDS ACCRUES FROM THE LAST DISPOSITION, THE FIRST CAUSE OF ACTION MUST BE DISMISSED AS A MATTER OF LAW.

Plaintiff attempts to claim that the factual existence of an actual criminal court case, interpreted loosely, must also constitute a "record of arrest", even when no information about an arrest is reported. [Opp. pg. 4]. This argument is meritless, and otherwise turns 15 USC § 1681c(a)(2) on its head.

To begin, the argument violates the rules of statutory construction that statutes must be read to prevent any other portion thereof from being considered superfluous or insignificant. [*TRW Inc.* v. *Andrews* (2001)  534 U.S. 19, 31 ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") citing  *Duncan* v. *Walker* (2001) 533 U.S. 167; also see *United States* v. *Menasche* (1955) 348 U.S. 528, 538-539 ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'") quoting *Montclair* v. *Ramsdell* (1883) 107 U.S. 147, 152].

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    15 USC § 1681c(a) states in relevant part that the following information is limited in a

2  consumer report:

3         (2) Civil suits, civil judgments, and records of arrest that, from date of entry, antedate the
          report by more than seven years or until the governing statute of limitations has expired,
4         whichever is the longer period.
          …
5         (5) Any other adverse item of information, other than records of convictions of crimes
          which antedates the report by more than seven years.
6

7    Here, the legislature singled out "records of arrest" from all other adverse information,

8  including records of criminal convictions. The reason "arrest records" are distinguished from

9  other criminal information is because sometimes people are arrested and are thereafter never

10  charged with a crime. Thus there is a need to make "arrest records" alone a distinct category. But

11  under Plaintiff's interpretation, the mere reporting of a criminal conviction is an implication of an

12  arrest record, let alone the "other adverse item" of criminal charges being dismissed. The

13  legislature obviously did not mean to collapse all criminal court record information into the

14  category of "arrest record," or else it would have not distinguished "arrest records" from any

15  other adverse information involving a criminal case or exempted their existence under the

16  maximum possible accuracy requirements of 15 USC § 1681e.

17    The actual report at issue could not be more clear that no "arrest records," or any

18  information derived therefrom were disclosed in any manner. The subject report says nothing

19  about Plaintiff being arrested. To be certain, the term "arrest record" has a specific meaning. In

20  Hammons v. Scott (1976) 423 F.Supp. 618, the court explained the term "arrest record" as

21  follows:

22         "The term "arrest records" refers to the master record sheet maintained under the arrested
           person's name by the Bureau of Identification and Information of the California
23         Department of Justice which is commonly known as the "arrest record", "criminal record
           sheet", or "rap sheet". See, Cal. Penal Code § 11120. This arrest record includes the name
24         of the person arrested, any other names by which the person is known, the person's
           physical description, fingerprint classification, social security number, driver's license
25         number, FBI number, and State Bureau of Criminal Identification and Investigation (CII)
           number. Entries made on the arrest record include a summary of each arrest which include
26         the location of the arrest, the arresting agency, the date of arrest, and the crime for which
           the arrest was made. The law requires that one or more of the twenty-five dispositions
27         which may be made of the arrest be entered on the arrest record. See, Cal. Penal Code §§
           11115, 11116 and 11116.6. The place of any imprisonment and date of release therefrom
28         are also entered on the arrest record. Record checks for employment purposes are noted
           on the arrest record."

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

1    [*Hammons v. Scott* (1976) 423 F.Supp. 618, 621 fn. 3].

2        None of the above information was reported. Rather, the only information reported was

3    the date criminal charges were filed, the Court County from where the records were obtained, the

4    count charged, the ultimate disposition of the case and the date it was entered. No information

5    about the arresting agency, the date of the arrest, fingerprints, mugshots, etc. was reported.

6        Plaintiff tries to cite to *Serrano v. Sterling Testing Systems, Inc.* (E.D. Pa. 2008) 557

7    F.Supp.2d 688 for the proposition that the term "arrest records" should be interpreted broadly to

8    include the existence of actual criminal court cases. [Opp. Pg. 4]. However, Plaintiff's reliance

9    upon *Serrano* is misplaced, as *Serrano* did not deal with criminal court records, only actual arrest

10   records. [*Id.* at 689]. To be certain, the issue before the Court was stated as follows: "The dispute

11   turns on whether FCRA only prohibits the disclosure of the outdated records themselves, or

12   whether the statute also prohibits disclosure of the *existence* of such arrest records." [*Id.*]. In

13   *Serrano*, an employment screening company found an old arrest record that did not result in a

14   criminal court case that was more than seven years old, which would otherwise be reportable if

15   the job position applied for paid at least $75,000. [*Id.* at 689-690]. Thus the employment agency

16   informed the employer that it could report an arrest record if the employer could verify the job at

17   issue paid at least $75,000. [*Id.* at 690]. The Court ultimately concluded that reporting the

18   existence of the old arrest record without reporting the actual arrest record violated FCRA.  No

19   such issues are at play here.

20        The only information reported here was information about the criminal court case, not

21   about any arrest that may or may not have preceded it. As such 15 USC § 1681c(a)(2) has no

22   application to this case, and therefore as a matter of law could not have been violated.

23        Next, Plaintiff tries to argue that the disposition of a criminal case is not a reportable

24   event, but that only the filing date of the charges controls when the 7-year period should start.

25   [Opp. pg. 5]. This argument is absurd and without merit for several reasons.

26        First, the FTC commentary on the statutory language expressly states that the 7-year

27   period starts from the date of disposition, and that the date of dismissal is the date of disposition.

28   [16 CFR pt. 600, App. § 605]. Plaintiff argues without citation to authority that said FTC

1  commentary is no longer applicable because FCRA was subsequently amended to remove any

2  time restrictions on the reporting of criminal convictions. [Opp. pg. 5].  What Plaintiff fails to

3  disclose is that only the conviction time restriction was amended. As such, the date of a dismissal

4  being a reportable date of disposition is still good commentary about a law that has not changed.

5  In an effort to deceive, Plaintiff argues that the FTC claims the 7-year period starts from

6  the date of entry – meaning the date the charges were filed. [Opp. pg. 5]. However, the FTC

7  commentary cited by Plaintiff says no such thing with regard to *criminal records*. Rather, said

8  FTC   commentary   is   exclusive   *only*   to   civil   suits   and   civil   judgments.

9  [http://www.ftc.gov/os/2011/07/110720fcrareport. pdf pg. 56]. In fact, Plaintiff intentionally

10  misquotes the FTC's commentary. Specifically, the date of entry only applies to the filing date of

11  civil suits if there is no judgment (i.e. final disposition).  The FTC states in the very next sentence

12  that if the civil suit has a judgment, "the term 'date of entry' means the date the judgment was

13  entered." [*Id.*] As such, civil judgments are therefore reportable for seven years from the entry of

14  said disposition.

15  Here, the offending criminal case was disposed of by way of final disposition on March 2,

16  2004 – within seven years of the subject report.  It is thus reportable as a matter of law.

17  Second, Plaintiff's interpretation would lead to an absurd result in that it would make

18  adherence to the very state law upon which Plaintiff is suing a violation of FCRA,  To be certain,

19  Plaintiff is also suing TSP for violating *Civ. Code* § 1786.18(a)(7), which states in relevant part

20  that it is okay to report criminal records unless the "records of arrest, indictment, information,

21  misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or

22  parole, antedate the report by more than seven years." [*Civ. Code* § 1786.18(a)(7) (emph.

23  added)]. Under state law, it is the date of disposition that controls. Under Plaintiff's self-serving

24  interpretation, it is the date of filing that controls. As such, Plaintiff is advocating that state law is

25  allowing for a longer reporting period than FCRA, which is inherently incorrect, as adherence to

26  state law would require FCRA be violated. Thus, such is further evidence that Plaintiff's

27  interpretation would lead to an absurd result.

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    Plaintiff's attempt to cite *Gillespie v. Equifax Info. Servs., L.L.C.* (7th Cir. Ill., 2007) 484

2    F.3d 938 for the proposition that "date of entry" does not mean "last of activity" is misguided.

3    [Opp. pg. 6]. To be certain, *Gillespie* dealt with a default of a credit card account, not public

4    criminal court records. [*Id.* at 939]. For this reason alone, it has no application to 15 USC §

5    1681c(a)(2), which only deals with "Civil suits, civil judgments, and records of arrest."

6    Therefore, under all applicable interpretations and relevant FTC commentary, the date of

7    disposition is a separately reportable event that controls the reporting of court records under 15

8    USC § 1681c(a)(5). Thus, Plaintiff has failed to state any violation of 15 USC § 1681c(a)(2) &

9    (7): No records of arrest are at issue under 15 USC § 1681c(a)(2); and all the subject reports are

10   timely as measured from their disposition dates under 15 USC § 1681c(a)(5).

11   **B.   THE SECOND CAUSE OF ACTION FAILS AS A MATTER OF LAW**
     **      BECAUSE NO INACCURACY CAN BE ALLEGED.**

12   Plaintiff has argued that all he need do to survive this motion to dismiss his Second Cause

13   of Action for a violation of 15 USC § 1681e(b) is allege an error in the subject report. [Opp. pg.

14   7]. What Plaintiff fails to grasp is that no error has been alleged as a matter of law in the First

15   Amended Complaint ("FAC"), as none of the information reported is claimed to be inaccurate,

16   misleading or incomplete. To the contrary, Plaintiff is alleging that the information was too

17   complete. [Opp. pg. 8].

18   First, Plaintiff has entirely relied upon the existence of "arrest records" in the first

19   reported case (Case No. 188935) [Opp. pg. 7], and the inclusion of certain dismissed counts

20   along side the counts to which Plaintiff pled guilty in the second case (Case No. 217842) as the

21   "inaccuracy" upon which he basis his claims under 15 USC § 1681e. However, the Opposition

22   fails to establish what of the information reported was inaccurate. As such, there is no violation

23   of 15 USC § 1681e(b).

24   Specifically, the operative complaint does not allege anywhere that any of the information

25   reported was incomplete or inaccurate. The operative Complaint merely alleges that the first case

26   should not have been reported because it was filed outside of the 7-year reporting period for

27   arrest records [FAC ¶¶ 36, 38, 45, 47], and the second case reported accurately that certain counts

28   were dismissed after Plaintiff pled guilty to other counts in the criminal case against him. [Opp.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

1    pgs. 7-8]. However, these are not inaccuracies. Therefore, there are no allegations attacking the

2    *accuracy* of the information reported, which Plaintiff's Complaint concedes is both truthful and

3    complete (i.e., there is no allegation that additional information should have been reported). As

4    such, Plaintiff has failed to state a cause of action under 15 USC § 1681e(b).

5        As recently held by The Hon. Otis D. Wright, II on April 30, 2012 in *Gauci v. Citi*

6    *Mortgage*, 2012 U.S. Dist. LEXIS 60153:

> To establish a prima facie violation under § 1681e(b), a plaintiff must first present evidence demonstrating that a credit reporting agency prepared a report containing inaccurate information. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). If the plaintiff establishes an inaccuracy, a credit reporting agency can nonetheless escape liability by establishing that it followed reasonable procedures. *Id.* The reasonableness of the procedures and whether the credit reporting agency followed those procedures will be jury questions in the overwhelming majority of cases. *Id.* <u>If the plaintiff fails to satisfy the initial burden of showing inaccuracy, the plaintiff has not established a violation of § 1681e(b) as a matter of law, and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency</u>. *Cahlin*, 936 F.2d at 1156.
>
> To proceed on a claim under § 1681i(a), a plaintiff must show that her credit report contained an actual inaccuracy. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010). When the plaintiff fails to establish an actual inaccuracy, courts may properly grant summary judgment in favor of credit reporting agency defendants. *See id.* at 892.
>
> <u>Accurate reporting by a credit reporting agency is thus a complete defense to claims under both § 1681e(b)</u> and § 1681i(a). If a plaintiff fails to show that the plaintiff's credit report was inaccurate, summary judgment should be granted to the credit reporting agency defendant.

[*Id.* at *10-*12 (emph. added)].

As stated above, Plaintiff cannot rely upon the untimely reporting of arrest records in the first criminal case because the subject report establishes on its face that no such "arrest record" information was reported. Likewise Plaintiff cannot assert that the first criminal case was untimely, as the date of ultimate disposition controls from when the 7-year time period begins, and the subject report was admittedly issued within seven years of its ultimate disposition.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1   Further, by reporting the existence of the dismissed counts in the second criminal case

2   along side those counts to which Plaintiff pled guilty, Plaintiff has established that TSP complied

3   with § 1681e(b) by issuing an accurate and complete report of the second criminal case.

4   Finally, as stated above, absent an inaccuracy, there is simply no need to review TSP's

5   procedures. [*Gauci v. Citi Mortgage*, 2012 U.S. Dist. LEXIS 60153 at *10-*11].

6   Thus, as a matter of law, Plaintiff's Second Cause of Action must be dismissed.

**C. THE ICRAA CAUSES OF ACTION MUST BE DISMISSED AS A MATTER OF LAW.**

**1) ICRAA Does Not Apply As A Matter of Law To Consumer Credit Reports Just Because They Contain Criminal Record Information.**

10   Plaintiff's FAC expressly states that the only reason he is suing TSP under ICRAA is

11   because of the false allegation therein that all criminal history reports, without exception, "are

12   regulated under ICRAA." [FAC ¶ 7]. Because this allegation is a false statement of the law upon

13   which each ICRAA claim is based, all ICRAA causes of action must be dismissed as a matter of

14   law.  This is especially the case since the only report alleged to have been issued establishes on

15   its face that it is a CR regulated under CCRAA.

16   In response, Plaintiff continues to argue that, since an ICR may be issued for tenant

17   screening purposes, the inclusion of criminal court records in a tenant screening report *always*

18   makes it an ICR because criminal records cannot possibly be used to establish a consumer's

19   credit worthiness, credit capacity or credit standing as a matter of law. [Opp. pgs. 9-10].

20   However, Plaintiff cites no case law supporting his interpretation, which on its face has been

21   soundly rejected by the California legislature.

22   To be certain, "consumer credit reports" are defined as "any written, oral, or other

23   communication of any information by a consumer credit reporting agency bearing on a

24   consumer's credit worthiness, credit standing, or credit capacity which is used or is expected to

25   be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the

26   consumer's eligibility for: … hiring of a dwelling unit, as defined in subdivision (c) of Section

27   1940." [*Civ. Code* § 1785.3(c)]. The legislature expressly stated that such criminal record

28   information is information on a consumer's credit worthiness, credit standing, or credit capacity

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case 2:12-cv-05808-SVW-AGR   Document 14   Filed 08/27/12   Page 12 of 30   Page ID #:312

1   and may be included in a CR [*Civ. Code* § 1785.13(a)(6)]. The legislature also stated that it

2   intended to exclude from the definition of a CR "any report containing information *solely* on a

3   consumer's character, general reputation, personal characteristics, or mode of living…" [*Civ.*

4   *Code* § 1785.3(c); also See *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604,

5   614-615 (as to the legislative intent of *Civ. Code* § 1785.3(c), Court held "any one item of

6   information may be classified as either creditworthiness or character information, but not

7   both.")].[1]

8

_____

9   [1] Plaintiff cites to this quote in *Ortiz* incorrectly in the Opposition at pg. 9 and takes it entirely out of context.

10  The Court was speaking to the legislative intent to keep any one particular item of information from
    implicating ICRAA over CCRAA when said item may be included in both types of reports. The full quote and

11  analysis of the legislative intent to exclude ICRAA from such reports, which Plaintiff's Opposition fails to
    address, is as follows:

12      "This statutory scheme—two separate statutes governing two kinds of tenant screening reports
        depending on the type of information they contain—indicates a legislative intent to distinguish

13      between creditworthiness information and character information. (See *Dyna-Med, supra,* 43 Cal.3d at
        pp. 1386–1387 [statutes must be harmonized].) Nothing in the statutes suggests any *one* item of

14      information may constitute *both* creditworthiness and character information such that it alone subjects
        a tenant screening report to *both* statutes. Rather, any one item of information may be classified as

15      either creditworthiness or character information, but not both. Construing the two statutes to govern
        discrete items of information harmonizes the statutes, rather than collapsing them into one. (*Ibid.*)

16
        While the statutes require a distinction between creditworthiness and character information, the line

17      between the two is not readily apparent. On the one hand, a consumer's creditworthiness *itself* pertains
        to the consumer's character or personal characteristics. Creditworthiness is a personal attribute, the

18      quality of being "financially sound enough that a lender will extend credit in the belief that the chances
        of default are slight; fiscally healthy." (Black's Law Dict. (7th ed. 1999) p. 377, col. 1.)

19      Creditworthiness information is a *type* of character information. On the other hand, certain types of
        character information may also constitute creditworthiness information. Information that a consumer

20      has the character traits or personal characteristics of (or a general reputation for) dishonesty,
        profligacy, carelessness, or absentmindedness would reasonably relate to the consumer's financial

21      soundness, likelihood of default, or fiscal health. At least these types of character information pertain
        to the consumer's creditworthiness.

22
        The statutory scheme itself recognizes that creditworthiness information and character information are

23      not inherently exclusive. The two credit reporting statutes do not rely on any necessary distinction
        between creditworthiness and character to segregate CCRAA reports from ICRAA reports. Rather,

24      each statute expressly excludes from its ambit any reports containing only information covered by the
        other. The CCRAA expressly excludes "any report containing information solely on a consumer's

25      character, general reputation, personal characteristics, or mode of living which is obtained through
        personal interviews … ." (§ 1785.3, subd. (c).) The ICRAA expressly excludes "a consumer report …

26      that is limited to specific factual information relating to a consumer's credit record or manner of
        obtaining credit obtained directly from a creditor of the consumer … ." (§ 1786.2, subd. (c).)

27
        We must give these express exclusions "effect and significance." (*Copley Press, Inc. v. Superior Court*

28  (footnote continued)

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    Thus, by express mandate of the legislature, criminal record information is information

2    that can be used to establish a consumer's credit worthiness, credit capacity and credit standing

3    for purposes of hiring a dwelling unit without becoming subject to ICRAA, because such

4    criminal information (by definition) is not *solely* information on a consumer's character, general

5    reputation, personal characteristics or mode of living.

6    If we were to adopt Plaintiff's absurd interpretation that criminal court record

7    information is *always* information on a consumer's character to the exclusion of credit

8    worthiness, then this Court would be forced to find that the legislature engaged in an idle act by

9    including such information in a CR, thereby making entire sections of CCRAA superfluous. But

10   this Court expressly may not interpret California law in such manner, thereby making Plaintiff's

11   interpretation of what is and what is not credit worthiness information forbidden. [See *TRW Inc.*

12   v. *Andrews, supra,* 534 U.S. at 31].

13   The fact that criminal court case information is information on a consumer's credit

14   worthiness, credit capacity or credit standing is beyond dispute, as the California legislature has

15   expressly codified it.

16   Further, Plaintiff's arguments may likewise be discounted since criminal court record

17   information, as a matter of common sense, bears on a consumer's credit worthiness and capacity.

18   Orders of restitution not being paid establish that a consumer has failed to pay due.  Likewise,

19   stolen property related crimes, like those to which Plaintiff had entered a plea of guilty, speak to

20   ──────────────────────────────────────

21   (2006) 39 Cal.4th 1272, 1284; accord, Code Civ. Proc., § 1858 [courts must construe statutory
     provisions to "give effect to all"].) "'[T]rue statutory exceptions exist only to exempt something which

22   would otherwise be covered.'" (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th
     1135, 1163 .) Each statute's express exclusion of reports containing only information covered by the

23   other shows that, absent the exclusion, the type of information covered by the other statute would also
     be covered by it. Thus, the CCRAA's scope over creditworthiness information would otherwise

24   *include* character information, at least if obtained through personal interviews, were it not for the
     express exclusion. And the ICRAA's scope over character information would otherwise *include*

25   creditworthiness information, at least if it consists of specific factual information obtained directly
     from creditors, were it not for the express exclusion.

26

27   In this way, the Legislature recognized the inherent overlap between creditworthiness information and
     character information. Yet it simultaneously demanded that the two types of information be

28   distinguished when classifying tenant screening reports as subject either to the CCRAA or the ICRAA.
     [*Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604,614-616].

SER070

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    a consumer's lack of ability to pay for goods and services. They also potentially speak to a

2    consumer's illegitimate or unstable sources of income. Additionally, extensive records of

3    incarceration establish a consumer's inability to establish or obtain long-term employment. Such

4    incarceration records, especially those records of habitual offenders, would also show that a

5    consumer has a history of not honoring the terms of a long-term lease since the consumer cannot

6    both be incarcerated for extensive periods and live in an apartment simultaneously.

7    The list of how criminal record information can be used to evaluate a consumer's credit

8    worthiness and/or credit standing is nearly endless, and otherwise not limited to Plaintiff's short-

9    sited and self-serving use of criminal record information in evaluating a consumer.

10   Here, Plaintiff may very well be a nice person and otherwise gives generously to charity,

11   but such are not areas addressed by the subject report.  All that was reported in the subject report

12   was the existence of Plaintiff's criminal court record information for the purposes of evaluating

13   his credit worthiness and credit standing for the purposes of hiring a dwelling unit. Thus, on its

14   face, the subject report at issue is not an ICR.

15   **2) ICRAA Is Unconstitutionally Vague As To Its Application To Tenant
     Screening Reports Containing Any Public Record Information That May Be
16   Contained In A Consumer Credit Report, Including Criminal Reports.**

17   Perhaps the clearest issue in this case is that ICRAA cannot automatically apply to a

18   tenant screening report solely based upon the inclusion of any public record information the

19   California Legislature has deemed may be included in a CR – including public criminal court

20   information – because ICRAA is unconstitutionally vague based upon the extensive analysis of

21   the California Court of Appeals in *Trujillo v. First American Registry, Inc.* (2007) 157

22   Cal.App.4th 628 and *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604 (review

23   denied at 2008 Cal. LEXIS 2940 (Cal. Mar. 12, 2008).  Federal Courts are to adhere to the

24   rulings and analysis of state courts on the issue of state law. [See *Johnson v. Frankell* (1997) 520

25   U.S. 911, 916 ; *Cal. Pro-Life Council, Inc. v. Getman* (9th Cir. 2003) 328 F.3d 1088, 1099].

26   In Opposition, Plaintiff dedicates no more than a single-page of argument without citation

27   to any other authority. Therein, Plaintiff merely argues that *Ortiz* does not apply because

28

Case 2:12-cv-05808-SVW-AGR   Document 14   Filed 08/27/12   Page 15 of 30   Page ID #:315

1   "criminal history information has no bearing on a consumer's credit worthiness." [Opp. pg. 11].

2   As stated above, Plaintiff's argument is contrary to statutory authority and has no merit.

3   The California legislature has already codified that criminal history information does bear

4   on a consumer's credit worthiness. [See Sec. C. 1) *supra*.]. To find otherwise would make such

5   code sections superfluous – which is forbidden. [*TRW Inc.* v. *Andrews, Supra.* 534 U.S. at 31].

6   Further, as argued above, criminal court case information as a matter of common sense

7   can impact a consumer's credit worthiness, credit capacity or credit standing. As such, Plaintiff

8   has failed to proffer any legitimate argument against finding ICRAA unconstitutionally vague to

9   tenant screening reports containing criminal court case information.

10   The analysis in *Ortiz* was clear that the inclusion of practically any piece of public record

11   information in a tenant screening report would make ICRAA unconstitutionally vague, as the

12   terms "credit worthiness" and "character" information present a false dichotomy under all

13   circumstances – not just for unlawful detainer information.

14   Our challenge arises not because unlawful detainer information is somehow paradoxical,
    but because the statutory scheme fails to set forth truly distinct categories. It presents a

15   false dichotomy between creditworthiness and character.
    [*Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604, 612-613].

16   Criminal history information from court records, like any other public record, is not

17   paradoxical. The problem lies with ICRAA's nebulous reference to character information, in light

18   of the fact that CCRAA expressly mandates such information likewise constitutes credit

19   worthiness information. [See *Civ. Code* § 1785.13(a)(6)]. According to *Ortiz,* credit worthiness is

20   technically a character trait. [*Id.* at 615]. Thus, the mere presence of criminal court records alone

21   cannot implicate ICRAA without finding that ICRAA is also unconstitutionally vague for the

22   exact same reasons California's Appellate Courts have consistently held that ICRAA is

23   unconstitutionally vague with regard to tenant screening reports containing similarly applied

24   unlawful detainer information.

25   Plaintiff has failed to address this issue with any argument or analysis other than to repeat

26   his misstatement of the law. Thus, each ICRAA claim must be dismissed as a matter of law.

27   **3) Consumer Reports Are Not Commercial Speech, And Even If They Were, *Civ.***
    **Code § 1786.18(a)(7) Would Still Be Unconstitutional On Its Face Because It**

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001

11

**Only Applies to One Segment of Society While Allowing All Others To Freely Report The Exact Same Information With Impunity.**

California Appellate Courts have consistently found any restrictions on the free reporting of public records in a consumer report to be an unconstitutional violation of free speech. [*U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107  Review Denied 1996 Cal. LEXIS 769 (Cal. Jan. 31, 1996); Cert. Denied 516 U.S. 1074, 116 S. Ct. 777 (1996)] ("*UDR I*"); *U.D. Registry v. State of California* (2006) 144 Cal.App.4th 405 ("*UDR II*")].  In response, Plaintiff argue that *Civ. Code* § 1786.18(a)(7) is constitutional by claiming 1) consumer reports are commercial speech; 2) criminal court information is "not public information"; and 3) the privacy interests of criminals in their criminal history is a compelling state interest to trump a reporting agency's constitutional right to freedom of speech.

**a. Consumer Reports Containing Public Record Information Are Not Commercial Speech.**

Plaintiff first tries to argue that *UDR I* was wrong in its decision that consumer reports are not commercial speech. [Opp. pg. 14]. Plaintiff claims this is so because consumer reports are merely matters of private concern. [Opp. pg. 12]. Plaintiff is incorrect on all accounts.

The California legislature previously attempted to address a perceived bias by landlords against renters that had been a party to an unlawful detainer case that was ultimately dismissed or decided in the renter's favor. Citing the right to privacy, the legislature thus enacted *Civ. Code* § 1785.13(a)(3) and *Civ. Code* § 1786.18(a)(4)[2], which prohibited consumer reporting agencies and investigative consumer reporting agencies from reporting unlawful detainers where the defendant prevailed or where the case was settled.

> At issue in this case is "whether a State may completely suppress the dissemination of concededly truthful information about entirely lawful activity, fearful of that information's effect upon its disseminators and its recipients." (*Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748, 773 [48 L. Ed. 2d 346, 365, 96 S. Ct. 1817].) We decide, as did the United States Supreme Court, that the answer is "no."

---

[2] Because the Appellate Courts had concluded that The U.D. Registry, Inc.'s tenant screening reports were not ICR's, it had no standing to challenge *Civ. Code* § 1786.18(a)(4). Nevertheless, *Civ. Code* § 1786.18(a)(4) is unconstitutional for the same reasons *Civ. Code* § 1785.13(a)(3), as they are identical prohibitions on the truthful reporting of unlawful detainer information.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

The tension here is between the First Amendment right to free speech and the Legislature's desire to protect prospective tenants by limiting the information a credit agency may report regarding a tenant's involvement in unlawful detainer actions. (Civ. Code, § 1785.13, subd. (a)(3); all statutory references are to this code unless otherwise stated.) The trial court found the statute unconstitutional, and we affirm that ruling. [*UDR I* at 109].

In its decision, *UDR I,* citing Supreme Court authority, found tenant screening reports containing truthful unlawful detainer information to not be commercial speech:

The test for identifying commercial speech is whether the expression at issue proposes a commercial transaction. (*Va. Pharmacy Bd.* v. *Va. Consumer Council, supra,* 425 U.S. 748, 762; *Spiritual Psychic Science Church* v. *City of Azusa* (1985) 39 Cal. 3d 501, 510-511.) Applying this settled definition, it is clear that the expression in this case, truthful information taken from public records regarding unlawful detainer defendants, does not propose a commercial transaction, and hence is not commercial speech. The fact that UDR sells the information does not transform it to commercial speech any more than the fact that a magazine or newspaper is sold makes its contents commercial speech. "Some of our most valued forms of fully protected speech are uttered for a profit." (*Board of Trustees, State Univ. of N.Y.* v. *Fox, supra,* 492 U.S. at p. 482.) [*UDR I* at 111 (emph. added)].

No Court in California has ever held that such reports are commercial speech. Instead, Plaintiff argues, in reliance on *Dun & Bradstreet, Inc.* v. *Greenmoss Builders* (1985) 472 U.S. 749 ("*Greenmoss*"), that consumer reports are purely an issue of private concern, and as such should receive a "less stringent" form of First Amendment protection. [Opp. pg. 12]. However, the same argument was made by the State and rejected by the Court in *UDR I.* [See *UDR I* at 115].

To begin, any citation to *Greenmoss* is misplaced. Firstly, *Greenmoss* is a plurality opinion, expressing the views of three justices (written by Justice Powell, in which Justices Rehnquist and O'Connor joined). As noted in the dissent (written by Justice Brennan, with whom justices Marshall, Blackmun, and Stevens joined), the plurality opinion does not express the views of the Court:

This case involves a difficult question of the proper application of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974), to credit reporting -- a type of speech at some remove from that which first gave rise to explicit First Amendment restrictions on state defamation law -- **and has produced a diversity of considered opinions, none of which speaks for the Court**.

[*Greenmoss, supra,* 472 U.S. 749, 774-775]. Since it is not an expression of a majority of the justices, *Greenmoss* is not controlling authority:

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

If an even division of justices occurs, the result is an affirmance of the judgment for lack of a majority to reverse it. **The decision "possesses <u>no dignity as a judicial precedent</u>, but carries upon its face a badge that <u>precludes any application</u> of it in the future under the doctrine of stare decisis."** (*Luco v. De Toro* (1891) 88 C. 26, 28, 25 P. 983; see also *United States v. Pink* (1942) 315 U.S. 203, 62 S.Ct. 552, 558, 86 L.Ed. 796, 810; *Ohio v. Price* (1960) 364 U.S. 263, 80 S.Ct. 1463, 1464, 4 L.Ed.2d 1708, 1709; 20 Am.Jur.2d (Rev.), Courts §159.) **Thus, it is correct to say that the decision of an equally divided United States Supreme Court, for example, is <u>without force as precedent</u>.** (*People v. Robinson* (1989) 209 C.A.3d 1047, 1054, 257 C.R. 772.)

[9 Witkin Cal. Proc. Appeal § 974]. In *Greenmoss*, it was not even an equally divided court; there were more justices ascribing to the dissent than to the plurality opinion. Therefore, since *Greenmoss* <u>cannot</u> be controlling authority, Plaintiff's position that *Greenmoss* is "the seminal case" on the issue [Opp. pg. 12] is simply wrong. Likewise, Plaintiff's repeated references to what the "Court" in *Greenmoss* held, is a misrepresentation: As shown above, the plurality opinion did *not* speak for the Court.

Furthermore, the analysis in *Greenmoss* is not applicable, because it only addresses the extent to which *defamation laws* may restrict protected speech (i.e. laws regarding untruthful speech). As noted by in *UDR I*:

Appellant argues that the Supreme Court cases we have discussed are inapposite because they deal with information of public significance, while a credit report is a matter of private interest between the speaker and its business audience. The view that credit reports involve a matter of only private concern is expressed in various ways in the plurality opinion in *Dun & Bradstreet, Inc. v. Greenmoss Builders, supra*, 472 U.S. 749, a defamation case arising from an erroneous credit report of a bankruptcy filing. **While the distinction may be significant in the area of <u>defamation</u>, it does <u>not</u> define the parameters of permissible regulation for truthful reporting.**

[*UDR I*, at 115, emph. added]. Plaintiff makes the same argument here as did Appellant in *UDR I*, and with the same result: the "public" versus "private" distinction is not dispositive, and this Court should follow the analysis of *UDR I* in that regard.

To the extent that this Court is inclined to be guided by the concepts developed in *Greenmoss*, and relied upon by Plaintiff (e.g., "private" vs. "public" interest), the dissent in *Greenmoss* rather emphatically instructs otherwise:

1) The "media" vs. "nonmedia" distinction is fuzzy and improper; and credit reports *are* in the public interest:

An attempt to characterize petitioner Dun & Bradstreet illustrates the point. Like an account of judicial proceedings in a newspaper, magazine, or news broadcast, a statement in petitioner's reports that a particular company has filed for bankruptcy is a report of a

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                    14
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

timely news event conveyed to members of the public by a business organized to collect and disseminate such information. Thus it is not obvious why petitioner should find less protection in the First Amendment than do established print or electronic media. The Vermont Supreme Court nonetheless characterized petitioner as a nonmedia defendant entitled to less protection because it is "in the business of selling financial information to a limited number of subscribers who have paid substantial fees for [its] services." 143 Vt. 66, 73, 461 A. 2d 414, 417 (1983). The court added that "[there] is a clear distinction between a publication which disseminates news for public consumption and one which provides specialized information to a selective, finite audience." Ibid.

**No clear line consistent with First Amendment principles can be drawn on the basis of these criteria.** That petitioner's information is "specialized" or that its subscribers pay "substantial fees" hardly distinguishes these reports from articles in many publications that would surely fall on the "media" side of the line the Vermont Supreme Court seeks to draw. Few published statements are of universal interest, and few publications are distributed without charge. Much fare of any metropolitan daily is specialized information for which a selective, finite audience pays a fee. Nor is there any reason to treat petitioner differently than a more widely circulated publication because it has "a limited number of subscribers." Indeed, it would be paradoxical to increase protection to statements injurious to reputation as the size of their audience, and hence their potential to injure, grows. Cf. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984).

[*Greenmoss, supra*, 472 U.S. 749, 783, emph. added].

2)  The concept "matter of public concern" is likewise fuzzy and it is improper for  courts to determine and rule upon what is or is not a "matter of public concern":

The five Members of the Court voting to affirm the damages award in this case have provided almost no guidance as to what constitutes a protected "matter of public concern." [*Greenmoss, supra*, 472 U.S. 749, 786].

In professing allegiance to Gertz, the plurality opinion protests too much. As JUSTICE WHITE correctly observes, JUSTICE POWELL departs completely from the analytic framework and result of that case: "Gertz was intended to reach cases that involve any false statements . . . whether or not [they] [implicate] a matter of public importance." Ante, at 772 (concurring in judgment). n11 **Even accepting the notion that a distinction can and should be drawn between matters of public concern and matters of purely private concern, however, the analyses presented by both JUSTICE POWELL and JUSTICE WHITE fail on their own terms. Both, by virtue of what they hold in this case, propose an impoverished definition of "matters of public concern" that is irreconcilable with First Amendment principles. The credit reporting at issue here surely involves a subject matter of sufficient public concern** to require the comprehensive protections of Gertz. Were this speech appropriately characterized as a matter of only private concern, moreover, the elimination of the Gertz restrictions on presumed and punitive damages would still violate basic First Amendment requirements.

n11 One searches Gertz in vain for a single word to support the proposition that limits on presumed and punitive damages obtained only when speech involved matters of public concern. Gertz could not have been grounded in such a premise. **Distrust of placing in the courts the power to decide what speech was of public concern was** precisely **the rationale Gertz offered for rejecting the Rosenbloom plurality approach. 418 U.S., at 346.** It would have been incongruous for the Court to go on to circumscribe the protection against presumed and punitive damages by reference to a judicial judgment as to whether the speech at issue involved matters of public concern. At several points the

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    Court in Gertz makes perfectly clear the restrictions of presumed and punitive damages
2    were to apply in all cases. *Id.*, at 346, 349-350.

[*Greenmoss, supra*, 472 U.S. 749, 785 – 786, emph. added].

3         3)    Speech does not get diminished protection simply because it concerns economic

4    self-interest:

5    In evaluating the subject matter of expression, **this Court has consistently rejected the
     argument that speech is entitled to diminished First Amendment protection simply
6    because it concerns economic matters or is in the economic interest of the speaker or
     the audience.** See, e. g., *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-502 (1952);
7    *American Federation of Labor v. Swing*, 312 U.S. 321, 325-326 (1941); *Thornhill v.
     Alabama*, 310 U.S. 88, 101-103 (1940)…
8    [*Greenmoss, supra*, 472 U.S. 749, 787, emph. added].

9         4)    Even if they are private speech, credit reports are protected speech:

10   Even if the subject matter of credit reporting were properly considered -- in the terms of
     JUSTICE WHITE and JUSTICE POWELL -- as purely a matter of private discourse, **this
11   speech would fall well within the range of valuable expression for which the First
     Amendment demands protection**. Much expression that does not directly involve public
12   issues receives significant protection. Our cases do permit some diminution in the degree
     of protection afforded **one category** of speech about economic or commercial matters.
13   **"Commercial speech"** -- defined as advertisements that "[do] no more than propose a
     commercial transaction," *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
14   413 U.S. 376, 385 (1973) -- may be more closely regulated than other types of speech.
     Even commercial speech, however, receives substantial First Amendment protection.
15   *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626
     (1985); *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, supra, at 765
16   ("So long as we preserve a predominantly free enterprise economy, the allocation of our
     resources in large measure will be made through numerous private economic decisions. . .
17   . To this end, the free flow of commercial information is indispensable").

18   [*Greenmoss, supra*, 472 U.S. 749, 790, emph. added].

19        Thus, *Greenmoss* should have no application to this case, as it does not stand for the

20   proposition for which it was cited by Plaintiff.

21        **b.    Credit Reports About Public Criminal Court Records Are A Matter of
              Public Concern.**
22

23        Further, Plaintiff's argument that credit reports contain information this of "purely private

24   concern" is belied by the nature of the records that are at issue in this case; *to wit* criminal court

25   records. The United States Supreme Court in *Cox Broadcasting Corp. v. Cohn* has long since

26   held that the truthful reporting of criminal cases is "without question" a matter of public interest

27   that members of the public may report with impunity. [*Cox Broadcasting Corp. v. Cohn* (1975)

28   420 U.S. 469, 492-493 ("The commission of crime, prosecutions resulting from it, and judicial

     proceedings arising from the prosecutions, however, <u>are without question events of legitimate</u>

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

1  concern to the public…”); citing *Craig* v. *Harney* (1947) 331 U.S. 367, 374 ("*Those who see and*

2  *hear what transpired can report it with impunity*")].

3       Lest we not forget that the complaining party in each criminal court case reported here is

4  "The People of The State of California," and that each such case was prosecuted by the State

5  through public prosecuting agencies that are run by elected officials paid by the people's taxes, in

6  public State courts in open public proceedings – also paid for by the people's taxes.  Thus,

7  criminal records are always a matter of public concern, even if they are discussed privately. [*Id.*].

8       As such, the reports at issue do not propose a commercial transaction[3], are not about

9  issues of "purely private concern", and are therefore not commercial speech. Therefore, the

10  subject tenant screening reports are entitled to heightened scrutiny.

### c.  Even if the Reports Were Considered Commercial Speech, Heightened Scrutiny Still Applies.

12  As stated by in *Greenmoss:*

> Credit reporting is not "commercial speech" as this Court has defined the term. Even if credit reporting were so considered, it would still be entitled to the substantial protections the First Amendment affords that category. See *Zauderer*, 471 U.S., at 637; id., at 657-658 (BRENNAN, J., concurring in part and dissenting in part).

[*Greenmoss, supra*, 472 U.S. 749, 790, emph. added].

17       Plaintiff suggests that *Trans Union Corp. v. FTC* (D.C. Cir. 2002) 295 F.3d 42 should be

18  followed.  However, as stated in Footnote 3, that case is distinguishable since it had to do with

19  consumer information being sold to target marketers for marketing purposes, not consumer credit

20  reports containing public records being sold to potential landlords. [*Id.* at 52].

21       Plaintiff would have this court apply the less than strict scrutiny test of *Central Hudson*

22  *Gas & Elec. Corp. v. Public Serv. Comm'n* (1980) 447 U.S. 557, to determine if *Civ. Code §*

23  1786.18(a)(7) is proper. However, *Central Hudson* is not applicable here, because it addressed

24  efforts to regulate *commercial* speech. However, even if the speech in issue is deemed to be

---

[3] Because this case does not involve advertising or the proposal of a commercial transaction, Plaintiff's citation to *Trans Union Corp v. FTC* (D.C. Cir., 2001) 267 F.3d 1138 is likewise inapplicable. *Trans Union* involved the selling of private identifier information (names, address, and financial condition) for marketing purposes to prepare target marketing lists. Such information is not public record information, and no advertising or marketing is at issue in this case. Thus, *Trans Union* has no application to this case.

Case No.:  2:12-cv-05808-SVW-AGR
File No.:  5.371.001                                17

1  commercial speech, *Central Hudson* does not apply because at issue is a content-based and

2  speaker-based restriction subject to heightened scrutiny.

3       The Supreme Court's recent decision in *Sorrell v. IMS Health Inc.* (2011) 131 S.Ct. 2653,

4  reaffirms that *Civ. Code* § 1786.18(a)(7) would be subjected to rigorous analysis even if viewed

5  through the lens of commercial speech. In that case, the Court struck down a Vermont law which

6  restricted the sale, disclosure, and use of records created by pharmacies that reveal the

7  prescribing habits of doctors. Such records are useful to drug companies who market their drugs

8  to doctors. That case therefore involved paradigmatic commercial speech, but the Court

9  nonetheless noted that "the First Amendment requires heightened scrutiny whenever the

10  government creates 'a regulation of speech because of disagreement with the message it

11  conveys.'" [*Id.* at 2664 (quoting *Ward v. Rock Against Racism* (1989) 491 U.S. 781, 791)]. The

12  Court continued by noting that "[c]ommercial speech is no exception" to this principle in part

13  because a "consumer's concern for the free flow of commercial speech often may be far keener

14  than his concern for urgent political dialogue." [*Id.* (quotation marks omitted)].

15       Here, *Civ. Code* § 1786.18(a)(7) says that consumer reporting agencies alone may not

16  speak about certain public criminal court records, including dismissed misdemeanor cases and

17  convictions after a certain period of time.  These restrictions exist despite that said criminal court

18  records are open to the perusal of everyone, and that all other members of society may speak

19  about and use such information in any manner they wish for any reason with impunity. Thus, *Civ.*

20  *Code* § 1786.18(a)(7) on its face is a content-based and speaker-based restriction on speech.

21  Therefore, our Supreme Court has mandated such restrictions on "commercial speech" are

22  subject to strict scrutiny.  [*Sorrell*, 131 S. Ct. at 2667].

23       Plaintiff claims that the compelling state interest in limiting speech about public court

24  records to be weighed against the constitutional right to free speech is the right to privacy. [Opp.

25  pg. 12]. Plaintiff then cites two cases for the proposition that a criminal has a right to privacy in

26  publicly available criminal court records: *US DOJ v. Reporters Committee for Freedom of the*

27  *Press et al.* (1989) 489 U.S. 749 and *Westbrook v. County of Los Angeles* (1994) 27 Cal.App.4th

28  157. However, neither case involves consumer reports and neither case stands for the proposition

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

1  that anyone has a right to privacy in *publicly* available court records made *publicly* available by

2  the government.

3        *US DOJ v. Reporters Committee for Freedom of the Press et al.* (1989) 489 U.S. 749

4  involved a Freedom of Information Act request for a "rap sheet" maintained by the Department

5  of Justice.  The records sought were therefore not entirely public court records that were readily

6  available to the general public, but the internal records accumulated by the FBI, including

7  criminal investigations [*Id.* at 757].  In contrast, the records in this case are public records that

8  were freely provided by the California State Courts to the general public. Thus, this case has no

9  application here, as the internal non-public records of a governmental agency such as the FBI are

10  not at issue here.

11        Likewise, *Westbrook v. County of Los Angeles* (1994) 27 Cal.App.4th 157 is also not

12  applicable to this case. At issue in *Westbrook* was the mass disclosure of a compilation of all

13  criminal summary information in the Los Angeles Superior Court data base by way of monthly

14  access to its computer tapes. [*Id.* at 160]. The Court concluded that such mass disclosure was not

15  authorized under *Penal Code* § 13300. [*Id.*]. This is especially the case since the "criminal

16  summary" information sought also disclosed "the name, birth date and zip code of every person

17  against whom criminal charges are pending in those courts". [*Id.*].  The Court concluded that:

18  "Since the MCI system constitutes a master record of compiled information within the meaning

19  of Penal Code section 13300, it must not be disseminated except as provided by that statute."

20  [*Id.* at 164]. The Court stated: "These records are compiled without the consent of the subjects

21  and disseminated without their knowledge. Therefore, appellants, as custodians of the records,

22  have a duty to 'resist attempts at unauthorized disclosure and the person who is the subject of the

23  record is entitled to expect that his right will be thus asserted.'" [*Id.* at 166]. The Court reasoned:

24        If, for example, the court ordered  a record maintained by a criminal  justice agency to be
        sealed or destroyed because a defendant had been found to be factually innocent of the
25        charges (Pen. Code, § 851.8, subds. (c), (d), and (j)), the information would still be
        available for sale by respondent. Or, to cite another example, if a defendant was granted
26        statutory diversion, this information would be available to the public from respondent
        even though it could not be obtained from the California Department of Justice. (See
27        *Central Valley Ch. 7th Step Foundation, Inc.* v. *Younger* (1989) 214 Cal.App.3d 145,
        151.) The only control on access to the information in respondent's possession would be
28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case 2:12-cv-05808-SVW-AGR   Document 14   Filed 08/27/12   Page 24 of 30   Page ID #:324

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

the price he places on it. This is precisely the danger against which the Legislature intended to guard against when it enacted Penal Code sections 11105 and 13300. [*Id.* at 166-167].

In direct contrast, the case at bar does not involve unfettered access to non-public records of a criminal agency, sealed court records, or the internal records of an entire court system.[4]  This case involves information that the courts have already made available to the general public – criminal court case information contained in the public criminal court records open to the general public.  There is no right to privacy in such records when the records are made publicly available open to the perusal of everyone.

In accord, *UDR I* held:

> Concern about the availability of rental housing for those needing housing, and particularly those facing eviction, is a valid and significant state interest. But it does not justify a ban on publication by credit reporting agencies of lawfully obtained truthful information contained in court records open to the perusal of everyone. **The information is in the custody of the state. If the state is concerned about dissemination of this information, it has the power to control its initial release.** As explained in *Florida Star, supra*, the government may classify the information, establish procedures for its redacted release, and extend a damages remedy against the government if the government's mishandling of sensitive information leads to its dissemination. **"Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts."** (491 U.S. at p. 534.)

> Section 1785.13, subdivision (a)(3) contains the same flaw found in the *Daily Mail* and *Florida Star* cases--the restriction against dissemination is limited to one type of publication, thereby failing to achieve its purpose of protecting the subject from other modes of broadcast of the same information. In *Daily Mail*, the restriction applied only to newspapers; in *Florida Star*, it applied only to "any instrument of mass communication"; in our case, the restriction applies only to consumer credit reporting agencies. In all three instances, the information can be disseminated in countless other ways. **No justification is advanced for limiting one form of dissemination while permitting broadcast of the same information by other methods**.

[*UDR I* at 114-115].

Here, Plaintiff argues that the right to privacy should prevail for fear that the information will be used to deny consumers employment or housing, and thus interfere with a criminal's

---

[4] For this reason, Plaintiff's citation to *United States v. Smith* (3d Cir. 1985) 776 F.2d 1104 is also misplaced. In *Smith*, the Court sealed the identity of unindicted co-conspirators.  Thus, such information was not readily available to the public.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

1  rehabilitation. But such an argument belies the problem: The mere fear of misuse of truthful

2  information is not enough to curtail its publication.  Again, *UDR I* addressed this very issue:

3     Section 1785.13, subdivision (a)(3) seeks to limit the free flow of information for fear of
       its misuse by landlords. The Supreme Court addressed just such a situation in the context
4     of commercial speech in the Va. Pharmacy case when it rejected Virginia's claim that the
       only way it could enable its citizens to act in their own best interests is to keep them from
5     obtaining comparative price information: "There is, of course, an alternative to this highly
       paternalistic approach. That alternative is to assume that this information is not in itself
6     harmful, that people will perceive their own best interests if only they are well enough
       informed, and that the best means to that end is to open the channels of communication
7     rather than to close them. . . . It is precisely this kind of choice, between the dangers of
       suppressing information, and the dangers of its misuse if it is freely available, that the First
8     Amendment makes for us." (Citations.)

9

10    If such a "paternalistic approach" is impermissible for commercial speech, **it is certainly**
       **improper for more highly protected noncommercial speech** such as that limited by
11    section 1785.13, subdivision (a)(3).
       [*UDR I* at 115-116, emph. added].
12

13     Yet it is precisely this type of paternalism that the Legislature has once again imposed in

14  *Civ. Code* § 1786.18(a)(7).[5] However, just as in *UDR I,* there is the alternative view that credit

15  issuers, employers and landlord can be compelled by other non-infringing statutes to prevent the

16  use of such information from being used to deny an applicant with a criminal record.

17     By way of example, and not limitation, California maintains a website disclosing the

18  identity and location of known sex offenders known as the "Megan's Law" Web site (MLW).

19  The statute governing the MLW includes a provision prohibiting employer from using "any

20  information that is disclosed [on the MLW] ... for purposes relating to ... [¶] ... [¶] ...

21  [e]mployment," and a provision that "[a]ny use" of information disclosed on the MLW for such a

22  purpose "shall make the user liable for ... actual damages, ... and attorney's fees, exemplary

23

24  _____

25  [5] Paternalistic statutes that intrude upon the First Amendment Right to Free Speech are highly disfavored. The
    United States Supreme Court has held: "The First Amendment is an Absolute, 1961 S. Ct. Rev. 245, 263. The
    First Amendment rejects the "highly paternalistic" approach of statutes [ ] which restrict what the people may
26  hear. *Virginia State Bd. of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.*, 425 U.S., at 770; see
    *Linmark Associates, Inc.* v. *Willingboro*, 431 U.S., at 97; *Whitney* v. *California*, 274 U.S. 357, 377 (1927)
27  (Brandeis, J., concurring); *Abrams* v. *United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting). [*First
    Nat'l Bank v. Bellotti* (1978) 435 U.S. 765, 792; also see *San Francisco County Democratic Cent. Committee
28  v. March Fong Eu* (1987, 9th Cir.) 826 F.2d 814, 835].

Case No.:  2:12-cv-05808-SVW-AGR
File No.:  5.371.001                                21

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

1  damages, or a civil penalty not exceeding [$25,000]." [See *Pen. Code,* § 290.46(*l*)(2)(E) &

2  (4)(A)]. Thus, to protect consumers from their own criminal past, California can and does have

3  the ability to pass a similar statue to prevent use of certain criminal records in denying a

4  consumer credit, employment or housing.  What it cannot do, however, is violate the constitution

5  by preventing consumer reporting agencies from truthfully reporting public criminal court

6  records that are open to the perusal of everyone. [*UDR I* at 116].

7          Therefore, because *Civ. Code* § 1786.18(a)(7) is a "paternalistic approach", it is improper

8  whether credit reports are deemed commercial or noncommercial speech.  Under either analysis,

9  *Civ. Code* § 1786.18(a)(7) is an unconstitutional prohibition on truthful speech about criminal

10  court records open to the perusal of everyone.

11          Thus, as all of Plaintiff's ICRAA causes of action are reliant upon the application of *Civ.*

12  *Code* § 1786.18(a)(7), they all must be dismissed as a matter of law.

## D. PLAINTIFF'S UCL CLAIMS MUST BE DISMISSED BECAUSE HE HAS NO STANDING AND THEY ARE FEDERALLY PREEMPTED.

### 1) Plaintiff Has No Standing.

          Plaintiff first argues that he has standing to bring his UCL claims because he has alleged

that he has lost housing opportunities and that he has been forced to spend time, money and

energy in cleaning up his credit record. [Opp. pg. 15].  But such are not the "injuries in fact" that

are required to establish standing.  Thus, the UCL claims must be dismissed as a matter of law.

          First, as argued in the Motion to Dismiss, the FAC fails to allege an injury in fact,

including any loss of money or property due to TSP. Standing under section 17200 requires

allegations of a "distinct and palpable injury" suffered "'as a result of the defendant's actions'"

and "'an invasion of a legally protected interest which is (a) concrete and particularized,

[citations]; and (b) actual or imminent, not 'conjectural' or 'hypothetical,' [citations].'"

[*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 814; *Peterson v. Cellco*

*Partnership* (2008) 164 Cal.App.4th 1583, 1591-1592]. The mere violation of a law does not

automatically give rise to a cause of action under section 17200. [*Medina v. Safe-Guard*

*Products, Int'l., Inc.* (2008) 164 Cal.App.4th 105; *Peterson v. Cellco Partnership* (2008) 164

Cal.App.4th 1583].

1    In addition, the Ninth Circuit reaffirmed that "we have specifically ruled that Rule 9(b)'s

2    heightened pleading standards apply to claims for violations of the ... *UCL*." [*Kearns v. Ford*

3    *Motor Co.* (9th Cir. 2009) 567 F.3d 1120, 1125 (emph. added)].

4    Other than the conclusion of "I lost housing and money", there are no allegations of actual

5    injury in fact to support a UCL claim. Specifically, On August 2, 2012 the Northern District filed

6    its decision in *Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*, 2012 U.S. Dist.

7    LEXIS 108597 dismissing a UCL claim with similar allegations for this exact reason:

> LexisNexis contends that Quadrant has failed to allege any facts demonstrating an injury in fact or the loss of money or property <u>caused by its alleged misconduct</u>. The Court agrees. Quadrant's second claim under the UCL is completely devoid of any allegations of injury or causation. Quadrant counters the Court should take into consideration the allegations of harm set forth in Paragraph 21, which is part of its first claim and is incorporated by reference into its second claim. Compl. ¶ 23; Pl.'s Opp'n at 14. Paragraph 21 alleges that "[Quadrant] has suffered injury in fact and has lost money as a result of [LexisNexis'] unfair competition in connection with InsurView®." Id. ¶ 21. This conclusory allegation is insufficient to establish standing under the UCL. The Supreme Court has made clear that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. In sum, the Court finds that Quadrant has failed to allege facts sufficient to establish standing under the UCL."

[*Id.* at *9-*10]

16    No facts are alleged that Plaintiff was automatically entitled to the subject housing. The

17    fact that he was *applying* for such housing negates such a conclusion that the housing was his to

18    lose. Further, there is no allegation that his application would have been accepted despite the

19    presence of multiple negative collection accounts or the criminal history Plaintiff concedes was

20    reportable. Thus, there are no allegations showing an actual loss of housing.

21    Further, no facts are alleged as to the loss of money. Plaintiff has not alleged that he has

22    had to pay anyone anything to help clean up his credit record, let alone Defendant. How much

23    money was spent? To whom was it paid? Why was it paid? The FAC fails to allege such facts.

24    Time and energy are not property rights and are not money, and are therefore no injury in

25    fact. Otherwise there would be no standing requirement as every action a person does takes time

26    and energy.

27    Thus, Plaintiff has failed to allege proper standing, and his UCL claim must be dismissed.

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case 2:12-cv-05808-SVW-AGR   Document 14   Filed 08/27/12   Page 28 of 30   Page ID #:328

## 2) UCL Claims Are Preempted.

Plaintiff tries to argue that his UCL claims are not federally preempted by the FCRA. He is incorrect.

Plaintiff cites *Gorman v. Wolpoff & Abramson* (9th Cir. Cal. 2009) 552 F.3d 1008[6] and its progeny to establish that the FCRA does not preempt the UCL because the UCL is a private enforcement mechanism. [Opp. pg. 16]. *Gorman*, however, has no application to this case because *Gorman* did not address whether FCRA preempted a claim under the UCL. It considered a defendant's argument that the plaintiff's claim under *Civ. Code* § 1785.25(a) was preempted, despite the language of the 15 USC § 1681t(b)(1)(F) exception, because the two provisions that established a private right of action to enforce section 1785.25(a) were found elsewhere in the state Civil Code and were not expressly excepted from FCRA preemption. The Ninth Circuit, however, rejected this argument, because the two provisions referred to do not impose a "requirement or prohibition" but instead "merely provide a vehicle for private parties to enforce other sections, which do impose requirements and prohibitions." [*Gorman v. Wolpoff & Abramson, LLP* (9th Cir. Cal. 2009) 584 F.3d 1147, 1171]. However, such finding only applied to *Civ. Code* § 1785.25(a), a statute that was expressly saved from preemption in FCRA.

Here, no such express exemption from preemption in FCRA is at issue in this case. As such, Courts have continued to hold that UCL is preempted by FCRA for claims not involving *Civ. Code* § 1785.25(a). Specifically, the Northern District decided on June 1, 2012 *Mohammed Subhani v. JPMorgan Chase Bank*, 2012 U.S. Dist. LEXIS 76447, finding *Gorman* inapplicable to any other case not involving *Civ. Code* § 1785.25(a) claims, and that all other UCL related claims are federally preempted. [*Id. at* *13 -*15]. Likewise, On August 2, 2012, the Northern District found in *Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*, 2012 U.S. Dist. LEXIS 108597 that all UCL claims were federally preempted by FCRA. The Court held:

---

[6] Plaintiff has cited the wrong case. The citation *Gorman v. Wolpoff & Abramson* (9th Cir. Cal. 2009) 552 F.3d 1008 used by Plaintiff is to an opinion that was subsequently amended at *Gorman v. Wolpoff & Abramson, LLP* (9th Cir. Cal. 2009) 584 F.3d 1147.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Quadrant's first claim for injunctive relief under the UCL relies on a violation of the FCRA. Compl. ¶¶ 6-22. The FCRA requires credit reporting agencies to adopt reasonable procedures relating to the collection, communication, and use of consumer credit information to ensure fair and accurate credit reporting. 15 U.S.C. § 1681e. Although private litigants may maintain a claim for damages under the FCRA, only the Federal Trade Commission ("FTC") is empowered by statute to seek equitable relief. See Washington v. CSC Credit Servs., 199 F.3d 263, 268 (5th Cir. 2000). **As such, this Court has uniformly concluded that a UCL claim for injunctive relief is preempted by the FCRA**. Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139, 1145 (N.D. Cal. 2005) ("Because the Court finds that plaintiff's § 17200 claim is preempted by the FCRA, he cannot obtain an injunction for this claim."); accord White v. E-Loan, Inc., 409 F. Supp. 2d 1183, 1187 n.6 (N.D. Cal. 2006); Hogan v. PMI Mortg. Ins. Co., No. C 05-3851 PJH, 2006 U.S. Dist. LEXIS 32179, 2006 WL 1310461, at *10 (N.D. Cal., May 12, 2006); Yeagley v. Wells Fargo & Co., No. C 05-3403 CRB, 2006 U.S. Dist. LEXIS 5368, 2006 WL 193257, at *2 (N.D. Cal. Jan. 23, 2006).

Plaintiff argues that LexisNexis' preemption argument is at odds with the Supreme Court's pronouncement in Califano v. Yamasaki, 442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979) that, "absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." Id. at 705. Califano, however, addressed a materially different statute—the Social Security Act ("SSA"). Unlike the FCRA, which expressly places authority to seek injunctions in the FTC instead of private parties, see 15 U.S.C. § 1681s(a), the SSA is silent on the issue of enforcement, see Califano, 442 U.S. at 705. Thus, Califano's recognition that a federal court has equitable power to issue injunctions absent clear Congressional command is inapposite where, as here, the statute at issue sets forth a detailed remedial scheme that permits private parties to seek actual and punitive damages, but not injunctive relief—and vests the authority to seek equitable relief in a specified agency. See 15 U.S.C. §§ 1681n, 1681o. The Court therefore dismisses Quadrant's first claim for relief.

[Id. at *7-*8 (emph. added].

Here, the FCRA expressly does not allow for private injunctive relief. State statutes allowing for injunctive relief would therefore be contrary to FCRA. As such, and for the reasons stated by the Northern District just a few weeks ago that it "has uniformly concluded that a UCL claim for injunctive relief is preempted by the FCRA," all of Plaintiff's UCL claims are preempted as a matter of law and must be dismissed.

## 3. CONCLUSION

Based on the foregoing, the 1st, 2nd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th causes of action of the FAC fail to state a claim upon which relief can be granted and this motion should be granted without leave to amend.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    Dated: August 27, 2012          **Jacobson, Russell, Saltz & Fingerman LLP**

2

3                                    _____/S/_____
                                     Michael J. Saltz, Esq.,
4                                    Attorneys for Defendant The Screening Pros, LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.:  2:12-cv-05808-SVW-AGR
File No.:  5.371.001                        26
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

1   **JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
2   Michael J. Saltz, Esq.  SBN 189751
    msaltz@jrsfllp.com
3   Colby A. Petersen, Esq. SBN 274387
    cpetersen@jrsfllp.com
4   G. Austin Sperry, Esq.  SBN 278535
    asperry@jrsfllp.com
5   10866 Wilshire Boulevard, Suite 1550
    Los Angeles, CA  90024
6   Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

7   Attorneys for Defendant THE SCREENING PROS, LLC

8

9            **UNITED STATES DISTRICT COURT**

           **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11   GABRIEL FELIX MORAN, | Case No.: 2:12-cv-05808-SVW-AGR |
| 12          Plaintiff, | **DEFENDANT THE SCREENING PROS,** |
| 13     vs. | **LLC'S NOTICE OF MOTION AND** |
| | **MOTION FOR RECONSIDERATION** |
| 14 | **OF COURT RULING ON MOTION TO** |
| 15   THE   SCREENING   PROS,   LLC   a | **DISMISS PLAINTIFF'S COMPLAINT** |
|   California  Corporation;  and  DOES  1-10 | **PURSUANT TO** *FED. R. CIV. PROC.* |
| 16   inclusive, | **12(b)(6); MEMORANDUM OF POINTS** |
| 17 | **AND AUTHORITIES IN SUPPORT** |
|       Defendants. | **THEREOF.** |
| 18 | |
| 19 | Complaint filed:  February 2, 2012 |
| | First Amended |
| 20 | Complaint Filed:  June 7, 2012 |
| | Removed:            July 5, 2012 |
| 21 | Trial Date:            November 20, 2012 |
| 22 | |
| 23 | Hearing Date:    November 5, 2012 |
| | Time:                  1:30 p.m. |
| 24 | Courtroom.:        6 – 2nd Floor |
| | Judge:                 Hon. Stephen V. Wilson |
| 25 | |

26   **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

27       PLEASE TAKE NOTICE that on November 5, 2012 at 1:30 P.M. or as soon as this

28   matter may be heard in Courtroom 6 of the above-entitled court, defendant The Screening

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001            i
DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS

SER088

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1  Pros, LLC (TSP) will and hereby does move the Court for reconsideration of its Order ruling

2  on TSP's Motion to Dismiss plaintiff's First Amended Complaint in this matter.

3       The motion is made under United States District Court, Central District of California,

4  Local Rule 7-18.  The motion will be based on the memorandum of points and authorities,

5  the records on file in this action, and any further evidence and argument that may be

6  presented at the hearing on this motion.

7       This motion is made following the conference of counsel pursuant to L.R. 7-3 which

8  took place on October 3, 2012.

9

10  Dated: October 8, 2012           **Jacobson, Russell, Saltz & Fingerman LLP**

11

12

13              _____/S/_____

            Michael J. Saltz, Esq.

14              Attorneys for Defendant The Screening Pros, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.:  2:12-cv-05808-SVW-AGR
File No.:  5.371.001         ii

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS

1                 **<u>TABLE OF CONTENTS</u>**

2   1.     INTRODUCTION.................................................................................1

3   2.     PROCEDURAL AND FACTUAL HISTORY.........................................2

4   3.     STANDARD OF REVIEW ....................................................................3

5   4.     ARGUMENT.........................................................................................3

6 7 8       A.     THE "REPORTABLE EVENT" MADE BY DEFENDANT TSP UNDER SECTION 1681C(A)(5) IS THE DATE CRIMINAL CHARGES WERE DISMISSED, NOT THE DATE THEY WERE FILED; THUS THE REPORT WAS PROPER UNDER 15 U.S.C. SECTION 1681c(a)(5)........... 3

9 10 11       B.     THIS COURT CONFLATED THE TEXT AND FTC INTERPRETATIONS OF SECTION 1681C(A)(2) AND FORMER SECTION 1681(C)(A)(5) WITH THE CURRENT VERSION OF SECTION 1681(C)(A)(5) , WHICH HAS NOT BEEN CHANGED IN ANY MATERIAL RESPECT........................................................................... 7

12 13       C.     GOOD PUBLIC POLICY SUPPORTS HOLDING THE OPERATIVE DATE UNDER THE FCRA FOR CRIMINAL PROCEEDINGS RESULTING IN DISMISSAL SHOULD BE THE DATE OF DISMISSAL. ..... 9

14 15 16       D.     ANOTHER STATE COURT HAS STATED THAT IN THE CASE OF PROCEEDINGS RESULTING IN DIMISSAL, THE APPLICABLE TRIGGER DATE FOR THE SEVEN YEAR REPORTING PERIOD IS THE DATE OF DISMISSAL, NOT THE DATE OF FILING. ....................... 10

17 18       E.     IN THE ALTERNATIVE, UNDER *SAFECO INS. CO. OF AM.*, PLAINTIFF'S FCRA CAUSES OF ACTION SHOULD BE DISMISSED TO THE EXTENT THEY ALLEGE WILLFUL VIOLATIONS OF THE LAW........................................................................................................ 11

19 20       F.     REFERENCES IN THE ORDER TO SECTION 1861(C) SHOULD BE AMENDED TO REFERENCE SECTION 1681(C). .................................... 12

21   5.     CONCLUSION. ..................................................................................12

22

23

24

25

26

27

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel: 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001              iii

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

## Cases

*Bd. of Educ. v. Mergens*, 496 U.S. 226 (1990) ........................................................ 10

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980) ...................4, 5, 8

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) ......................................... 6

*Hundtofte v. Encarnacion*, 280 P.3d 513 (2012) .......................................................... 11

*Kates v. Crocker Nat'l Bank*, 776 F.2d 1396 (9th Cir. 1985) ........................................... 6

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ...................................................9, 11, 12

*Tides v. Boeing Co.*, 644 F.3d 809 (9th Cir. 2011) ....................................................... 10

## Statutes

15 U.S.C. § 1681c(a) (2010) .......................................................................... 4, 8

15 U.S.C. § 1681c(a)(5) (1997) ......................................................................... 8

15 U.S.C. § 1681c(a)(5) (2010) ......................................................................... 7

15 U.S.C. §1681c(a)(2) ................................................................................ 10

15 U.S.C. § 1681e(b) ...............................................................................1, 4, 6, 9

Wash. Rev. C. § 19.182.040(1)(b) ...................................................................... 10

## Other Authorities

16 C.F.R. Pt. 600, App. 605(a)(5)(2010) ............................................................. 5, 7

Federal Trade Commission, <u>40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary Interpretations</u> (July 2011) ..................................................... 4, 6

## Rules

Local Rule 7-18.......................................................................................... 3

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.:  2:12-cv-05808-SVW-AGR
File No.:  5.371.001                    iv

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

On September 28, 2012, this Court granted in part and denied in part Defendant The Screening Pros, LLC's ("TSP") Motion to Dismiss plaintiff's First Amended Complaint. (See Order, on file with the Court herein). Of significance here, the Court found that plaintiff had properly alleged violations of the Fair Crediting Reporting Act (FCRA) under 15 U.S.C. sections 1681c(a)(5) and 1681e(a) due to a report issued by TSP (Subject Report).

This Court stated that ". . . section 1681c(a)(5) prohibits reporting agencies from disclosing other criminal record information, except convictions, for more than seven years after the date of the reported **criminal** event." (Order, pg. 9, ln. 24 to pg. 10, ln. 2)(emphasis added). The Court then found, in a case of first impression, that the "reported event" was the May 1, 2000 filing of criminal charges against plaintiff. (Order, pg. 10, lns. 3-13). As a result, plaintiff stated a claim for TSP having reported information outside the seven year period.

However, the plain language of the FCRA and FTC interpretations establish that it is not filing of criminal charges nor the existence of the criminal case itself but rather the resolution of the case that is the "reportable event" within the meaning of section 1681c(a)(5). Therefore, the reportable event in this case was the date criminal proceedings against plaintiff concluded (via dismissal) as of *March 2, 2004* and TSP properly reported this dismissal. In the course of reporting, TSP reported, as it was required to do by law (see the "maximum possible accuracy" law – 15 U.S.C. section 1681e(b)), the entire course of proceedings, including the date charges were filed against plaintiff. To do otherwise, and simply report the dismissal date as to unspecified charges, would be misleading under the FCRA. Moreover, the Federal Trade Commission (FTC) has never reversed its previous finding that the operative date for purposes of criminal proceedings which are dismissed is the date of dismissal. Consequently, TSP properly reported this matter and plaintiff's first and second causes of action for violation of FCRA should be dismissed.

Aside from the text of the statute and FTC interpretations of the FCRA, TSP's position rests on good common sense and policy grounds. If the resolution date of a civil judgment is the date of the judgment and the resolution date of a criminal charge resulting in a conviction is the date of conviction for purposes of the FCRA, it does not make sense for the reportable event of a resolution of a criminal case by dismissal to be limited to the date charges are filed. It also makes little sense for Congress to have made such a significant change in the reporting rules under the FCRA without explicitly saying so or even hinting that it wanted to do so.

Based on the above, and the argument below, TSP respectfully requests that this Court reconsider its previous decision and dismiss plaintiff's first cause of action for violation of section 1681c(a)(5) and second cause of action for violation of section 1681e(a). In the alternative, should this Court maintain its original interpretation, TSP's interpretation of the FCRA was reasonable and supported by the text and therefore all claims of willful noncompliance in the first and second causes of action should be dismissed.

## 2. PROCEDURAL AND FACTUAL HISTORY

On July 16, 2012, defendant TSP filed a Motion to Dismiss plaintiff's First Amended Complaint (FAC), arguing in relevant part that under the FCRA, plaintiff's first cause of action and second cause of action (as to claims of violations of section 1681e(a)) were barred, as all reporting by TSP of plaintiff's criminal proceedings was done within the seven year reporting period. (See Motion to Dismiss, on file with the Court). In particular, in 2010, TSP reported criminal proceedings against plaintiff that were initiated in May 2000 but not resolved via dismissal until March 2, 2004. Plaintiff filed his Opposition to the Motion on August 20, 2012, with TSP's Reply filed on August 27, 2012.

On September 28, 2012, this Court issued an Order granting in part and denying in part defendants' Motion to Dismiss. (See Order, on file with the Court). In relevant part, the Court denied TSP's request for dismissal of plaintiff's first cause of action for violation of the FCRA, 15 U.S.C. section 1681c and second cause of action to the extent it was based on a violation of section 1681e(a). The Court found that under section 1681c(a)(5), reporting agencies were prohibited from disclosing criminal record information, other than convictions,

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1   more than seven years after the date of "the reported criminal event." (Order, pg. 9, ln. 24 to

2   pg. 10, ln. 2). The Court interpreted this phrase to mean, in the case of criminal proceedings

3   resulting in dismissal, the date criminal charges are initiated, not the date charges are

4   dismissed. (*Id*). As TSP listed in its report that plaintiff had been charged with a crime on

5   May 16, 2000, this Court found the reporting to be untimely, despite the fact that TSP

6   reported that the proceedings were not dismissed until March 2, 2004. TSP now files the

7   present request for reconsideration of this Order.

8   **3.  STANDARD OF REVIEW**

9        Under Local Rule 7-18, a motion for reconsideration of the ruling on a motion may be

10   made where there is "a manifest showing of a failure to consider material facts presented to

11   the Court before such decision." L.R. 7-18. As set forth below, TSP respectfully submits

12   that this Court erred in its failure to consider the undisputed fact that TSP reported the

13   "event" that criminal proceedings had concluded against plaintiff on May 2, 2004, well

14   within the seven year reporting period of the FCRA, and which constitutes the "adverse item

15   of information" or "reportable event" under the law.

16   **4.  ARGUMENT**

17        **A. THE "REPORTABLE EVENT" MADE BY DEFENDANT TSP UNDER
        SECTION 1681C(A)(5) IS THE DATE CRIMINAL CHARGES WERE
18        DISMISSED, NOT THE DATE THEY WERE FILED; THUS THE REPORT
        WAS PROPER UNDER 15 U.S.C. SECTION 1681c(a)(5).**
19

20        Plaintiff claimed in relevant part in the FAC that TSP violated 15 U.S.C. section

21   1681c(a)(5) because the Subject Report contained information that preceded the date of the

22   report by more than 7 years. FAC, ¶ 57.

23        15 U.S.C. section 1681c(a) states in relevant part:

24        (a) Information excluded from consumer reports. Except as authorized under
        subsection (b), no consumer reporting agency may make any consumer report
25        containing any of the following items of information:

26            …

27            (5) Any other adverse item of information, <u>other than records of
            convictions of crimes</u> which antedates the report by more than seven years.

28

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                    3
DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS

SER094

1  15 U.S.C. § 1681c(a) (emphasis added).  The term "adverse item of information" is not

2  further defined in the statute. *Id.*

3      The Subject Report, submitted in February 2010, references Case No. 188935, which

4  indicates that a criminal case against plaintiff was filed on May 16, 2000 but was not

5  disposed of by way of dismissal until March 2, 2004.  Therefore, the Subject Report was

6  made 6 years from the disposition of the case (i.e., within the 7 year time period).

7      In its ruling, this Court relied upon FTC interpretations from 2011 which provide that

8  the seven year period for criminal record information other than convictions runs from "the

9  date of the reported event."  See Federal Trade Commission, <u>40 Years of Experience with the</u>

10 <u>Fair Credit Reporting Act: An FTC Staff Report with Summary Interpretations</u> (July 2011),

11 available at http://www.ftc.gov/os/2011/07/110720fcrareport.pdf, pg. 57.  The Court then

12 determined that the "date of the reported event" meant the date criminal charges were

13 initiated rather than the date they were dismissed.  (Order Granting In Part and Denying In

14 Part Defendant's Motion to Dismiss ("Order"), pg. 9, ln. 24 to pg. 10, ln. 2, on file with the

15 Court herein).

16     However, with respect, the Court went astray in assuming that the "adverse item of

17 information" (under the words of the statute) or "reported event" (under FTC interpretation)

18 can only be the date criminal charges are filed.  Rather, the plain meaning of these terms

19 includes the date of dismissal of criminal charges against a defendant. *Consumer Prod. Safety*

20 *Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("the starting point for interpreting a

21 statute is the language of the statute itself. Absent a <u>clearly expressed legislative intention to</u>

22 <u>the contrary</u>, that language must ordinarily be regarded as conclusive.")  In this regard, it is

23 important to note that the existence of a case is not the "reportable event".  Rather, it is what

24 happens in the case (i.e. a dismissal, conviction, etc.) that is reportable, and is ultimately the

25 information that is important to report.  This is exactly what TSP did – reporting the

26 "reportable event" of a dismissal of a criminal case within the 7 year reporting period.

27     In the course of so reporting, TSP disclosed, as it was required to do by law (see the

28 "maximum possible accuracy" law – 15 U.S.C. section 1681e(b)), the course of proceedings,

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                          4

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

1   including the filing of charges against plaintiff dating back to 2000.  The fact that in the

2   course of reporting a dismissal TSP made mention of the filing date should not convert a

3   reportable event into a violation of the law.   It would be illogical and misleading for TSP to

4   simply list the dismissal date for criminal charges and omit the nature of the charges and the

5   date they were filed simply because parts of the same proceeding occurred outside the

6   reportable period.

7          This interpretation is supported by the FTC.   The FTC has never stated that either

8   "adverse item of information" (as described in the statute) or "date of reported event" (as

9   interpreted by the FTC) means the date criminal charges were filed.  In fact, the last previous

10  FTC interpretation on this precise issue, in 1990, stated that the applicable date for criminal

11  cases resulting in something other than dismissal was the date of disposition.  16 C.F.R. Pt.

12  600, App. 605(a)(5)(2010) ("if charges are dismissed at or before trial, or the consumer is

13  acquitted, the date of dismissal or acquittal is the date of disposition.")  Since then, there has

14  been no subsequent determination by the FTC that the date of dismissal is no longer the

15  applicable date triggering the seven year period under the FCRA.  In fact, as this Court

16  correctly pointed out, Congress stated no clear legislative intent, or any intent at all, to outlaw

17  dismissals from being reportable events from which the seven-year limitation begins to run.

18  See *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).

19         The facts show a history of treating the date of disposition as the operative date.

20  Under these facts, this Court should not assume, in a case of first impression, that the

21  legislature or FTC intended to so drastically overhaul the FCRA.  This is especially so given

22  the significant consequences of a change in the law: reporting that has previously been lawful

23  could suddenly subject agencies to huge liability from individuals when agencies report on

24  the disposition of criminal and civil proceedings.

25         Moreover, under this Court's interpretation, a recent late payment on a credit card

26  would no longer be a "reportable event" simply because the credit card was opened more than

27  seven years prior.  Yet that is exactly the consequences of this Court's interpretation with

28  regard to a reported event. And here, the problem is the same as with the example of not

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1  being able to report the existence of the credit card and the prior satisfactory payment history

2  in order to report the true meaning of the recent "reportable event." Such information would

3  be confusing and misleading to the recipient of this information, as it is impractical to

4  separate out such intertwined data.  Such information could also be extremely prejudicial; to

5  the person being reported on, if the omission made it appear the conduct was worse than it

6  actually was and caused a rejection of housing requests or other services; to the recipient of

7  this requested information, if the omission caused them to believe the conduct was less

8  serious than it actually was based on omitted information about the course and type of

9  proceedings. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) ("a

10  credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is

11  patently incorrect, or because it is misleading in such a way and to such an extent that it can

12  be expected to adversely affect credit decisions.'") (citations omitted); *Kates v. Crocker Nat'l*

13  *Bank*, 776 F.2d 1396, 1397 (9th Cir. 1985) ("The purpose of the Fair Credit Reporting Act,

14  15 U.S.C. § 1681 et seq., is to protect consumers from the transmission of inaccurate

15  information about them.")  It is hard to believe Congress intended such a result.  Defendant

16  TSP respectfully submits that this scenario points out the "unworkability" of the FCRA under

17  this Court's interpretation.[1]

18        TSP respectfully submits that the Court appears to have erred based on its belief that

19  section 1681c(a)(5) prohibits disclosure of criminal record information more than seven years

20  after "the reported criminal event" of charges only being filed (Order, pg. 9, ln. 24 to pg. 10,

21  ln. 2).  The word "criminal" does not appear in the FTC interpretation upon which the Court

22  relies. See Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting

23  Act: An FTC Staff Report with Summary Interpretations (July 2011), pg. 57.  The insertion of

24  the word "criminal" may have led the Court to conclude that the "reported" event must be the

25

26  [1] To hold that both the date of filing and the date of disposition are both the "reportable

27  event" would also put TSP in an untenable legal bind.  It would require TSP to list the date of
disposition while withholding any "intertwined" information from the proceeding more than

28  7 years old, thus violating the "maximum possible accuracy" rule of 15 U.S.C. § 1681e(b).

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                    6
DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS

SER097

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1   date criminal charges began (the criminal event) rather than the resolution of proceedings in

2   2004. The filing of criminal charges pales in significance and gravity to its ultimate resolution

3   to both the consumer and the recipient of the report.

4         Based on the above, TSP properly reported the criminal proceedings dismissed against

5   plaintiff in 2004.  Therefore, the contents of the Subject Report are timely under 15 USC §

6   1681c(a)(5).

7   **B. THIS COURT CONFLATED THE TEXT AND FTC INTERPRETATIONS**

8       **OF SECTION 1681C(A)(2) AND FORMER SECTION 1681(C)(A)(5) WITH**
        **THE CURRENT VERSION OF SECTION 1681(C)(A)(5) , WHICH HAS**

9       **NOT BEEN CHANGED IN ANY MATERIAL RESPECT.**

10        Previous FTC interpretations confirm that the date that matters for purposes of the

11  seven year period for reporting criminal proceedings is the date of the "reportable event" of

12  disposition of proceedings, not the date of filing.  As to the computation of the reporting of

13  such information, the FTC included this comment on the FCRA in 1990:

14        The seven year reporting period runs <u>from the date of disposition,</u> release or parole, as

15        applicable. For example, <u>if charges are dismissed at or before trial, or the consumer is</u>
          <u>acquitted, the date of such dismissal or acquittal is the date of disposition.</u>

16  16 C.F.R. Pt. 600, App. § 605 (emphasis added).

17        This Court in its Order correctly noted that since these 1990 FTC interpretations, the

18  FCRA has been amended.  *However, the amendments to FCRA did not amend the applicable*

19  *statutory language at issue in this case.*   In particular, the current version of section

20  1681c(a)(5) is based on former section 1681c(a)(6), which contained the exact same language

21  as current section 1681c(a)(5) as to non-conviction offenses.  See 15 U.S.C. § 1681c(a)(5)

22  (2010); 15 U.S.C. § 1681c(a)(6) (1997).   The current statutory language of section

23  1681c(a)(5), as interpreted by the most recent FCRA interpretations, is that the operative date

24  is the "date of the reported event" – the date the criminal charges were dismissed.  15 U.S.C.

25  § 1681c(a)(5).  The FTC has not issued any new interpretation stating that the revised FCRA

26  includes a new operative date as to non-conviction proceedings.  The lack of clarity from the

27  FTC as to what a "reported event" is does not provide grounds for assuming the standing

28  operative date has been overhauled or that certain material events are no longer reportable on

1  their own.  This Court appears to have conflated the changes to section 1681c(a)(2) and

2  former section 1681c(a)(5) with current section 1681c(a)(5), *which text remains nearly*

3  *unchanged from former section 1681c(a)(6)*.  As such, the former FTC discussion of a

4  dismissal being the operative date is still instructive of the fact that dismissals remain

5  independent reportable events absent a clearly expressed intent from congress to the contrary.

6  See *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).

7      Importantly, as this Court noted in calling this case one of first impression, it has never

8  been held that the operative date for non-conviction proceedings is the date of filing.  In such

9  a situation, the Court should err on the side of not overhauling previous interpretations of the

10 FCRA in favor of an un-expressed and un-intended outcome.

11     Respectfully, the Court erred in the weight it placed on the removal of the term "date

12 of disposition" from the revised FCRA.  Specifically, prior to 1998, section 1681c(a)(5)

13 stated that no consumer report should contain "Records of arrest, indictment or conviction of

14 crime which, from date of disposition, release, or parole, antedate the report by more than

15 seven years." 15 U.S.C. § 1681c(a)(5) (1997) (emphasis added).  The date of disposition

16 language clearly applies to the conviction of a crime (a record of arrest has no disposition

17 date).  Thereafter, the statute was amended to consolidate all convictions and other criminal

18 proceedings into the catch-all provision of revised section 1681c(a)(5), which provides that

19 any other adverse item of information, *other than convictions*, which antedates the report by

20 more than seven years should not be reported.  15 U.S.C. § 1681c(a) (2010).  Criminal

21 convictions can be reported indefinitely.  Therefore, there is no further need to include the

22 "date of disposition" language in the statute.  Consequently, its exclusion should not be read

23 by this Court as a change in the law as to the operative date for reporting criminal dismissals.

24 This Court should not read such a drastic change in the law into the FCRA absent some

25 specific Congressional statement on the subject.  See *Consumer Prod. Safety Comm'n v. GTE*

26 *Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Consequently, the Court erred in its reliance on this

27 change in interpreting the FCRA.

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    Therefore, the Subject Report properly reported all information and the FAC fails to

2    state any cause of action under 15 USC § 1681c and should be dismissed.

3    **C.  GOOD PUBLIC POLICY SUPPORTS HOLDING THE OPERATIVE DATE**

4    **UNDER THE FCRA FOR CRIMINAL PROCEEDINGS RESULTING IN**
     **DISMISSAL SHOULD BE THE DATE OF DISMISSAL.**

5         As described above, there is no evidence of an intent by the Legislature to make

6    dismissals a non-reportable event under the FCRA.  A dismissal is clearly a "reported event"

7    under the FCRA in the absence of specific statements to the contrary.  It is useful to look at

8    the context of the entire statute to determine what operative date makes sense under the

9    FCRA.

10        Setting the operative date as the date criminal charges are filed puts reporting agencies

11   in an untenable bind.   On the one hand, reporting agencies are required to report with

12   maximum possible accuracy (15 U.S.C. section 1681e(b));  this should clearly include

13   reporting criminal proceedings which occurred <u>and are disposed of</u> during the seven year

14   reporting period.   On the other hand, reporting agencies are told by the Court, in a case of

15   first impression, that the operative date is the date of filing of criminal charges.   Reporting

16   agencies could thus be in a predicament as to what and when to report.   In such a situation,

17   one would expect the government to have clearly spelled out a change in the operative date

18   under the FCRA if they intended to do so.   The fact that the government did not is a clear

19   indication that the operative date for non-conviction proceedings remains the date of

20   dismissal.

21        Second, under this Court's interpretation, civil proceedings are given more liberal

22   treatment than criminal proceedings.   For example, the operative date for a civil judgment

23   would be the date of judgment while a criminal proceeding with a dismissal on the same day

24   as the civil judgment might not be reportable.  Thus, someone who is charged with a serious

25   felony who has his case dismissed due to a technicality would receive more protection under

26   the FCRA than a person who was sued for not paying his electric bills and had a judgment

27   against him for $250.   Congress could not have intended such a result.   *Safeco Ins. Co. of*

28   *Am. v. Burr*, 551 U.S. 47, 70 (2007) (Court rejected argument that subjective bad faith should

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                             9

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS

1  be taken into account in assessing liability under the FCRA, as Congress could not have

2  intended to impose liability on those who adopt one of several reasonable interpretations of

3  the law).

4  　　　　In this case, the charge against plaintiff may have been dismissed based on an

5  agreement with the prosecutor to do community service or because of a technicality.  Public

6  safety, part of Congress' stated intent in permitting reporting of criminal history, is not served

7  by interpreting the law to prevent the reporting of the final outcome of a criminal case (within

8  the seven year period).

9  　　　　Congress could not have intended to make civil proceedings more reportable than

10  serious criminal proceedings without making any statement on the subject.  Nor could it have

11  intended to change the operative date for disclosure of proceedings from date of resolution to

12  date of filing without saying so. To be certain, Congress knew to use the term "date of entry"

13  if that is what they intended for criminal cases. See 15 U.S.C. Section 1681c(a)(2). The fact

14  that Congress threw criminal proceedings into the catch-all under Section 1681c(a)(5), as

15  evidenced by the appearance of the conviction exception in 1681c(a)(5), and did not use the

16  term "date of entry" for all criminal court proceedings is most telling.

17  　　　　*Tides v. Boeing Co.*, 644 F.3d 809, 815 (9th Cir. 2011) ("'[W]hen Congress uses

18  different text in 'adjacent' statutes, it intends that the different terms carry a different

19  meaning.'") (citations omitted); see also *Bd. of Educ. v. Mergens*, 496 U.S. 226, 242 (1990).

20  　　　　Therefore, plaintiff's claims should be dismissed.

21  **D. ANOTHER STATE COURT HAS STATED THAT IN THE CASE OF**

22  **PROCEEDINGS RESULTING IN DIMISSAL, THE APPLICABLE**
    **TRIGGER DATE FOR THE SEVEN YEAR REPORTING PERIOD IS THE**

23  **DATE OF DISMISSAL, NOT THE DATE OF FILING.**

24  　　　　The Washington state version of the Fair Credit Reporting Act provides in relevant

25  part that no consumer reporting agency may make a consumer report regarding "suits and

26  judgments that, <u>from date of entry,</u> antedate the report by more than seven years or until the

27  governing statute of limitations has expired, whichever is the longer period."  Wash. Rev. C.

28  § 19.182.040(1)(b) (emphasis added).

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                                10

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1   This provision was recently interpreted by the Washington Court of Appeal in

2   *Hundtofte v. Encarnacion*, 280 P.3d 513, 525 (2012).  In *Hundtofte*, the court found that

3   based on this provision, "it is not unlawful for a consumer reporting agency to report the

4   existence of a lawsuit within seven years of that lawsuit."  *Id.*  Thus, in regard to a tenant's

5   request for redaction of their unlawful detainer record, the court of appeal noted and approved

6   of the trial court's finding that "'[i]t appears that [this provision of the Fair Credit Reporting

7   Act] will prohibit consumer reporting agencies from reporting this action to prospective

8   housing providers on or after November 12, 2016,' <u>seven years following the dismissal of the</u>

9   <u>action</u>." *Id.* (emphasis added).  Thus, the court recognized that the meaning of "date of entry"

10  is not seven years from the  date a case is initiated, but seven years from the date an action is

11  dismissed.     The case also more broadly suggests that when reporting criminal or civil

12  proceedings, the operative date marking the start of the seven year reporting period is the date

13  the proceeding is dismissed, not the date the case is filed.

14      Similarly here, the applicable date for the Subject Report's references to plaintiff's

15  criminal charge is not the date the charge was filed but <u>the date the charge was dismissed –</u>

16  <u>March 2, 2004</u>.  This date is less than 7 years before the report date.  Based on this report

17  date, TSP lawfully complied with the FCRA and plaintiff's claims should be dismissed.

18   **E.  IN THE ALTERNATIVE, UNDER *SAFECO INS. CO. OF AM.*,**
19        **PLAINTIFF'S FCRA CAUSES OF ACTION SHOULD BE DISMISSED TO**
         **THE EXTENT THEY ALLEGE WILLFUL VIOLATIONS OF THE LAW.**

20      The plaintiff alleges that TSP's violations of the FCRA were willful or alternatively,

21  grossly negligent. (FAC, ¶¶ 54-70).  In order for liability to attach under 15 U.S.C. section

22  1681n (willful noncompliance), a reporting agency must act knowingly or recklessly in

23  violation of the law.  *Safeco Ins. Co. of Am. v. Burr, supra*, 551 U.S. at 52, 57.

24      In *Safeco Ins. Co. of Am.*, the Supreme Court made clear that "a company subject to

25  FCRA does not act in reckless disregard of it unless the action is not only a violation under a

26  reasonable reading of the statute's terms, but shows that the company ran a risk of violating

27  the law substantially greater than the risk associated with a reading that was merely

28  careless."  *Id.* at 70.  The Court found that Safeco's reading of the statute, though erroneous,

Case 2:12-cv-05808-SVW-AGR   Document 20   Filed 10/08/12   Page 16 of 17   Page ID #:389

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1  was reasonable, as its reading of the statute had foundation in the text. *Id.* Most importantly,

2  "[t]his is not a case in which the business subject to the Act had the benefit of guidance from

3  the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away

4  from the view it took." *Id.* To the contrary, ". . . no court of appeals had spoken on the issue,

5  and no authoritative guidance has yet come from the FTC . . ." *Id.*

6         Similarly here, even if TSP is incorrect in its reading of the FCRA, such reading is

7  manifestly not objectively unreasonable under the circumstances. Of significance, this Court

8  found in its Order that the issue of reporting criminal dismissals is one of first

9  impression. See Order pg. 8, lines 3-5. Moreover, as outlined above, TSP reasonably relies

10  on the statutory text and prior FTC interpretations in arguing that the date of dismissal is the

11  proper operative date under the FCRA. As in *Safeco*, no court of appeals has spoken on this

12  issue and there are no definitive statements from Congress or the FTC contradicting TSP's

13  interpretation. Based on the above, and this Court's findings of "first impression" in its own

14  Order, TSP's actions cannot be found to be willful as a matter of law and it cannot be liable

15  under 15 U.S.C. section 1681n. Consequently, as a direct result of this Court's own rulings,

16  plaintiff's FCRA causes of action fail to state a claim in light of the fact that TSP's

17  interpretation of the law is indisputably reasonable, and, although determined to be erroneous

18  under this Court's interpretation, had foundation in the text of the statutes and prior FTC

19  commentary. Thus, Plaintiff's First and Second Causes of action should be dismissed to the

20  extent they allege willful violations of the law.

21         **F. REFERENCES IN THE ORDER TO SECTION 1861(C) SHOULD BE**
        **AMENDED TO REFERENCE SECTION 1681(C).**

22

23         In the Order, the Court makes several inadvertent references to 15 U.S.C. section 1681

24  as "section 1861c(a)(5)" which should be amended to state "section 1681c(a)(5)". (see

25  Order, pg. 6, lns. 12-19, pg. 9, ln. 2).

26  **5. CONCLUSION.**

27         Based on the foregoing, TSP respectfully requests that this Court reconsider its Order

28  and dismiss plaintiff's first cause of action for violation of the FCRA, 15 U.S.C. section

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                              12

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS

1  1681c(a)(5), and second cause of action as to the claimed violation of 15 U.S.C. section

2  1681e(a).

3

4  Dated: October 8, 2012

5                                    **Jacobson, Russell, Saltz & Fingerman LLP**

6

7                              _____/S/_____

8                                    Michael J. Saltz, Esq.,
                                     Attorneys for Defendant The Screening Pros, LLC

9

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                          13

**DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S
MOTION TO DISMISS**

1  THE LAW OFFICES OF DEVIN H. FOK
   Devin H. Fok, Esq. (SBN #256599)
2  P.O. Box 7165
   Alhambra, California 91802-7165
3  Ph: (310) 430-9933
   Fax: (323) 563-3445
4  devin@devinfoklaw.com

5  A NEW WAY OF LIFE REENTRY PROJECT
   Joshua E. Kim, Esq. (SBN #257260)
6  P.O. Box 875288
   Los Angeles, California 90087
7  Ph: (323) 563-3575
   Fax: (323) 563-3445
8  joshua@anewwayoflife.org

9  Attorneys for Plaintiff
   GABRIEL FELIX MORAN

10

11                 UNITED STATES DISTRICT COURT

12                CENTRAL DISTRICT OF CALIFORNIA

13  GABRIEL FELIX MORAN,              )  CASE NO.: 2:12-CV-05808-SVW-AGR
                                      )
14            Plaintiff,              )  PLAINTIFF'S OPPISITION TO
                                      )  DEFENDANT'S MOTIONF FOR
15                                    )  RECONSIDERATION OF COURT
                                      )  RULING ON MOTION TO DISMISS
16        vs.                         )  PLAINTIFF'S COMPLAINT PURSUANT
                                      )  TO FED. R. CIV. PROC. 12(b)(6)
17                                    )
    THE SCREENING PROS, LLC., a California )
18  corporation; and DOES 1-10 inclusive, )  Complaint Filed: February 2, 2012
                                      )  First Amended
19            Defendants.             )  Complaint Filed: June 7, 2012
                                      )  Removed: July 5, 2012
20                                    )  Trial Date: November 20, 2012
                                      )
21                                    )  Hearing Date: November 5, 2012
                                      )  Time: 1:30pm
22                                    )  Courtroom: 6, 2nd Floor
                                      )  Judge: Hon. Stephen V. Wilson
23                                    )

24

25

26

27

28

    PLAINTIFF'S OPPOSITION TO MOTION FOR RECONSIDERATION

**TABLE OF CONTENTS**

PAGE

I.     INTRODUCTION ............................................................................................ 1

II.    DEFENDANT HAS NOT SATISFIED THE REQUIREMENTS FOR MOTION FOR
       RECONSIDERATION ................................................................................... 1

       A.  A..None Of Defendant's Arguments Is New Or Persuasive To Warrant Reversing The
           Court's Previous Decision ......................................................................... 3

       B.  B......The 1998 Changes To The Fair Credit Reporting Act Dramatically Changed The
           Reporting Of Non-Conviction Records Under The Act ............................... 3

       C.  C...Defendant's "Public Policy" Argument Reveals Precisely The Kind Of Harm That
           The Fair Credit Reporting Act Is Intended To Guard Against ..................... 4

III.   DEFENDANT'S NEW LEGAL ARGUMENT REGARDING PLAINTIFF'S
       WILLFULNESS ALLEGATION IS DEEMED WAIVED BECAUSE DEFENDANT
       FAILED TO RAISE IT EARLIER................................................................... 6

IV.    CONCLUSION.............................................................................................. 6

# TABLE OF AUTHORITIES

**Cases**

*Amesco Exports, Inc. v. Associated Aircraft Mfg. & Sales, Inc.,*
   87 F.Supp.2d 1013 (C.D.Cal. 1997) ....................................................... 6

*Dun & Bradstreet v. Greenmoss Builders,*
   472 U.S. 749 (1985)............................................................................... 5

*Kona Enters., Inc. v. Estate of Bishop,*
   229 F.3d 877 (9th Cir. 2000) ................................................................. 1

*Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
   571 F.3d 873 (9th Cir. 2009) ................................................................. 1

*Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,*
   762 F.2d 557 (7th Cir.1985) .................................................................. 6

*Serrano v. Sterling Testing Systems, Inc.,*
   557 F.Supp.2d 688 (E.D. Pa. 2008) ...................................................... 4

*United National Ins. Co. v. Spectrum Worldwide, Inc.,*
   555 F.3d 772 (9th Cir. 2009) ................................................................. 1

*US DOJ v. Reporters Committee for Freedom of the Press et al.,*
   489 U.S. 749 (1989)............................................................................... 5

*Westbrook v. County of Los Angeles,*
   27 Cal.App.4th 157 (2nd App. Dist. 1994)............................................ 5

**Rules & Statutes**

15 U.S.C. § 1681(a)(4).......................................................................... 3, 5

15 U.S.C. § 1681(b) .................................................................................. 4

15 U.S.C. § 1681c(a)............................................................................. 3, 5

15 U.S.C. § 1681c(a)(5)............................................................................ 4

Local Rule 7-18................................................................................... 1, 3

ii

## I.    INTRODUCTION

Having failed to persuade the Court in its motion to dismiss, Defendant engages in an unjustified attempt to have another bite at the apple with its motion for reconsideration. However, Defendant completely fails to justify its bid for this extraordinary remedy of reconsideration.  Even on its own merit, Defendant's motion for reconsideration fails.  As the Court previously reasoned, the authority to which Defendant cites is an agency opinion on an old law that is neither binding nor persuasive.  And the agency's current opinion is consistent with the Court's interpretation of the new law.  Finally, the so-called "public interest" that Defendant argues for the first time in its motion for reconsideration is ill-served by the very interpretation that Defendant offers.  There is no basis in law or fact for the Court to overrule its earlier well-reasoned ruling.

## II.    DEFENDANT HAS NOT SATISFIED THE REQUIREMENTS FOR MOTION FOR RECONSIDERATION

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also United National Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).  A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters.*, 229 F.3d at 890.  Accordingly, Local Rule 7-18 requires that a motion for reconsideration be based on:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts

presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

In its motion for reconsideration, Defendant argues that there was "a manifest showing of a failure to consider material facts presented to the Court before such decision." To the contrary, the Court carefully analyzed the submitted legal authority and the facts submitted by the parties in rendering its ruling.

> Having clarified the applicable law, the Court now turns to the factual allegations of this case. The Report does not mention Plaintiff's arrest per se. Rather, the Report allegedly discloses that on May 16, 2000, Plaintiff was charged with one count of being under the influence of a controlled substance. This constitutes an "adverse item of information" under section 1681c(a)(5), and thus the seven-year window began on May 16, 2000. Because Defendant delivered the Report on May 5, 2010, the seven-year reporting period for this criminal event had long expired. Therefore, Plaintiff has stated a claim that Defendant violated section 1681c(a)(5). Accordingly, the Court DENIES the motion to dismiss the First Cause of Action.

Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ("Order"), *at* pp.18-19. Defendant does not submit any new facts in its motion. Rather, Defendant asserts that the Court failed to "consider the undisputed fact that that TSP reported the 'event' that criminal proceedings had concluded against plaintiff on May 2, 2004, well within the seven year reporting period of the FCRA, and which constitutes the 'adverse item of information' or 'reportable event' under the law." MFR, *at* p.3, ll.9-15.

Contrary to Defendant's assertion, the Court *did* consider the fact that the relevant charge against Plaintiff was dismissed on May 2, 2004. *See* Order, *at* p.2 ("Plaintiff was never convicted and the charge was dismissed on March 2, 2004"); pp. 7-8 ("Defendant argues, however, that the event was not obsolete because the seven-year period commenced on the date the charge was dismissed, March 2, 2004, which was less than seven years before the Report was furnished."). It's just that the Court did not come to the particular *legal* conclusion or interpretation as Defendant would have liked the Court to. *See* MFR, *at* p.4 ("the Court went astray in assuming that the [operative statutory language] can only be the date criminal charges are filed"); *at* p.5 ("Under these facts, this Court should not assume, in a case of first impression, that the legislature or FTC intended to so drastically overhaul the FCRA"); *at* p.8 ("the Court erred in the weight it placed on the removal of the term "date of disposition" from the revised

2

PLAINTIFF'S OPPOSITION TO MOTION FOR RECONSIDERATION

1    FCRA"). None of these complaints addresses the alleged failure of this Court to consider any

2    material fact; instead, they all find fault with the conclusion that the Court has reached *after*

3    considering all material facts and arguments. The Court should not suffer Defendant to re-make

4    the very same legal argument that it had previously considered and rejected. L.R.7-18 ("No

5    motion for reconsideration shall in any manner repeat any oral or written argument made in

6    support of or in opposition to the original motion"). Defendant's motion does not satisfy the

7    requirements of Local Rule 7-18. Accordingly, it should be denied.

### A.    None Of Defendant's Arguments Is New Or Persuasive To Warrant Reversing The Court's Previous Decision

9         Even if Defendant's motion is reviewed on its merit, Defendant provides no reason to

10   reverse the Court's previous ruling. Defendant argues that, under its interpretation of the FCRA,

11   the dismissal of Plaintiff's charge is the operative date for calculating the 7-year reporting period

12   because (1) the Court's interpretation leads to an unworkable result; (2) an outdated opinion by

13   the FTC is still valid; and (3) public policy supports its interpretation. MFR, *passim*.

14   Defendant's first argument is meritless. The Court's interpretation is "unworkable" only if

15   Defendant insists on reporting Plaintiff's record.[1] It is quite "workable" if Defendant chooses to

16   obey the law and *not* report it. Defendant's other arguments are equally meritless and will be

17   discussed in turn below.

### B.    The 1998 Changes To The Fair Credit Reporting Act Dramatically Changed The Reporting Of Non-Conviction Records Under The Act

19        As the Court previously noted, the 1990 FTC commentary to which Defendant cites is

20   based on "the pre-1998 version of the FCRA [which] looked markedly different then." Order, *at*

21   *p.* 9. In its motion for reconsideration (and previous papers), Defendant has consistently tried to

---

[1] Defendant seems to believe that the FCRA exists only for the benefit of consumer reporting agencies and employers and should always be interpreted to allow for more disclosure. One of the act's main purposes, however, is to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and *a respect for the consumer's right to privacy*." 15 U.S.C. § 1681(a)(4). Perhaps Defendant should realize that respecting one's right to privacy often means *not* disclosing information, as evidenced by the general prohibition against disclosure explicit in the beginning sentence of 15 U.S.C. § 1681c(a): "*no* consumer reporting agency may make *any* consumer report containing *any* of the following items of information" (emphasis added).

1  downplay the significance of the changes.  The Court correctly realized the magnitude of these

2  changes, however, and gave proper weight to the 1990 FTC commentary *in light of* "the

3  agency's recent commentary [which] harmonizes the sections to the principle that the seven-year

4  period should commence at the start, not the end of the criminal process."  Order, *at pp. 7-9*.

5         Without rehashing the Court's extensive and well-reasoned argument, Plaintiff simply

6  notes that the term "indictment" dropped out of the post-1998 FCRA altogether—and the terms

7  "arrest" and "conviction" have been separated out into different subsections containing different

8  operative dates for the purpose of calculating the relevant reporting time period.  The changes are

9  substantial and create "markedly different" laws regarding reporting of arrest, conviction, and

10  indictment records. Order, P. 8.

11         Prior to 1998, consumer reporting agencies were prohibited from reporting *any*

12  information containing arrest, indictment, or conviction, unless an exception (in the form of a 7-

13  year rule with the operative starting date of disposition, release, or parole) applied.  After 1998,

14  consumer reporting agencies are generally prohibited from disclosing any information beyond 7

15  years from the date of "entry" except for the case of a criminal conviction.  Plaintiff has argued

16  (and this Court has agreed) that, to the extent that charge records imply arrest (as they always

17  do), those records are now prohibited from disclosure under subsection (a)(5).  *See also Serrano*

18  *v. Sterling Testing Systems, Inc.*, 557 F.Supp.2d 688, 692 (E.D. Pa. 2008) (holding that a mere

19  suggestion as to the existence of an outdated arrest record violates 15 U.S.C. § 1681c(a)(5) and,

20  quite likely, (a)(2)).

21        **C.    Defendant's "Public Policy" Argument Reveals Precisely The Kind Of Harm**
22        **That The Fair Credit Reporting Act Is Intended To Guard Against**

23        Defendant's third argument is not only meritless but should be offensive to the Court.

   Incredibly, Defendant misrepresents to the Court that "[p]ublic safety [is] part of Congress'
24
   stated intent in permitting reporting of criminal history."  It is not.
25
        The Fair Credit Reporting Act has an explicit statement of Congressional findings
26
   regarding its intended purposes, codified in 15 U.S.C. § 1681(b), which states:
27
            It is the purpose of this subchapter to require that consumer reporting agencies
28          adopt reasonable procedures for meeting the needs of commerce for consumer

---
4

PLAINTIFF'S OPPOSITION TO MOTION FOR RECONSIDERATION

1    credit, personnel, insurance, and other information in a manner which is fair and
equitable to the consumer, with regard to the confidentiality, accuracy, relevancy,
2    and proper utilization of such information in accordance with the requirements of
this subchapter.

3   Public safety, while an important goal of the criminal justice law, is *not* stated here, though

4   "confidentiality" *is*.  In addition, part of the stated congressional findings underlying the Act is

5   "the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).  *See also Dun & Bradstreet v.*

6   *Greenmoss Builders*, 472 U.S. 749, 759-760 (1985) (holding that consumer information reported

7   under the FCRA is "of purely private concern"); *US DOJ v. Reporters Committee for Freedom of*

8   *the Press et al.*, 489 U.S. 749, 761-767 (1989) (recognizing "the practical obscurity" of an old

9   criminal record and privacy interests in it); *Westbrook v. County of Los Angeles*, 27 Cal.App.4th

10  157, 165-66 (2nd App. Dist. 1994) (holding that "[t]he state constitutional right of privacy

11  extends to protect [criminal] defendants from unauthorized disclosure of criminal history

12  records").

13         Incredibly, looking at Plaintiff's charge record that *did not* result in a conviction,

14  Defendant turns the fundamental assumption of this country's justice system on its head,

15  "innocent until proven guilty."  Knowing that no conviction resulted, Defendant goes on to

16  suggest that Plaintiff was guilty, speculating wildly that "the charge against plaintiff might have

17  been dismissed on an agreement with the prosecutor to do community service or because of a

18  technicality."  MFR, *at* p.10.  It does not seem to occur to Defendant that Plaintiff is legally

19  innocent of the charge against him.   To the extent that public safety is implicated in this case, it

20  is ill-served when we engage in baseless conjectures about a mere charge that was *dismissed* and

21  deny employment or housing to people based on such conjectures.  And, to the extent that the

22  FCRA weighs the kind of restless gossip that Defendant wishes the Court to engage in, against

23  Plaintiff's privacy interest in 15 U.S.C. § 1681c(a), the Court correctly ruled in accordance with

24  the Act's stated public interest in Plaintiff's privacy and confidentiality.

25  //

26

27  //

28

**III.   DEFENDANT'S NEW LEGAL ARGUMENT REGARDING PLAINTIFF'S WILLFULNESS ALLEGATION IS DEEMED WAIVED BECAUSE DEFENDANT FAILED TO RAISE IT EARLIER**

As this Court noted in an earlier case, it is well-established that "if a party simply inadvertently failed to raise the arguments earlier, the arguments are deemed waived." *Amesco Exports, Inc. v. Associated Aircraft Mfg. & Sales, Inc.*, 87 F.Supp.2d 1013, 1014 (C.D.Cal. 1997) (citing *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985)). And a motion for reconsideration should not "serve as the occasion to tender new legal theories for the first time." *Publishers Resource*, 762 F.2d, *at* 561 (citing *Keen Corp v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665-66 (N.D.Ill. 1982)).

For the first time in this proceeding, Defendant asks the Court to dismiss Plaintiff's causes of action based on its theory that Defendant could not have acted willfully. Because Defendant failed to raise this argument earlier, it is deemed waived. And the Court should reject Defendant's attempt to tender new legal theories for the first time in its motion for reconsideration.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion for reconsideration be denied in its entirety.

DATED: October 15th, 2012                           A NEW WAY OF LIFE REENTRY PROJECT


By: _____/S/_____
Joshua E. Kim
Attorney for Plaintiff GABRIEL F. MORAN

PLAINTIFF'S OPPOSITION TO MOTION FOR RECONSIDERATION

1  **JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
2  Michael J. Saltz, Esq.  SBN 189751
   msaltz@jrsfllp.com
3  Colby A. Petersen, Esq. SBN 274387
   cpetersen@jrsfllp.com
4  G. Austin Sperry, Esq.  SBN 278535
   asperry@jrsfllp.com
5  10866 Wilshire Boulevard, Suite 1550
   Los Angeles, CA  90024
6  Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

7  Attorneys for Defendant THE SCREENING PROS, LLC

8
9                    **UNITED STATES DISTRICT COURT**

                     **CENTRAL DISTRICT OF CALIFORNIA**
10

| GABRIEL FELIX MORAN, | Case No.: 2:12-cv-05808-SVW-AGR |
|---|---|
| Plaintiff, | **DEFENDANT THE SCREENING PROS, LLC'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF COURT RULING ON MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO *FED. R. CIV. PROC.* 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.** |
| vs. | |
| THE    SCREENING    PROS,    LLC   a California   Corporation;   and   DOES   1-10 inclusive, | |
| Defendants. | |
| | Complaint filed:  February 2, 2012 |
| | First Amended |
| | Complaint Filed:  June 7, 2012 |
| | Removed:  July 5, 2012 |
| | Trial Date:  November 20, 2012 |
| | Hearing Date:  November 19, 2012 |
| | Time:  1:30 p.m. |
| | Courtroom.:  6 – 2nd Floor |
| | Judge:  Hon. Stephen V. Wilson |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that defendant The Screening Pros, LLC ("TSP") hereby submits the following Reply in support of its Motion for Reconsideration.

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                                         i

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON
DEFENDANT'S MOTION TO DISMISS

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# TABLE OF CONTENTS

1.  INTRODUCTION. ......................................................................................1

2.  TSP RESPECTFULLY SUBMITS THAT THIS COURT CLEARLY ERRED IN FAILING TO CONSIDER THE FACT THAT THE FCRA AND THE FTC INTERPRETATIONS DEMONSTRATE THAT "DATE OF DISPOSITION" REMAINS THE OPERATIVE DATE FOR CRIMINAL DISMISSALS. ...............2

3.  PLAINTIFF DOES NOT ACCURATELY DESCRIBE THE CHANGES TO THE FCRA; BOTH THE TEXT OF THE FCRA AND FTC STATEMENTS DEMONSTRATE THAT DATE OF DISPOSITION IS THE OPERATIVE DATE. ...................................................................................................6

4.  USING DATE OF DISPOSITION MAKES COMMON SENSE AND GOOD PUBLIC POLICY. ...............................................................................7

5.  TSP'S ARGUMENT BASED ON *SAFECO* IS PROPER AND IS BASED ON THIS COURT'S RULING THAT THE INTERPRETATION OF THIS ISSUE IS ONE OF FIRST IMPRESSION. .......................................................7

6.  CONCLUSION. ........................................................................................8

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                    ii

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

Cases

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)...........................................................8

Statutes

15 U.S.C. § 1681c(a)(5) ........................................................ passim

15 U.S.C. § 1681e(a)..............................................................8

15 U.S.C. § 1681e(b)..............................................................7

Other Authorities

16 C.F.R. Pt. 600, App. 605(a)(5)-2 (1990)......................................2

Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary Interpretations (July 2011) ........................... passim

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

<div style="writing-mode: vertical">JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909</div>

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION.

Plaintiff's claims regarding TSP's motion for reconsideration are meritless. TSP respectfully submitted that the Court made an erroneous factual finding that the 1990 Federal Trade Commission ("FTC") commentary was obsolete and that the new operative date under the Fair Credit Reporting Act ("FCRA") is the date of filing rather than the date of dismissal. This factual finding is clearly incorrect as demonstrated by endnote 194 of the 2011 FTC commentary, which demonstrates that "date of disposition" *still* is the operative date for dismissals of criminal proceedings.

Plaintiff incorrectly misled this Court to believe that the 1990 FTC commentary had been completely disavowed and had become obsolete. This is simply indisputably wrong, as the commentary regarding criminal dismissals expressly remains in effect. Specifically, first, the FTC in its 2011 report stated that the 1990 interpretations were *only partially obsolete*. Second, the 1990 commentary with regard to non-convictions in the 2011 report was expressly adopted as good commentary and citable authority. To be sure, *Endnote 194 of the 2011 FTC report cites with approval the FTC's 1990 statement that "date of disposition" is the operative date for criminal dismissals and demonstrates that this statement remains good commentary and citable authority.* Therefore, contrary to Plaintiff's misstatement of certain facts upon which this Court relied, it is undisputed that "date of disposition" remains the operative date for the reporting of criminal dismissals, and plaintiff's claims for violation of sections 1681c and 1681e(a) must be dismissed, as the factual premise upon which this Court relied to save said causes of action simply does not exist.

Moreover, if the FCRA truly were to "dramatically change" as plaintiff claims, one would expect some statement from the legislature on the matter. To the contrary, neither Congress nor the FTC has disavowed the previous rule and commentary stating that date of disposition is the operative date. In fact, the FTC in 2011 expressly stated in endnote 194 that it was not disavowing the 1990 Commentary as to dismissals. In the absence of a statement from or to anyone that such a dramatic change was intended, this Court should not infer a

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S MOTION TO DISMISS

1  drastic change in the law.  Last, the plain language of the FCRA demonstrates that a dismissal

2  is a "reportable event."  Consequently, TSP did not improperly report any information and

3  plaintiff's first and second causes of action for violation of the FCRA must be dismissed as a

4  matter of law.

5  **2.  TSP RESPECTFULLY SUBMITS THAT THIS COURT CLEARLY ERRED IN**

6  **FAILING TO CONSIDER THE FACT THAT THE FCRA AND THE FTC**

7  **INTERPRETATIONS DEMONSTRATE THAT "DATE OF DISPOSITION"**

8  **REMAINS THE OPERATIVE DATE FOR CRIMINAL DISMISSALS.**

9       The statutory text and FTC interpretations state that the operative date for purposes of

10  criminal dismissals under the "catch-all" provision of section 1681c(a)(5) is "date of reported

11  event."  *See* Federal Trade Commission, 40 Years of Experience with the Fair Credit

12  Reporting Act: An FTC Staff Report with Summary Interpretations (July 2011), pg. 57,

13  available at available at http://www.ftc.gov/os/2011/07/110720fcrareport.pdf ("2011 FTC

14  Report").   The last FTC interpretation on this precise issue, in 1990, confirmed that the

15  applicable date for criminal cases resulting in something other than a conviction is the date of

16  disposition.  16 C.F.R. Pt. 600, App. 605(a)(5)-2 (1990) ("if charges are dismissed at or

17  before trial, or the consumer is acquitted, the date of dismissal or acquittal is the date of

18  disposition.")

19       Plaintiff previously misled the Court to believe that the 1990 FTC commentary on this

20  particular issue was obsolete.  (See plaintiff's Opposition to Motion to Dismiss, pg. 6, lns. 1-2

21  ("Defendant's cited FTC opinion has absolutely no significance because it has been

22  superseded by statute following 1998 and it was included only to mislead the court.")).

23  However, in its 2011 report, the FTC stated that the 1990 interpretations had *only become*

24  *partially obsolete*.  See 2011 FTC Report, pg. 7.  Specifically, the report states:

25       Through the passage of time and the adoption of significant
          amendments to the FCRA, *the 1990 Commentary has become*
26       *partially obsolete*, and does not reflect the most current
          interpretive guidance on the FCRA. Prior to the passage of the
27       CFPA, FTC staff had been working on an updated Commentary
          as a replacement for the 1990 Commentary. As a result of the
28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001

2

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON DEFENDANT'S MOTION TO DISMISS**

CFPA, however, much of the authority of the Commission and the federal financial agencies to publish rules, regulations, or guidelines under the FCRA transfers to the CFPB. In this changed context, staff is instead publishing a compendium of interpretations that it believes will be of use to the CFPB staff, the businesses subject to the Commission's jurisdiction under the FCRA, public representatives, and consumers. The Staff Summary incorporates material from the following sources:

• *Interpretations from the 1990 Commentary on sections of the FCRA that have not been amended, <u>which staff continues to believe are timely, accurate, and helpful</u>;*

. . .

*Id.* (emphasis added). Thus, the 2011 FTC report indicates that 1990 FTC commentary that is cited in the 2011 report remains accurate and helpful. *Id.* The 2011 FTC report also states that it is not including 1990 interpretations that are obsolete. *Id.* at pg. 8. Third, the FTC Staff Summary of Interpretations references a large number of 1990 commentaries, stating:

The interpretations in the Summary do not always reflect verbatim the analogous 1990 comments. We have modified some to account for post-1990 FCRA amendments or cases, to make them consistent with other comments, and to make them more relevant to current practice. We have edited others for clarity or to accord with modern style. *Even though the 1990 comments listed in the endnotes are not precisely duplicated in the 2011 Staff Summary, <u>staff believes the references will assist readers where a 1990 comment is a source for an interpretation here</u>.*

*Id.* at 16, fn. 60 (emphasis added).

Thus, the 2011 FTC report makes clear that (1) the 1990 FTC commentary is only *partially* obsolete and (2) the 1990 commentary referenced in the report remains a good interpretation of the law.[1]

*Critically, the FTC specifically states that the 1990 FTC interpretation with regard to criminal dismissals is still applicable. Id.* at pg. 57, pg. 104, endnote 194. Specifically, the

---

[1] Perhaps aware of this fact, plaintiff no longer alleges in his Opposition that the 1990 commentary is obsolete.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    2011 FTC commentary for section 1681c(a)(5) states that "The seven year reporting period

2    for criminal record information 'other than convictions of crimes' runs from the date of the

3    reported event." *Id.*  Importantly, the 2011 commentary then cites <u>endnote 194 – a fact neither

4    mentioned in Plaintiff's papers nor this Court's Order</u>.  Endnote 194 expressly cites to: "1990

5    comment 605(a)(5)-2" as the express authority for FTC's commentary -  in other words, it

6    references with approval the 1990 FTC Commentary on section 1681c(a)(5) stating that "date

7    of disposition" applies for non-conviction proceedings. *Id.* (emphasis added). Thus, plaintiff's

8    claims about the dramatic change to the FCRA are inapplicable to the issue here.

9         Based on the above, this Court's statement that "Following the 1998 amendment,

10   however, the 1990 commentary to section 1861c(a) lost its force" is incorrect. See Order pg.

11   9, lns. 1-2.  With respect, the Court overlooked the factual existence of endnote 194 and its

12   clear impact. As such, this Court lost faith in the FTC's 1990 Commentary on the subject and

13   thereafter based its reasoning for its opinion saving the first two causes of action upon a fact

14   that does not exist.  By way of example, and not limitation, this Court cited several times its

15   belief that the 1990 FTC Commentary was disavowed as a major factor in reaching its

16   conclusions:

17        "On July 26, 2011, <u>the FTC rescinded the agency's 1990 commentary</u> and
          issued a new staff report interpreting the modern FCRA."

18

19   Order pg. 7, lns. 6-7 (emphasis added).

20        Defendant contends that the seven-year window commences with the "date
          of disposition" of the criminal charge, citing FTC commentary issued in

21        1990. 16 C.F.R. Pt. 600, App. 605(a)(5) (explaining that "the date of such
          dismissal or acquittal is the date of disposition"). <u>However, the Court need</u>

22        <u>not defer to an informal agency interpretation where it lacks "the power to</u>

23        <u>persuade."</u>

24

25   Order pg. 8, lns. 6-11 (emphasis added).

26        Here, the 1990 commentary construed the pre-1998 version of the FCRA.

27   Order pg. 8, lns. 19-20.

28

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                            4

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

In short, because the 1990 commentary was based on the pre-1998 version of the FCRA, it offers little insight into the current meaning of §§ 1681c(a)(2),(5). Accordingly, the Court declines to rely on the 1990 commentary. This conclusion is strengthened by the new FTC commentary, which rescinded the old commentary and clarifies that under section 1681c(a)(5), "[t]he seven year reporting period for criminal record information 'other than convictions of crimes' runs from the date of the reported event." 2011 Report at 57. Although this comment is neither binding nor retroactive, it nonetheless sheds light on the FTC's view of the proper reading of the post-1998 statute.

Order pg 9, lns. 7-17 (emphasis added).

Contrary to this Court's factual findings in ruling on the motion to dismiss, the 1990 commentary with regard to date of disposition remains operative and an accurate interpretation of the law. The 1990 FTC commentary states that the operative date for criminal proceedings (an "adverse item of information") runs from "date of disposition." Thus, the operative date for reporting the dismissal of criminal proceedings remains in effect.

Here, TSP reported all criminal proceedings against plaintiff within 7 years of disposition. Thus, under the FCRA and FTC guidelines, TSP was in compliance with the law and plaintiff's FCRA claims should be dismissed.

Moreover, the date of dismissal is clearly a "reportable event" based on the plain language of the FCRA. Neither Congress nor the FTC has stated that the operative date for criminal proceedings resulting in dismissal is the date of filing. This Court should not infer a drastic change in the law absent Congressional or FTC statements on the matter – especially in the face of FTC commentary stating no such change occurred through its citation in endnote 194.

In this case, TSP followed the FTC interpretations to the letter - by reporting the dismissal within the operative seven year period. Specifically, TSP followed the plain language of the statute and published FTC interpretations that the operative date under the FCRA that starts the seven year reporting period for criminal dismissals is seven years from date of dismissal. Consequently, plaintiff's first two causes of action for violation of the FCRA should be dismissed as a matter of law.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

**3.  PLAINTIFF DOES NOT ACCURATELY DESCRIBE THE CHANGES TO THE FCRA; BOTH THE TEXT OF THE FCRA AND FTC STATEMENTS DEMONSTRATE THAT DATE OF DISPOSITION IS THE OPERATIVE DATE.**

Plaintiff claims that the 1998 changes to the FCRA "dramatically" changed the reporting of non-convictions.  However, this statement is not backed up by facts and is incorrect.  Plaintiff continues to focus the Court's attention on records of arrest, which are covered under 15 U.S.C. section 1681c(a)(2).  However, this section is no longer at issue in this matter, as this Court ruled on TSP's motion to dismiss that the applicable code section is section 1681c(a)(5).  Therefore, plaintiff's discussion of the reporting on arrest records is completely beside the point.

Plaintiff states in his Opposition that "After 1998, consumer reporting agencies are generally prohibited from disclosing any information beyond 7 years from the date of 'entry' except for the case of a criminal conviction."  Again, plaintiff's statement is simply wrong.  The applicable date for criminal dismissals is derived from the "catch all" provision of section 1681c(a)(5) which makes no mention of "date of entry."[2]  Rather, the FTC has stated that the reporting of criminal proceedings resulting runs from the "date of the reported event."  Thus, plaintiff's description of the law is inaccurate and misleading.

The date of disposition remains the operative date for criminal dismissals based on a number of indisputable points: (1) a dismissal is a "reportable event" under FTC commentary; (2) the 1990 FTC statement that "date of disposition" is the operative date for a criminal dismissal, which statement has been specifically adopted by the 2011 FTC commentary.  Consequently, plaintiff's first two causes of action should be dismissed as a matter of law.

---

[2] The "date of entry" language comes from 15 U.S.C. section 1681c(a)(2) which this Court has already found to be inapplicable here.

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                                    6
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON
DEFENDANT'S MOTION TO DISMISS

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

4. **USING DATE OF DISPOSITION MAKES COMMON SENSE AND GOOD PUBLIC POLICY.**

Plaintiff's response to TSP's argument completely ignores the common sense and policy reasons for having "date of disposition" be the operative date and engages in speculation about what TSP is claiming.

Contrary to plaintiff's argument, public safety is clearly at issue here. It is the reason why criminal convictions can be reported indefinitely under the FCRA. 15 U.S.C. § 1681c(a)(5). It is the reason why the FTC has stated that criminal proceedings should be reported from the date of disposition. 2011 FTC Report, at pg. 57, pg. 104, endnote 194.

Plaintiff fails to respond to the following points: (1) under the plaintiff's proposed interpretations, reporting agencies are caught between the requirement to report with maximum possible accuracy (15 U.S.C. § 1681e(b)) and the directive to omit the date of filing of criminal charges (but apparently not the dismissal date); (2) under a contrary interpretation, civil proceedings are given more liberal treatment than criminal proceedings; (3) Congress could not have intended to change the operative date for disclosure of proceedings from date of disposition to date of filing without saying something on the subject.

Plaintiff does not address these contentions because they illustrate the following: that having the operative date for criminal dismissals be the "date of filing" does not make sense in the context of the statute and FTC commentary. Plaintiff's first and second causes of action should be dismissed.

5. **TSP'S ARGUMENT BASED ON *SAFECO* IS PROPER AND IS BASED ON THIS COURT'S RULING THAT THE INTERPRETATION OF THIS ISSUE IS ONE OF FIRST IMPRESSION.**

Plaintiff claims that TSP is improperly arguing that it cannot be liable for a willful violation of the FCRA. However, plaintiff ignores the procedural posture of the case. In its ruling on this issue, this Court found that the interpretation of the FCRA on this issue was one of first impression. (Order, pg. 8, lns. 3-5). This Court's ruling also makes clear that, even if

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                      7
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON
DEFENDANT'S MOTION TO DISMISS

SER123

1    TSP's argument is incorrect, it is not objectively unreasonable. Thus, this Court's findings

2    brought up the fact that TSP did not willfully violate the FCRA.

3         In response, TSP stated that under *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70

4    (2007) ("*Safeco*"), a reporting agency's erroneous but not objectively unreasonable

5    interpretation of the FCRA cannot give rise to a willful violation of the FCRA as a matter of

6    law. *Id*. In this case, even assuming TSP is incorrect in its reading of the FCRA and that this

7    issue is an open one, TSP did not have ". . . the benefit of guidance from the courts of appeals

8    or the Federal Trade Commission (FTC) that might have warned it away from the view it

9    took." *Id*. As stated in *Safeco*, ". . . no court of appeals had spoken on the issue, and no

10   authoritative guidance has yet come from the FTC . . ." *Id*. Thus, this Court's findings on the

11   motion to dismiss compel a finding that there was no willful violation of the FCRA.

12        Consequently, TSP's argument under *Safeco* is properly before the Court.

13        Plaintiff does not dispute the merits of TSP's argument. If the Court is precluded from

14   finding willfulness where reasonable minds could differ about an interpretation of the FCRA,

15   this Court certainly cannot find willfulness where TSP followed valid FTC interpretations

16   expressly stating that TSP can properly list proceedings where the dismissal date is within

17   seven years of the report.

18        Therefore, all claims of a willful violation of the FCRA should be dismissed.

19   **6.   CONCLUSION.**

20        Based on the foregoing, TSP respectfully requests that this Court reconsider its Order

21   and dismiss plaintiff's first cause of action for violation of the FCRA, 15 U.S.C. section

22   1681c(a)(5), and second cause of action for violation of 15 U.S.C. section 1681e(a).

23

24   Dated: October 19, 2012

25                      **Jacobson, Russell, Saltz & Fingerman LLP**

26

27                      _____/S/_____
                        Michael J. Saltz, Esq.,
28                      Attorneys for Defendant The Screening Pros, LLC

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                    8

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON
DEFENDANT'S MOTION TO DISMISS

1   **JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
2   Michael J. Saltz, Esq.  SBN 189751
    msaltz@jrsfllp.com
3   Colby A. Petersen, Esq. SBN 274387
    cpetersen@jrsfllp.com
4   G. Austin Sperry, Esq.  SBN 278535
    asperry@jrsfllp.com
5   10866 Wilshire Boulevard, Suite 1550
    Los Angeles, CA  90024
6   Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

7   Attorneys for Defendant THE SCREENING PROS, LLC

8

9               **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11  GABRIEL FELIX MORAN, | Case No.: 2:12-cv-05808-SVW-AGR |
| 12        Plaintiff, | **DEFENDANT THE SCREENING PROS, LLC'S NOTICE OF MOTION AND** |
| 13      vs. | **MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY,** |
| 14 | **SUMMARY ADJUDICATION;** |
| 15  THE   SCREENING   PROS,   LLC   a | **MEMORANDUM OF POINTS AND** |
|     California  Corporation;  and  DOES  1-10 | **AUTHORITIES IN SUPPORT** |
| 16  inclusive, | **THEREOF; DECLARATION OF** |
| 17 | **MICHAEL J. SALTZ IN SUPPORT THEREOF; DECLARATION OF GARY** |
| 18        Defendants. | **GLUCROFT IN SUPPORT THEREOF;** |
| 19 | **DECLARATION OF MARK RODRIGUEZ IN SUPPORT THEREOF;** |
| 20 | **DECLARATION OF ANNE P.** |
| 21 | **FORTNEY IN SUPPORT THEREOF;** |
| 22 | **AND ATTACHED EXHIBITS.** |
| 23 | Filed Concurrently With: |
| 24 | (1)   Defendant's Statement of |
| 25 | Uncontroverted Facts and Conclusions of Law; |
| 26 | (2)   [Proposed] Order; and |
| | (3)   [Proposed] Judgment. |
| 27 | |
| 28 | |

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.:  2:12-CV-05808-SVW-AGR
File No.:  5.371.001            i

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

| | |
|---|---|
| Hearing Date: | November 19, 2012 |
| Time: | 1:30 p.m. |
| Courtroom.: | $6 - 2^{nd}$ Floor |
| Judge: | Hon. Stephen V. Wilson |
| | |
| Complaint filed: | February 2, 2012 |
| First Amended | |
| Complaint Filed: | June 7, 2012 |
| Removed: | July 5, 2012 |
| Trial Date: | November 20, 2012 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 19, 2012, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the above entitled court, Defendant THE SCREENING PROS, LLC ("TSP" or "Defendant") will seek an Order from this Court granting Summary Judgment or alternatively, adjudication in its favor and against Plaintiff GABRIEL MORAN as to one or more causes of action against him, pursuant to *Federal Rules of Civil Procedure*, Rule 56.

This Motion is based upon the grounds that there are no triable issues of material fact and Defendant is entitled to judgment as a matter of law, as follows:

1.     As to Plaintiff GABRIEL MORAN's first cause of action under 15 U.S.C. § 1681c against Defendant TSP, Plaintiff cannot prove all the elements necessary to maintain his cause of action against Defendant.  Additionally, Plaintiff has no evidence of a willful violation under 15 U.S.C. § 1681n.

2.     As to Plaintiff GABRIEL MORAN's second cause of action under 15 U.S.C. § 1681e(a) against Defendant TSP, Plaintiff cannot prove all the elements necessary to maintain his cause of action against Defendant.  Additionally, Plaintiff has no evidence of a willful violation under 15 U.S.C. § 1681n.

3.     As to plaintiff GABRIEL MORAN'S third cause of action under 15 U.S.C. § 1681i for failure to reinvestigate against Defendant TSP, Plaintiff cannot prove all the elements necessary to maintain his cause of action against Defendant.  Additionally, Plaintiff has no evidence of a willful violation under 15 U.S.C. § 1681n.

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001                                    ii
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1    This Motion is made following the conference of counsel pursuant to Local Rule 7-3

2    held on October 4, 2012.

3    This Motion will be based upon this Notice, the Memorandum of Points and

4    Authorities, the attached exhibits, the Declaration of Michael J. Saltz, Esq., Declaration of

5    Gary Glucroft, Declaration of Mark Rodriguez, Declaration of Anne P. Fortney, Statement of

6    Uncontroverted Facts and Conclusions of Law filed concurrently herewith, all pleadings,

7    records, and papers on file in this action, and upon such other oral and documentary evidence

8    as may be presented at the hearing of this Motion.

9

10   Dated: October 22, 2012                        **Jacobson, Russell, Saltz & Fingerman LLP**

11

12

13   _____/S/_____

14   Michael J. Saltz, Esq.
     Attorneys for Defendant The Screening Pros, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.:  2:12-CV-05808-SVW-AGR
File No.:  5.371.001                            iii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# TABLE OF CONTENTS

1.   INTRODUCTION. ...................................................................1

2.   STATEMENT OF FACTS. ......................................................2

3.   STANDARD OF REVIEW. .....................................................4

4.   ARGUMENT. .........................................................................5

    A.   PLAINTIFF'S THIRD CAUSE OF ACTION FOR VIOLATION OF SECTION 1681i SHOULD BE DISMISSED, AS TSP IS A RESELLER OF INFORMATION AND THUS HAS NO DUTY UNDER SECTION 1681i. ...................................................................5

        1)   PLAINTIFF IS LIMITED TO THE ALLEGATIONS OF HIS COMPLAINT. .................................................5

        2)   PLAINTIFF ALLEGES TSP FAILED TO REINVESTIGATE ITS ALLEGED DISPUTE UNDER SECTION 1681i. ..................5

        3)   TSP IS A RESELLER OF INFORMATION, NOT A CONSUMER REPORTING AGENCY, AND IS NOT SUBJECT TO THE DUTIES IDENTIFIED BY PLAINTIFF UNDER SECTION 1681i ; THEREFORE, PLAINTIFF'S THIRD CAUSE OF ACTION MUST BE DISMISSED. ...............................6

    B.   PLAINTIFF'S FIRST AND SECOND CAUSE OF ACTION MUST BE DISMISSED BECAUSE NO OBSOLETE INFORMATION WAS REPORTED, AS DEFINED BY THE FTC, AND PLAINTIFF IS OTHERWISE NOT CAPABLE OF AMENDING HIS THIRD CAUSE OF ACTION. ...................................................................8

    C.   PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION UNDER FCRA MUST BE DISMISSED AS THERE IS NO EVIDENCE ANY IMPROPER REPORTING OF INFORMATION CAUSED PLAINTIFF TO BE DENIED HOUSING. ...........................................12

        1)   PLAINTIFF CANNOT ESTABLISH THAT THE REPORTING OF THE CRIMINAL FILING AND DISMISSAL CAUSED HIM ANY INJURY. ...........................................13

    D.   PLAINTIFF'S CLAIMS FOR WILLFUL VIOLATIONS OF THE FCRA IN THE FIRST AND SECOND CAUSES OF ACTION MUST BE DISMISSED, AS THE EVIDENCE ESTABLISHES TSP ACTED REASONABLY UNDER THE SUPREME COURT PRECEDENT OF *SAFECO INS. CO.* ...........................................14

5.   CONCLUSION. .....................................................................17

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.:  2:12-CV-05808-SVW-AGR
File No.:  5.371.001
iv
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

# TABLE OF AUTHORITIES

Cases

*Ali v. Capital One*, 2012 WL 1205574 (E.D. Cal. 2012) ........................................8

*Bakker v. McKinnon*, 152 F.3d 1007 (8th Cir. 1998) ........................................14

*Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) ....................13

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. Cal. 2010) ..................1, 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................4

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) ........................................5

*Devereuax v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ........................................4, 5

*Hauser v. Equifax, Inc.*, 602 F.2d 811 (8th Cir. 1979) ........................................13

*Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731 (9th Cir. 1984) ........................................13

*Nguyen v. United States*, 792 F.2d 1500 (9th Cir. 1986) ........................................5

*Reed v. Experian Info. Solutions, Inc.*, 321 F.Supp.2d 1109 (D. Minn. 2004) ..................13

*Roberts v. Arizona Bd. of Regents*, 661 F.2d 796 (9th Cir. 1981) ........................................5, 14

*Safeco Ins. Co. of Am. v. Burr, supra,* 551 U.S. 47 (2007) ........................................14, 15, 16

Statutes

15 U.S.C. § 1681a(f) ........................................7

15 U.S.C. § 1681a(u) ........................................7

15 U.S.C. § 1681c ........................................2

15 U.S.C. § 1681c(a)(2) ........................................13

15 U.S.C. § 1681c(a)(5) ........................................8, 12

15 U.S.C. § 1681e ........................................11

15 U.S.C. § 1681e(a) ........................................2, 13

15 U.S.C. § 1681e(b) ........................................13

15 U.S.C. § 1681i ........................................11

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.:  2:12-CV-05808-SVW-AGR
File No.:  5.371.001

v

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

15 U.S.C. § 1681i(a) ...................................................................................8

15 U.S.C. § 1681i(a)(1)(A) .........................................................................6

15 U.S.C. § 1681i(f) ...............................................................................1, 7

15 U.S.C. § 1681i(f)(1) ...............................................................................8

15 U.S.C. § 1681i(f)(2) ...............................................................................8

15 U.S.C. § 1681n .....................................................................................14

15 U.S.C. § 1681 .........................................................................................1

15 U.S.C. § 1681i ..................................................................................1, 6

Other Authorities

16 C.F.R. Pt. 600, App. 605(a)(5)-2 (1990) ........................................9, 15

Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary Interpretations (July 2011) ...................8, 9, 10, 15

Rules

Fed. R. Civ. P., R. 56(a) .............................................................................4

Fed. R. Civ. P., R. 56(c) .............................................................................5

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001
vi
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION.

Plaintiff claims Defendant TSP improperly reported one item of information about him that led a landlord to reject a housing application: that criminal charges of being under the influence of a controlled substance were filed against him in 2000 but not dismissed until 2004. He also claims that TSP failed to properly reinvestigate such a claim after a dispute about his report was submitted by a third party in November 2011, 21 months after TSP issued its report. Plaintiff brings his claims for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et. seq.*

An analysis of Plaintiff's remaining claims in this case shows them to be meritless.

Plaintiff's claim for failure to reinvestigate under 15 U.S.C. §1681i clearly fails. Plaintiff alleges that TSP is liable as a consumer reporting agency for failure to reinvestigate Plaintiff's alleged dispute about the reporting of his criminal record. However, TSP is not a consumer reporting agency in this regard; rather, TSP is a reseller of criminal record information from another consumer reporting agency. As a reseller, TSP is expressly not subject to any of the duties to reinvestigate that Plaintiff pursues in this case. See 15 U.S.C. § 1681i(f) ("a reseller shall be exempt from the requirements of this section."). Therefore, TSP is entitled to summary judgment.

Further, Plaintiff's claims based upon the allegation that TSP reported obsolete information by disclosing his 2000 criminal charges that were dismissed in 2004 (i.e., the disposition of dismissal was within seven years of the subject report) likewise fail. The FTC commentary through endnote 194 has expressly cited with approval its 1990 commentary stating that the seven-year time period commences to run from the date of dismissal. (Statement of Undisputed Facts ("SUF") 28). Thus, the subject report is not obsolete on its face. As such, the operative Complaint fails to establish any inaccuracy. Furthermore, the absence of an inaccuracy also precludes any claims under 15 U.S.C. §1681i. See *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. Cal. 2010). Therefore, TSP is entitled to summary judgment.

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001                                        1

1    With regard to Plaintiff's claims that TSP improperly reported the dismissal of criminal

2 charges against Plaintiff, any improper information in the report did not cause Plaintiff to be

3 denied housing. Specifically, the landlord denied Plaintiff housing based on Plaintiff's properly

4 reported criminal conviction for theft from an elder or dependent adult, not the dismissal of

5 drug charges. Therefore, Plaintiff's claims under sections 1681c and 1681e(a) must be

6 dismissed.

7    Based on the above, and the argument below, Plaintiff's case should be dismissed.

8 **2. STATEMENT OF FACTS.**

9    On or about February 1, 2010, Plaintiff Gabriel Moran applied for housing with Maple

10 Square Apartments ("Maple Square"). (SUF 1); (FAC, ¶ 33; Rodriguez Decl. ¶ 4; Exb. "3").

11 Maple Squares is owned by Affirmed Housing Group and managed by Solari Enterprises, Inc.

12 (SUF 2); (Rodriguez Decl. ¶ 2).  In response, Maple Square requested that Defendant TSP

13 issue it a tenant screening report. (SUF 3); (FAC, ¶ 34; Rodriguez Decl. ¶ 11).  On February 5,

14 2010, TSP issued a tenant screening report containing an eviction report, a credit report from

15 Trans Union, and a criminal report ("Subject Report") to Maple Square.  (SUF 4); (FAC, ¶ 34;

16 Glucroft Decl. ¶¶ 8, 13; Rodriguez Decl. ¶ 11; Exb. "5").  The report indicated the following:

17 Plaintiff was convicted on June 7, 2006 of "Embezzlement: Theft by non caretaker from older

18 or dependent adult." (SUF 5); (Glucroft Decl. ¶ 11; Rodriguez Decl. ¶ 11; Exb. "5").  Charges

19 against Plaintiff of forgery and burglary were dismissed on this same date.  (SUF 6); (Glucroft

20 Decl. ¶ 11; Rodriguez Decl. ¶ 11; Exb. "5"). The report also states that charges against Plaintiff

21 of being under the influence of a controlled substance were filed on May 16, 2000 and

22 dismissed on March 2, 2004. (SUF 7); (Glucroft Decl. ¶ 11; Rodriguez Decl. ¶ 12; Exb. "5").

23 The report also showed three active collection accounts against Plaintiff totaling $3,709.00.

24 (SUF 8); (Glucroft Decl. ¶ 11; Rodriguez Decl. ¶ 12; Exb. "5").  Plaintiff alleges that he has

25 "lost housing opportunities" and has been forced to spend time, money and energy to "clean up

26 Defendant's errors." (SUF 9); (FAC, ¶ 17). Plaintiff's FAC does not allege any other damages,

27 inclusive of emotional distress.  (SUF 10); (FAC).

28 ///

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    With regard to criminal record information, TSP is not a consumer reporting agency

2  under 15 U.S.C. § 1681i.  (SUF 11); (Glucroft Decl. ¶¶ 5, 13).  Rather, TSP is only a reseller of

3  criminal information.   (SUF 12); (Glucroft Decl. ¶¶ 5, 13).  TSP purchases the information

4  from a third party vendor called G.A. Public Record Services, Inc., which is owned by

5  Thomson Reuters.  (SUF 13); (Glucroft Decl. ¶¶ 5, 8). TSP assembles and merges information

6  contained in the database of another consumer reporting agency for purposes of furnishing

7  such information to a third party. (SUF 14); (Glucroft Decl. ¶¶ 5, 8). TSP does not maintain a

8  database of assembled or merged criminal record information from which new consumer

9  reports are, or can be, produced.  (SUF 15); (Glucroft Decl. ¶ 5). TSP does not itself maintain a

10  criminal record database of Plaintiff's information.  (SUF 16); (Glucroft Decl. ¶ 5).

11    Prior to filling out his rental application, Maple Square supplied Plaintiff with the Maple

12  Square Resident Selection Criteria form. (SUF 17); (Rodriguez Decl. ¶ 5; Exb. "4").  Said form

13  expressly informed Plaintiff in relevant part:

14    "To be eligible for admission at Maple Square Apartments an applicant must be
15    of legal age (18 years of age or older) and qualify under the Federal Low Income
      Housing Tax Credit and HOME Programs.
16    ...
      Who **for the past five years** has not been convicted of any felony or
17    misdemeanor involving sexual misconduct or a controlled substance, and
      that to the best of LESSEE'S knowledge neither LESSEE nor any
18    occupant of the Apartment is the subject of a criminal investigation or
      arrest warrant."
19

20  (SUF 18); (Rodriguez Decl. ¶ 6; Exb. "4" (emphasis added)). Said form also states:

21
22    A criminal record verification may be made on all persons 18 years and older
      who will occupy the apartment.  **Cause for the application to be rejected**
23    **includes, <u>but may not be limited to,</u> the conviction of:**

24        ✓ Illegal drug activity of any kind.
25        ✓ Child Abuse, child molestation or negligence involving a child.
          ✓ Assault and/or battery or any violent act(s) against another person.
26        ✓ Vandalism.

27  (SUF 19); (Rodriguez Decl. ¶ 6; Exb. "4" (emphasis added)]. Plaintiff thereafter signed said

28  form on February 1, 2010 acknowledging that he received it, read it, and understood it. (SUF

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001                                  3

20); (Rodriguez Decl. ¶ 7; Exb. "4"). It is undisputed that Maple Square's written policies provided to Plaintiff in advance of him submitting his rental application expressly stated that old criminal cases and non-convictions would *not* be considered in evaluating Plaintiff's eligibility for housing. (SUF 21); (Rodriguez Decl. ¶¶ 5, 6; Exb. "4").

On February 5, 2010, a Letter of Ineligibility was issued to Plaintiff, stating that he was ineligible for admission at Maple Square because "Criminal Record Showed Other Misdemeanors." (SUF 22); (Rodriguez Decl. ¶ 15; Exb. "6"). Plaintiff was rejected from housing at Maple Square not because of charges of being under the influence of a controlled substance, as said criminal case was older than five years and did not result in a conviction, but because of his conviction for theft from an elder or dependent adult. (SUF 23); (Rodriguez Decl. ¶ 13; Exb. "6").

Said Letter of Ineligibility specifically stated that Plaintiff had the right to make a written request for a meeting to discuss Plaintiff's ineligibility status. (SUF 24); (Rodriguez Decl. ¶ 16; Exb. "6"). At no time did Maple Square ever receive any correspondence from Plaintiff to discuss the reasons for the denial of his application or what he would otherwise have to do in order change his ineligibility status so that he could re-apply for housing at Maple Square. (SUF 25); (Rodriguez Decl. ¶ 16).

## 3. STANDARD OF REVIEW.

The Court shall grant summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P., R. 56(a). Rule 56 further provides that a defending party may move for summary judgment, or summary adjudication on certain claims in controversy. Fed. R. Civ. P., R. 56(a).

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only point out that there is an absence of evidence supporting the non-moving party's claims. *Devereuax v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1   Once the moving party carries its initial burden, the non-moving party may not rest

2   upon the mere allegations or denials of his pleadings. *Id.*; Fed. R. Civ. P., R. 56(c). Rather,

3   the non-moving party must present evidence supporting his or her position through affidavits

4   or other sources of evidence that "set forth specific facts showing that there is a genuine issue

5   for trial." *Devereuax v. Abbey, supra*, 263 F.3d at 1076.

6   **4.  ARGUMENT.**

7       **A.**    **PLAINTIFF'S THIRD CAUSE OF ACTION FOR VIOLATION OF**

    **SECTION 1681i SHOULD BE DISMISSED, AS TSP IS A RESELLER OF**

8       **INFORMATION AND THUS HAS NO DUTY UNDER SECTION 1681i.**

9       **1)**    **PLAINTIFF IS LIMITED TO THE ALLEGATIONS OF HIS**

10      **COMPLAINT.**

11      A plaintiff is limited to the allegations of his complaint in opposing a motion for

12  summary judgment and may not raise a new theory of liability in opposing a motion for

13  summary judgment. See e.g. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir.

14  2000) (plaintiff may not proceed with a new theory in opposing a motion for summary

15  judgment); *Nguyen v. United States*, 792 F.2d 1500, 1503 (9th Cir. 1986) ("'Much of the value

16  of summary judgment procedure in the cases for which it is appropriate ... would be dissipated

17  if a party were free to rely on one theory in an attempt to defeat a motion for summary

18  judgment and then, should that theory prove unsound, come back long thereafter and fight on

19  the basis of some other theory.'")(citation omitted); *Roberts v. Arizona Bd. of Regents*, 661

20  F.2d 796, 798 (9th Cir. 1981) (district court acted properly in denying amendment to complaint

21  made while motion for summary judgment was pending and discovery virtually complete).

22      **2)**    **PLAINTIFF ALLEGES TSP FAILED TO REINVESTIGATE ITS**

    **ALLEGED DISPUTE UNDER SECTION 1681i.**

23  Plaintiff alleges in this third cause of action that Defendant TSP:

24  • ". . .[D]oes not maintain reasonable procedures to resolve consumer disputes as

25      required under 15 U.S.C. §1681i." (FAC, ¶ 68);

26  • ". . . [F]ailed to conduct any reinvestigation as mandated under 15 U.S.C.

27      §1681i(a)(1)(A) and (B)." (FAC, ¶ 69);

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

- ". . .[F]ailed to promptly notify any person who provided any item of information in dispute as mandated under 15 U.S.C. §1681i(a)(2)(A) and (B)." (FAC, ¶ 69);

- ". . . [F]ailed to provide Plaintiff with a notice of determination and/or reinvestigation as mandated under 15 U.S.C. §1681i(a)(3) and 6." (FAC, ¶ 69);

- ". . . [F]ailed to promptly delete or modify inaccurate or unverifiable information as mandated under 15 U.S.C. §1681i(a)(5)." (FAC, ¶ 69);

- ". . . [F]ailed to maintain an automated system through which furnishers of information to Defendant may report the results of a reinvestigation that finds incomplete, inaccurate, or unverifiable information; failed to provide a description of reinvestigation procedure as mandated under 15 U.S.C. §1681i(a)(7)." (FAC, ¶ 69);

- ". . . [F]ailed to notify the fact of the dispute pursuant to 15 U.S.C. §1681i(c), and failed to notify the recipient of the subject report relating to the deletion of disputed information pursuant to 15 U.S.C. §1681i(d)." (FAC, ¶ 69).

These allegations comprise the totality of Plaintiff's claims under 15 U.S.C. §1681i. Thus, Plaintiff's allegations are that TSP, *as a consumer reporting agency*, is liable for failure to reinvestigate under 15 U.S.C. §1681i. No mention is made in the First Amended Complaint of any issues under 15 U.S.C. §1681i regarding resellers.

**3)    TSP IS A RESELLER OF INFORMATION, NOT A CONSUMER REPORTING AGENCY, AND IS NOT SUBJECT TO THE DUTIES IDENTIFIED BY PLAINTIFF UNDER SECTION 1681i ; THEREFORE, PLAINTIFF'S THIRD CAUSE OF ACTION MUST BE DISMISSED.**

15 U.S.C. section 1681i(a)(1)(A) provides in relevant part that:

. . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i. By its plain terms, section 1681i applies only to a "consumer reporting agency." *Id.*

Case No.:  2:12-CV-05808-SVW-AGR
File No.:  5.371.001                                        6
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

The term "consumer reporting agency" means:

> . . . any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). By contrast, the term "reseller" means a consumer reporting agency that:

> (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and

> (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u).

Here, TSP is not a consumer reporting agency under Section 1681i for purposes of providing criminal record information. (Glucroft Decl. ¶¶ 5, 13). Rather, TSP is only a reseller of criminal information. (Glucroft Decl. ¶¶ 5, 13). Specifically TSP purchases the information from a third party vendor called G.A. Public Record Services, Inc. (Glucroft Decl. ¶¶ 5, 8). Therefore, TSP assembles and merges information contained in the database of another consumer reporting agency for purposes of furnishing such information to a third party. (Glucroft Decl. ¶¶ 5, 8). TSP does not maintain a database of assembled or merged criminal record information from which new consumer reports are or can be produced. (Glucroft Decl. ¶ 5). TSP does not itself maintain a database of Plaintiff's criminal record information. (Glucroft Decl. ¶ 5).

15 U.S.C. § 1681i(f) (Reinvestigation Requirement Applicable to Resellers) provides that:

> (1) Exemption from general reinvestigation requirement
>        Except as provided in paragraph (2), <u>a reseller shall be exempt from the requirements of this section.</u>
>    …

15 U.S.C. § 1681i(f) (emphasis added).

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

SER137

1    Paragraph 2 provides for limited duties of a reseller which have not been put into issue

2    by the operative Complaint.  15 U.S.C. § 1681i(f)(2).[1] A reseller is exempt from all the other

3    provisions of section 1681i. 15 U.S.C. § 1681i(f)(1).

4    In this case, Plaintiff alleges that TSP is liable for certain and specific violations of

5    various sections of section 1681i.  (FAC).  However, TSP is exempt by statute from all of these

6    sections under 15 U.S.C. § 1681i(f)(1).  See *Ali v. Capital One*, 2012 WL 1205574, *3 (E.D.

7    Cal. 2012) ("Because Capital One is a furnisher of information, and not a consumer reporting

8    agency, it was not required to follow the procedures outlined in 15 U.S.C. § 1681i(a).").

9    As a result, TSP cannot be liable for any violation of section 1681i and TSP is entitled

10   to summary judgment on Plaintiff's third cause of action.

11   **B.   PLAINTIFF'S FIRST AND SECOND CAUSE OF ACTION MUST BE
      DISMISSED BECAUSE NO OBSOLETE INFORMATION WAS
      REPORTED, AS DEFINED BY THE FTC, AND PLAINTIFF IS
      OTHERWISE NOT CAPABLE OF AMENDING HIS THIRD CAUSE OF
      ACTION.**

15   **1)   AS DEFINED BY THE FTC, THE SUBJECT REPORT DID NOT
      CONTAIN ANY OBSOLETE INFORMATION.**

16   The statutory text and FTC interpretations state that the operative date for purposes of

17   criminal dismissals under the "catch-all" provision of section 15 U.S.C. § 1681c(a)(5) is "date

18   of reported event."  *See* Federal Trade Commission, 40 Years of Experience with the Fair

19   Credit Reporting Act: An FTC Staff Report with Summary Interpretations (July 2011), pg. 57,

20   available at http://www.ftc.gov/os/2011/07/110720fcrareport.pdf ("2011 FTC Report").  The

21   last FTC interpretation on this precise issue, in 1990, confirmed that the applicable date for

22   criminal cases resulting in something other than a conviction is the date of disposition. 16

23

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

---

[1] To be certain, TSP asserts that it never received any written dispute directly from Plaintiff at any time, nor did it receive any communications from anyone claiming to legally represent Plaintiff. (Glucroft Decl. ¶ 14). Further, Plaintiff does not allege that he *directly* made any attempt to dispute anything with TSP (See FAC, ¶ 49). Nevertheless, under the allegations in the operative complaint, 15 U.S.C. § 1681i(f)(2) is not implicated in this case.

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001                                    8

C.F.R. Pt. 600, App. 605(a)(5)-2 (1990) ("if charges are dismissed at or before trial, or the consumer is acquitted, the date of dismissal or acquittal is the date of disposition.").

Plaintiff previously misled the Court to believe that the 1990 FTC commentary on this particular issue was obsolete. (See Plaintiff's Opposition to Motion to Dismiss, pg. 6, lns. 1-2 ("Defendant's cited FTC opinion has absolutely no significance because it has been superseded by statute following 1998 and it was included only to mislead the court.")). However, in its 2011 Report, the FTC stated that the 1990 interpretations had *only become partially obsolete*. See 2011 FTC Report, pg. 7; (SUF 27). Specifically, the report states:

> Through the passage of time and the adoption of significant amendments to the FCRA, *the 1990 Commentary has become partially obsolete*, and does not reflect the most current interpretive guidance on the FCRA. Prior to the passage of the CFPA, FTC staff had been working on an updated Commentary as a replacement for the 1990 Commentary. As a result of the CFPA, however, much of the authority of the Commission and the federal financial agencies to publish rules, regulations, or guidelines under the FCRA transfers to the CFPB. In this changed context, staff is instead publishing a compendium of interpretations that it believes will be of use to the CFPB staff, the businesses subject to the Commission's jurisdiction under the FCRA, public representatives, and consumers. The Staff Summary incorporates material from the following sources:
>
> • *Interpretations from the 1990 Commentary on sections of the FCRA that have not been amended, which staff continues to believe are timely, accurate, and helpful*;
> . . .

*Id.* (emphasis added). Thus, the 2011 FTC Report indicates that 1990 FTC commentary that is cited in the 2011 Report remains accurate and helpful. *Id.* The 2011 FTC Report also states that it is not including 1990 interpretations that are obsolete. *Id.* at pg. 8. Third, the FTC Staff Summary of Interpretations references a large number of 1990 commentaries, stating:

> The interpretations in the Summary do not always reflect verbatim the analogous 1990 comments. We have modified some to account for post-1990 FCRA amendments or cases, to make them consistent with other comments, and to make them more relevant to current practice. We have edited others for clarity or to accord with modern style. *Even though the 1990 comments listed in the endnotes are not precisely duplicated in the 2011 Staff Summary, staff believes the references will assist readers where a 1990 comment is a source for an interpretation here*.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001                    9
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1    *Id.* at 16, fn. 60 (emphasis added).

2        Thus, the 2011 FTC Report makes clear that (1) the 1990 FTC commentary is only

3    *partially* obsolete and (2) the 1990 commentary referenced in the report remains a good

4    interpretation of the law.

5        *Critically, the FTC specifically states that the 1990 FTC interpretation with regard to*

6    *criminal dismissals is still applicable. Id.* at pg. 57, pg. 104, endnote 194.  Specifically, the

7    2011 FTC commentary for section 1681c(a)(5) states that "The seven year reporting period for

8    criminal record information 'other than convictions of crimes' runs from the date of the

9    reported event." *Id.*  Importantly, the 2011 commentary then cites <u>endnote 194</u>.  Endnote 194

10   expressly cites to: "1990 comment 605(a)(5)-2" as the express authority for FTC's

11   commentary -  in other words, it references with approval the 1990 FTC Commentary on

12   section 1681c(a)(5) stating that "date of disposition" applies for non-conviction proceedings.

13   *Id.* (emphasis added).

14       Based on the above, this Court's statement that "Following the 1998 amendment,

15   however, the 1990 commentary to section 1861c(a) lost its force" is incorrect. See 9-28-12

16   Order Dkt. 18 ("Order") pg. 9, lns. 1-2. With respect, the Court overlooked the factual

17   existence of endnote 194 and its clear impact. As such, this Court lost faith in the FTC's 1990

18   Commentary on the subject and thereafter based its reasoning for its opinion saving the first

19   two causes of action upon a fact that does not exist.

20       *Contrary to this Court's factual findings in ruling on the motion to dismiss, the 1990*

21   *commentary with regard to date of disposition remains operative and an accurate*

22   *interpretation of the law.* The 1990 FTC commentary states that the operative date for criminal

23   proceedings (an "adverse item of information") runs from "date of disposition." Thus, the

24   operative date for reporting the dismissal of criminal proceedings remains in effect.

25       Here, TSP reported all criminal proceedings against Plaintiff within 7 years of

26   disposition. (Glucroft Decl. ¶ 11; Exb. "5"). Thus, under the FCRA and FTC guidelines, TSP

27   was in compliance with the law and Plaintiff's FCRA claims should be dismissed.

28   ///

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001
10
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

Moreover, the date of dismissal is clearly a "reportable event" based on the plain language of the FCRA. Neither Congress nor the FTC has stated that the operative date for criminal proceedings resulting in dismissal is the date of filing. This Court should not infer a drastic change in the law absent Congressional or FTC statements on the matter – especially in the face of FTC commentary stating no such change occurred through its citation in endnote 194.

In this case, TSP followed the FTC interpretations to the letter - by reporting the dismissal within the operative seven year period. Specifically, TSP followed the plain language of the statute and published FTC interpretations that the operative date under the FCRA that starts the seven year reporting period for criminal dismissals is seven years from *date of dismissal*. Consequently, Plaintiff's first two causes of action for violation of the FCRA should be dismissed as a matter of law.

**2) ABSENT EVIDENCE OF AN INACCURACY, PLAINTIFF IS ESTOPPED FROM ASSERTING ANY CLAIMS UNDER 15 U.S.C. § 1681i AS A MATTER OF LAW.**

This Court has already ruled that the subject report contains no inaccurate information under 15 U.S.C. § 1681e, with the sole exception of the potential that Plaintiff's criminal history involving his drug charges dismissed in 2004 were obsolete because this Court measured the seven-year reporting period from the date said charges were filed in 2000. See Order. Should this Court now agree that the 1990 FTC Commentary has not lost its force and effect with regard to the reporting of dismissed criminal cases, as it was cited by the FTC as good authority in its most recent commentary, then it is now without dispute that the operative complaint fails to allege that the subject report contains any inaccuracies as contemplated by 15 U.S.C. § 1681e.

Although, as argued above, Plaintiff's Third Cause of Action for violation of 15 U.S.C. § 1681i must be dismissed for failure to state a claim against a reseller, it is also equally the case that Plaintiff cannot state a claim, or otherwise amend his claim, because his report fails to contain an inaccuracy.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    Specifically, it is the law in this Circuit that an inaccuracy must exist before one can

2 make a claim under section 1681i.  Absent an inaccuracy, a section 1681i claim may be

3 disposed of by way of a motion for summary judgment.

4    Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on
5    its face require that an actual inaccuracy exist for a plaintiff to state a claim,
6    many courts, including our own, have imposed such a requirement.  *See*
     *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (collecting
6    cases). In *Dennis v. BEH-I, LLC*, 520 F.3d 1066 (9th Cir. 2008), we held that a
7    plaintiff filing suit under section 1681i must make a "prima facie showing of
     inaccurate reporting." *Id.* at 1069. The inaccuracy requirement comports with the
8    purpose of the FCRA, which is "to protect consumers from the transmission of
9    inaccurate information about them." *Gorman*, 584 F.3d at 1157 (internal
10   quotation marks omitted).

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. Cal. 2010) (emphasis

12 added).

13    Thus, since no inaccuracy exists in the subject report, Plaintiff cannot state a claim

14 under section 1681i under any circumstance. Therefore Plaintiff's Third Cause of Action must

15 be dismissed as a matter of law.

16    **C.    PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION UNDER**
17    **FCRA MUST BE DISMISSED AS THERE IS NO EVIDENCE ANY**
      **IMPROPER REPORTING OF INFORMATION CAUSED PLAINTIFF**
18    **TO BE DENIED HOUSING.**

19    To the extent this Court upholds its initial decision that the subject report disclosed

20 obsolete information regarding Plaintiff's 2000 charge of being under the influence, TSP

21 submits that said report did not cause Plaintiff to suffer the damages he alleges in his operative

22 Complaint.

23    Specifically, Plaintiff alleges that TSP improperly reported his criminal dismissal in

24 violation of 15 U.S.C. § 1681c(a)(5) which precludes a consumer reporting agency from

25 reporting "Any other adverse item of information, other than records of convictions of crimes

26 which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(5).  Plaintiff also

27 claims that TSP violated section 1681e(a) which requires that "[e]very consumer reporting

28

1   agency shall maintain reasonable procedures designed to avoid violations of section 1681c of

2   this title . . ." 15 U.S.C. § 1681e(a).[2]

3          However, as described below, Plaintiff cannot establish that TSP's actions caused him

4   injury.

5          **1)      PLAINTIFF CANNOT ESTABLISH THAT THE REPORTING OF**
           **         THE CRIMINAL FILING AND DISMISSAL CAUSED HIM ANY**
6          **         INJURY.**

7          Under the FCRA, to create an issue of fact as to causation, a Plaintiff must produce

8   evidence that an alleged inaccurate entry in a credit report was a substantial factor in the denial

9   of credit, adverse credit, or other harm. *Hauser v. Equifax, Inc.*, 602 F.2d 811, 816 (8th Cir.

10  1979); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991).

11         In this case, the undisputed evidence establishes that the reporting of the criminal

12  dismissal did not cause any denial of housing to Plaintiff.   In particular, Plaintiff's history

13  includes a criminal conviction that was properly reported.   (See Exb. "5").   It also reports

14  several collections against Plaintiff that are still active. (See Exb. "5"). The manager of Maple

15  Square relied on Plaintiff's criminal conviction in denying housing to Plaintiff.   (Rodriguez

16  Decl. ¶ 14; Exb. "6").   The manager of Maple Square did not decide to deny housing to

17  Plaintiff based on the filing or dismissal of criminal charges for being under the influence of a

18  controlled substance.   (Rodriguez Decl. ¶ 13; Exb. "4").   Consequently, TSP's alleged improper

19  reporting did not cause a denial of Plaintiff's housing application.   See *Reed v. Experian Info.*

20  *Solutions, Inc.*, 321 F.Supp.2d 1109, 1114 (D. Minn. 2004) (erroneous notation on credit report

21  could not have been a substantial factor in Plaintiff's denial of credit because Plaintiff's

22  application was denied for other reasons).

23         To be certain, Plaintiff has not alleged or established any actual damages for which TSP

24  could be the cause. Moreover, the scope of damages is limited to the damages claimed in the

25  complaint. See *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731,

26

27  [2] Plaintiff's claims that TSP violated section 1681c(a)(2) and section 1681e(b) were dismissed

28  by this Court on TSP's motion to dismiss Plaintiff's FAC.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001                           13

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

Case 2:12-cv-05808-SVW-AGR   Document 29   Filed 10/22/12   Page 20 of 23   Page ID #:482

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel 310.446.9900 • Fax 310.446.9909

739 (9th Cir. 1984). Plaintiff only alleges that he has "lost housing opportunities" and has been forced to spend time, money and energy to "clean up Defendant's errors." (FAC, ¶ 17). Plaintiff's FAC does not allege any other damages, inclusive of emotional distress. (FAC). As such, Plaintiff is estopped from alleging emotional distress for the first time here. *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (district court acted properly in denying amendment to complaint made while motion for summary judgment was pending and discovery virtually complete).

It is undisputed that Maple Square's written policies provided to Plaintiff in advance of him submitting his rental application expressly stated that old criminal cases and non-convictions would *not* be considered in evaluating Plaintiff's eligibility for housing. (Rodriguez Decl. ¶¶ 5, 6; Exb. "4"). Further, Plaintiff has not alleged that he has attempted to apply for housing anywhere else, or that TSP had issued any subsequent report regarding Plaintiff that could potentially cause him to be denied housing or other harm. (FAC). In fact, TSP has made clear that the subject report is the only report it has ever issued regarding Plaintiff and, until this lawsuit, had never directly heard from him. (Glucroft Decl. ¶ 14). Thus, nothing TSP is alleged to have or have not done has caused Plaintiff to be denied housing or other harm.

Based on the above, Plaintiff cannot prove he suffered an improper denial of housing or other harm due to TSP's report or actions. Therefore, Plaintiff's first and second causes of action for violation of the FCRA must be dismissed.

**D.    PLAINTIFF'S CLAIMS FOR WILLFUL VIOLATIONS OF THE FCRA IN THE FIRST AND SECOND CAUSES OF ACTION MUST BE DISMISSED, AS THE EVIDENCE ESTABLISHES TSP ACTED REASONABLY UNDER THE SUPREME COURT PRECEDENT OF *SAFECO INS. CO.***

Plaintiff alleges in the First and Second causes of action that TSP's violations of the FCRA were willful or alternatively, grossly negligent. (FAC, ¶¶ 54-70). In order for liability to attach under 15 U.S.C. § 1681n for willful noncompliance, a reporting agency must act knowingly or recklessly in violation of the law. *Safeco Ins. Co. of Am. v. Burr, supra*, 551 U.S. 47, 70 (2007); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998).

Case No.:  2:12-CV-05808-SVW-AGR
File No.:  5.371.001                                    14
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    In *Safeco Ins. Co. of Am.*, the Supreme Court made clear that "a company subject to

2  FCRA does not act in reckless disregard of it unless the action is not only a violation under a

3  reasonable reading of the statute's terms, but shows that the company ran a risk of violating the

4  law substantially greater than the risk associated with a reading that was merely careless." *Id.*

5  at 70. The Court found that Safeco's reading of the statute, though erroneous, was reasonable,

6  as its reading of the statute had foundation in the text. *Id.*  Most importantly, "[t]his is not a

7  case in which the business subject to the Act had the benefit of guidance from the courts of

8  appeals or the Federal Trade Commission (FTC) that might have warned it away from the view

9  it took." *Id.*  To the contrary, ". . . no court of appeals had spoken on the issue, and no

10  authoritative guidance has yet come from the FTC . . ." *Id.*

11    In this case, TSP follows the rule that the operative date under the FCRA beginning the

12  seven year reporting period for criminal dismissals is seven years from date of dismissal.  This

13  is based on the statutory text and FTC interpretations stating that the relevant date for purposes

14  of criminal dismissals under the "catch-all" provision of section 1681c(a)(5) is "date of

15  reported event." See Federal Trade Commission, 40 Years of Experience with the Fair Credit

16  Reporting Act: An FTC Staff Report with Summary Interpretations (July 2011), pg. 57,

17  available at http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

18    The last FTC interpretation on this precise issue, in 1990, confirmed that the applicable

19  date for criminal cases resulting in something other than dismissal was the date of disposition.

20  16 C.F.R. Pt. 600, App. 605(a)(5)(1990) ("if charges are dismissed at or before trial, or the

21  consumer is acquitted, the date of dismissal or acquittal is the date of disposition.").

22    As argued above, this 1990 commentary remains operative and an accurate

23  interpretation of the law. Thus, the 1990 FTC interpretation remains in effect and demonstrates

24  that the important date for criminal dismissals under the FCRA remains the date of dismissal.

25    Based on the above, the date of dismissal is clearly a reportable event under the FTC's

26  interpretations. Moreover, neither Congress nor the FTC has stated that the operative date for

27  criminal proceedings resulting in dismissal is the date of filing.

28  ///

Case 2:12-cv-05808-SVW-AGR   Document 29   Filed 10/22/12   Page 22 of 23   Page ID #:484

1    In this case, TSP followed the FTC interpretations to the letter - by reporting the

2    dismissal within the operative seven year period. (Glucroft Decl. ¶ 11). If the Court is

3    precluded from finding willfulness where reasonable minds could differ about an interpretation

4    of the FCRA, this Court certainly cannot find willfulness where TSP followed valid FTC

5    interpretations expressly stating that TSP can properly report proceedings where the dismissal

6    date is within seven years of the report.

7    Even if TSP is incorrect in its reading of the FCRA, such reading is not objectively

8    unreasonable under the circumstances. Of significance, this Court found in its Order granting

9    in part and denying in part TSP's motion to dismiss that the issue of reporting criminal

10   dismissals is one of first impression. (See September 28, 2012 Order granting in part and

11   denying in part TSP's motion to dismiss, pg. 8, lines 3-5, on file with the Court). TSP has

12   reasonably relied on the statutory text and FTC interpretations in arguing that the date of

13   dismissal is the proper operative date under the FCRA. As in *Safeco*, no Court of Appeals has

14   spoken on this issue and there are no definitive statements from Congress or the FTC

15   contradicting TSP's interpretation. Therefore, as in *Safeco*, "[t]his is not a case in which the

16   business subject to the Act had the benefit of guidance from the courts of appeals or the

17   Federal Trade Commission (FTC) that might have warned it away from the view it took."

18   *Safeco Ins. Co. of Am.*, *supra*, 551 U.S. at 70.

19   To be certain, Anne P. Fortney, a former Director of the Division of Credit Practices at

20   the FTC (amongst other qualifying credentials) has submitted an expert report and a

21   declaration in support of her expert opinion that concludes TSP's interpretation of the FCRA

22   regarding the reporting of dismissed criminal cases was reasonable. (SUF 26); (Fortney Decl.

23   ¶4; Exb. "7").

24   Based on the above, TSP's actions were not a willful violation of the FCRA. Thus,

25   Plaintiff's causes of action should be dismissed to the extent they allege willful violations of

26   the law.

27   ///

28   ///

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001
16
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

**5. CONCLUSION.**

Based on the foregoing, Defendant TSP respectfully requests that this Court grant its motion for summary judgment, or alternatively, summary adjudication.

Dated: October 22, 2012

**Jacobson, Russell, Saltz & Fingerman LLP**

_____/S/_____
Michael J. Saltz, Esq.,
Attorneys for Defendant The Screening Pros, LLC

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001                          17
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1  **JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
2  Michael J. Saltz, Esq. SBN 189751
   msaltz@jrsfllp.com
3  Colby A. Petersen, Esq. SBN 274387
   cpetersen@jrsfllp.com
4  G. Austin Sperry, Esq. SBN 278535
   asperry@jrsfllp.com
5  10866 Wilshire Boulevard, Suite 1550
   Los Angeles, CA 90024
6  Telephone: (310) 446-9900 Facsimile: (310) 446-9909

7  Attorneys for Defendant THE SCREENING PROS, LLC

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10 GABRIEL FELIX MORAN, | Case No.: 2:12-cv-05808-SVW-AGR |
| 11 Plaintiff, | **DEFENDANT THE SCREENING PROS, LLC'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION.** |
| 12 vs. | |
| 13 | |
| 14 | |
| 15 THE SCREENING PROS, LLC a California Corporation; and DOES 1-10 | |
| 16 inclusive, | |
| 17 Defendants. | |
| 18 | [filed concurrently with Motion for Summary Judgment/Adjudication] |
| 19 | |
| 20 | Complaint filed: February 2, 2012 |
| 21 | First Amended |
| 22 | Complaint Filed: June 7, 2012 |
| 23 | Removed: July 5, 2012 |
| | Trial Date: November 20, 2012 |
| 24 | |
| 25 | Hearing Date: November 5, 2012 |
| | Time: 1:30 p.m. |
| 26 | Courtroom.: 6 – 2nd Floor |
| 27 | Judge: Hon. Stephen V. Wilson |
| 28 | |

Side text (left margin): JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                    1

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY,
SUMMARY ADJUDICATION

SER148

After consideration of the papers in support of and in opposition to Defendant THE SCREENING PROS, LLC's ("TSP") Motion for Summary Judgment and the oral argument of counsel, the Court determines that the following facts have been established as,

### UNCONTROVERTED FACTS

| UNCONTROVERTED FACT | | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | On or about February 1, 2010, Plaintiff Gabriel Moran applied for housing with Maple Square Apartments ("Maple Square"). | 1. | Plaintiff's First Amended Complaint ("FAC"), ¶ 33, attached to the Declaration of Michael J. Saltz ("Saltz Declaration") as **Exhibit "2"**; Declaration of Mark Rodriguez, ¶ 4 ("Rodriguez Decl."); Application for Government Assisted Housing signed by Plaintiff Moran attached to Rodriguez Decl. as **Exhibit "3"**. |
| 2. | Maple Squares is owned by Affirmed Housing Group and managed by Solari Enterprises, Inc. | 2. | Rodriguez Decl. ¶ 2. |
| 3. | In response, Maple Square requested that Defendant The Screening Pros, LLC ("TSP") issue it a tenant screening report. | 3. | FAC, ¶ 34; Rodriguez Decl. ¶ 11. |
| 4. | On February 5, 2010, TSP issued a tenant screening report containing an eviction report, a credit report from Trans Union, and a criminal report ("Subject Report") to Maple Square. | 4. | FAC, ¶ 34; Declaration of Gary Glucroft ¶¶ 8, 13 ("Glucroft Decl."); Rodriguez Decl. ¶ 11; TSP's Consumer Credit Report on Mr. Moran issued to Maple Square attached to |

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                    2

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel: 310.446.9900 • Fax 310.446.9909

| | | | |
|---|---|---|---|
| | | | Rodriguez Decl. as **Exhibit "5"**. |
| 5. | The report indicated the following: Plaintiff was convicted on June 7, 2006 of "Embezzlement: Theft by non caretaker from older or dependent adult." | 5. | Glucroft Decl. ¶ 11; Rodriguez Decl. ¶ 11; TSP's Consumer Credit Report on Mr. Moran issued to Maple Square attached to Rodriguez Decl. as **Exhibit "5"**. |
| 6. | Charges against Plaintiff of forgery and burglary were dismissed on this same date. | 6. | Glucroft Decl. ¶ 11; Rodriguez Decl. ¶ 11; TSP's Consumer Credit Report on Mr. Moran issued to Maple Square attached to Rodriguez Decl. as **Exhibit "5"**. |
| 7. | The report also states that charges against Plaintiff of being under the influence of a controlled substance were filed on May 16, 2000 and dismissed on March 2, 2004. | 7. | Glucroft Decl. ¶ 11; Rodriguez Decl. ¶ 12; TSP's Consumer Credit Report on Mr. Moran issued to Maple Square attached to Rodriguez Decl. as **Exhibit "5"**. |
| 8. | The report also showed three active collection accounts against Plaintiff totaling $3,709.00. | 8. | Glucroft Decl. ¶ 11; Rodriguez Decl. ¶ 12; TSP's Consumer Credit Report on Mr. Moran issued to Maple Square attached to Rodriguez Decl. as **Exhibit "5"**. |
| 9. | Plaintiff alleges that he has "lost housing opportunities" and has been forced to spend time, money and energy to "clean up Defendant's errors." | 9. | FAC, ¶ 17. |

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                          3

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY,
SUMMARY ADJUDICATION

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

| | | | |
|---|---|---|---|
| 10. | Plaintiff's FAC does not allege any other damages, inclusive of emotional distress. | 10. | FAC. |
| 11. | TSP is not a consumer reporting agency under 15 U.S.C. § 1681i. | 11. | Glucroft Decl. ¶¶ 5, 13. |
| 12. | TSP is only a reseller of criminal information. | 12. | Glucroft Decl. ¶¶ 5, 13. |
| 13. | TSP purchases the information from a third party vendor called G.A. Public Record Services, Inc., which is owned by Thomson Reuters. | 13. | Glucroft Decl. ¶¶ 5, 8. |
| 14. | TSP assembles and merges information contained in the database of another consumer reporting agency for purposes of furnishing such information to a third party. | 14. | Glucroft Decl. ¶¶ 5, 8. |
| 15. | TSP does not maintain a database of assembled or merged criminal record information from which new consumer reports are, or can be, produced. | 15. | Glucroft Decl. ¶ 5. |
| 16. | TSP does not itself maintain a criminal record database of Plaintiff's information. | 16. | Glucroft Decl. ¶ 5. |
| 17. | Prior to filling out his rental application, Maple Square supplied Plaintiff with the Maple Square | 17. | Rodriguez Decl. ¶ 5; Maple Square Apartments Resident Selection Criteria Form attached to Rodriguez Decl. as |

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                4

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY,
SUMMARY ADJUDICATION

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

| | | | | |
|---|---|---|---|---|
| | | Resident Selection Criteria form. | | **Exhibit "4".** |
| | 18. | The Maple Square Resident Selection Criteria form expressly informed Plaintiff in relevant part: | 18. | Rodriguez Decl. ¶ 6; Maple Square Apartments Resident Selection Criteria Form attached to Rodriguez Decl. as **Exhibit "4".** |
| | | "To be eligible for admission at Maple Square Apartments an applicant must be of legal age (18 years of age or older) and qualify under the Federal Low Income Housing Tax Credit and HOME Programs. <br> … <br> Who **for the past five years** has not been convicted of any felony or misdemeanor involving sexual misconduct or a controlled substance, and that to the best of LESSEE'S knowledge neither LESSEE nor any occupant of the Apartment is the subject of a criminal investigation or arrest warrant." | | |
| | 19. | The Maple Square Resident Selection Criteria form also states: <br> A criminal record verification may be made on all persons 18 years and older who will occupy the apartment. **Cause for the application to be rejected includes, <u>but may not be limited to,</u> the conviction of:** <br> ✓ Illegal drug activity of any kind. <br> ✓ Child Abuse, child molestation or negligence involving a child. | 19. | Rodriguez Decl. ¶ 6; Maple Square Apartments Resident Selection Criteria Form attached to Rodriguez Decl. as **Exhibit "4".** |

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                     5

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY,
SUMMARY ADJUDICATION

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

|  |  |  |  |
|---|---|---|---|
|  | ✓ Assault and/or battery or any violent act(s) against another person. ✓ Vandalism. |  |  |
| 20. | Plaintiff thereafter signed the Maple Square Resident Selection Criteria form on February 1, 2010 acknowledging that he received it, read it, and understood it. | 20. | Rodriguez Decl. ¶ 7; Maple Square Apartments Resident Selection Criteria Form attached to Rodriguez Decl. as **Exhibit "4"**. |
| 21. | It is undisputed that Maple Square's written policies provided to Plaintiff in advance of him submitting his rental application expressly stated that old criminal cases and non-convictions would *not* be considered in evaluating Plaintiff's eligibility for housing. | 21. | Rodriguez Decl. ¶¶ 5, 6; Maple Square Apartments Resident Selection Criteria Form attached to Rodriguez Decl. as **Exhibit "4"**. |
| 22. | On February 5, 2010, a Letter of Ineligibility was issued to Plaintiff, stating that he was ineligible for admission at Maple Square because "Criminal Record Showed Other Misdemeanors." | 22. | Rodriguez Decl. ¶ 15; Letter of Ineligibility attached to Rodriguez Decl. as **Exhibit "6"**. |
| 23. | Plaintiff was rejected from housing at Maple Square not because of charges of being under the influence of a controlled substance, as said criminal case was older than five years and did not result in a conviction, but because | 23. | Rodriguez Decl. ¶ 13; Letter of Ineligibility attached to Rodriguez Decl. as **Exhibit "6"**. |

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001
6

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION

SER153

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

| | | | |
|---|---|---|---|
| | of his conviction for theft from an elder or dependent adult. | | |
| 24. | The Letter of Ineligibility specifically stated that Plaintiff had the right to make a written request for a meeting to discuss Plaintiff's ineligibility status. | 24. | Rodriguez Decl. ¶ 16; Letter of Ineligibility attached to Rodriguez Decl. as **Exhibit "6"**. |
| 25. | At no time did Maple Square ever receive any correspondence from Plaintiff to discuss the reasons for the denial of his application or what he would otherwise have to do in order change his ineligibility status so that he could re-apply for housing at Maple Square. | 25. | Rodriguez Decl. ¶ 16. |
| 26. | TSP's interpretation of 15 U.S.C. § 1681c(a)(5) with regard to reporting criminal cases that have been dismissed within seven years of disposition is reasonable. | 26. | Glucroft Decl. ¶ 10; Declaration of Anne P. Fortney ¶ 2 ("Fortney Decl."); *Safeco Ins. Co. of Am. v. Burr, supra,* 551 U.S. 47, 70 (2007) ("[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was |

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                                    7

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY,
SUMMARY ADJUDICATION

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

| | | | | |
|---|---|---|---|---|
| | | | | merely careless."). |
| 27. | In its 2011 report, the FTC stated that the 1990 interpretations had *only* become *partially* obsolete. | 27. | Federal Trade Commission, <u>40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary Interpretations</u> (July 2011), pg. 7, available at http://www.ftc.gov/os/2011/07/110720 fcrareport.pdf. |
| 28. | The FTC commentary through endnote 194 has expressly cited with approval its 1990 commentary stating that the seven-year time period commences to run from the date of dismissal. | 28. | Federal Trade Commission, <u>40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary Interpretations</u> (July 2011), pg. 57, available at http://www.ftc.gov/os/2011/07/110720 fcrareport.pdf; 16 C.F.R. Pt. 600, App. 605(a)(5)(1990) ("if charges are dismissed at or before trial, or the consumer is acquitted, the date of dismissal or acquittal is the date of disposition."). |

Based on the foregoing Uncontroverted Facts, the Court now makes its,

## CONCLUSIONS OF LAW

1.      Plaintiff GABRIEL MORAN cannot establish his first cause of action under 15 U.S.C. § 1681c against Defendant THE SCREENING PROS, LLC.

///

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001                          8

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY,
SUMMARY ADJUDICATION

1        2.    Plaintiff GABRIEL MORAN cannot establish his second cause of action under

2    42 U.S.C. § 1681e(a) against Defendant THE SCREENING PROS, LLC.

3        3.    Plaintiff GABRIEL MORAN cannot establish his third cause of action under 42

4    U.S.C. § 1681i against Defendant THE SCREENING PROS, LLC.

5        4.    Judgment shall be entered in favor of Defendant consistent herewith.

6

7

8    Dated:

9                           United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001

9

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY,
SUMMARY ADJUDICATION

**JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
Michael J. Saltz, Esq.  SBN 189751
msaltz@jrsfllp.com
Colby A. Petersen, Esq. SBN 274387
cpetersen@jrsfllp.com
G. Austin Sperry, Esq.  SBN 278535
asperry@jrsfllp.com
10866 Wilshire Boulevard, Suite 1550
Los Angeles, CA  90024
Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

Attorneys for Defendant THE SCREENING PROS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL FELIX MORAN,<br><br>            Plaintiff,<br><br>     vs.<br><br>THE   SCREENING   PROS,   LLC   a California Corporation; and DOES 1-10 inclusive,<br><br>            Defendants. | Case No.: 2:12-cv-05808-SVW-AGR<br><br>**DECLARATION OF MICHAEL J. SALTZ, ESQ. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION.**<br><br>[filed   concurrently   with   Motion   for Summary Judgment/Adjudication]<br><br>Complaint filed:  February 2, 2012<br>First Amended<br>Complaint Filed:  June 7, 2012<br>Removed:          July 5, 2012<br>Trial Date:       November 20, 2012<br><br>Hearing Date:    November 19, 2012<br>Time:            1:30 p.m.<br>Courtroom.:      6 – 2nd Floor<br>Judge:           Hon. Stephen V. Wilson |

*(Left margin, vertical text:)* JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP   10866 Wilshire Boulevard, Suite 1550   Los Angeles, California 90024   Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-cv-05808-SVW-AGR
File No.: 5.371.001
                                        1

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

## DECLARATION OF MICHAEL J. SALTZ

I, Michael J. Saltz, declare:

1. I am an individual over the age of eighteen. I am a named partner in the law firm of Jacobson, Russell, Saltz & Fingerman, LLP and licensed to practice before all Courts of the State of California, and this Court wherein this lawsuit is pending. I am the attorney of record for Defendant Tenant Screening Pros, LLC ("TSP") in this lawsuit. If called upon to do so, I could and would competently testify as to the contents of this declaration based upon my personal, first-hand knowledge.

2. Attached as **Exhibit "1"** to this Motion for Summary Judgment/Adjudication, is a true and correct copy of the Original Complaint filed in the Los Angeles Superior Court in this case.

3. Attached as **Exhibit "2"** to this Motion for Summary Judgment/Adjudication, is a true and correct copy of the First Amended Complaint filed in the Los Angeles Superior Court in this case. This First Amended Complaint is the operative complaint in this case.

I declare, under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed at Los Angeles, California, on October 22, 2012.


/s/ Michael J. Saltz
_____
Michael J. Saltz, Esq.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.:  2:12-CV-05808-SVW-AGR
File No.:  5.371.001

1

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

EXHIBIT "1"

91362
A6060

THE LAW OFFICES OF DEVIN H. FOK
Devin H. Fok, Esq. (SBN #256599)
P.O. Box 7165
Alhambra, CA 91802-7165
Ph: (310) 430-9933
Fax: (323) 563-3445
devin@devinfoklaw.com

A NEW WAY OF LIFE REENTRY PROJECT
Joshua E. Kim, Esq. (SBN #257260)
P.O. Box 875288
Los Angeles, California 90087
Ph: (323) 563-3575
Fax: (323) 563-3445
joshua@anewwayoflife.org

Attorneys for Plaintiff
GABRIEL FELIX MORAN

FILED
Superior Court of California
County of Los Angeles

FEB 02 2012

John A. Clarke, Executive Officer/ Clerk
By _____, Deputy
      MOSES SOTO

D-53   STEVEN J.
       KLEIFIELD

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

CASE NO.   BC478220

GABRIEL FELIX MORAN,

    Plaintiff,

    vs.

THE SCREENING PROS, LLC, a California
corporation; and DOES 1-10 inclusive,

    Defendants.

**COMPLAINT FOR DAMAGES FOR
VIOLATIONS OF:**

1. Civ. Code §1786.18(a)(7)
2. Civ. Code §1786.20
3. Unlawful Business Practices Pursuant
   to Bus. & Prof. Code §17200 et seq.
4. Unfair Business Practice Pursuant to
   Bus. & Prof. Code §17200 et seq.

**JURY TRIAL DEMANDED**

CIT/CASE: BC478220 LEA(DEFH)
RECEIPT #: CCH52498000028
DATE PAID: 02/02/12 01:51:40 PM
PAYMENT: $395.00
RECEIVED:
      CHECK:        400.00
      CASH:
      CHANGE:        5.00
      CARD:                0310

COMPLAINT FOR DAMAGES - 1

Plaintiff GABRIEL FELIX MORAN (hereafter as "Plaintiff") complains against
Defendants THE SCREENING PROS, LLC. (hereafter as Defendant "TSP"); and DOES 1-10
inclusive, and alleges as follows:

## NATURE OF THE ACTION

1. Defendant TSP is in the business of issuing background screening reports on California
consumers. It is an entity regulated under the California Investigative Consumer Reporting
Agencies Act (hereafter as "ICRAA" §1786 *et seq*).

2. Defendant TSP fails to abide by the restrictions and requirements set forth therein and
routinely provides screening reports that contain prohibited information, including dismissed
charges that never resulted in conviction.

3. Defendant TSP's violations, on information and belief, occur because Defendant TSP has
failed to implement reasonable procedures to avoid the release of prohibited information, and/or
because Defendant has failed to implement reasonable procedures to assure maximum possible
accuracy of the information contained in its reports.

4. As a result of Defendant TSP's wrongful acts and omissions, Plaintiff has been injured,
including, without limitation, by virtue of having lost housing opportunities and by having been
forced to spend time, money, and energy to clean up after Defendant's errors.

5. Plaintiff seeks actual and/or compensatory damages, punitive damages, and equitable
relief, including costs and expenses of litigation, including attorney's fees, and appropriate
injunctive relief requiring Defendant to comply with its legal obligations, as well as additional
and further relief as may be appropriate. Plaintiffs reserve the right to amend this Complaint to
add additional relief as permitted under applicable law.

## THE PARTIES

6. Plaintiff GABRIEL FELIX MORAN is, and at all times relevant herein was, a resident
of Alameda County, California.

7. Defendant THE SCREENING PROS, LLC., is and at all times herein mentioned was, a
California corporation with a principal place of business in Los Angeles County, California.

COMPLAINT FOR DAMAGES – 2

8. Plaintiff is ignorant of the Defendants sued herein as DOES 1-10, inclusive, and therefore sue those Defendants by such capacities when such information is ascertained.

9. Plaintiff is informed and believes and thereon alleges that each of the Doe Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by such occurrences.

10. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendants DOES 1-10, were agents of each other and of the named Defendant and in doing the things alleged in this complaint, were acting in the scope of such agency and with the permission and consent of Defendants.

## VENUE

11. Venue and jurisdiction are proper in this court pursuant to California code of Civil Procedure Sections 395 and 395.5. Defendant's principal place of business in Los Angeles County, California.

## GENERAL ALLEGATIONS

12. The California Investigative Consumer Reporting Agency Act ("ICRAA") governs investigative consumer reporting agencies that compile, sell, and furnish investigative consumer reports. *See* Cal. Civ. §1786 *et seq.*

13. ICRAA was enacted in 1975 for the purpose of ensuring "fairness, impartiality, and a respect for the consumer's right to privacy." Cal. Civ. Code §1786(b).

14. An investigative consumer report may only be made to a third intending to use the report for a permissible purpose as prescribed under Cal. Civ. §1786.12; §1786.16(a)(2)(A). A permissible purpose includes eligibility for the hiring of a dwelling house.

15. Under ICRAA, such users of investigative consumer reports are liable to the same extent as investigative consumer reporting agencies for any violations of the Act. Cal. Civ. §§1786.50, 1786.52.

16. Cal. Civ. C. §1786.18(a)(7) prohibits the disclosures of records of arrests, indictment, information, or misdemeanor complaint where a conviction did not result.

17. Because criminal records information that did not result in a conviction can severely prejudice the consumer's ability to seek housing, ICRAA prohibits the information from being

COMPLAINT FOR DAMAGES - 3

reported in investigative consumer reports furnished to third party users by investigative consumer reporting agencies. *See* Cal. Civ. Code §§1786.18(a).

18. In addition, ICRAA imposes a duty on the reporting agency to verify the accuracy of certain information that is a matter of public record, including criminal records of arrest, conviction and parole, to implement reasonable procedures to avoid reporting prohibited information, and to assure maximum possible accuracy of information that is reported. Cal. Civ. Code. §§1786.18(c), §1786.20(a),(b).

19. An agency that fails to comply with any requirement of ICRAA is liable for the greater of actual damages sustained by the consumer or $10,000 as well as reasonable attorney's fees and costs of the action of a prevailing plaintiff and punitive damages for grossly negligent or willful violations. Civ. Code §1786.50(a),(b).

## DEFENDANT THE SCREENING PRO, LLC.

20. Defendant TSP is an investigative consumer reporting agency. It is in the business, for money or dues, of gathering, compiling, and selling to third parties screening reports containing information regarding individual consumers who are looking for, among other things, housing opportunities.

21. Defendant TSP sells its investigate consumer reports to, among others, prospective landlords. Defendant's reports contain background information on consumer regarding their general reputation, character, mode of living or other personal characteristics. Among other things, Defendant's reports typically include information regarding criminal histories.

## PLAINTIFF GABRIEL FELIX MORAN

22. Plaintiff hereby incorporates by reference the allegation of paragraphs 1-26, inclusive.

23. On or about February 5, 2010, Plaintiff applied for housing with the subject housing development project named MAPLE SQUARE owned and operated by AFFIRMED HOUSING GROUP (hereafter collectively as "MAPLE SQUARE").

24. Plaintiff is informed and believes that MAPLE SQUARE, as part of the application assessment process, requested that Defendant TSP furnish an investigative consumer report as defined in Civ. Code §1786.2(c) on Plaintiff.

COMPLAINT FOR DAMAGES – 4

25. On or about February 5, 2010,  Defendant furnished an investigative consumer report on Plaintiff to MAPLE SQUARE (hereafter as "subject ICR" or "the subject report"). The subject report is attached as Exhibit "1" to this Complaint.

26. Defendant's report contains information on Case No. 188935 where it disclosed records of arrests, indictment, information, or misdemeanor complaint where a conviction did not result.

27. Specifically, Defendant's report disclosed that Plaintiff was charged with "CT1: Under the influence of a controlled substance" but never resulted in a conviction.

28. Defendant's report also contains information on Case No. 217842 where it discloses the following charges that did not result in a conviction: "CT1: Burglary 2nd Degree" and "CT2: Forgery"

29. Due to the prohibited information disclosed in the subject report, MAPLE SQUARE denied Plaintiff's rental application, and Plaintiff is entitled to damages pursuant to Cal. Civ. Code § 1786.50(a), (b).

### FIRST CAUSE OF ACTION
### (Violation of California Civil Code §1786.18(a)(7))

30. Plaintiff hereby incorporates by reference the allegations of paragraph 1-29, inclusive.

31. Defendant is, and at all times herein mentioned was, an investigative consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

32. Upon information and believe, Defendant furnished to a third party investigative consumer reports pertaining to Plaintiff.

33. Defendant's report about Plaintiff contained records of arrest, information, misdemeanor or complaint, that did not result in a conviction.

34. At the time the report was made, Defendant was aware of ICRAA's prohibition against disclosure of the prohibited information and also aware that its report to MAPLE SQUARE included such prohibited information.  Statutory references to the subject prohibition were made on its own website informing its customers that certain criminal records may not be reportable. Defendant disregarded its own obligations and reported the prohibited information on Plaintiff's investigative consumer report to MAPLE SQUARE.

35. Plaintiff was harmed and suffered actual damages as a direct legal, proximate, and foreseeable result of Defendant's violations.

36. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under ICRAA but nonetheless consciously elected to disregard its obligations.

## SECOND CAUSE OF ACTION
### (Violation of California Civil Code §1786.20)

37. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-29, inclusive.

38. Defendant is, and at all times herein mentioned was, an investigative consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

39. Upon information and belief, Defendant also has not, and currently does not maintain reasonable procedures designed to avoid violations of Section 1786.18 and/or does not follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

40. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under ICRAA but nonetheless consciously elected to disregard its obligations.

## THIRD CAUSE OF ACTION
### (Violation of California B&P §17200 *et seq.*)

41. Plaintiffs hereby incorporates by reference the allegations of paragraphs 1 - 29, inclusive.

42. Defendant is, and all times herein mentioned was, an investigative consumer reporting agency engaged in the business and practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

43. California Business and Professions Code §17200 *et seq.* prohibits acts of unfair competition, which mean and include any "unlawful…business act or practice."

COMPLAINT FOR DAMAGES - 6

SER165

44. As more fully described above, the acts and practices alleged herein are unlawful as they violate numerous statutory provisions, including California Civil Codes §1786.18(a)(7), and §1786.20.

45. The acts and practices engaged in by Defendant and alleged herein harmed Plaintiffs and, on information and belief, have harmed other California consumers. On information and belief, Defendant's conduct is ongoing and continues to this date.

46. Plaintiffs allege that Defendant's misconduct, as alleged herein, gave, and continues to give Defendant an unfair competitive advantage.

47. As a direct and proximate result of Defendant's aforementioned acts, Defendant has prospered and benefitted from the sales of its non-compliant screening reports, and has been unjustly enriched by providing non-compliant reports on Plaintiffs and on other consumers and should be required to disgorge its illicit profits and/or be enjoined from continuing such practices under California Business & Professions Code §17200 and related sections.

## FOURTH CAUSE OF ACTION

### (Violation of California B&P Code §17200 *et seq.*)

48. Plaintiffs hereby incorporates by reference the allegations of paragraphs 1 - 30, inclusive.

49. California Business and Professions Code §17200, *et seq.* prohibits acts of unfair competition, which mean and include any "unfair...business act or practice."

50. As more fully described above, Defendant's acts and practices constitute unfair business acts or practices within the meaning of Business and Professions Code §17200, *et seq.* in that the justification for Defendant's conduct, if any, is outweighed by the harm to the general public. Such conduct is also contrary to public policy, immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers. On information and belief, Defendant's unfair conduct is ongoing and continues to this date.

51. The acts and practices engaged in by Defendant and alleged herein harmed Plaintiffs and, on information and belief, have harmed other California consumers. On information and belief, Defendant's conduct is ongoing and continues to this date.

52. Plaintiffs allege that Defendant's misconduct, as alleged herein, gave, and continues to give Defendant an unfair competitive advantage.

COMPLAINT FOR DAMAGES – 7

53. As a direct and proximate result of Defendant's aforementioned acts, Defendant has prospered and benefited from the sales of its non-compliant reports, and has been unjustly enriched by providing of non-compliant screening reports on Plaintiffs and on other consumers and should be required to disgorge illicit and/or enjoined from continuing such practices under California Business & Professions Code §17200 and related sections.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant, and each of them, as follows:

1. For a declaration that Defendant's practices violate California Civil Code §1786 *et seq.*;

2. For compensatory, special, general and punitive damages according to proof against all Defendants;

3. For interest upon such damages as permitted by law;

4. For an award of reasonable attorney's fees provided by law under all applicable statutes;

5. For the costs of suit;

6. For such other orders of the Court and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby request and demand a jury trial on all issues triable by jury.

DATED: February 2, 2012

DEVIN H. FOK ESQ.
THE LAW OFFICES OF DEVIN H. FOK

By: _____
Devin H. Fok
Attorneys for Plaintiff GABRIEL F. MORAN

DATED: February 2, 2012

JOSHUA E. KIM ESQ.
A NEW WAY OF LIFE REENTRY PROJECT

By: _____
Joshua E. Kim
Attorneys for Plaintiff GABRIEL F. MORAN

COMPLAINT FOR DAMAGES - 8

1

## Thank You For Using The Screening Pros
On-line reports available 24/7

## — ATTENTION —
The following criminal data is a summary only.
Contact member services if you need the original criminal report.

Consumer Report For: MAPLE SQUARE                        Date - Time: 02/05/10 15:31:52
Transaction Number:  465164 - 1
Comment:

## -- APPLICANT INFORMATION PROVIDED BY MEMBER --

Applicant Name: MORAN, GABRIEL F      SS#: XXX-XX-9010    State ID#: N6104647 - CA    DOB: 01/22/57
Current Address: 35555 ORLEANS DR , NEWARK , CA 94560
Previous Address:

## · CRIMINAL REPORT ·

## -- COUNTY CRIMINAL SUMMARY --

County / Jurisdiction: Alameda CA                                    Case Number: 188935
Filing Date: 05/16/00                                           Offense Type: Misdemeanor
Charge / Offense: CT1: Under the influence of a controlled substance
Disposition Date: 03/02/04
Disposition: Dismissed

County / Jurisdiction: Alameda CA                                    Case Number: 217842
Filing Date: 06/04/06                                           Offense Type: Misdemeanor
Charge / Offense: CT1: Burglary 2nd degree
Disposition Date: 06/07/06
Disposition: Dismissed

County / Jurisdiction: Alameda CA                                    Case Number: 217842
Filing Date: 06/04/06                                           Offense Type: Misdemeanor
Charge / Offense: CT2: Forgery
Disposition Date: 06/07/06
Disposition: Dismissed

Criminal Summary

..........................................................

County / Jurisdiction: Alameda CA                                    Case Number: 217842

Filing Date: 06/04/06                                               Offense Type: Misdemeanor

Charge / Offense: CT3: Embezzlement; Theft by non caretaker from older or dependent adult

Disposition Date: 06/07/06

Disposition: Guilty-60 Days Jail; 3 Years court probation; $500 Fine

---

**NOTE:** The dissemination of public records such as criminal records is based on an exact match of an individual's full name and full date of birth. Other identifiers such as address and social security numbers may be used in matching criminal records if available. It is the sole responsibility of the end-user to verify that the requested criminal reports are submitted accurately to ensure an accurate search.

**NOTE:** There are several states that prevent a consumer reporting agency from reporting records for various reasons. In accordance with specific state law(s), certain criminal records may not be reportable. To identify what these specific provisions are by state, click here for civil code text.

---

## END CRIMINAL REPORT

New Consumer Reports                                                    Page 1 of 7

```
┌────────────────────────────────────────────────────────────────────┐
│                 Thank You For Using The Screening Pros               │
│                    On-line reports available 24/7                    │
└────────────────────────────────────────────────────────────────────┘
```

```
┌────────────────────────────────────────────────────────────────────┐
│                             -- WARNING --                            │
│         The following reports are confidential and use and possession of these │
│     confidential consumer reports are protected and governed by state and federal law. │
└────────────────────────────────────────────────────────────────────┘
```

Consumer Report For: MAPLE SQUARE                    Date - Time: 02/05/10 15:31:52
Transaction Number:   465164 - 1
Comment:

```
┌────────────────────────────────────────────────────────────────────┐
│            -- APPLICANT INFORMATION PROVIDED BY MEMBER --            │
└────────────────────────────────────────────────────────────────────┘
```

Applicant's Name: MORAN, GABRIEL F      SS#: XXX-XX-9010      State ID#: N6104647-CA          DOB: 01/22/57
Current Address: 35555 ORLEANS DR, NEWARK, CA 94560
Previous Address:

Lead Source:                    Prev Rent:            New Rent:                    Monthly Income:

```
┌────────────────────────────────────────────────────────────────────┐
│              -- EVICTION - RENTAL HISTORY REPORT --                  │
└────────────────────────────────────────────────────────────────────┘
```

                        No records matching your applicant

━━━━━━━━━━━    END OF EVICTION - RENTAL HISTORY REPORT    ━━━━━━━━━━━

New Consumer Reports

---

## -- REFORMATTED TRANSUNION CREDIT REPORT --

The following credit report has been re-formatted for your convenience.
The applicant's full and complete credit report is attached.

"Red Flag" federal identity theft rule imposes new duties on landlords. Full compliance goes into effect June 1st, 2010.
Click here for Red Flag Information sheet

---

## -- CONSUMER'S PERSONAL INFORMATION --

Name:   MORAN, GABRIEL F          SS#: XXX-XX-9010                          DOB: 01/22/57

Address:  855 TORO LN, LATHROP, CA 95330                                   As Of: 06/01/00
          5254 RIVERSIDE AV, SAN PABLO, CA 94806                           As Of:
          5264 RIVERSIDE AV, SAN PABLO, CA 94806                           As Of:

Employer: GABRIELS GARDENING                                               As Of:
          NEW HAVEN UNITED SCH                                             As Of:

---

## -- FACTA ALERTS --

No alerts on record.

---

## -- FRAUD ALERT / CONSUMER MESSAGES --

Address alert. Mismatch - input does not match file

---

## -- CREDIT SUMMARY --

Total Debt: $0.00                   Total Amt Past Due: $0.00              FICO Score: N / A
Total Monthly Payments: $0.00       Total Lines of Credit: 2
Number of Collection Accounts: 4    Positive Lines of Credit: 2
Number of Public Records: 0         Negative Lines of Credit: 0

---

## -- PUBLIC RECORDS --

No Public Records Returned

---

## -- COLLECTIONS --

Original Creditor: MEDICAL              Charge Off Date: 05/08/08          Original Amount: $2800.00
Collection Company: MEDICREDIT          Date Last Verified: 01/19/10       Current Balance: $3345.00
Comments: Account information disputed by consumer
..............................................................................................
Original Creditor: AT T WEST            Charge Off Date: 09/11/09          Original Amount: $66.00
Collection Company: BAY AREA C S        Date Last Verified: 10/21/09       Current Balance: $66.00
Comments: Placed for collection
..............................................................................................
Original Creditor: MEL RAMSTEAD METZGER MGT   Charge Off Date: 06/21/07    Original Amount: $275.00
Collection Company: CB STOCKTON         Date Last Verified: 03/11/08       Current Balance: $298.00
Comments: Account information disputed by consumer
..............................................................................................

New Consumer Reports

Page 4 of 7

Original Creditor: 08 BANK OF THE WEST          Charge Off Date: 09/29/06          Original Amount: $302.00
Collection Company: BEST SERV CO                Date Last Verified: 06/12/09         Current Balance: $0.00
Comments: Paid collection

| -- ACCOUNT DETAILS -- | | | | Legend |
|---|---|---|---|---|
| Creditor | Opened Date | Currently Past Due | Remarks | |
| Account Type | Closed Date | Current Balance | 12 Month Payment History | |
| | Verified Date | Monthly Payment | | |

| TOYOTA MTR | 08/11/03 | -- -- | | |
|---|---|---|---|---|
| Installment account | -- -- | -- -- | | Nov Oct Sep Aug Jul Jun May Apr Mar Feb Jan Dec |
| | 12/31/04 | $240.00 Monthly | | C C C C C C C C C C C C |
| | | | | '04 '04 '04 '04 '04 '04 '04 '04 '04 '04 '04 '03 |

| TOYOTA MTR | 07/01/00 | -- -- | Closed | |
|---|---|---|---|---|
| Installment account | 07/01/02 | -- -- | | Jun May Apr Mar Feb Jan Dec Nov Oct Sep Aug Jul |
| | 07/01/02 | $295.00 Monthly | | C C C C C C C C C C C C |
| | | | | '02 '02 '02 '02 '02 '02 '01 '01 '01 '01 '01 '01 |

| -- CREDIT INQUIRIES -- | | |
|---|---|---|
| Date | Inquirer | Reason |
| 02/05/10 | SCREENING PR | Miscellaneous |

If you decline your applicant based on information within this TU report, direct them to:
TransUnion Attn:Consumer Disclosure Department
P.O. Box 1000, Chester, PA 19022   1 (800) 888-4213

**-- END OF REFORMATTED TRANSUNION CREDIT REPORT --**

SER173

```
00000465164001              TRANSUNION CREDIT REPORT

<FOR>        <SUB NAME>        <MKT SUB> <INFILE>  <DATE>     <TIME>
(I) Z LA2824851 SCREENING PR   12 SK    11/83     02/05/10   17:34CT


<SUBJECT>                                <SSN>       <BIRTH DATE>
MORAN, GABRIEL F.                        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  1/57
<CURRENT ADDRESS>                                    <DATE RPTD>
855 TORO LN., LATHROP CA. 95330                      6/00
<FORMER ADDRESS>
5254 RIVERSIDE AV., SAN PABLO CA. 94806
5264 RIVERSIDE AV., SAN PABLO CA. 94806
<CURRENT EMPLOYER AND ADDRESS>
GABRIELS GARDENING

<FORMER EMPLOYER AND ADDRESS>
NEW HAVEN UNITED SCH


------------------------------------------------------------------
S P E C I A L   M E S S A G E S
***ADDRESS ALERT: CURRENT INPUT ADDRESS DOES NOT MATCH FILE ADDRESS(ES)***
****HIGH RISK FRAUD ALERT:CLEAR FOR ALL SEARCHES PERFORMED***
------------------------------------------------------------------
C R E D I T   S U M M A R Y    * * *   T O T A L  F I L E  H I S T O R Y
PR=0  COL=4  NEG=0  HSTNEG=0     TRD=2  RVL=0  INST=2  MTG=0  OPN=0  INQ=1
      HIGH CRED  CRED LIM  BALANCE  PAST DUE  MNTHLY PAY AVAILABLE
INSTALLMENT: $10.1K     $        $        $0
TOTALS:      $10.1K     $        $        $0        $
------------------------------------------------------------------
C O L L E C T I O N S
SUBNAME      SUBCODE    ECOA OPENED  CLOSED $PLACED  CREDITOR        MOP
ACCOUNT#                     VERIFIED       BALANCE  REMARKS
MEDICREDIT   Y 184P007 I    5/08          $2800     MEDICAL          O9B
15137598                    1/10A         $3345     ACCT INFO DSP BY CSM

BAY AREA C S Y 4445001 I    9/09          $66       AT T WEST        O9B
82369824                    10/09A        $66       PLACED FOR COLLECTIO

CB STOCKTON  Y 1XYF001 I    6/07          -$275     MEL RAMSTEAD METZG O9B
5010760000358662            3/08A         $298      ACCT INFO DSP BY CSM

BEST SERV CO Y 200N001 I    9/06   5/09F $302       08 BANK OF THE WES O9P
6296                        6/09A        $0         PAID COLLECTION
------------------------------------------------------------------
T R A D E S
SUBNAME      SUBCODE    OPENED  HIGHCRED TERMS    MAXDELQ PAYPAT 1-12 MOP
ACCOUNT#                VERFIED CREDLIM  PASTDUE  AMT-MOP PAYPAT 13-24
ECOA COLLATRL/LOANTYPE  CLSD/PD REMARKS                   MO 30/60/90
TOYOTA MTR   Q 4176123  8/03   $10.1K  60M240            111111111111 I01
70400362961510001       12/04A        $0               11111
I    AUTOMOBILE                                         17  0/ 0/ 0

TOYOTA MTR   Q 4176123  7/00   $6195   24M295            111111111111 I01
70400361920870001       7/02A         $0               1111111111
```

SER174

Case: 12-57246, 01/27/2014, ID: 8954138, DktEntry: 37-2, Page 180 of 273

New Consumer Reports                                           Page 6 of 7

```
I    AUTOMOBILE        7/02C  $0      CLOSED             24  0/ 0/ 0.
-------------------------------------------------------------------------
I N Q U I R I E S
DATE    SUBCODE        SUBNAME        TYPE    AMOUNT
 2/05/10 ZLA2024851(CAL) SCREENING PR
-------------------------------------------------------------------------
C R E D I T   R E P O R T   S E R V I C E D   B Y :
TRANSUNION                                       800 888-4213
2 BALDWIN PLACE, P. O. BOX 1000,CHESTER, PA. 19022
Consumer disclosures can be obtained online through TransUnion at:
     http://www.transunion.com

                    END OF TRANSUNION REPORT
```

┌─────────────────────────────────────────────────────────────────┐
│  If you decline your applicant based on information within this TU report, direct them to: │
│              TransUnion Attn:Consumer Disclosure Department                │
│            P.O. Box 1000, Chester, PA 19022   1 (800) 888-4213            │
└─────────────────────────────────────────────────────────────────┘

───────── **END OF ORIGINAL TRANSUNION CREDIT REPORT** ─────────

New Consumer Reports

---

**-- CRIMINAL REPORT ORDER --**

---

Your order for the following criminal reports has been received and is currently being processed.
Your report(s) will be available on-line when completed.

County Criminal (1 County)

**END OF CRIMINAL REPORT ORDER**

SER176

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|

Devin H. Fok (256599); Joshua E. Kim (257260)
P.O. Box 875288
Los Angeles, CA 90087
TELEPHONE NO.: 310-430-9933     FAX NO.: 323-563-3445
ATTORNEY FOR (Name): Gabriel Felix Moran

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central - Stanley Mosk

**FILED**
Superior Court of California
County of Los Angeles

FEB 0 2 2012

John A. Clarke, Executive Officer/ Clerk
By _____ M. Soto _____, Deputy
MOSES SOTO

CASE NAME:
Moran v. The Screening Pros, LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | **BC478220**  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☒ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties.   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify):  Violations of ICRAA Civ. C. Section 1786 et seq.
5. This case ☐ is ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 2/1/2012

Devin H. Fok
_____ ▶ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

SER177

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Moran v. The Screening Pros, LLC | |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES  CLASS ACTION? ☐ YES  LIMITED CASE? ☐ YES  TIME ESTIMATED FOR TRIAL 3 ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|
| **Auto Tort** Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

SER178



| SHORT TITLE: Moran v. The Screening Pros, LLC | CASE NUMBER |
| --- | --- |

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
| --- | --- | --- |
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | 10. |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation.        Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2., 6. |
| | ☒ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer- Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

Side categories (vertical labels):
Non-Personal Injury/Property Damage/ Wrongful Death Tort · Employment · Contract · Real Property · Unlawful Detainer

| LACIV 109 (Rev. 03/11) LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION** | Local Rule 2.0 Page 2 of 4 |
| --- | --- | --- |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Moran v. The Screening Pros, LLC | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)          **CIVIL CASE COVER SHEET ADDENDUM**          Local Rule 2.0
LASC Approved 03-04             **AND STATEMENT OF LOCATION**               Page 3 of 4

| SHORT TITLE: Moran v. The Screening Pros, LLC | CASE NUMBER |
|---|---|

**Item III. Statement of Location:** Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3 on Page 1,** as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. ☐1. ☑2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 4195 E. Thousand Oaks Blvd., #235 Thousand Oaks, CA 91362 |
|---|---|

| CITY: Thousand Oaks | STATE: CA | ZIP CODE: 91362 |
|---|---|---|

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 2/1/2012

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

EXHIBIT "2"

THE LAW OFFICES OF DEVIN H. FOK
Devin H. Fok, Esq. (SBN #256599)
P.O. Box 7165
Alhambra, CA 91802-7165
Ph: (310) 430-9933
Fax: (323) 563-3445
devin@devinfoklaw.com

A NEW WAY OF LIFE REENTRY PROJECT
Joshua E. Kim, Esq. (SBN #257260)
P.O. Box 875288
Los Angeles, California 90087
Ph: (323) 563-3575
Fax: (323) 563-3445
joshua@anewwayoflife.org

Attorneys for Plaintiff
GABRIEL FELIX MORAN

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

**JUN 0 7 2012**

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Shavaye Wesley

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

|  |  |
|---|---|
| GABRIEL FELIX MORAN,<br><br>    Plaintiff,<br><br>vs.<br><br>THE SCREENING PROS, LLC, a California corporation; and DOES 1-10 inclusive,<br>    Defendants. | CASE NO. BC478220<br><br>HON. STEVEN J. KLEIFIELD<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1. 15 U.S.C. §1681c<br>2. 15 U.S.C. §1681e<br>3. 15 U.S.C. §1681i(a)<br>4. Cal. Civ. Code §1786.18<br>5. Cal. Civ. Code §1786.20<br>6. Cal. Civ. Code §1786.24<br>7. Cal. Civ. Code §1786.12(e)<br>8. Cal. Civ. Code §1786.28(a)<br>9. Cal. Civ. Code §1786.29(a) and (b)<br>10. Unlawful Business Practices Pursuant to Bus. & Prof. Code §17200 *et seq.*<br>11. Unfair Business Practice Pursuant to Bus. & Prof. Code §17200 *et seq.*<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED COMPLAINT FOR DAMAGES - 1

Plaintiff GABRIEL FELIX MORAN (hereafter as "Plaintiff") complains against Defendants THE SCREENING PROS, LLC. (hereafter as Defendant "TSP"); and DOES 1-10 inclusive, and alleges as follows:

## NATURE OF THE ACTION

1.   People with conviction history face substantial barriers to reentry, including denial of housing, which impedes their rehabilitative efforts.[1] "A reciprocal relationship exists between incarceration and homelessness."[2] And "the ability to access safe and secure housing within the community is crucial to their successful reentry."[3] However, some studies show that a prior incarceration rate among the homeless population is almost 50%.[4]

2.   This wide discrimination against people with conviction history, antithetical to the important public interest in their successful reentry, is due in part to routine background checks run by private housing providers and a giant commercial industry that has emerged to fulfill this demand for housing background checks.

3.   As Congress stated under 15 U.S.C. §1681(a):

***

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

---

[1]  A letter from the Secretary of the U.S. Dep't of Housing and Urban Development, *available at* http://www.nationalreentryresourcecenter.org/documents/0000/1344/3.30.12_MFamily_properties_Reentry_memo_6__2_.pdf (last visited on June 6, 2012).

[2] *Reentry in Brief*, Federal Interagency Reentry Council (May 2011), *at* p.11, *available at* http://www.nationalreentryresourcecenter.org/documents/0000/1059/Reentry_Brief.pdf (last visited on June 6, 2012).

[3] *Reentry Housing Options: The Policy Makers' Guide*, Council of State Governments Justice Center (2010), *at* p.vii, *available at* http://reentrypolicy.org/jc_publications/reentry-housing-options/Reentry_Housing_Options.pdf (last visited on June 6, 2012).

[4]  *See* Metraux & Culhane, *Homeless Shelter Use and Reincarceration Following Prison Release: Assessing the Risk*, 3 Criminology & Public Policy 139 (2004).

FIRST AMENDED COMPLAINT FOR DAMAGES - 2

(4) There is a need to insure that consumer reporting agencies exercise their *grave responsibilities* with fairness, impartiality, and a respect for the consumer's right to privacy."

4.  Similarly, the California legislature stated under Cal. Civ. C.§1786:

    (a) Investigative consumer reporting agencies have assumed a vital role in collecting, assembling evaluating, compiling, reporting, transmitting, transferring, or communicating information on consumers for....purposes relating to the *hiring of dwelling units*..." (Emphasis added).

    (b) There is a need to insure that investigative consumer reporting agencies exercise their *grave responsibilities* with fairness, impartiality, and a respect for the consumer's right to privacy."

                                    ***

    (f) It is the purpose of this title to require that investigative consumer reporting agencies adopt reasonable procedures for meeting the needs for...information relating to the *hiring dwelling* unit in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, *relevancy*, and proper utilization of the information in accordance with the requirements of this title. (Emphasis added).

5.  Defendant TSP is a background check company that routinely provides screening services to landlords in connection with the leasing of residential properties. It is an entity regulated under the Fair Credit Reporting Act 15 U.S.C. §1681 *et seq.* (hereafter as "FCRA"); the California Investigative Consumer Reporting Agencies Act (hereafter as "ICRAA" Cal. Civ. C. §1786 *et seq.*); and the California Consumer Credit Reporting Agencies Act (hereafter as "CCRAA" §1785 *et seq.*).

6.  All background check reports are regulated under FCRA. Under 15 U.S.C. §1681a(d), all reports bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living must comply with its provisions.

7.  California by contrast has different provisions relating to the regulation of credit reports (e.g., reports bearing on a consumer's credit worthiness, credit standing, and credit capacity); and criminal history reports (e.g., reports bearing on a consumer's character, general reputation, personal characteristics, or mode of living). Consumer credit reports are regulated under the CCRAA, and criminal history reports are regulated under the ICRAA.

FIRST AMENDED COMPLAINT FOR DAMAGES - 3

8.  Here, Defendant TSP issued reports relating to credit, unlawful detainer, and criminal history. The central issues in this litigation are the various statutory violations relating to the criminal history report on Plaintiff, issued by Defendant TSP.

9.  Criminal history reports are regulated under the ICRAA because they are reports that bear on a consumer's character, general reputation, personal characteristics, or mode of living that are not limited to specific factual information relating to a consumer's credit record or manner of obtaining credit obtained directly from a creditor of the consumer or from a consumer reporting agency when that information was obtained directly from a potential or existing creditor of the consumer or from the consumer within the meaning of Cal. Civ. C. §1786.2(c).

10. Both the FCRA and the ICRAA requires a background check company to follow extremely stringent procedures to ensure that whenever criminal history information is reported, it is relevant, accurate, complete, and up to date.

11. Obsolete or irrelevant criminal records information is prohibited from disclosure. This is to alleviate the stigmatization and the negative collateral consequences of old and dated criminal convictions and to promote successful reentry and rehabilitation of people with criminal records.

12. Under the FCRA, a background check company is prohibited from reporting arrests that did not result in conviction that antedate the report by more than 7 years. (15 U.S.C. §1681c(a)). ICRAA extends this prohibition to all arrests that did not result in conviction regardless of the age of the conviction. (Cal. Civ. C. §1786.18(a)).  Moreover, under both statutes and with limited exceptions, any other adverse information that antedate the report by more than 7 years cannot be reported. (*See* 15 U.S.C. §1681c(a); Cal. Civ. C. §1786.18(a)).

13. In addition to the prohibition in reporting obsolete criminal history information, strict disclosure requirements are mandated under both statutes. The idea is to inform the consumer that he or she is entitled to a copy of the report, to allow the consumer an opportunity verify the accuracy of the information reported, and to dispute any information that is inaccurate, incomplete, and/or not up to date. (Cal Civ. C. §§1786.28(a); 1786.29).

14. Upon a written dispute, the background check company is required to reinvestigate and record the current status of the disputed information or delete the item from the file within 30-days following the receipt of the dispute. (Cal. Civ. C. §1786.24(a); 15 U.S.C. §1681i).

15. Defendant TSP failed to abide by the restrictions and requirements set forth therein and routinely provide screening reports and engage in practices that violate various provisions of these governing statutes, including reporting dismissed charges that never resulted in conviction,

FIRST AMENDED COMPLAINT FOR DAMAGES – 4

1  failing to provide required notices, and failing to reinvestigate submitted disputes relating to the
2  accuracy and completeness of the information reported.

3      16. Defendant TSP's violations, on information and belief, occur because Defendant TSP has
4  failed to properly apprise itself of statutory mandates before issuing background check reports,
5  failed to implement reasonable procedures to avoid the release of prohibited information, failed
6  to implement reasonable procedures to assure maximum possible accuracy of the information
7  contained in its reports; and failed to institute proper procedures to investigate disputed
8  information.

9      17. As a result of Defendant TSP's wrongful acts and omissions, Plaintiff has been injured,
10  including, without limitation, by virtue of having lost housing opportunities and by having been
11  forced to spend time, money, and energy to clean up after Defendant's errors.

12      18. Plaintiff seeks actual and/or compensatory damages, punitive damages, and equitable
13  relief, including costs and expenses of litigation, including attorney's fees, and appropriate
14  injunctive relief requiring Defendant to comply with its legal obligations, as well as additional
15  and further relief as may be appropriate. Plaintiffs reserve the right to amend this Complaint to
16  add additional relief as permitted under applicable law.

17

18                              **THE PARTIES**

19

20      19. Plaintiff is, and at all times relevant herein was, a resident of Alameda County,
21  California.

22      20. Defendant TSP, is and at all times herein mentioned was, a California corporation with a
23  principal place of business in Los Angeles County, California.

24      21. Defendant TSP is an entity regulated under both the FCRA and the ICRAA.

25      22. For purposes of the FCRA, Defendant TSP is a "consumer reporting agency" as defined
26  under 15 U.S.C. §1681a(f) because it is a "person which, for monetary fees, dues…regularly
27  engages in whole or in part in the practice of assembling or evaluating consumer credit
28  information or other information on consumers for the purpose of furnishing consumer reports to
29  third parties, and which uses any means or facility of interstate commerce for the purpose of
30  preparing or furnishing consumer reports."

31      23. A "consumer report" is "any written, oral, or other communication of any information by
32  a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit

1  capacity, character, general reputation, personal characteristics, or mode of living which is used
2  or expected to be used or collected in whole or in part for the purpose of serving as a factor in
3  establishing the consumer's eligibility for...credit or...household purposes...or any other
4  purpose authorized under section 1681b of this title." (15 U.S.C. §1681a(d)).

5      24. For purposes of the ICRAA, Defendant TSP is an "investigative consumer reporting
6  agency" as defined under Cal. Civ. C. §1786.2(d) because it is a "person who, for monetary fees
7  or dues, engages in whole or in part in the practice of collecting, assembling, evaluating,
8  compiling, reporting, transmitting, transferring, or communicating information concerning
9  consumers for the purposes of furnishing investigative consumer reports to third parties..."

10      25. An investigative consumer report is "a consumer report in which information on a
11  consumer's character, general reputation, personal characteristics, or mode of living is obtained
12  through any means [except] a consumer report or other compilation of information that is limited
13  to specific factual information relating to a consumer's credit record or manner of obtaining
14  credit obtained directly from a creditor of the consumer or from a consumer reporting agency
15  when that information was obtained directly from a potential or existing creditor of the consumer
16  or from the consumer..." (Cal. Civ. C. §1786.2(d)).

17      26. Defendant TSP's reports, including the background check report at issue in the present
18  case, contain background information on consumer regarding their general reputation, character,
19  mode of living or other personal characteristics. Among other things, Defendant TSP's reports
20  typically include information regarding criminal histories.

21      27. Defendant TSP sells background check reports to, among others, prospective landlords.

22      28. Plaintiff is ignorant of the Defendants sued herein as DOES 1-10, inclusive, and therefore
23  sues those Defendants by such capacities when such information is ascertained.

24      29. Plaintiff is informed and believes and thereon alleges that each of the Doe Defendants is
25  responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as
26  herein alleged were proximately caused by such occurrences.

27      30. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned,
28  Defendants DOES 1-10, were agents of each other and of the named Defendant and in doing the
29  things alleged in this complaint, were acting in the scope of such agency and with the permission
30  and consent of Defendants.

31

32                          **VENUE**

31. Venue and jurisdiction are proper in this court pursuant to California code of Civil Procedure Sections 395 and 395.5. Defendant's principal place of business is in Los Angeles County, California.

## GENERAL ALLEGATIONS

32. Plaintiff hereby incorporates by reference the allegation of paragraphs 1-30, inclusive.

33. On or about February 5, 2010, Plaintiff applied for housing with the subject affordable housing development project named MAPLE SQUARE owned and operated by AFFIRMED HOUSING GROUP (hereafter collectively as "MAPLE SQUARE").

34. Plaintiff is informed and believes that MAPLE SQUARE, as part of the application assessment process, requested that Defendant TSP furnish a consumer report within the meaning of 15 U.S.C. §1681a(d) and/or an investigative consumer report as defined in Civ. Code §1786.2(c) on Plaintiff (collectively as "background check report").

35. On or about February 5, 2010,   Defendant TSP furnished a background check report on Plaintiff to MAPLE SQUARE (hereafter as "the subject report"). The subject report is attached as Exhibit "1" to this Complaint.

36. Defendant's report contains information on Case No. 188935 relating to a May 16, 2000 arrest for "under the influence of a controlled substance." Plaintiff was never convicted of this crime.

37. Both the FCRA and the ICRAA prohibit the reporting of this case because it is outdated, obsolete, and irrelevant.

38. Under the FCRA, 15 U.S.C. §1681c(a)(2), and (5), any adverse item of information including records of arrest that are older than seven years cannot be reported. Under the ICRAA, Cal. Civ. C. §1786.18(a)(7) and (8) any records of arrest that did not result cannot be reported regardless of its age.

39. Defendant clearly disclosed the arrest date as May 16, 2000 which is more than 7 years from the date of the report violating the FCRA. Moreover, because the arrest also did not result in conviction, the disclosure of which also violates the ICRAA.

40. Moreover, due to tis age, Alameda County Superior Court – Fremont Hall of Justice had long purged and destroyed the court records relating to this case. Plaintiff is informed and

FIRST AMENDED COMPLAINT FOR DAMAGES – 7

believes that the records were purged and/or destroyed prior to the date of the issuance of the subject report.

41. Under both the FCRA (15 U.S.C. §1681e(b)) and the ICRAA (Cal. Civ. C. §1786.20(b)), a background check company "shall follow *reasonable procedures to assure maximum possible accuracy of the information* concerning the individual about whom the report relates." (The statutory language is identical under both the FCRA, and the ICRAA).

42. Further under the ICRAA, Cal. Civ. C. §1786.18(c), a background check company such as Defendant TSP must verify the accuracy of the information during the 30-day period ending on the date on which the report is furnished. Under Cal. Civ. C. §1786.24(e), if the accuracy of the information cannot be verified, the background company must "*promptly delete that information...*"

43. The FCRA also has a similar requirement under 15 U.S.C. §1681i(a)(3)(A) where unverifiable information cannot be reported and must be promptly deleted when disputed.

44. In clear violation of the above-described statutes, Defendant TSP did not and does not use reasonable procedures to assure the maximum possible accuracy of the information reported. Defendant TSP reported and routinely reports criminal history information without verification of the accuracy of the reported information *prior* to its disclosure. In fact, Defendant TSP did not obtain and currently does not possess any court records from the Alameda County Superior Court.

45. Alameda County Superior Court – Fremont Hall of Justice is the original source of the proceedings related to the subject case. Since the court has purged and/or destroyed the underlying records related to this case, the parties, this Court, as well as the recipient of the subject background check report cannot verify the accuracy of the information reported and the reporting of the same violates Plaintiff's rights under the FCRA and the ICRAA.

46. Defendant's report also contains information on Case No. 217842 where it discloses the following charges that did not result in a conviction: "CT1: Burglary 2nd Degree" and "CT2: Forgery."

47. Defendant flooded the report with dismissed criminal charges when in fact, the only reportable conviction was count 3 of Case No. 217842 for petty theft of a dependent adult.

48. Due to the prohibited information disclosed in the subject report, MAPLE SQUARE denied Plaintiff's rental application, and Plaintiff is entitled to damages pursuant to Cal. Civ. Code § 1786.50(a), (b).

FIRST AMENDED COMPLAINT FOR DAMAGES - 8

49. Subsequent to the denial of his rental application, Plaintiff sought assistance from the East Bay Community Law Center ("EBCLC"). On or about November 9, 2011, EBCLC submitted a written dispute to Defendant TSP disputing the inclusion of Case No. 188935 and the two dismissed counts in Case No. 217842 in the subject report.

50. Under both the FCRA (15 U.S.C. §1681i(a)(1)(A)), and the ICRAA (Cal. Civ. C. §1786.24(a)), a background check company is required to, among other obligations, conduct a full and complete investigation within 30-days of receipt of the dispute.

51. Defendant was well-aware of this requirement but wholly failed to abide by it. Defendant wholly failed to respond to the November 9, 2011 written dispute from EBCLC and failed to investigate the claim. To date, Plaintiff has failed to receive any response concerning the investigation relating to Plaintiff's dispute. Plaintiff is left without recourse except to initiate this civil action.

52. The availability of affordable housing such as those offered by MAPLE SQUARE is limited. Defendant TSP's report which contains unverifiable information; it is not maximally accurate; it is flooded with dismissed charges and it is therefore misleading negatively and substantially affected Plaintiff's ability to obtain affordable housing. Defendant TSP continues to jeopardize Plaintiff's future ability to obtain affordable housing by its failure and continue to failure to resolve Plaintiff's dispute and update its system and issue a new report to MAPLE SQUARE omitting the unverifiable, inaccurate, and misleading information as described above.

53. Plaintiff seeks statutory and/or actual damages from Defendant as provided under 15 U.S.C. §§1681n and o and Cal. Civ. C. §1786.50.

## FIRST CAUSE OF ACTION

### (Violation of the Fair Credit Reporting Act, 15 U.S.C §1681e(a))

54. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-53, inclusive.

55. Defendant is, and at all times herein mentioned was, a consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

56. Upon information and believe, Defendant furnished to a third party consumer reports pertaining to Plaintiff.

FIRST AMENDED COMPLAINT FOR DAMAGES - 9

57. Defendant's report about Plaintiff contains records of arrest and other adverse information that antedate the date of the report by more than 7 years in violation of 15 U.S.C. §§1681c(a)(2) and (5).

58. At the time the report was made, Defendant was aware of the FCRA's prohibition against disclosure of the prohibited information and also aware that its report to MAPLE SQUARE included such prohibited information.  Statutory references to the subject prohibition were made on its own website informing its customers that certain criminal records may not be reportable. Defendant disregarded its own obligations and reported the prohibited information on Plaintiff's investigative consumer report to MAPLE SQUARE.

59. Plaintiff was harmed and suffered actual damages as a direct legal, proximate, and foreseeable result of Defendant's violations.

60. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under the FCRA but nonetheless consciously elected to disregard its obligations.

## SECOND CAUSE OF ACTION

### (Violation of the Fair Credit Reporting Act, 15 U.S.C §1681e)

61. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-53, inclusive.

62. Defendant is, and at all times herein mentioned was, a consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

63. Upon information and belief, Defendant also has not, and currently does not maintain reasonable procedures designed to avoid violations of 15 U.S.C. §1681c of the FCRA and it is accordingly in violation of 15 U.S.C. §1681e.

64. Upon information and belief, Defendant also does not follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

65. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under the FCRA but nonetheless consciously elected to disregard its obligations.

FIRST AMENDED COMPLAINT FOR DAMAGES - 10

## THIRD CAUSE OF ACTION

### (Violation of the Fair Credit Reporting Act 15 U.S.C §1681i)

66. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-53, inclusive.

67. Defendant is, and at all times herein mentioned was, a consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

68. Upon information and belief, Defendant also has not, and currently does not maintain reasonable procedures to resolve consumer disputes as required under 15 U.S.C. §1681i.

69. Specifically, Defendant failed to conduct any reinvestigation as mandated under 15 U.S.C. §§1681i(a)(1)(A) and (B); failed to promptly notify any person who provided any item of information in dispute as mandated under 15 U.S.C. §§1681i(a)(2)(A) and (B); failed to provide Plaintiff with a notice of determination and/or reinvestigation as mandated under 15 U.S.C. §§1681(a)(3) and (6); failed to promptly delete or modify inaccurate or unverifiable information as mandated by 15 U.S.C. §1681i(a)(5); failed to maintain an automated system through which furnishers of information to Defendant may report the results of a reinvestigation that finds incomplete, inaccurate, or unverifiable information; failed to provide a description of reinvestigation procedure as mandated under 15 U.S.C. §1681i(a)(7) ; failed to notify the fact of the dispute pursuant to 15 U.S.C. §1681i(c), and failed to notify the recipient of the subject report relating to the deletion of disputed information pursuant to 15 U.S.C. §1681i(d).

70. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under the FCRA but nonetheless consciously elected to disregard its obligations.

## FOURTH CAUSE OF ACTION

### (Violation of the California Investigative Consumer Reporting Agencies Act, Cal. Civ. C. §1786.18)

71. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-53, inclusive.

72. Defendant is, and at all times herein mentioned was, a consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

FIRST AMENDED COMPLAINT FOR DAMAGES - 11

73. Upon information and believe, Defendant furnished to a third party consumer reports pertaining to Plaintiff.

74. Defendant's report about Plaintiff contains records of arrest that did not result in conviction and other adverse information that antedate the date of the report by more than 7 years in violation of Cal. Civ. C. §1786.18(a)(7) and (8).

75. At the time the report was made, Defendant was aware of the ICRAA's prohibition against disclosure of the prohibited information and also aware that its report to MAPLE SQUARE included such prohibited information.  Statutory references to the subject prohibition were made on its own website informing its customers that certain criminal records may not be reportable.  Defendant disregarded its own obligations and reported the prohibited information on Plaintiff's investigative consumer report to MAPLE SQUARE.

76. Plaintiff was harmed and suffered actual damages as a direct legal, proximate, and foreseeable result of Defendant's violations.

77. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under ICRAA but nonetheless consciously elected to disregard its obligations.

## FIFTH CAUSE OF ACTION

### (Violation of the California Investigative Consumer Reporting Agencies Act Cal. Civ. C. §1786.20)

78. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-53, inclusive.

79. Defendant is, and at all times herein mentioned was, a consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

80. Upon information and belief, Defendant also has not, and currently does not maintain reasonable procedures designed to avoid violations of Cal. Civ. C. §1786.18 of the ICRAA and it is accordingly in violation of Cal. Civ. C. §1786.20(a).

81. Upon information and belief, Defendant also not follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates and it is in violation of Cal. Civ. C. §1786.20(b).

FIRST AMENDED COMPLAINT FOR DAMAGES - 12

82. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under the ICRAA but nonetheless consciously elected to disregard its obligations.

### SIXTH CAUSE OF ACTION

**(Violation of the California Investigative Consumer Reporting Agencies Act Cal. Civ. C. §1786.24)**

83. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-53, inclusive.

84. Defendant is, and at all times herein mentioned was, an investigative consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

85. Upon information and belief, Defendant also has not, and currently does not maintain reasonable procedures to resolve consumer disputes as required under Cal. Civ. C. §1786.24.

86. Specifically, Defendant failed to conduct any reinvestigation as mandated under Cal. Civ. C. §1786.24(a); failed to promptly notify any person who provided any item of information in dispute as mandated under Cal. Civ. C. §1786.24(b); failed to provide Plaintiff with a notice of determination and/or reinvestigation as mandated under Cal. Civ. C. §§1786.24(d) and (g); failed to promptly delete or modify inaccurate or unverifiable information as mandated by Cal. Civ. C. §1786.24(e); failed to maintain an automated system through which furnishers of information to Defendant may report the results of a reinvestigation that finds incomplete, inaccurate, or unverifiable information as mandated by Cal. Civ. C. §1786.24(n); failed to provide a description of reinvestigation procedure as mandated under Cal. Civ. C. §1786.24(g) ; failed to notify the fact of the dispute pursuant to Cal. Civ. C. §1786.24(j) ; and failed to notify the recipient of the subject report relating to the deletion of disputed information pursuant to Cal. Civ. C. §1786.24(k).

87. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under the ICRAA but nonetheless consciously elected to disregard its obligations.

//
//
//

FIRST AMENDED COMPLAINT FOR DAMAGES - 13

## SEVENTH CAUSE OF ACTION

### (Violation of the California Investigative Consumer Reporting Agencies Act Cal. Civ. C. §1786.12(e))

88. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-50, inclusive.

89. Defendant is, and at all times herein mentioned was, an investigative consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

90. Upon information and belief, Defendant also has not, and currently does not obtain the proper certification under Cal. Civ. C. §1786.12(e) prior to issuing an investigative consumer report.

91. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under the ICRAA but nonetheless consciously elected to disregard its obligations.

## EIGHTH CAUSE OF ACTION

### (Violation of the California Investigative Consumer Reporting Agencies Act Cal. Civ. C. §1786.28)

92. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-53, inclusive.

93. Defendant is, and at all times herein mentioned was, a consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

94. Upon information and belief, Defendant also has not, and currently does not disclose the source from which the consumer information was obtained including the *particular court* and the date that the information was initially reported or publicized.

95. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under the ICRAA but nonetheless consciously elected to disregard its obligations.

//
//
//

SER196

## NINTH CAUSE OF ACTION

**(Violation of the California Investigative Consumer Reporting Agencies Act Cal. Civ. C. §1786.29)**

96. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-50, inclusive.

97. Defendant is, and at all times herein mentioned was, a consumer reporting agency engaged in the practice of assembling and evaluating information on consumers for the purpose of furnishing investigative consumer reports to third parties for monetary fees.

98. Upon information and belief, Defendant also has not, and currently does not provide the following notices on the first page of an investigative consumer report including the subject report:

    a. A notice in at least 12-point boldface type setting forth that the report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records, and information generated as a result of identity theft, including evidence of criminal activity may be inaccurately associated with the consumer who is the subject of the report.

    b. An investigative consumer reporting agency shall provide a consumer seeking to obtain a copy of a report or making a request to review a file, a written notice in simple, plain English and Spanish setting forth the terms and conditions of his or her right to receive all disclosures, as provided in Section 1786.26.

99. Defendant's violations were willful and/or grossly negligent because Defendant was aware of its obligations under the ICRAA but nonetheless consciously elected to disregard its obligations.

## TENTH CAUSE OF ACTION

**(Violation of California B&P §17200 *et seq.*)**

100.    Plaintiffs hereby incorporates by reference the allegations of paragraphs 1 - 53, inclusive.

101.    Defendant is, and all times herein mentioned was, an investigative consumer reporting agency engaged in the business and practice of assembling and evaluating information

FIRST AMENDED COMPLAINT FOR DAMAGES - 15

1   on consumers for the purpose of furnishing investigative consumer reports to third parties for

2   monetary fees.

3       102.    California Business and Professions Code §17200 *et seq.* prohibits acts of unfair

4   competition, which mean and include any "unlawful...business act or practice."

5       103.    As more fully described above, the acts and practices alleged herein are unlawful

6   as they violate numerous statutory provisions, as previously alleged.

7       104.    The acts and practices engaged in by Defendant and alleged herein harmed

8   Plaintiffs and, on information and belief, have harmed other California consumers. On

9   information and belief, Defendant's conduct is ongoing and continues to this date.

10      105.    Plaintiffs allege that Defendant's misconduct, as alleged herein, gave, and

11  continues to give Defendant an unfair competitive advantage.

12      106.    As a direct and proximate result of Defendant's aforementioned acts, Defendant

13  has prospered and benefitted from the sales of its non-compliant screening reports, and has been

14  unjustly enriched by providing non-compliant reports on Plaintiffs and on other consumers and

15  should be required to disgorge its illicit profits and/or be enjoined from continuing such practices

16  under California Business & Professions Code §17200 and related sections.

17

18  ### ELEVENTH CAUSE OF ACTION

19  ### (Violation of California B&P Code §17200 *et seq.*)

20

21      107.    Plaintiffs hereby incorporates by reference the allegations of paragraphs 1 - 53,

22  inclusive.

23      108.    California Business and Professions Code §17200, *et seq.* prohibits acts of unfair

24  competition, which mean and include any "unfair...business act or practice."

25      109.    As more fully described above, Defendant's acts and practices constitute unfair

26  business acts or practices within the meaning of Business and Professions Code §17200, *et seq.*

27  in that the justification for Defendant's conduct, if any, is outweighed by the harm to the general

28  public. Such conduct is also contrary to public policy, immoral, unethical, oppressive,

29  unscrupulous and/or substantially injurious to consumers. On information and belief,

30  Defendant's unfair conduct is ongoing and continues to this date.

31

32

110.     The acts and practices engaged in by Defendant and alleged herein harmed Plaintiffs and, on information and belief, have harmed other California consumers. On information and belief, Defendant's conduct is ongoing and continues to this date.

111.     Plaintiffs allege that Defendant's misconduct, as alleged herein, gave, and continues to give Defendant an unfair competitive advantage.

112.     As a direct and proximate result of Defendant's aforementioned acts, Defendant has prospered and benefited from the sales of its non-compliant reports, and has been unjustly enriched by providing of non-compliant screening reports on Plaintiffs and on other consumers and should be required to disgorge illicit and/or enjoined from continuing such practices under California Business & Professions Code §17200 and related sections.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant, and each of them, as follows:

1.   For a declaration that Defendant's practices violate the FCRA, and the ICRAA;

2.   For compensatory, special, general and punitive damages according to proof against all Defendants;

3.   For interest upon such damages as permitted by law;

4.   For an award of reasonable attorney's fees provided by law under all applicable statutes;

5.   For the costs of suit;

6.   For such other orders of the Court and further relief as the Court deems just and proper.

DATED: June 6, 2012

DEVIN H. FOK ESQ.
THE LAW OFFICES OF DEVIN H. FOK

By: _____
Devin H. Fok
Attorneys for Plaintiff GABRIEL F. MORAN

FIRST AMENDED COMPLAINT FOR DAMAGES - 17

SER199

**DEMAND FOR JURY TRIAL**

Plaintiff hereby request and demand a jury trial on all issues triable by jury.

DATED: June 6, 2012

DEVIN H. FOK ESQ.
THE LAW OFFICES OF DEVIN H. FOK

By:

Devin H. Fok
Attorneys for Plaintiff GABRIEL F. MORAN

FIRST AMENDED COMPLAINT FOR DAMAGES - 18

SER200

# PROOF OF SERVICE

1

2   I, the undersigned, declare that I am a citizen of the United States and work in the City of Los
Angeles, County of Los Angeles, that I am over the age of eighteen (18) years and not a party to

3   the within cause; that my business address is 958 E. 108th St., Los Angeles, CA 90059, and that
on the date set out below I served a true copy of the attached:

4

5   • PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES

6       On the following parties at the addresses set for the below:

7   Verifications, Inc. c/o Jacobson, Russell, Saltz & Fingerman LLP
ATTN: Michael J. Saltz, Esq.

8   10866 Wilshire Blvd., Ste. 1550
Los Angeles, CA 90024

9   Phone: (310) 446-9900; Fax: (310) 446-9909

10

11      By the following method:

12      _X_ (BY REGULAR MAIL)  I caused such envelopes to be delivered to the office(s)
thereon fully prepaid to be placed in the U.S. mail at Los Angeles, California.

13

14      ____ (BY PERSONAL DELIVERY)  I caused such envelope(s) to be delivered by hand
to the office(s) of the addressee(s).

15

16      ____ (BY FACSIMILE) I caused such copies to be sent with same day service.

17

18  I declare under penalty of perjury that the above statements are true and correct. This statement
is executed in Los Angeles, California on June 6, 2012

19

20

21                                                              Devin Fok

22

23

24

25

26

27

28

## PROOF OF SERVICE

1 | **JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
2 | Michael J. Saltz, Esq.  SBN 189751
  | msaltz@jrsfllp.com
3 | Colby A. Petersen, Esq. SBN 274387
  | cpetersen@jrsfllp.com
4 | G. Austin Sperry, Esq.  SBN 278535
  | asperry@jrsfllp.com
5 | 10866 Wilshire Boulevard, Suite 1550
  | Los Angeles, CA  90024
6 | Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

7 | Attorneys for Defendant THE SCREENING PROS, LLC

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

| GABRIEL FELIX MORAN, | Case No.: 2:12-cv-05808-SVW-AGR |
|---|---|
| Plaintiff, | **DECLARATION OF MARK RODRIGUEZ IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION.** |
| vs. | |
| THE SCREENING PROS, LLC a California Corporation; and DOES 1-10 inclusive, | [filed concurrently with Motion for Summary Judgment/Adjudication] |
| Defendants. | Complaint filed:  February 2, 2012 |
| | First Amended |
| | Complaint Filed:  June 7, 2012 |
| | Removed:  July 5, 2012 |
| | Trial Date:  November 20, 2012 |
| | Hearing Date:  November 19, 2012 |
| | Time:  1:30 p.m. |
| | Courtroom.:  6 – 2nd Floor |
| | Judge:  Hon. Stephen V. Wilson |

*Sidebar (vertical text):* JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP  10866 Wilshire Boulevard, Suite 1550  Los Angeles, California 90024  Tel. 310.446.9900 • Fax 310.446.9909

Case No.:  2:12-cv-05808-SVW-AGR
File No.:  5.371.001                                    1

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

SER202

## DECLARATION OF MARK RODRIGUEZ

I, MARK RODRIGUEZ, declare:

1. I am an individual over the age of eighteen. If called upon to do so, I could and would competently testify as to the contents of this declaration based upon my personal, first-hand knowledge.

2. In February 2010, I was an assistant manager of a multi-housing project named Maple Square Apartments ("Maple Square"). I am employed by Solari Enterprises, Inc., which is the management company for Maple Square. Maple Square is owned by Affirmed Housing Group.

3. I am one of the custodians of records for Maple Square and I am familiar with the manner in which, and the location in which, we keep and maintain our business records. Maple Square has a file on Gabriel Felix Moran ("Moran") that was generated and kept in the ordinary course of business pertaining to the documentation of his application for housing at Maple Square.

4. Mr. Moran filled out and signed an application for Government Assisted housing on or about February 1, 2010 under the Federal Low Income Housing Tax Credit Program at Maple Square. A true and correct copy of said application, wherein certain personal identity information has been redacted to protect Mr. Moran's identity, and which is a business record kept by Maple Square in Mr. Moran's file in the ordinary course of business, is attached to the Motion for Summary Judgment/Adjudication as **Exhibit "3"**.

5. Prior to filling out his rental application, Maple Square supplied Mr. Moran with the Maple Square Apartments Resident Selection Criteria form. A true and correct copy of said form, which is a business record kept by Maple Square in Mr. Moran's file in the ordinary course of business, is attached to the Motion for Summary Judgment/Adjudication as **Exhibit "4"**.

6. The Maple Square Apartments Resident Selection Criteria form expressly informed Mr. Moran in relevant part:

> "To be eligible for admission at Maple Square Apartments an applicant must be of legal age (18 years of age or older) and qualify under the Federal Low Income Housing Tax Credit and HOME Programs.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001

1

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

…

Who **for the past five years** has not been convicted of any felony or misdemeanor involving sexual misconduct or a controlled substance, and that to the best of LESSEE'S knowledge neither LESSEE nor any occupant of the Apartment is the subject of a criminal investigation or arrest warrant."

. . .

A criminal record verification may be made on all persons 18 years and older who will occupy the apartment. **Cause for the application to be rejected includes, but may not be limited to, the conviction of:**

1.  Illegal drug activity of any kind.
2.  Child Abuse, child molestation or negligence involving a child.
3.  Assault and/or battery or any violent act(s) against another person.
4.  Vandalism.

7. Mr. Moran thereafter signed the Maple Square Apartments Resident Selection Criteria form on or about February 1, 2010 acknowledging that he received it, read it and understood it. This is confirmed by the fact that the signature on said form at Exhibit "4" appears to be the exact same signature as the one on the Rental Application at Exhibit "3".

8. After signing said Maple Square Apartments Resident Selection Criteria form, Mr. Moran submitted his rental application to Maple Square for processing.

9. Maple Square, as part of its normal procedure for screening prospective tenants, screens all of its applicants by requesting a consumer credit report from its tenant screening provider. Maple Square specifically requests a traditional credit report from a major credit bureau, an eviction case report, and a criminal court records report. Maple Square relies upon the information in such reports to determine the credit worthiness and credit capacity of potential future tenants so as to better limit Maple Square's default rate and protect its existing residence from known convicted criminals who have, within the prior five years of the application, been convicted of crimes that would unreasonably expose them to potential problems.

10. Maple Square performs its tenant screening by ordering such consumer credit reports from The Screening Pros, LLC ("TSP").

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001                                          2

11. On or about February 5, 2010, Maple Square requested that TSP provide it with a consumer credit report in addition to eviction and criminal court case information related to Mr. Moran. In response, TSP provided a consumer credit report to Maple Square on Mr. Moran consisting of a credit report from Trans Union, an eviction report, and a criminal history report. The criminal report provided established that Mr. Moran had a misdemeanor conviction related to victimizing an elderly person within the proceeding five years. Specifically, the criminal report showed that on June 7, 2006 Mr. Moran was convicted of "Embezzlement; Theft by a non caretaker from older or dependent adult." A true and correct copy of the TSP consumer credit report on Mr. Moran issued to Maple Square, which is kept by Maple Square in the ordinary course of business as a business record in Maple Square's file on Mr. Moran, is attached to the Motion for Summary Judgment/Adjudication as **Exhibit "5".**

12. The report also showed three active collection accounts against Mr. Moran totaling $3,709.00.

13. Maple Square did not reject Mr. Moran's rental application due to any information reported about Case Number 188935 charging Mr. Moran with being under the influence of a controlled substance, which was disposed of by dismissal in 2004 as reported in said TSP report. Rather, Maple Square specifically told Mr. Moran in advance and in writing that it would only consider certain drug related criminal convictions going back five years from the date of the application. Since Case Number 188935 was older than five years and it did not result in a conviction, Maple Square did not consider or apply any aspect of Case Number 188935 in the application process.

14. Based upon the fact that Mr. Moran had been convicted in Case Number 217842 of theft of an elderly person within five years of his rental application having been submitted, Maple Square made the decision to reject Mr. Moran's application.

15. On or about February 5, 2010, Maple Square sent Mr. Moran a Letter of Ineligibility and an Adverse Action Notice explaining that his application was denied due to the fact that his criminal record showed other misdemeanors than those pre-printed on the Letter of Ineligibility. A true and correct copy of said Letter of Ineligibility, which is kept by Maple

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1    Square in the ordinary course of business as a business record in Maple Square's file on Mr.

2    Moran, is attached to the Motion for Summary Judgment/Adjudication as **Exhibit "6"**.

3    16. The Letter of Ineligibility expressly informed Mr. Moran that he had the right to make a

4    written request to request a meeting with Maple Square to discuss his ineligibility status. At no

5    time after sending Mr. Moran said Letter of Ineligibility did Maple Square receive any

6    correspondence from Mr. Moran requesting any such meeting or for any other purpose. Had

7    Mr. Moran done so, he would have been told that he would be eligible to re-apply at Maple

8    Square once his criminal conviction had become older than five years, and if he otherwise kept

9    his criminal record free from any further convictions within five years preceding a new rental

10   application.

11   I declare, under penalty of perjury under the laws of the United States, that the

12   foregoing is true and correct.

13   Executed at Los Angeles, California, on October 22, 2012.

14

15

16   Mark Rodriguez.

17

18

19

20

21

22

23

24

25

26

27

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel: 310.446.9800 • Fax 310.446.9809

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001

4

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

EXHIBIT "3"

SER207



# APPLICATION

RETURN THIS APPLICATION TO:

NAME OF HOUSING DEVELOPMENT

**PLEASE PRINT OR TYPE**

| FIRST NAME | LAST NAME | M.I. | RELATIONSHIP TO HEAD | SOCIAL SECURITY NO. | D.O.B. | SEX/M-F |
|---|---|---|---|---|---|---|

HOW DID YOU HEAR ABOUT UNITS TO RENT?

Race of head of household, for statistical purposes only: ☐ Black ☒ Hispanic ☐ Asian ☐ American Indian

INTERVIEW CHECKLIST

Resident: In order to update our records for the United States Department of Housing & Urban Development, we ask that you complete both sides of this form and return it to the manager's office no later than _____ , 19_____ .

NAME _____   APT NO. _____   PHONE _____

## FAMILY COMPOSITION

| FAMILY MEMBER NUMBER | NAME | RELATIONSHIP TO HEAD OF HOUSEHOLD | SOCIAL SECURITY NO. | BIRTHDATE | FULL-TIME STUDENT YES | NO |
|---|---|---|---|---|---|---|
| 1 | Gabriel Moran | | ▓▓▓▓▓▓ | ▓▓▓▓▓ | | ✓ |
| 2 | | | | / / | | |
| 3 | | | | / / | | |
| 4 | | | | / / | | |
| 5 | | | | / / | | |
| 6 | | | | / / | | |
| 7 | | | | / / | | |
| 8 | | | | / / | | |

INCOME AND ASSETS - Check "Yes" or "no" and Family No.

| TYPE | YES | NO | FAMILY MEMBER NUMBER(S) |
|---|---|---|---|
| Wages | | ✓ | |
| Tips | | ✓ | |
| Bonuses | | ✓ | |
| Commissions | | ✓ | |
| Unemployment | | ✓ | |
| Social Security/SSI | ✓ | ✓ | |
| Pension | | ✓ | |
| Disability | | ✓ | |
| General Relief | | ✓ | |
| AFDC | | ✓ | |
| Alimony (Awarded) | | ✓ | |
| Child Support (Awarded) | | ✓ | |
| Savings Accounts | ✓ | | |
| Checking Accounts | ✓ | | |
| Stocks/Bonds | | ✓ | |
| T-Bills/CD's | | ✓ | |
| Trusts | | ✓ | |
| IRA/Keough | | ✓ | |
| Real Estate/Investments | | ✓ | |
| US Earned Income Credit | | ✓ | |
| Lump-Sum Payments | | ✓ | |
| Scholarships | | ✓ | |
| Grants | | ✓ | |
| Stipends | | ✓ | |
| Non-Cash Compensation | | ✓ | |
| Recurring Gifts | | ✓ | |
| Disposed of Assets (Last 2 yrs.) | | ✓ | |
| Other | | ✓ | |
| ALLOWANCES | | | |
| Seeing MD on Regular Basis | | ✓ | |
| Prescribed Medication | | ✓ | |
| Medical Insurance | | ✓ | |
| Dental Insurance | | ✓ | |
| Child Care | | ✓ | |
| Other | | ✓ | |

| | MAILED | | COMMENTS | Rec'd |
|---|---|---|---|---|
| | 1st | 2nd | | |
| | / / | / / | | |

| | PENSION | | ADDRESS (INCLUDE ZIP CODE) | | |
|---|---|---|---|---|---|
| JULY HELD MEN | | | | | |
| | | | | | |
| | | | | | |
| JULY HELD MEN | EMPLOYER | | ADDRESS (INCLUDE ZIP CODE) | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| JULY HELD MEN | CASE WORKER- SSI, GR, AFDC | | ADDRESS | | CASE NUMBER |
| JULY HELD MEN | BANK | ADDRESS | | CHECKING or SAVINGS | ACCOUNT NO. |
| | Bay Cities Credit Union | 22777 Main St., Hayward, CA 94543 | | Vms Savings | |
| | | | | | |
| JULY HELD MEN | DOCTOR | | ADDRESS | | |
| | | | | | |
| | | | | | |
| | | | | | |
| JULY HELD MEN | PHARMACIST | | ADDRESS | | |
| JULY HELD MEN | CHILD CARE FACILITY | | ADDRESS | | |

ADDITIONAL INFORMATION

STATEMENT: I CERTIFY THAT ALL THE INFORMATION ON THIS INTERVIEW CHECKLIST IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE. I UNDERSTAND IT IS A PROVISION OF THE LEASE THAT I REPORT AND ASSIST IN THE VERIFICATION OF ACTUAL AMOUNTS OF ALL INCOME RECEIVED BY MYSELF AND ALL MEMBERS OF MY FAMILY. ANY FALSE STATEMENTS OR INFORMATION ARE PUNISHABLE UNDER FEDERAL LAW.

Resident's Signature . . . *Ves. Swale* . . . . . . . . Date *9-11-09*

Resident's Signature . . . *Sophia Wilson* . . . . . . . Date *9-11-09*



## REQUEST FOR APPLICANT APPROVAL
### INCOME & ASSET CALCULATION WORKSHEET

Community Name: __Maple Square__

Name of Team Member Sending Fax: __Leyía__   Date & Time Faxed to Compliance: __2/9/10__

Name of Applicant __Gabriel Moran__ Anticipated: Unit #: __S-304__ Move-In Date: __2/15/10__

Unit Size: __1__   Household Size: __1__   Unit Set-Aside %: __30__   Rent $: __466.00__ Utility $: __36.00__

Maximum Income Limit: __18,750.00__   Household's Income: ███████

Prior to an applicant moving in, the forms listed below must be faxed to the Home Office for approval:

| Forms: | Faxed to H.O. | Received by H.O. |
|---|---|---|
| Interview Checklist (both sides) | ✓ | |
| Rental Application (both sides) | ✓ | |
| Tenant Income Questionnaire(s) | ✓ | |
| Child Support Affidavit(s) | ✓ | |
| Under $5000 Asset Certification(s) (if applicable) | ✓ | |
| Asset Verifications (if applicable) | n/a | |
| Income Verification(s) | ✓ | |
| Zero Income Affidavit(s) (if applicable) | n/a | |
| Non-Employment Affidavit(s) (if applicable) | ✓ | |
| Full time student forms (if applicable) | n/a | |

Member # & Source(s) of Income:

| MM# | Detail your math calculations: | Annual amount |
|---|---|---|
| 1 SSI | $ 865.20 × 12 | = $ 10,382.40 |
| MM# | $ | = $ |
| MM# | $ | = $ |
| MM# | $ | = $ |
| MM# | $ | = $ |

Source(s) of asset:
(if more than 3 accounts use separate page)

| | Acct. value | Interest rate | Actual income | Imputed income |
|---|---|---|---|---|
| BCCU Checking | $ ███ × | -0- | = $ -0- | $ -0- |
| BCCU savings | $ ███ × | .0 | = $ -0- | $ -0- |
| | $ × | | = $ | $ |

*Imputed income is obtained by multiplying the account value by the current HUD Passbook rate*

GREATER AMOUNT OF ACTUAL INCOME vs IMPUTED INCOME:   $ _____

**HOUSEHOLD'S TOTAL ANNUAL INCOME:**   $ ███████

Additional Information: _____

_____

*************************************************************************************

To be completed by the Home Office:

Person reviewing package: _____

Date/time received: _____

Corrections and/or comments: _____

_____

_____

Approval given by: _____   Date: _____   Move-In must occur by: _____

Updated: 09/2008

RF-400

SER211



## TENANT INCOME CERTIFICATION QUESTIONNAIRE

| Name: Gabriel Moran | TEL.: (510) 485-2432 |
|---|---|
| ☒ Initial Certification<br>☐ Recertification<br>☐ Other: _____ | BIN #: CA 2004- 303-03 |
| | Unit #: 3-304 |

| Yes | No | PART I. INCOME INFORMATION | MONTHLY GROSS INCOME<br>(use net income from business) |
|---|---|---|---|
| | ✓ | I am self employed. (List nature of self employment)<br>_____ | $ |
| | ✓ | I have a job and receive wages, salary, overtime pay, commissions, fees, tips, bonuses, and/or other compensation. List the businesses and/or companies that pay you:<br>1) _____<br>2) _____ | $<br><br>$ |
| | ✓ | Is job SEASONAL. List sources of other income during time off from regular employment (example: other employment, anticipated employment, or unemployment):<br>1) _____<br>2) _____ | $<br>$ |
| | ✓ | I receive cash contributions of gifts including rent or utility payments, on an ongoing basis from persons not living with me. | $ |
| | ✓ | I receive unemployment benefits. | $ |
| | ✓ | I receive Veteran's Administration, GI Bill, or National Guard/Military benefits/income. | $ |
| ✓ | | I receive periodic Social Security payments (SSA). | $ 594.— |
| ✓ | | I receive Supplemental Security Income (SSI). | $ 271.— |
| | ✓ | The household receives unearned income from family members age 17 or under (example: Social Security, Trust Fund disbursements, etc.). | $ |
| | ✓ | I receive disability or death benefits other than Social Security. | $ |
| | ✓ | I receive Public Assistance Income (examples: TANF, AFDC, GAPI). | $ |
| | ✓ | I am entitled to receive child support payments. | $ |
| | ✓ | I am currently receiving child support payments. If yes, from how many persons do you receive support? _____ | $ |
| | ✓ | I am currently making efforts to collect child support owed to me. List efforts being made to collect child support: _____ | $ |
| | ✓ | I receive alimony/spousal support payments. | $ |
| | ✓ | I receive periodic payments from trusts, annuities, inheritance, retirement funds or pensions, insurance policies, or lottery winnings. If yes, list sources:<br>1) _____<br>2) _____ | $<br><br>$ |
| | ✓ | I receive income from real or personal property. | $ (use net earned income) |
| | ✓ | I receive Student Financial Aid (public or private, not including loans).<br>Subtract cost of tuition from aid received | $ |

| Yes | No | PART II. ASSET INFORMATION | | INTEREST RATE | CASH VALUE |
|---|---|---|---|---|---|
| ✓ | | I have a checking account(s). If yes, list bank(s):<br>1) Bay Cities Credit Union | | % 0 | $ ▒▒▒— |
| | | 2) | | % | $ |
| ✓ | | I have a savings account(s). If yes, list bank(s):<br>1) Bay Cities Credit Union | | % 0 | $ ▒▒▒— |
| | | 2) | | % | $ |

## PART II ASSET INFORMATION (continued)

| Yes | No | | INTEREST RATE | CASH VALUE |
|---|---|---|---|---|
| | ✓ | I have a revocable trust(s).  If yes, list bank(s):<br>1) | % | $ |
| | ✓ | I own real estate.<br>If yes, provide description: | | $ |
| | ✓ | I own stocks, bonds, or Treasury Bills.  If yes, list sources/bank names:<br>1) | % | $ |
| | | 2) | % | $ |
| | ✓ | I have Certificates of Deposit (CD) or Money Market Account(s).  If yes, list sources/bank names:<br>2) | % | $ |
| | | 3) | % | $ |
| | ✓ | I have an IRA/Lump Sum Pension/Keogh Account/401K.  If yes, list bank(s):<br>1) | % | $ |
| | | 2) | % | $ |
| | ✓ | I have a whole life insurance policy.<br>If yes, how many policies _____  ___ | | $ |
| | ✓ | I have cash on hand. | | $ |
| | ✓ | I have disposed of assets (i.e. gave away money/assets) for less than the fair market value in the past 2 years.  If yes, list items and date disposed:<br>1) | | $ |
| | | 2) | | $ |
| | ✓ | I have income from assets or sources other than those listed above.  If yes, list type below:<br>1) | % | $ |
| | | 2) | % | $ |

## PART III STUDENT STATUS

| Yes | No | |
|---|---|---|
| | ✓ | Does the household consist of persons who are **ALL** full-time students (Examples: College/University, trade school, etc.)? |
| | ✓ | Do **ALL** household member(s) anticipate becoming full-time student household in the next 12 months? |
| | | If you answered yes to either of the previous two questions are you:<br>• Receiving assistance under Title IV of the Social Security Act (AFDC/TANF)<br>• Enrolled in a job training program receiving assistance through the Job Training Participation Act (JTPA) or other similar program<br>• Married and filing a joint tax return<br>• Single parent with a dependent child or children.  If yes, complete Single Parent Full-Time Student Affidavit.<br>• Previously enrolled in the Foster Care Program |

Under penalties of perjury, I certify that the information presented on this form is true and accurate to the best of my/our knowledge.  The undersigned further understands that providing false representations herein constitutes an act of fraud.  False, misleading or incomplete information will result in the denial of application or termination of the lease agreement.

Gabriel Moran
Printed name of Applicant/Resident

Legia Robinson
Printed name of Witness (Owner/Representative)

_Gabriel Moran_
Signature of Applicant/Resident

_[signature]_
Witnessed by (Signature of Owner/Representative)

2-1-10
Date

2/1/10
Date

Updated 01/2009

- 2 -

SER213



# Child Support and/or Spousal Support  Affidavit

Applicant/Resident Name     *Gabriel Moran*

Development Name     *MAPLE SQUARE*

Unit Number/Identification     *3-304*

*Child support and/or spousal support payments that are received shall be included as income whether or not there is yet a court order awarding payment.*

*Child/Spousal support amounts awarded by the courts but not received can be excluded only when the applicant/resident certifies that payments are not being made and further documents that all reasonable legal actions to collect amounts due, including filing with the appropriate courts or agencies responsible for enforcing payment, have been taken.*

*As part of the qualification process required by federal and/or state housing programs with jurisdiction over this development the following information is needed:*

---

**A.** Do you receive child support and/or spousal support?

    Yes ☐   Go to B     No ☑   Go to C.1

**B**   I receive:

    **1.**   Payment amount    $ _____

    **2.**   Frequency _____

    **3.**   Name(s) of Recipient(s) _____

         _____

         _____

    **4.**   Name of source _____

         *Complete multiple affidavit forms if there are multiple sources.*

    **5.**   Go to C.1

---

**C. 1.**   Have you been awarded child or spousal support by court order?

    Yes ☐   Go to C.2     No ☑   Sign Form

    **2.**   Provide copy of entire document, enter amount of award

       $ _____ , and frequency _____ ; go to C.3.

    **3.**   Is payment being received as awarded?

    Yes ☐   Go to 3.a     No ☐   Go to 3.b

       **a.**   Indicate the manner by which payment is received and sign form.

         **i.** _____ Enforcement agency    Name agency _____ and provide agency print out

         **ii.** _____ Court of Law    Name court _____

         **iii.** _____ Direct from responsible party    Name source _____ and provide affidavit or statement from the source.

         **iv.** _____ Other   *(Explain)* _____

       **b.**   If payment not received or if amount received is less than amount awarded provide details and documentation of collection efforts.

---

Under penalty of perjury, I certify that the information presented in this affidavit is true and accurate to the best of my knowledge.  The undersigned further understands that providing false representations herein constitutes an act of fraud.  False, misleading or incomplete information may result in the termination of a lease agreement.

*Gabriel Moran*        2-1-10

Applicant/Resident Signature          Date

# UNDER $5,000 ASSET CERTIFICATION

For households whose **combined** net assets do not exceed $5,000.
Complete one form for households with joint assets or one form per person with separate assets.

Household Name: **Gabriel Moran**          Unit No. **3-304**

Development Name: **Maple Square**          City: **Fremont**

Complete all that apply for 1 through 4:

1.    My/our assets include:

|  | (A) Cash Value* | (B) Int. Rate | (A*B) Annual Income | Source |  | (A) Cash Value* | (B) Int. Rate | (A*B) Annual Income | Source |
|---|---|---|---|---|---|---|---|---|---|
| GM | $ ▓▓ |  | $ ▓▓ | Savings Account |  | $ |  0 | $ ▓▓ | Checking Account |
| | $ ▓▓ | GMS | $ ▓▓ | Cash on Hand |  | $ |  | $ | Safety Deposit Box |
| | $ | 0 | $ | Certificates of Deposit |  | $ |  | $ | Money market funds |
| | $ | 0 | $ | Stocks |  | $ |  | $ | Bonds |
| | $ | 0 | $ | IRA Accounts |  | $ |  | $ | 401K Accounts |
| | $ | 0 | $ | Keogh Accounts |  | $ |  | $ | Trust Funds |
| | $ | 0 | $ | Equity in real estate |  | $ |  | $ | Land Contracts |
| | $ | 0 | $ | Lump Sum Receipts |  | $ |  | $ | Capital investments |
| | $ | 0 | $ | Life Insurance Policies (excluding Term) |  | | | | |
| | $ | 0 | $ | Other Retirement/Pension Funds not named above: |  | | | | |
| | $ | 0 | $ | Personal property held as an investment** : |  | | | | |
| | $ | 0 | $ | Other (list): |  | | | | |

**PLEASE NOTE:** Certain funds (e.g., Retirement, Pension, Trust) may or may not be (fully) accessible to you. Include only those amounts which <u>are</u>.

*Cash value is defined as market value minus the cost of converting the asset to cash, such as broker's fees, settlement costs, outstanding loans, early withdrawal penalties, etc.

**Personal property held as an investment may include, but is not limited to, gem or coin collections, art, antique cars, etc. Do not include necessary personal property such as, but not necessarily limited to, household furniture, daily-use autos, clothing, assets of an active business, or special equipment for use by the disabled.

2.   ☐   Within the past two (2) years, I/we have sold or given away assets (including cash, real estate, etc.) for more than $1,000 below their fair market value (FMV). Those amounts* are included above and are equal to a total of: $_____ (*the difference between FMV and the amount received, for each asset on which this occurred).

3.   ☒   I/we have <u>not</u> sold or given away assets (including cash, real estate, etc.) for less than fair market value during the past two (2) years.

4.   ☐   I/we do not have any assets at this time.

The net family assets (as defined in 24 CFR 813.102) above do not exceed $5,000 and the annual income from the net family assets is $ ▓▓—. This amount is included in total gross annual income.

Under penalty of perjury, I/we certify that the information presented in this certification is true and accurate to the best of my/our knowledge. The undersigned further understand(s) that providing false representations herein constitutes an act of fraud. False, misleading or incomplete information may result in the termination of a lease agreement.

*Gabriel Moran*          2-1-10
Applicant/Tenant          Date                          Applicant/Tenant                          Date

Under $5,000 Asset Certification (January 2009)

SER215

**SOMANI**
ENTERPRISES INC.
Affordable Housing Specialists

# Non-Employment Affidavit

Resident/Applicant Name: _Gabriel Moran_

Date: _2/1/10_                    Community Name: _Maple Square_

☒ Initial Certification          Date of Expected Move-In: _1/15/10_

☐ Recertification (*Annual or Interim*)    Effective Date: _____

You have applied to live in (or are currently a resident of) an apartment that is governed by the
IRS Section 42 - Tax Credit Housing Program. This Program requires Management to certify all
of your income, asset and eligibility information as part of determining your household's
eligibility. Program requirements state we must determine this prior to granting your eligibility
and, if such eligibility is granted, each subsequent year you remain in the unit.

I, _Gabriel Moran_ , certify under penalty of perjury that:

A. ☐  I am not presently employed but anticipate becoming employed with within the next
twelve months.

----OR----

B. ☒ I am not presently employed in any capacity. I am not under any affirmative obligation to
obtain employment and do not anticipate becoming employed within the next twelve months.

☐ I do not receive unemployment compensation or other benefits as a result of my non-
employed status.

☒ I do receive benefits from _Social Security / SSI_
(If other benefits are received (ie: Social Security, TANF), obtain verification of amounts and include with
third-party verified income of other household members to ensure that the household is income qualified.)

I certify that the information given above is true and complete to the best of my knowledge. I
understand that providing false or misleading information is a breach of my lease and may be
subject to criminal penalties.

Print Name of Resident/Applicant: _Gabriel Moran_ Date: _2-1-10_

Signature of Resident/Applicant: _Gabriel Moran_

Updated: 04/09

RF-468

# FRAUD

The various agencies funding your Community are seriously concerned about the fraud and abuse of affordable housing programs and have asked Solari Enterprises, Inc., to remind all residents benefiting from rental assistance programs about the following information.

Each *resident must* comply and follow simple rules in order to stay in a rental assistance program so that the program can be run fairly and honestly. Not following these rules could result in your removal from the program.

Periodically, as required by program regulations, we will ask you for information about income, assets and family size so we can make sure that you are paying the correct subsidized rent. When we ask for this information be sure to:

1.  Let us know about all sources of income received by all occupants of your apartment and the income expected for the next year. Many people forget to report income from second jobs, overtime, part-time jobs, income from bank accounts or investments, alimony and child support.

2.  Let us know the name of everyone presently in the household who is expected to live in your household during the twelve months.

By your signature below you are stating that you are not receiving any other income than what is on your Tenant Income Certification form. If you start receiving any other income, you agree that you will report it to the office immediately. Some examples would be: begin employment, receiving AFDC, child support, Social Security or SSI, etc.

You realize that if you fail to report any income, you will be subject to eviction proceedings and your file may be forwarded to the U.S. Justice Department for Prosecution.

It is very important that you report to the manager all changes in the number of people living in your apartment. We urge you to be sure that you are meeting these responsibilities so that you can continue to receive rental assistance and remain eligible to receive the benefits of the subsidized rent. The programs should serve as many deserving and eligible persons as possible. We should all cooperate to report any cases of suspected resident fraud. If you have questions on this matter, please contact the Community Manager or the Solari Enterprises, Inc. Home Office.

_____          2-1-10
Resident's Signature                                   Date


_____          _____
Resident's Signature                                   Date

_____          2/1/10
Manager's Signature                                   Date


Updated:  05/04                                                          RF-425

SER217

# FAIR HOUSING STATEMENT

This apartment community is fully committed to providing an Equal Housing Opportunity for all.

In this regard, applicant screening methods are utilized to determine the likelihood that an applicant will be able to meet the essential requirements of tenancy as expressed in the lease.  These essential requirements are summarized in part as follows:

**The ability to:**
- Pay rent and other fair charges in a timely manner
- Care for and avoid damaging the unit and common areas
- Use facilities and equipment in a reasonable way
- Create no health, safety or sanitation hazards
- Report maintenance needs
- Avoid interfering with the rights and enjoyment of others
- Avoid damaging the property of others
- Avoid criminal activity that threatens the health, safety or rights of others
- Avoid drug-related activities
- Comply with necessary and reasonable rules and requirements of the regulating agency, the Community's Lease and House Rules and such other programs that are, or may, apply to the Community.

_____          _____
Applicant                                 Applicant

Date: 2 / 1 /10

**SOLARI**
ENTERPRISES INC.

## LANDLORD REFERENCE

Date_____

*living w/ family*

From:_____

_____

_____

_____

_____

**(Development information)**

To the household member:
You do not have to sign this form if the name or address of either the site manager or the verification is left blank.

Release: I hereby authorize the release of the requested information. Information obtained under this consent is limited to information that is no older than 12 months. There are circumstances which would require the owner to verify information that is up to 5 years old, which would be authorized by me on a separate consent attached to a copy of this consent.

_____          _____     _____

Print name                              Social Security Number      Unit No.

_____          _____

Signature                                Date

The household member named above is applying for housing at our community. The household member has consented, as shown above, to the release of information pertaining to their rental history. We would appreciate your prompt return of this form to the Authorized Agent for the Development named above. Enclosed is a self addressed, stamped envelope for this purpose.  If you have any questions, I can be reached at _____.

_____          _____     _____

Authorized Agent for the Development          Title                          Date

| | | |
|---|---|---|
| 1. | How long did the above resident reside in your community? | _____years _____months |
| 2. | What was the monthly rental amount? | $_____ |
| 3. | How many people lived in the unit? | _____adults _____children |
| 4. | Did the resident ever pay rent late? | _____ |
| 5. | If yes, how many times did the resident pay late? | _____ |
| 6. | Did the resident owe any money at move-out? | _____ |
| 7. | If yes, what was the total and description of charges?_____ | _____ |
| 8. | What was the resident's overall conduct while resident? | |
| | Excellent_____, Good_____, Fair_____, Poor_____. | |
| 9. | Did you refund the residents security deposit in full? | _____ |
| 10. | Was anyone residing in the unit that was not on the lease? | _____ |
| 11. | If yes, what were their names?_____ | _____ |
| 12. | If this resident reapplied for housing in the future, would you rent to him/her again? | _____ |
| 13. | Did the resident ever receive an eviction notice from you? | _____ |
| 14. | If yes, why?_____ | |

Remarks: _____

_____          _____

Signature                                Title

_____          _____

Print name                              Date

_____          _____

Telephone number                        Company Stamp or Seal

WARNING: Title 18, Section 1001 of the U.S. Code states that a person is guilty of a felony for knowingly and willingly making false or fraudulent statements to any department of the United States Government. HUD, the PHA & any owner (or any employee of HUD, the PHA or the owner) may be subject to penalties for unauthorized disclosures or improper uses of information collected on the consent form. Use of the information collected based on this verification form is restricted to the purposes cited above. Any person who knowingly or willfully requests, obtains or discloses any information under false pretenses concerning an applicant or participant may be subject to a misdemeanor and fined not more than $5, 000.00. Any applicant or participant affected by negligent disclosure of information may bring civil action for damages, and seek other relief, as may be appropriate, against the officer of employee of HUD, the PHA or the owner responsible for the unauthorized disclosure or improper use. Penalty provisions for misusing the social security number are contained in the Social Security Act at 42 U.S.C. 208 f, g & h.  Violations of these provisions are cited as violations of 42 U.S.C. 408 f, g & h.

RF-413





# EXHIBIT "4"

# Maple Square Apartments
# Resident Selection Criteria

**General:**

Management believes that all of the residents are valued individuals. Services are rendered by the staff at all levels, with an appreciation of the dignity of each individual resident and with respect for the rights of the resident as a human being.

Everyone who wishes to apply for housing or to be placed on the waiting list must complete an application package. No application fee will be charged to an applicant applying under any subsidy program. Applicants must meet the selection criteria for this Community known as Maple Square Apartments.

**Eligibility for Admission:**

To be eligible for admission at Maple Square Apartments an applicant must be of legal age (18 years of age or older) and qualify under the Federal Low Income Housing Tax Credit and HOME Programs.

- Household income does not exceed the income limits established.

- Minimum gross income must be at least two (2) times the monthly rent.

- Credit history will be reviewed and found acceptable if there are two or less past due accounts and the total outstanding past due amounts do not exceed 10% of the gross annual income of the applicant.

- Who has for the past five years has not been convicted of any felony or misdemeanor involving sexual misconduct or a controlled substance, and that to the best of LESSEE"S knowledge neither LESSEE nor any occupant of the apartment is subject of a criminal investigation or arrest warrant.

- Must have no bad landlord references for the past three years or most recent rental history if less than three years.

- Must have no evictions in the past three years.

**Selection of Residents:**

Management will not, on account of RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS, NATIONAL ORIGIN, SEXUAL ORIENTATION OR HIV POSITIVE STATUS deny to a qualified applicant the opportunity to lease a dwelling unit suitable to their needs in any property owned, managed, or controlled by the company.

In selecting residents from among eligible applicants with the appropriate size and composition for the available unit, management will take into consideration:

- ✓ The needs of individual families for low/moderate rent housing **as well as**

- ✓ The statutory purpose in developing and operating a socially and financially sound housing development, which provides not only a decent home and suitable living environment, but fosters economic and social diversity in the resident body as a whole.

Selection will be in such a manner as:

- To preclude admission of applicants whose habits and practices reasonably may be expected to have a detrimental effect on the residents or the Community environment.

- To prevent under utilization or over-crowding in the unit, the occupancy guideline established dictates the following:

SER222

- Studio Units:          a minimum of one person and a maximum of two people.
- 1 bedroom units:      a minimum of one person and a maximum of three people.
- 2 bedroom units:      a minimum of two people and a maximum of five people.
- 3 bedroom units:      a minimum of four people and a maximum of seven people

## Reasonable Accommodation:

Reasonable accommodation allows the applicant to request modifications in order to meet essential requirements of tenancy. It **does not** require lowering or waiving essential requirements. Solari Enterprises, Inc., including its Property Managers, is committed to the policy that everyone, management, staff and resident, are responsible for working together to identify the specific accommodation that each accepts as reasonable.

Accommodations are not reasonable if they require fundamental alterations in the nature of a program or property or impose undue financial and administrative burdens on the property owner.

## Credit and Occupancy Standards:

Everyone is to be given an equal opportunity to lease our apartments in strict accordance with current Fair Housing Legislation. The following is the standards of which to measure all applications for acceptability. If negative information is found in any category below, the applicant maybe subject to denial.

## Income:

An applicant must demonstrate sufficient income to afford the apartment. Likewise, an income must not be above those income limits allowed by the Low Income Housing Tax Credit and HOME Programs.

## Credit History:

Except where arrangements have been made, an applicant's credit report for the past two years must be free of bad debt or past due accounts. Any bankruptcy proceedings must be finalized prior to signing a lease.

## Rental/Landlord History:

An applicant must be able to provide positive landlord references for the previous three years. The applicant should also be able to prove the ability to make monthly payments (rental payments preferred) on time and without demand.

## Criminal Record:

A criminal record verification may be made on all persons 18 years and older who will occupy the apartment. Cause for the application to be rejected includes, but may not be limited to, the conviction of:
- ✓ Illegal drug activity of any kind.
- ✓ Child abuse, child molestation or negligence involving a child.
- ✓ Assault and /or battery or any violent act(s) against another person.
- ✓ Vandalism

## Misrepresentation at Admission:

If it is learned that the applicant made representations which resulted in he/she being classified as eligible when in fact he/she were ineligible, the resident will be disqualified even though they may currently be eligible and legal action will be taken.

| | |
|---|---|
| _Gabriel Moran_ | 2 - 1 - 10 |
| Signature | Date |
| | |
| Signature | Date |
| | |
| Signature | Date |
| | |
| Signature | Date |

Maple Square/Resident Selection Criteria                                    2 of 2
Updated: 03/17/08

EXHIBIT "5"

Thank You For Using The Screening Pros
On-line reports available 24/7

---

-- WARNING --
The following reports are confidential and use and possession of these
confidential consumer reports are protected and governed by state and federal law.

Consumer Report For: MAPLE SQUARE
Transaction Number: 465164 - 1                    Date - Time: 02/05/10 15:31:52
Comment:

-- APPLICANT INFORMATION PROVIDED BY MEMBER --

Applicant's Name:  MORAN, GABRIEL F          SS#: ▨▨▨▨          State ID#: ▨▨▨▨          DOB: ▨▨▨▨
Current Address: 35555 ORLEANS DR, NEWARK, CA 94560
Previous Address:

Lead Source:                  Prev Rent:          New Rent:                  Monthly Income:

-- EVICTION - RENTAL HISTORY REPORT --

No records matching your applicant

======  END OF EVICTION - RENTAL HISTORY REPORT  ======

New Consumer Reports

Page 2 of 7

-- POSSIBLE LANDLORD DEBT REPORTED FROM CREDIT --

No collections found that could be identified as possible landlord debts.

END POSSIBLE LANDLORD DEBT REPORTED FROM CREDIT

SER226

## -- REFORMATTED TRANSUNION CREDIT REPORT --

The following credit report has been re-formatted for your convenience.

The applicant's full and complete credit report is attached.

"Red Flag" federal identify theft rule imposes new duties on landlords. Full compliance goes into effect June 1st, 2010.
Click here for Red Flag Information sheet

## -- CONSUMER'S PERSONAL INFORMATION --

Name:    MORAN, GABRIEL F                         SS#:                              DOB:

Address:  855 TORO LN, LATHROP, CA 95330                                          As Of: 06/01/00
          5254 RIVERSIDE AV, SAN PABLO, CA 94806                                 As Of:
          5264 RIVERSIDE AV, SAN PABLO, CA 94806                                 As Of:

Employer: GABRIELS GARDENING                                                      As Of:
          NEW HAVEN UNITED SCH                                                    As Of:

## -- FACTA ALERTS --

No alerts on record.

## -- FRAUD ALERT / CONSUMER MESSAGES --

Address alert. Mismatch - input does not match file

## -- CREDIT SUMMARY --

Total Debt: $0.00                    Total Amt Past Due: $0.00              FICO Score: N / A
Total Monthly Payments: $0.00        Total Lines of Credit: 2
Number of Collection Accounts: 4     Positive Lines of Credit: 2
Number of Public Records: 0          Negative Lines of Credit: 0

## -- PUBLIC RECORDS --

No Public Records Returned

## -- COLLECTIONS --

Original Creditor: MEDICAL                    Charge Off Date: 05/08/08         Original Amount: $2800.00
Collection Company: MEDICREDIT                Date Last Verified: 01/19/10      Current Balance: $3345.00
Comments: Account information disputed by consumer

Original Creditor: AT T WEST                  Charge Off Date: 09/11/09         Original Amount: $66.00
Collection Company: BAY AREA C S              Date Last Verified: 10/21/09      Current Balance: $66.00
Comments: Placed for collection

Original Creditor: MEL RAMSTEAD METZGER MGT   Charge Off Date: 06/21/07         Original Amount: $275.00
Collection Company: CB STOCKTON               Date Last Verified: 03/11/08      Current Balance: $298.00
Comments: Account information disputed by consumer

| | | |
|---|---|---|
| Original Creditor: 08 BANK OF THE WEST | Charge Off Date: 09/29/06 | Original Amount: $302.00 |
| Collection Company: BEST SERV CO | Date Last Verified: 06/12/09 | Current Balance: $0.00 |
| Comments: Paid collection | | |

## -- ACCOUNT DETAILS --                                    Legend

| Creditor | Opened Date | Currently Past Due | Remarks |
|---|---|---|---|
| Account Type | Closed Date | Current Balance | 12 Month Payment History |
| | Verified Date | Monthly Payment | |

| TOYOTA MTR | 08/11/03 | -- -- -- | |
| Installment account | -- -- -- | -- -- -- | |
| | 12/31/04 | $240.00 Monthly | |

| Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C | C | C | C | C | C | C | C | C | C | C | C |
| '04 | '04 | '04 | '04 | '04 | '04 | '04 | '04 | '04 | '04 | '04 | '03 |

| TOYOTA MTR | 07/01/00 | -- -- -- | Closed |
| Installment account | 07/01/02 | -- -- -- | |
| | 07/01/02 | $295.00 Monthly | |

| Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C | C | C | C | C | C | C | C | C | C | C | C |
| '02 | '02 | '02 | '02 | '02 | '02 | '01 | '01 | '01 | '01 | '01 | '01 |

## -- CREDIT INQUIRIES --

| Date | Inquirer | Reason |
|---|---|---|
| 02/05/10 | SCREENING PR | Miscellaneous |

If you decline your applicant based on information within this TU report, direct them to:
TransUnion Attn:Consumer Disclosure Department
P.O. Box 1000, Chester, PA 19022   1 (800) 888-4213

## END OF REFORMATTED TRANSUNION CREDIT REPORT

```
+-------------------------------------------------------------------+
|              -- ORIGINAL TRANSUNION CREDIT REPORT --              |
+-------------------------------------------------------------------+
```

00000465164001            TRANSUNION CREDIT REPORT

<FOR>          <SUB NAME>        <MKT SUB>  <INFILE>   <DATE>      <TIME>
(I) Z LA2824851 SCREENING PR      12 SK     11/83     02/05/10    17:34CT

<SUBJECT>
MORAN, GABRIEL F.                              <SSN>          <BIRTH DATE>
<CURRENT ADDRESS>
855 TORO LN., LATHROP CA. 95330                              <DATE RPTD>
<FORMER ADDRESS>                                              6/00
5254 RIVERSIDE AV., SAN PABLO CA. 94806
5264 RIVERSIDE AV., SAN PABLO CA. 94806
<CURRENT EMPLOYER AND ADDRESS>
GABRIELS GARDENING

<FORMER EMPLOYER AND ADDRESS>
NEW HAVEN UNITED SCH

-------------------------------------------------------------------------
S P E C I A L    M E S S A G E S
***ADDRESS ALERT: CURRENT INPUT ADDRESS DOES NOT MATCH FILE ADDRESS(ES)***
****HIGH RISK FRAUD ALERT:CLEAR FOR ALL SEARCHES PERFORMED***
-------------------------------------------------------------------------
C R E D I T    S U M M A R Y   * * *   T O T A L   F I L E   H I S T O R Y
PR=0  COL=4  NEG=0  HSTNEG=0    TRD=2  RVL=0  INST=2  MTG=0  OPN=0  INQ=1
           HIGH CRED   CRED LIM  BALANCE  PAST DUE  MNTHLY PAY AVAILABLE
INSTALLMENT: $10.1K      $         $        $0
TOTALS:      $10.1K      $         $        $0        $
-------------------------------------------------------------------------
C O L L E C T I O N S
SUBNAME       SUBCODE   ECOA OPENED  CLOSED  $PLACED  CREDITOR         MOP
ACCOUNT#                     VERIFIED        BALANCE  REMARKS
MEDICREDIT     Y 184P007 I    5/08          $2800    MEDICAL          09B
15137598                      1/10A         $3345    ACCT INFO DSP BY CSM

BAY AREA C S   Y 4445001 I    9/09          $66      AT T WEST        09B
02369824                     10/09A         $66      PLACED FOR COLLECTIO

CB STOCKTON    Y 1XYF001 I    6/07          $275     MEL RAMSTEAD METZG 09B
5010760000358662              3/08A         $298     ACCT INFO DSP BY CSM

BEST SERV CO   Y 200N001 I    9/06   5/09F  $302     08 BANK OF THE WES 09P
6296                          6/09A         $0       PAID COLLECTION
-------------------------------------------------------------------------
T R A D E S
SUBNAME       SUBCODE   OPENED  HIGHCRED TERMS    MAXDELQ  PAYPAT  1-12 MOP
ACCOUNT#                VERFIED CREDLIM  PASTDUE  AMT-MOP  PAYPAT  13-24
ECOA COLLATRL/LOANTYPE  CLSD/PD BALANCE  REMARKS                  MO 30/60/90
TOYOTA MTR     Q 4176123 8/03   $10.1K   60M240            111111111111 I01
70400362961510001       12/04A           $0               11111
J     AUTOMOBILE                                              17   0/ 0/ 0

TOYOTA MTR     Q 4176123 7/00   $6195    24M295            111111111111 I01
70400361920870001        7/02A           $0               11111111111
```

New Consumer Reports                                                                    Page 6 of 7

```
I    AUTOMOBILE        7/02C  $0      CLOSED              24  0/ 0/ 0
-----------------------------------------------------------------------
I N Q U I R I E S
DATE     SUBCODE           SUBNAME        TYPE     AMOUNT
 2/05/10 ZLA2824851 (CAL) SCREENING PR
-----------------------------------------------------------------------
C R E D I T   R E P O R T   S E R V I C E D   B Y :
TRANSUNION
2 BALDWIN PLACE, P. O. BOX 1000,CHESTER, PA. 19022      800 888-4213
Consumer disclosures can be obtained online through TransUnion at:
      http://www.transunion.com
```

END OF TRANSUNION REPORT

---

If you decline your applicant based on information within this TU report, direct them to:
TransUnion Attn:Consumer Disclosure Department
P.O. Box 1000, Chester, PA 19022   1 (800) 888-4213

---

**END OF ORIGINAL TRANSUNION CREDIT REPORT**

---

### Thank You For Using The Screening Pros
On-line reports available 24/7

---

### — ATTENTION —
The following criminal data is a summary only.
Contact member services if you need the original criminal report.

---

**Consumer Report For:** MAPLE SQUARE

**Transaction Number:** 465164 - 1

**Comment:**

**Date - Time:** 02/05/10 15:31:52

---

### -- APPLICANT INFORMATION PROVIDED BY MEMBER --

**Applicant Name:** MORAN, GABRIEL F      **SS#:** ▓▓▓▓▓      **State ID#:** ▓▓▓▓▓      **DOB:** ▓▓▓▓▓

**Current Address:** 35555 ORLEANS DR , NEWARK, CA 94560

**Previous Address:**

---

### -- CRIMINAL REPORT --

---

### -- COUNTY CRIMINAL SUMMARY --

**County / Jurisdiction:** Alameda CA

**Filing Date:** 05/16/00

**Charge / Offense:** CT1: Under the influence of a controlled substance

**Disposition Date:** 03/02/04

**Disposition:** Dismissed

**Case Number:** 188935

**Offense Type:** Misdemeanor

......................................................................................

**County / Jurisdiction:** Alameda CA

**Filing Date:** 06/04/06

**Charge / Offense:** CT1: Burglary 2nd degree

**Disposition Date:** 06/07/06

**Disposition:** Dismissed

**Case Number:** 217842

**Offense Type:** Misdemeanor

......................................................................................

**County / Jurisdiction:** Alameda CA

**Filing Date:** 06/04/06

**Charge / Offense:** CT2: Forgery

**Disposition Date:** 06/07/06

**Disposition:** Dismissed

**Case Number:** 217842

**Offense Type:** Misdemeanor

......................................................................................

Criminal Summary

Page 2 of 2

**County / Jurisdiction:** Alameda CA

**Case Number:** 217842

**Filing Date:** 06/04/06

**Offense Type:** Misdemeanor

**Charge / Offense:** CT3: Embezzlement; Theft by non caretaker from older or dependent adult

**Disposition Date:** 06/07/06

**Disposition:** Guilty-60 Days jail; 3 Years court probation; $500 Fine

> **NOTE:** The dissemination of public records such as criminal records is based on an exact match of an individual's full name and full date of birth. Other identifiers such as address and social security numbers may be used in matching criminal records if available. It is the sole responsibility of the end-user to verify that the requested criminal reports are submitted accurately to ensure an accurate search.
>
> **NOTE:** There are several states that prevent a consumer reporting agency from reporting records for various reasons. In accordance with specific state law(s), certain criminal records may not be reportable. To identify what these specific provisions are by state, click here for civil code text.

===== **END CRIMINAL REPORT** =====

# EXHIBIT "6"



# LETTER OF INELIGIBILITY

Date: 2/5/10

GABRIEL MORAN

35555 ORLEANS DR.

NEWARK, CA. 94560

Dear __APPLICANT__

Following an in-depth screening per our Resident Selection Criteria and verification of all information provided, we have determined that you are not eligible for admission at __MAPLE SQUARE__ for the following reason (s):

**APPLICATION:**
☐ Incomplete application
☐ False information
☐ Insufficient references

**CREDIT HISTORY:**
☐ Delinquent debts
☐ Excessive financial obligations
☐ Bankruptcy

**RENTAL HISTORY:**
☐ Unable to verify references
☐ Unable to obtain landlord reference
☐ Garnishment, repossession, law suit, etc.
☐ Unable to verify residence
☐ Unsatisfactory previous occupancy

**INCOME:**
☐ Cannot verify employment
☐ Unable to verify income
☐ Income over the maximum income limit
☐ Insufficient income

**IN-HOME VISIT:**
☐ Poor house inspection

**CRIMINAL RECORD:**
☐ Conviction of crimes involving physical violence to persons or property or illegal drug activity of any kind.

OTHER: __CRIMINAL RECORD SHOWED OTHER MISDEMEANORS__

You have the right to make a written request within 14 days of receipt of this notice to request a meeting to discuss your ineligibility status. Send your request to:

c/o Solari Enterprises, Inc.
1572 N. Main Street
Orange, CA 92867

Please be informed that we conform to all Local, State and Federal laws prohibiting discrimination against applicants wishing to rent an apartment. A response does not preclude any applicant from exercising their right to pursue other avenues if the applicant feels he/she is being discriminated against on the basis of race, color, religion, sex, handicap, familial status, or national origin. Thank you for your interest in our apartments. You are welcome to re-apply when the above problem(s) have been corrected.

_____
Authorized Agent

Routing: 1. To Applicant 2. Copy to Applicant File

RU-313

SER234

**JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
Michael J. Saltz, Esq.  SBN 189751
msaltz@jrsfllp.com
Colby A. Petersen, Esq. SBN 274387
cpetersen@jrsfllp.com
G. Austin Sperry, Esq.  SBN 278535
asperry@jrsfllp.com
10866 Wilshire Boulevard, Suite 1550
Los Angeles, CA  90024
Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

Attorneys for Defendant THE SCREENING PROS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL FELIX MORAN,<br><br>Plaintiff,<br><br>vs.<br><br>THE SCREENING PROS, LLC a California Corporation; and DOES 1-10 inclusive,<br><br>Defendants. | Case No.: 2:12-cv-05808-SVW-AGR<br><br>**DECLARATION OF GARY GLUCROFT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION.**<br><br>[filed concurrently with Motion for Summary Judgment/Adjudication]<br><br>Complaint filed:  February 2, 2012<br>First Amended<br>Complaint Filed:  June 7, 2012<br>Removed:  July 5, 2012<br>Trial Date:  November 20, 2012<br><br>Hearing Date:  November 19, 2012<br>Time:  1:30 p.m.<br>Courtroom.:  6 – 2$^{nd}$ Floor<br>Judge:  Hon. Stephen V. Wilson |

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# DECLARATION OF GARY GLUCROFT

I, Gary Glucroft, declare:

1. I am an individual over the age of eighteen. If called upon to do so, I could and would competently testify as to the contents of this declaration based upon my personal, first-hand knowledge.

2. I am the founder and current President of The Screening Pros, LLC, a California corporation ("TSP"). TSP is headquartered in Los Angeles County, California.

3. TSP is a re-seller of consumer credit reports from such major credit bureaus as Experian and Trans Union. TSP then, for a fee, supplements said credit reports with a public records report.

4. TSP obtains its public criminal court record reports from a variety of third-party vendors and then resells such public criminal court record reports by assembling and merging such data into its tenant screening reports that TSP issues to its members. One such third party vendor from which TSP purchases its criminal history reports is called G.A. Public Record Services, Inc., which is owned by Thomson Reuters.

5. TSP does not maintain its own database of criminal court records and TSP does not maintain a database of assembled or merged criminal record information it purchases from third-party consumer reporting agencies from which new consumer reports are produced. As such, TSP does not have, nor does it maintain, any criminal record database containing any criminal record information pertaining to Gabriel Felix Moran ("Moran"), and it has no ability to issue any new reports regarding Mr. Moran and his criminal court record history absent purchasing such data anew from a third-party consumer reporting agency like G.A. Public Record Services, Inc.

6. Solari Enterprises, Inc. is a client of TSP. Solari Enterprises, Inc. manages an apartment community known as Maple Square Apartments ("Maple Square"). Maple Square obtains its tenant screening reports from TSP.

7. On or about February 5, 2010, a representative from Maple Square requested that TSP provide it with a tenant screening report for rental purposes consisting of a consumer credit

<div style="writing-mode: vertical-rl">JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909</div>

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001

1

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

1   report from Trans Union in addition to eviction and criminal court case information relating

2   to Mr. Moran.

3      8.  On or about February 5, 2010, in response to Maple Square's request, and after it

4   certified that the purpose of its request was for rental purposes, TSP provided a tenant

5   screening report to Maple Square on Mr. Moran that it assembled and merged from consumer

6   reports it obtained from third-party consumer reporting agencies. Specifically, TSP assembled

7   and merged data from a credit report from Trans Union and a criminal history report from

8   G.A. Public Record Services, Inc.

9      9.  In making sure that TSP complies with the federal Fair Credit Reporting Act

10  ("FCRA"), I have taken training courses and obtained various seminars about FCRA

11  compliance put on by the National Multifamily Resident Information Council and the

12  National Association of Professional Background Screeners, amongst other organizations. I

13  have attended such seminars and training courses annually since approximately 2006. At such

14  seminars and training courses, I had been informed that dismissed criminal court cases may

15  be fully reported under the FCRA within seven years from the date of the dismissal. What is

16  more, I have attended seminars and training courses wherein the Federal Trade Commission's

17  ("FTC") 2011 commentary on the FCRA was discussed. In such seminars, I was informed

18  that the FTC had confirmed that dismissed criminal court cases may be fully reported under

19  the FCRA within seven years from the date of the dismissal.

20     10. Based upon my training in FCRA compliance, both before February 2010 and after the

21  FTC's 2011 commentary, and in direct reliance upon such training amongst other things, TSP

22  has adopted procedures to allow the reporting of dismissed criminal court cases within seven

23  years from the date of the dismissal entered in those cases. In addition, because TSP is

24  required under the FCRA to adopt and maintain reasonable procedures to assure that the

25  information it reports is complete and accurate, TSP has implemented a procedure to report

26  all of the information it has been able to obtain relating to a dismissed criminal court case,

27  provided however that the criminal court case was dismissed within seven years of the report

28

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

being issued. TSP follows this policy when it purchases a criminal record report from a third-party consumer reporting agency for purposes of reselling such information.

11. A true and correct copy of the TSP consumer credit report on Mr. Moran issued to Maple Square is attached to the Motion for Summary Judgment/Adjudication as **Exhibit "5"**. Said report stated that it found no eviction history and the Trans Union credit report showed that Plaintiff had three active collection accounts totaling $3,709.00. In addition, the report indicated Mr. Moran was convicted on June 7, 2006 of "Embezzlement: Theft by non caretaker from older or dependent adult" and that charges against Mr. Moran for forgery and burglary were dismissed on this same date. The report also stated that charges against Mr. Moran for being under the influence of a controlled substance were filed on May 16, 2000 and dismissed on March 2, 2004.

12. TSP has a published P.O. Box at which it receives correspondence from consumers who wish to dispute any information that was included in a tenant screening report issued by TSP. Once a written consumer dispute is received, it is recorded in a calendaring program. It is then reviewed by TSP's consumer relations department to determine if the dispute involves anything related to an issue regarding something under TSP's control. If the dispute involves information TSP resold from a third-party vendor of consumer information, the dispute is instantly forwarded to the third-party vendor that reported the information being disputed.

13. Since TSP is a reseller of criminal record information obtained from a third-party consumer reporting agency, TSP has no duty under the FCRA to reinvestigate a consumer dispute not involving matters under TSP's control. As such, had TSP received a dispute regarding Mr. Moran's criminal record information, TSP would have recorded its receipt and forwarded the dispute to G.A. Public Record Services, Inc. to investigate.

14. I have personally reviewed TSP's records, its calendaring program, and all records TSP has regarding Mr. Moran. I have also interviewed TSP's employees involved in handling consumer disputes. Based upon my investigation, I am certain that TSP has no record of receiving any written dispute directly from Mr. Moran, or anyone claiming to legally represent Mr. Moran, before the filing of this lawsuit.

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

15. TSP has made every attempt to comply with the reporting requirements set forth in the FCRA and did not intentionally or willfully report obsolete information under the FCRA on Mr. Moran. At no time prior to this lawsuit being filed have I ever been informed by TSP's FCRA compliance counsel, by any trade newsletters, by any third-party consumer reporting agency, or at any of the seminars or training sessions I have attended over the years that any court in the United States or the FTC have in any manner changed the long-standing industry interpretation of the FCRA that dismissals of criminal court cases are fully reportable within seven years of the date of dismissal. As such, TSP had no warning or reason to suspect that the FCRA could be interpreted in such a way as to make criminal court case dismissals only reportable within seven years from the date said cases are filed.

I declare, under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed at Los Angeles, California, on October 22, 2012.

Gary Glucroft

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.5900 • Fax 310.446.9909

Case No.:  2:12-CV-05808-SVW-AGR
File No.:  5.371.001                                    4

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

# EXHIBIT "5"

| Thank You For Using The Screening Pros |
|---|
| On-line reports available 24/7 |

| -- WARNING -- |
|---|
| The following reports are confidential and use and possession of these confidential consumer reports are protected and governed by state and federal law. |

Consumer Report For: MAPLE SQUARE

Transaction Number:  465164 - 1

Comment:

Date - Time: 02/05/10 15:31:52

| -- APPLICANT INFORMATION PROVIDED BY MEMBER -- |
|---|

Applicant's Name:  MORAN, GABRIEL F        SS#: ▨▨▨▨        State ID#: ▨▨▨▨        DOB: ▨▨▨▨

Current Address: 35555 ORLEANS DR, NEWARK, CA 94560

Previous Address:

Lead Source:                    Prev Rent:          New Rent:                    Monthly Income:

| -- EVICTION - RENTAL HISTORY REPORT -- |
|---|

No records matching your applicant

━━━━━━━━━━  **END OF EVICTION - RENTAL HISTORY REPORT**  ━━━━━━━━━━

---

## -- POSSIBLE LANDLORD DEBT REPORTED FROM CREDIT --

No collections found that could be identified as possible landlord debts.

────────────── **END POSSIBLE LANDLORD DEBT REPORTED FROM CREDIT** ──────────────

## -- REFORMATTED TRANSUNION CREDIT REPORT --

The following credit report has been re-formatted for your convenience.
The applicant's full and complete credit report is attached.

"Red Flag" federal identify theft rule imposes new duties on landlords. Full compliance goes into effect June 1st, 2010.
Click here for Red Flag Information sheet

## -- CONSUMER'S PERSONAL INFORMATION --

Name:     MORAN, GABRIEL F                    SS#:                          DOB:

Address:  855 TORO LN, LATHROP, CA 95330
          5254 RIVERSIDE AV, SAN PABLO, CA 94806          As Of: 06/01/00
          5264 RIVERSIDE AV, SAN PABLO, CA 94806          As Of:
                                                          As Of:

Employer: GABRIELS GARDENING                              As Of:
          NEW HAVEN UNITED SCH                            As Of:

## -- FACTA ALERTS --

No alerts on record.

## -- FRAUD ALERT / CONSUMER MESSAGES --

Address alert. Mismatch - input does not match file

## -- CREDIT SUMMARY --

Total Debt: $0.00                    Total Amt Past Due: $0.00            FICO Score: N / A
Total Monthly Payments: $0.00        Total Lines of Credit: 2
Number of Collection Accounts: 4     Positive Lines of Credit: 2
Number of Public Records: 0          Negative Lines of Credit: 0

## -- PUBLIC RECORDS --

No Public Records Returned

## -- COLLECTIONS --

Original Creditor: MEDICAL                Charge Off Date: 05/08/08       Original Amount: $2800.00
Collection Company: MEDICREDIT            Date Last Verified: 01/19/10    Current Balance: $3345.00
Comments: Account information disputed by consumer

Original Creditor: AT T WEST              Charge Off Date: 09/11/09       Original Amount: $66.00
Collection Company: BAY AREA C S          Date Last Verified: 10/21/09    Current Balance: $66.00
Comments: Placed for collection

Original Creditor: MEL RAMSTEAD METZGER MGT    Charge Off Date: 06/21/07   Original Amount: $275.00
Collection Company: CB STOCKTON           Date Last Verified: 03/11/08    Current Balance: $298.00
Comments: Account information disputed by consumer

New Consumer Reports                                                                                      Page 4 of 7

Original Creditor: 08 BANK OF THE WEST
Collection Company: BEST SERV CO
Comments: Paid collection

Charge Off Date: 09/29/06
Date Last Verified: 06/12/09

Original Amount: $302.00
Current Balance: $0.00

---

**-- ACCOUNT DETAILS --**                                                                                  Legend

| Creditor | Opened Date | Currently Past Due | Remarks |
|---|---|---|---|
| Account Type | Closed Date | Current Balance | 12 Month Payment History |
| | Verified Date | Monthly Payment | |

TOYOTA MTR          08/11/03          -- -- --
Installment account  -- -- --          -- -- --
                     12/31/04          $240.00 Monthly

| Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ |
| '04 | '04 | '04 | '04 | '04 | '04 | '04 | '04 | '01 | '01 | '01 | '03 |

TOYOTA MTR          07/01/00          -- -- --          Closed
Installment account  07/01/02          -- -- --
                     07/01/02          $295.00 Monthly

| Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ | Ⓒ |
| '02 | '02 | '02 | '02 | '02 | '02 | '01 | '01 | '01 | '01 | '01 | '01 |

---

**-- CREDIT INQUIRIES --**

| Date | Inquirer | Reason |
|---|---|---|
| 02/05/10 | SCREENING PR | Miscellaneous |

If you decline your applicant based on information within this TU report, direct them to:
TransUnion Attn:Consumer Disclosure Department
P.O. Box 1000, Chester, PA 19022   1 (800) 888-4213

---

**END OF REFORMATTED TRANSUNION CREDIT REPORT**

---

**-- ORIGINAL TRANSUNION CREDIT REPORT --**

---

00000465164001          TRANSUNION CREDIT REPORT

| `<FOR>` | `<SUB NAME>` | `<MKT SUB>` | `<INFILE>` | `<DATE>` | `<TIME>` |
|---|---|---|---|---|---|
| (I) Z LA2824851 | SCREENING PR | 12 SK | 11/83 | 02/05/10 | 17:34CT |

`<SUBJECT>`
MORAN, GABRIEL F.                                    `<SSN>`        `<BIRTH DATE>`
`<CURRENT ADDRESS>`
855 TORO LN., LATHROP CA. 95330                               `<DATE RPTD>`
`<FORMER ADDRESS>`                                            6/00
5254 RIVERSIDE AV., SAN PABLO CA. 94806
5264 RIVERSIDE AV., SAN PABLO CA. 94806
`<CURRENT EMPLOYER AND ADDRESS>`
GABRIELS GARDENING

`<FORMER EMPLOYER AND ADDRESS>`
NEW HAVEN UNITED SCH

---

S P E C I A L   M E S S A G E S
***ADDRESS ALERT: CURRENT INPUT ADDRESS DOES NOT MATCH FILE ADDRESS(ES)***
****HIGH RISK FRAUD ALERT:CLEAR FOR ALL SEARCHES PERFORMED***

---

C R E D I T   S U M M A R Y   * * *   T O T A L   F I L E   H I S T O R Y
PR=0  COL=4  NEG=0  HSTNEG=0    TRD=2  RVL=0  INST=2  MTG=0  OPN=0  INQ=1

| | HIGH CRED | CRED LIM | BALANCE | PAST DUE | MNTHLY PAY | AVAILABLE |
|---|---|---|---|---|---|---|
| INSTALLMENT: | $10.1K | $ | $ | $0 | | |
| TOTALS: | $10.1K | $ | $ | $0 | $ | |

---

C O L L E C T I O N S

| SUBNAME | SUBCODE | ECOA | OPENED | CLOSED | $PLACED | CREDITOR | MOP |
|---|---|---|---|---|---|---|---|
| ACCOUNT# | | | VERIFIED | | BALANCE | REMARKS | |
| MEDICREDIT | Y 184P007 I | | 5/08 | | $2800 | MEDICAL | 09B |
| 15137598 | | | 1/10A | | $3345 | ACCT INFO DSP BY CSM | |
| | | | | | | | |
| BAY AREA C S | Y 4445001 I | | 9/09 | | $66 | AT T WEST | 09B |
| 82369824 | | | 10/09A | | $66 | PLACED FOR COLLECTIO | |
| | | | | | | | |
| CB STOCKTON | Y 1XYF001 I | | 6/07 | | $275 | MEL RAMSTEAD METZG | 09B |
| 5010760000358662 | | | 3/08A | | $298 | ACCT INFO DSP BY CSM | |
| | | | | | | | |
| BEST SERV CO | Y 200N001 I | | 9/06 | 5/09F | $302 | 08 BANK OF THE WES | 09P |
| 6296 | | | 6/09A | | $0 | PAID COLLECTION | |

---

T R A D E S

| SUBNAME | SUBCODE | OPENED | HIGHCRED | TERMS | MAXDELQ | PAYPAT 1-12 | MOP |
|---|---|---|---|---|---|---|---|
| ACCOUNT# | | VERIFIED | CREDLIM | PASTDUE | AMT-MOP | PAYPAT 13-24 | |
| ECOA COLLATRL/LOANTYPM | | CLSD/PD | BALANCE | REMARKS | | MO 30/60/90 | |
| TOYOTA MTR | Q 4176123 | 8/03 | $10.1K | 60M240 | | 111111111111 I01 | |
| 70400362961510001 | | 12/04A | | $0 | | 11111 | |
| J   AUTOMOBILE | | | | | | 17   0/ 0/ 0 | |
| | | | | | | | |
| TOYOTA MTR | Q 4176123 | 7/00 | $6195 | 24M295 | | 111111111111 I01 | |
| 70400361920870001 | | 7/02A | | $0 | | 11111111111 | |

```
I    AUTOMOBILE       7/02C  $0      CLOSED              24   0/ 0/ 0
-------------------------------------------------------------------------
I N Q U I R I E S
DATE      SUBCODE          SUBNAME         TYPE      AMOUNT
 2/05/10  ZLA2824851(CA)  SCREENING PR
-------------------------------------------------------------------------
C R E D I T   R E P O R T   S E R V I C E D   B Y :
TRANSUNION                                             800 888-4213
2 BALDWIN PLACE, P. O. BOX 1000,CHESTER, PA. 19022
Consumer disclosures can be obtained online through TransUnion at:
       http://www.transunion.com
```

                    END OF TRANSUNION REPORT

| If you decline your applicant based on information within this TU report, direct them to: |
| TransUnion Attn:Consumer Disclosure Department |
| P.O. Box 1000, Chester, PA 19022   1 (800) 888-4213 |

======  **END OF ORIGINAL TRANSUNION CREDIT REPORT**  ======

Criminal Summary                                                                                                    Page 1 of 2

---

### Thank You For Using The Screening Pros
On-line reports available 24/7

---

### -- ATTENTION --
The following criminal data is a summary only.
Contact member services if you need the original criminal report.

---

Consumer Report For: MAPLE SQUARE                                          Date - Time: 02/05/10 15:31:52
Transaction Number:  465164 - 1
Comment:

---

### -- APPLICANT INFORMATION PROVIDED BY MEMBER --

Applicant Name: MORAN, GABRIEL F        SS#: ▓▓▓▓        State ID#: ▓▓▓▓        DOB: ▓▓▓▓
Current Address: 35555 ORLEANS DR , NEWARK, CA 94560
Previous Address:

---

### -- CRIMINAL REPORT --

### -- COUNTY CRIMINAL SUMMARY --

County / Jurisdiction: Alameda CA                                          Case Number: 188935
Filing Date: 05/16/00                                                      Offense Type: Misdemeanor
Charge / Offense: CT1: Under the influence of a controlled substance
Disposition Date: 03/02/04
Disposition: Dismissed
......................................................................................................

County / Jurisdiction: Alameda CA                                          Case Number: 217842
Filing Date: 06/04/06                                                      Offense Type: Misdemeanor
Charge / Offense: CT1: Burglary 2nd degree
Disposition Date: 06/07/06
Disposition: Dismissed
......................................................................................................

County / Jurisdiction: Alameda CA                                          Case Number: 217842
Filing Date: 06/04/06                                                      Offense Type: Misdemeanor
Charge / Offense: CT2: Forgery
Disposition Date: 06/07/06
Disposition: Dismissed
......................................................................................................

Criminal Summary
Page 2 of 2

County / Jurisdiction: Alameda CA                                          Case Number: 217842
Filing Date: 06/04/06                                                      Offense Type: Misdemeanor
Charge / Offense: CT3: Embezzlement; Theft by non caretaker from older or dependent adult
Disposition Date: 06/07/06
Disposition: Guilty-60 Days jail; 3 Years court probation; $500 Fine

---

**NOTE:** The dissemination of public records such as criminal records is based on an exact match of an individual's full name and full date of birth. Other identifiers such as address and social security numbers may be used in matching criminal records if available. It is the sole responsibility of the end-user to verify that the requested criminal reports are submitted accurately to ensure an accurate search.

**NOTE:** There are several states that prevent a consumer reporting agency from reporting records for various reasons. In accordance with specific state law(s), certain criminal records may not be reportable. To identify what these specific provisions are by state, click here for civil code text.

---

**END CRIMINAL REPORT**

**JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP**
Michael J. Saltz, Esq.  SBN 189751
msaltz@jrsfllp.com
Colby A. Petersen, Esq. SBN 274387
cpetersen@jrsfllp.com
G. Austin Sperry, Esq.  SBN 278535
asperry@jrsfllp.com
10866 Wilshire Boulevard, Suite 1550
Los Angeles, CA  90024
Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

Attorneys for Defendant THE SCREENING PROS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL FELIX MORAN,<br><br>          Plaintiff,<br><br>     vs.<br><br>THE SCREENING PROS, LLC a California Corporation; and DOES 1-10 inclusive,<br><br>          Defendants. | Case No.: 2:12-cv-05808-SVW-AGR<br><br>**DECLARATION OF ANNE P. FORTNEY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION.**<br><br>[filed concurrently with Motion for Summary Judgment/Adjudication]<br><br>Complaint filed:  February 2, 2012<br>First Amended<br>Complaint Filed:  June 7, 2012<br>Removed:          July 5, 2012<br>Trial Date:       November 20, 2012<br><br>Hearing Date:     November 19, 2012<br>Time:             1:30 p.m.<br>Courtroom.:       6 – 2nd Floor<br>Judge:            Hon. Stephen V. Wilson |

*JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP*
*10866 Wilshire Boulevard, Suite 1550*
*Los Angeles, California 90024*
*Tel. 310.446.9900 • Fax 310.446.9909*

## DECLARATION OF ANNE P. FORTNEY

Pursuant to 28 U.S.C. § 1746, I, Anne P. Fortney, under penalty of perjury, state as follows:

1. I am an attorney and partner with the law firm of Hudson Cook, LLP. The information provided below is based upon my personal knowledge.

2. Attached to the Motion for Summary Judgment/Adjudication as **Exhibit "7"** is a true and correct copy of the expert witness report, signed by me on October 22, 2012 and provided by me to counsel for the defendant, The Screening Pros, Inc. for their use in the above-captioned matter.

3. Attached to **Exhibit "7"** as **Attachment "A"** is a true and correct copy of my current curriculum vitae.

4. I certify that, based upon the reasoning and analysis set forth in said report, which is incorporated herein by this reference, I have formulated the opinions set forth therein on page 10, which are also incorporated herein by this reference.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: October 22, 2012

By: *Anne P. Fortney*

Anne P. Fortney

JACOBSON, RUSSELL, SALTZ & FINGERMAN, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Case No.: 2:12-CV-05808-SVW-AGR
File No.: 5.371.001

1

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

# EXHIBIT "7"

## REPORT OF ANNE P. FORTNEY

At the request of counsel for defendant, The Screening Pros, Inc. ("TSP"), I have prepared this report for use in the case entitled *Moran v. The Screening Pros.*, pending under Case No. 2:12-cv-05808-SVW-AGR, in the United States District Court for the Central District of California.

### I. QUALIFICATIONS

I am a partner with the law firm of Hudson Cook, LLP.  For more than 35 years, my work has involved the interpretation of federal and state consumer protection laws concerning the consumer financial services industry.

My first experience in consumer financial services was as in-house counsel at the JC Penney Company in the late 70's and early 80's – a time when Penney was one of the largest credit card issuers in the country.  During that time, I worked closely with Penney's credit department and senior management.  I also represented Penney in legislative and regulatory matters, in federal and state investigations, and in litigation.  As a credit card issuer, Penney was required to comply with the Fair Credit Reporting Act (FCRA), and I worked with the Penney credit department to ensure that Penney complied with its obligations under the FCRA.

My knowledge and understanding of consumer financial services issues were enhanced by more than four years in the Bureau of Consumer Protection at the Federal Trade Commission (FTC), including my service as the Director of the Division of Credit Practices.  I was responsible for the nationwide enforcement of federal consumer laws, including the FCRA.  In that capacity, I oversaw the development of the FTC's formal interpretations of the FCRA, including the FTC's proposed Commentary on the FCRA.  I was also personally involved in the FTC's initiatives to protect consumers from identity theft involving credit card fraud and misuse. These initiatives included developing consumer education materials and programs, and increasing consumer awareness of credit card identity theft through numerous newspaper and radio interviews and television appearances, including an appearance on Good Morning America.

I have been in private practice for more than 25 years since leaving the FTC.  During that time, I have worked on many issues under the FCRA with clients in the consumer financial services industry.  I have also defended clients in law enforcement investigations brought by the FTC and state attorneys general.

In 2006, I was counsel of record on the *amicus curiae* brief submitted to the United States Supreme Court on behalf of the Consumer Data Industry Association ("CDIA") in the consolidated cases of *Safeco Ins. Co. of America v. Burr* and *GEICO General Ins. Co. v. Edo*.  I have written compliance materials on the FCRA, including the current and prior versions of the

Case: 12-57246, 01/27/2014, ID: 8954138, DktEntry: 37-2, Page 258 of 273
Case 2:12-cv-05808-SVW-AGR   Document 29-5   Filed 10/22/12   Page 5 of 19   Page ID
#:591

2

CDIA Manual on *How to Comply with the Fair Credit Reporting Act*, and prepared CDIA's *Credit Reporting Agency Compliance Checklists*. My articles on fair credit reporting and fair lending have appeared in the *Consumer Finance Law Quarterly Report, The Business Lawyer, Credit World* and other publications.

I am a past Chair of the Privacy Subcommittee and of the Federal and State Activities Subcommittee of the American Bar Association's Consumer Financial Services Committee. I am a founding member of the American College of Consumer Financial Services Lawyers, a professional association of lawyers particularly skilled and experienced in handling consumer finance matters and dedicated to the improvement and enhancement of the skill and practice of consumer financial services law and the ethics of the profession. I am the immediate past Chairman of the Governing Committee of the Conference on Consumer Finance Law, the nation's oldest legal association for consumer finance lawyers. Membership in both the American College of Consumer Financial Services Lawyers and the Conference on Consumer Finance Law is only by invitation.

I have testified as an invited expert witness before Congressional Committees and Subcommittees regarding the operation of various consumer protection laws, including the FCRA. In June 2007, I was invited by Chairman Barney Frank to testify before the House Committee on Financial Services at the hearing on "Credit Reports: Consumers' Ability to Dispute and Change Inaccurate Information." I testified on behalf of furnishers based upon my personal and professional experiences. In May 2008, I was again invited by Chairman Frank to testify before the Committee on Financial Services on "Examining the Need for H.R. 2885, Credit Monitoring Clarification Act." Although the purpose of the hearing on H.R. 2885 was to explore the need for an amendment to the Credit Repair Organizations Act, there was significant discussion about the inaccuracies in credit reports caused by credit repair organizations' attempts to delete negative but accurate information from a consumers' credit reports.

For my work in this matter, I am being compensated at a rate of $665 per hour. My detailed qualifications in the form of a *curriculum vitae,* list of publications authored during the preceding 10 years, and list of the cases in which I have testified by deposition or at trial during the preceding 4 years are attached as Attachment A hereto.

## II. INFORMATION CONSIDERED

I have been asked to render an opinion concerning the reasonableness of TSP's interpretation of its obligations under FCRA section 605(a) [15 U.S.C. 1681c(a)] in reporting criminal record information on the plaintiff Gabriel Felix Moran.

In rendering this report, I have considered the following:

1.  Plaintiff's First Amended Complaint ("Complaint")

HC# 4829-4844-6225

2. Notice of Removal of Action under 28 U.S.C. § 1331 (Federal Question) and Exhibits Thereto.

3. Defendant's Motion to Dismiss Plaintiff's Complaint, Memorandum of Points and Authorities in Support Thereof.

4. Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, Memorandum of Points and Authorities in Support Thereof.

5. Defendant's Reply in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, Memorandum of Points and Authorities in Support Thereof.

6. Order Granting in Part and Denying in Part Defendant's Motion to Dismiss.

## III. FACTUAL BACKGROUND

The following factual summary is based upon the material provided to me as of the date of this report. To the extent that additional discovery or other information is made available to me, I reserve the right to amend or modify the opinion stated herein.

TSP is a consumer reporting agency that provides tenant screening services to landlords in connection with the leasing of residential properties.[1] In February 2010, TSP provided a report to a housing project called Maple Square in connection with Moran's application for housing in the project.[2] In addition to an eviction-rental history and a TransUnion credit report, the TSP report contained the following criminal history:

County / Jurisdiction: Alameda CA        Case Number: 188935
Filing Date: 05/16/00        Offense Type: Misdemeanor
Charge / Offense: CTI: Under the influence of a controlled substance
Disposition Date: 03/02/04
Disposition: Dismissed
.................................................................................................
County / Jurisdiction: Alameda CA        Case Number: 217842
Filing Date: 06/04/06        Offense Type: Misdemeanor
Charge / Offense: CTI: Burglary $2^{nd}$ degree
Disposition Date: 06/07/06
Disposition: Dismissed
.................................................................................................
County / Jurisdiction: Alameda CA        Case Number: 217842
Filing Date: 06/04/06        Offense Type: Misdemeanor
Charge / Offense: CT2: Forgery
Disposition Date: 06/07/06
Disposition: Dismissed

---

[1] First Amended Complaint ("Complaint") ¶ 5.
[2] *Id.* ¶ 35; Exhibit 1 to Complaint.

HC# 4829-4844-6225

4

.................................................................................

County / Jurisdiction: Alameda CA                    Case Number 217842
Filing Date: 06/04/06                        Offense Type: Misdemeanor
Charge/Offense: CT3: Embezzlement; Theft by non caretaker from older or
dependent adult
Disposition Date: 06/07/06[3]
Disposition: Guilty-60 Days jail; 3 Years court probation; $500 fine

Moran's housing application was denied because of his criminal record report.[4]  Moran filed
a lawsuit against TSP in California Superior Court, alleging that the TSP report included
criminal history information in violation of the FCRA and California's Investigative Consumer
Reporting Agencies Act.[5]  TSP removed the action to the United States District Court for the
Central District of California (the "Court").[6]

Moran does not dispute the accuracy of any of the information in the TSP report, including
his criminal history and conviction.  Moran alleges however that the information with respect to
the first criminal charge, "under the influence of a controlled substance," with a filing date of
5/16/00 and a disposition date of 03/02/04 violated 15 U.S.C. 1681c(a)(5).[7]

TPS filed a motion to dismiss the complaint.  In denying the motion with respect to the
counts relating to alleged violations of 15 U.S.C. 1681c(a)(5), the Court held:

> The [TSP] Report does not mention Plaintiff's arrest per se. Rather, the Report
> allegedly discloses that on May 16, 2000, Plaintiff was charged with one count of
> being under the influence of a controlled substance. This constitutes an "adverse item
> of information" under section 1681c(a)(5), and thus the seven-year window began on
> May 16, 2000. Because Defendant delivered the Report on February 5, 2010, the
> seven-year reporting period for this criminal event had long expired. Therefore,
> Plaintiff has stated a claim that Defendant violated section 1681c(a)(5).[8]

---

[3] Exhibit 1 to Complaint.
[4] Complaint ¶ 48.
[5] Complaint, ¶¶ 54-99 Moran first filed a lawsuit alleging only violations of the California Investigative
Consumer Reporting Agencies Act.  After TSP filed a demurrer to this complaint, Moran filed an
amended complaint that also alleged three violations of the FCRA. *See* Notice of Removal of Action
under 28 U.S.C. § 1331 (Federal Question) and Exhibits Thereto.
[6] Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ("Order") at 1.
[7] Complaint ¶¶ 36-39.
[8] Order at 10.

HC# 4829-4844-6225

## IV. CRIMINAL BACKGROUND SCREENINGS AND THE FAIR CREDIT REPORTING ACT

In enacting the FCRA, the U.S. Congress recognized that the efficient functioning of the consumer reporting industry was vital to the U.S. economy. Congress specifically provided that:

> It is the purpose of this title to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.[9]

The functioning of the U.S. economy is, in large measure, based on a consumer reporting system that is most often accurate enough to permit users of consumer reports to make informed decisions. Because the FCRA provides a means by which consumer report users may quickly and inexpensively obtain and evaluate any consumer's risk, U.S. consumers have greater and more rapid access to products and services, at a lower cost, than any other consumers in the world.[10]

Landlords are interested in renting their properties to those tenants who are financially qualified. In addition, unlike creditors, landlords have other, less quantifiable concerns, such as selecting a tenant that who will not damage the rental property, traffic in illegal substances, use the property for illegal or immoral purposes, harm other tenants or fail to make rental payments when due. Tenant screening companies seek to provide relevant information to landlords at a cost-effective price that will allow them to address these concerns and mitigate their risks.

Landlords do not rely exclusively on tenant screening reports to assess the desirability of a particular applicant. Rather, landlords evaluate the totality of the application information, and they typically conduct their own investigations in making this determination. For example, in identifying a tenant who does not pay the rent on time or whose rental payment checks are frequently returned due to insufficient funds, a landlord may not rely entirely on credit reports, but may also inquire as to whether the tenant's prior landlord encountered any of these problems. Thus, information that is relevant to the landlord's determination will often be based upon multiple sources.

In enacting the FCRA, the U.S. Congress sought to balance the "needs of commerce" with the "fair and equitable" treatment of the consumer. It did so in part, by limiting the information that consumer reporting agencies could report. That is, Congress balanced the report user's need for the information against the privacy interests of the individual. As a result of this balancing, the FCRA specifically limits what consumer reporting agencies can report with regard to certain information.

---

[9] FCRA § 602(b)(1) [15 U.S.C. § 1681(b)].
[10] See Walter F. Kitchenman, *U.S. Credit Reporting: Perceived Benefits Outweigh Privacy Concerns*, The Tower Group, at 5 (Jan. 1999) available at http://www.privacyalliance.org/resources/kitcenman.pdf>.

6

When enacted, the FCRA limited the reporting of an individual's criminal history as follows:

> [N]o consumer reporting agency may make any consumer report containing any of
> the following items of information:
>
> ...
>
> > (2) Suits and judgments which, from date of entry, antedate the report by more
> > than seven years or until the governing statute of limitations has expired,
> > whichever is the longer period.
> >
> > ...
> >
> > (5) Records of arrest, indictment, or conviction of crime which, from date of
> > disposition, release, or parole, antedate the report by more than seven years.
> >
> > (6) Any other adverse item of information which antedates the report by more
> > than seven years.[11]

In time, the FCRA's limitation on the reporting of criminal convictions conflicted with the requirements of other federal laws.  For example, the Financial Reform Recovery and Enforcement Act (FIRREA) of 1989 prohibited a bank from hiring any individual who *at any time* had been convicted of certain crimes.[12]  Banks could obtain the criminal conviction information directly from public records for an indefinite period of time, but consumer reporting agencies could report that information for only seven years from the date of disposition, release, or parole.[13]

In apparent recognition of the problems arising from the limitation on the reporting of criminal convictions, the Consumer Reporting Employment Clarification Act of 1998 (the "Act") amended the FCRA to allow information relating to criminal convictions to be reported indefinitely.[14]  The primary focus of the Act was to enable trucking companies to comply with the FCRA's requirements for users of consumer reports in screening truck driver applicants who would often apply by telephone or fax.  The legislation was introduced and enacted quickly in the month before the 1998 Congressional elections, without a hearing or debate.  The amendment to section 1681c(a) provided:

Section 605(a) of the Fair Credit Reporting Act is amended –

> (1) in paragraph (2), by striking "Suits and Judgments which" and inserting
> "Civil suits, civil judgments, and records of arrest that";

---

[11] 15 U.S.C. § 1681c(a) (West 1997).
[12] Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L No. 101-73, 103 Stat. 183 (1989).
[13] FTC staff opinion letter Hayes-Halpern, available at: http://www.ftc.gov/os/statutes/fcra/halpern.shtm.
[14] Public Law 105-347.

(2) by striking paragraph (5);

(3) in paragraph (6), by inserting ", other than records of convictions of crimes'" after "of information"; and

(4) by redesignating paragraph (6) as paragraph (5).[15]

According to the legislation's sponsor's summary, the amendment:

Prohibits a consumer reporting agency from reporting on civil suits, civil judgments, and arrest records (currently, reporting on suits and judgments) that are more than seven years before the report or until the governing statute of limitations has expired, whichever is longer. *Removes provisions prohibiting the reporting of certain criminal matters more than seven years before the report.* Exempts records of criminal convictions from the general prohibition of reporting matters over seven years old.[16]

Thus, the only legislative history to the 1998 amendment to section 1681c(a) makes clear that the intent was to remove prohibitions on the reporting of criminal matters other than records of arrest.

As amended, section 1681c(a) reads:

[N]o consumer reporting agency may make any consumer report containing any of the following items of information:

* * *

(2) Civil suits, civil judgments, and records of arrest that from the date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.

* * *

(5) Any other adverse item of information, other than records of convictions of crimes, which antedates the report by more than seven years.[17]

In 1990 the Federal Trade Commission issued its Commentary on the Fair Credit Reporting Act ("Commentary") after publishing the proposed commentary for public comment in the Federal Register. Although the Commentary did not have the force and effect of a rule, it was entitled to *Chevron* deference. The FTC Commentary included the Commission interpretations of section 1681c(a):

---

[15] Public Law 105-347, Section 5.
[16] S. 2561, 105th Congress (1997-1998), Bill Summary & Status (Sen. Don Nickles, R-OK) available at *http://thomas.loc.gov/cgi-bin/bdquery/z?d105:SN02561:@@@D&summ2=m&*.
[17] FCRA §§ 605(a)(2)&(5) [[15 U.S.C. §§ 1681c(a)(2)&(5)].

8

*Computation of Time Period*

The seven year reporting period runs from the date of disposition, release or parole, as applicable. For example, if charges are dismissed at or before trial, or the consumer is acquitted, the date of such dismissal or acquittal is the date of disposition. If the consumer is convicted of a crime and sentenced to confinement, the date of release or placement on parole controls. (Confinement, whether continuing or resulting from revocation of parole, may be reported until seven years after the confinement is terminated.) The sentencing date controls for a convicted consumer whose sentence does not include confinement. The fact that information concerning the arrest, indictment, or conviction of crime is obtained by the reporting agency at a later date from a more recent source (such as a newspaper or interview) does not serve to extend this reporting period.[18]

When the Consumer Financial Protection Bureau ("CFPB") came into existence in July 2011, the FTC believed that only the new agency had the authority to issue guidance under the FCRA. For that reason, the day before the establishment of the CFPB the FTC rescinded its FCRA Commentary and published a *staff* summary of FCRA interpretations.[19] There is an important distinction between formal interpretations and other actions by the full Commission and mere staff interpretations which the Commission has not formally adopted. Moreover, unlike the Commentary, the staff summary was never published for notice and comment or any way publicly vetted. In addition, when the FTC rescinded the Commentary, it did so only because it believed it no longer had the authority to issue interpretations under the FCRA.[20] Except as specifically noted in certain areas that do not include section 1681c(a), the FTC did not repudiate the Commentary.[21] Moreover, the FTC staff summary continued to rely on the above-quoted paragraph of the Commentary in interpreting section 1681c(a).[22]

---

[18] 16 CFR Part 600 ¶ 605(a)-2.
[19] 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations, available at: http://ftc.gov/opa/2011/07/fcra.shtm. The FTC Staff Summary was issued in 2011. For that reason it is irrelevant to irrelevant to TSP's interpretation of section 1681c(a) when it provided the criminal record reports on Moran in February 2010.
[20] FTC Staff Summary at 7.
[21] *Id.* at 7-16.
[22] In issuing its Order, the Court relied in part on the FTC's staff statement "The seven year period for criminal record information 'other than convictions of crimes' runs from the date of the reported event." Order at 9. The Court failed to note, however, that the FTC staff cited as authority for that statement ¶ 605(a)-2 of the FTC Commentary quoted above. FTC staff summary at 57, n.194. This citation indicates that FTC staff did not interpret the 1998 amendments to section 1681c(a) as modifying the "reported event" for purposes of calculating the seven-year period.

HC# 4829-4844-6225

The FCRA requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of the consumer report information it reports.[23]  It would be reasonable for a consumer reporting agency to interpret that requirement to mean that a criminal record report should include all information relating to the criminal charge on the report.  Because the FCRA permits the reporting of the disposition of a criminal charge, or release from prison or parole for a period of seven years, it would be reasonable for a consumer reporting agency to include all information relating to the criminal charge that resulted in the disposition, release or parole.

In this case, the Court ruled that Moran stated a claim that TSP violated section 1681c(a)(5) by disclosing that Moran was charged with being under the influence of a controlled substance on May 16, 2000 and the report was delivered on February 5, 2010.  However, under the Court's ruling, the disposition of this charge and information relating to the disposition could be reported because the date of disposition was within the seven year period under section 1681c(a).

The reasonableness of an interpretation that the TSP report could include all information relating to the disposition can be illustrated by contrasting the difference between (a) the report that TSP furnished involving the charge of under the influence of a controlled substance and (b) the report that TSP would have been permitted to provide under the Court's ruling:

**The TSP Record Report:**

County / Jurisdiction: Alameda CA                     Case Number: 188935
Filing Date: 05/16/00                                Offense Type: Misdemeanor
Charge / Offense:  CTI: Under the influence of a controlled substance
Disposition Date:  03/02/04
Disposition:  Dismissed
...................................

**The TSP Record Report as Permitted Under the Court's Interpretation:**

**Alternative A:**

County / Jurisdiction: Alameda CA                     Case Number: 188935
                                                      Offense Type: Misdemeanor
Charge / Offense:  CTI: Under the influence of a controlled substance
Disposition Date: 03/02/04
Disposition:  Dismissed
...................................

---

[23] FCRA § 607(b) [15 U.S.C. § 1681e(b)]. Moran does not dispute the accuracy of the TSP report with respect to the charge of being under the influence of a controlled substance. The Court dismissed Moran's complaint allegations with respect to the accuracy of the other criminal records for failure to state a claim upon which relief could be granted. Order at 11.

HC# 4829-4844-6225

SER260

Omitting the filing date in this Alternative A only conceals when the Charge/Offense was filed. That omission alone raises the question of whether a filing date alone could be an "adverse item of information." There is no date attached to the Charge/Offense or the Offense Type, but if those items were to be removed, the report would read:

**Alternative B:**

County / Jurisdiction: Alameda CA                    Case Number: 188935
Disposition Date: 03/02/04
Disposition: Dismissed
....................................

A report that contains only the disposition and the date of disposition does not convey enough information for a user to form an opinion as to the nature or seriousness of the charge. Such a redacted report would raise a serious question as to whether the report meets the FCRA's requirements for "maximum possible accuracy." An interpretation consistent with the FTC's FCRA Commentary which permits the reporting of the entire record for seven years from the date of disposition would be consistent with the requirement that the consumer reporting agency follow reasonable procedures to assure the maximum possible accuracy of the information reported.

## V. Opinion

At the time that TSP provided the consumer report on Moran to its client, no court had ruled on the date to be used in calculating the seven-year statutory period for criminal records when the records contained both a "filing date" of the criminal offense and the date of disposition. The only regulatory guidance available was the FTC's FCRA Commentary. TSP's method of calculating that period was consistent with the language and history of the FCRA; it was consistent with the only legislative history to amended section 1681c(a); it was consistent with FTC Commentary; and the method was consistent with the FCRA's requirement that a consumer reporting agency follow reasonable procedures to assure the maximum possible accuracy of the consumer report. For these reasons, based on my more than 35 years experience, I believe that TSP's interpretation of the FCRA in calculating the seven-year period in the report on Moran based on the disposition date was entirely reasonable.


_Anne P. Fortney_                    _October 22, 2012_
Anne P. Fortney                      Date


HC# 4829-4844-6225

*Anne P. Fortney*
*Curriculum Vitae*

### Attachment A

### Hudson Cook, LLP
1020 19th Street, NW
7th Floor
Washington, DC 20036
Phone: (202) 223-6930
Fax: (202) 223-6935

Email: afortney@hudco.com

## Employment

| | |
|---|---|
| • 2003-Present | Partner, Hudson Cook, LLP. |
| • 1997-2003 | Managing Partner, Lovells, Washington, DC office; Of Counsel (1997-1998). |
| • 1987-1997 | Partner, Carlsmith Ball, Honolulu, HI and Washington DC; Of Counsel (1987-1989). |
| • 1982-1986 | Associate Director for Credit Practices, Bureau of Consumer Protection, Federal Trade Commission (FTC), Washington DC. |
| • 1976-1982 | Attorney, JC Penney Company, Washington DC. |
| • 1973-1976 | Attorney, Bureau of Consumer Protection, FTC, Washington DC. |
| • 1972-1973 | Attorney Advisor, Commissioner Mary Gardiner Jones, FTC, Washington DC. |
| • 1969-1971 | Associate, Cleary, Gottlieb, Steen and Hamilton, Washington DC. |

## Education

| | |
|---|---|
| • 1985 | Harvard University, John F. Kennedy School of Government, Senior Managers in Government Program. |
| • 1969 | Georgetown University Law Center (Juris Doctor). |
| • 1966 | Mary Washington College (Bachelor of Arts with Final Honors). |
| • 1965 | Institute for American Universities, Aix-en-Provence, France. |

## Bar Admissions

- 1987 Hawaii State Bar Association.
- 1982 United States Supreme Court Bar.
- 1969 District of Columbia Bar.

*Anne P. Fortney*
*Curriculum Vitae*

**Recent Congressional Testimony**

U.S. House of Representatives Subcommittee on Financial Institutions and Consumer Credit House Committee on Financial Services, Use of Credit Information Beyond Lending: Issues and Reform Proposals, May 12, 2010.

U.S. House of Representatives Subcommittee On Financial Institutions And Consumer Credit, Keeping Score on Credit Scores: An Overview of Credit Scores, Credit Reports and Their Impact on Consumers, March 24, 2010.

U.S. House of Representatives Committee On Financial Services, Examining the Need for H.R. 2885, The Credit Monitoring Clarification Act, May 20, 2008.

U.S. House of Representatives Committee On Financial Services, Credit Reports: Consumers' Ability To Dispute And Change Inaccurate Information, June 19, 2007.

**Expert Witness in Litigation**

*Adams v. National Engineering Service Corp., et al.,* Case No: 3:07-CV-1035 (JCH), U.S. District Court for the District of Connecticut, 2008; 2009.**

*Ashby et al. v. Farmers Group, Inc., et al.,* Case No. CV01-1446-BR, U.S. District Court for the District of Oregon, 2004; 2006.**

*Beck v. Equifax Information Services, LLC, et al.,* Case No. 3:05CV091, U. S. District Court for the Eastern District of Virginia, Alexandria Division, 2005.

*Brownstein v. Equifax Information Services, LLC and American Express Company,* Case No. 05-1774, U. S. District Court for the Eastern District of Pennsylvania, 2006.

*Bruce v. Keybank National Association, doing business as Champion Mortgage,* Case No. 2:05-CV-330, U.S. District Court for the Northern District of Indiana, 2006.*

*CSI Investment Partners II, L.P., et al., v. Cendant Corporation, et al,* Case No. 00Civ.1422(DAB), U.S. District Court for the Southern District of New York, 2006.*

*Cairns v. GMAC Mortgage Corporation, Experian Information Solutions, Inc., Equifax Information Services, L.L.C., and The Provident Bank d/b/a PCFS Mortgage Resources,* CV-04-1840 PHX-DGC, U.S. District Court for the District of Arizona, 2005.

*Collins v. IndyMac Bank, F.S.B., et al,* Case No: SACV 06-100 DOC (ANx), U.S. District Court for the Central District of California, Eastern Division, 2007.

*Cope v. Experian Information Solutions, Inc. et al.,* Case No. 04-CV-493-JE, U. S. District Court for the District of Oregon, 2005.*

*Drew v. Equifax Information Services, LLC, et al.,* Case No. CV-07-00726-SI, in the U.S. District Court for the Northern District of California, 2008

SER263

*Anne P. Fortney*
*Curriculum Vitae*

*Dunlap v. Capital One Bank (USA), N.A.*, Civil Action No.09-C-515-H and Civil Action No. 09-C-512-B, Circuit Court of Raleigh County, West Virginia, 2010.

*Evans v. Verifications, Inc.*, Case No. BC476864, Superior Court of the State of California, County of Los Angeles, 2012.

*In Re: Farmers Insurance Co., Inc. Fair Credit Reporting Act Litigation*, MDL No. 1564, Case No. CIV-03-158-F, U.S. District Court for the Western District of Oklahoma, 2006.*

*Ferrarelli v. Capital One Auto Finance, Inc. et al.*, Case No. 1:07-CV-389, U.S. District Court for the Southern District of Ohio, Western Division, 2008.

*Ferrarelli v. Federated Financial Corp.*, Case No. 1:07-CV-685, in the U. S. District Court for the Southern District of Ohio, Western Division, 2008.**

*Geaney, et al. v. Equifax Information Services, LLC, et al.*, Case No. 1:05-CV-01629 REC-LJO, U. S. District Court for the Eastern District of California, Fresno Division, 2007.

*Grizzard v. Trans Union, L.L.C. et al.*, Case No. 3 :04CV625, U. S. District Court for the Eastern District of Virginia, Richmond Division, 2005.*

*In re: H&R Block Mortgage Corp., Prescreening Litigation*, Case No: 2:06-MD-230 (MDL 1767), U. S. District Court for the Northern District of Indiana, 2007.

*Harris v. Circuit City Stores, Inc.*, Case No: 1:07-cv-02512, U. S. District Court for the Northern District of Illinois, Eastern Division, 2008.

*Holmes v. TeleCheck International, Inc., et al.*, Case No. 3:05-0633, U.S. District Court for the Middle District of Tennessee, 2006; 2008.**

*Jones v. Experian Information Solutions, Inc. et al.*, Case No. 1:11-cv-826 CMH/TCB in the U. S. District Court for the Eastern District of Virginia, Alexandria Division, 2011.

*Lockhart v. Equifax Information Services, LLC, et al.*, Case No. 4:07-cv-62, U.S. District Court for the Eastern District of Virginia, Richmond Division, 2008.

*Mark v. Valley Insurance Company and Valley Property and Casualty*, Case No. 01-1575 BR, U.S. District Court for the District of Oregon, 2003.

*Mendoza v. Verizon Wireless, et al.*, Case No. H-02-2465, U.S. District Court for the Southern District of Texas, Houston Division, 2003

*In re: MicroBilt Corporation, et al.*, Case No: 11-18143 (MKB), U.S. Bankruptcy Court for the District of New Jersey, 2012.

*Mokel v. Verizon Virginia, LLC*, Case No.1:120V624 TSE/JFE, in the U.S. District Court for the Eastern District of Virginia, Alexandria Division, 2012.

SER264

*Anne P. Fortney*
*Curriculum Vitae*

*Moseley v. Monogram Credit Card Bank of Georgia*, Case No. CV05-0801-PHX-SRB, U.S. District Court for the District of Arizona, 2006.

*Murray v. IndyMac Bank, F.S.B.*, Case No: 04-C-7669, U.S. District Court for the Northern District of Illinois, Eastern Division, 2007.

*Paysinger v. Santander Consumer USA, Inc., d.b.a. Drive Financial Services*, Case No: C07-00859-HRL U.S. District Court for the Central District of California, 2010.

*Rausch and Jason Reynolds v. The Hartford Financial Services Group, Inc. and Hartford Fire Insurance Company*, Case No. CV 01-1529 BR, U.S. District Court for the District of Oregon, 2003.

*Razilov v. Nationwide Mutual Ins. Co. and Allied Group, Inc.*, Case No. 01-1466 BR, U.S. District Court for the District of Oregon, 2003.

*Ryals et al v. HireRight Solutions, Inc. et al*, U.S. District Court for the Eastern District of Virginia, Richmond Division, Civil No. 3:09cv625, 2010.

*Smith et al. v. The Progressive Corporation et al.*, Case No. 1:00-CV-210-MMP, U.S. District Court, Northern District of Florida, 2001.

*Stillmock, et al. v. Rugged Wearhouse, Inc., et al.*, Case No.1:07-cv-01340-JFM, U.S. District Court for the District of Maryland, 2007.

*Sweitzer v. American Express Centurion Bank, et al.*, Case No. 2:05-CV-650, U.S. District Court for the Southern District of Ohio, Eastern Division, 2007.*

*Thomas v. Friends Rehabilitation Program, Inc. et al*, Case No. 001012, Court of Common Pleas for Philadelphia County, 2006.

*Wiesjahn v. Capital One Auto Finance, Inc., Capital One Services, Inc. et al..*, Case No: 2:06CV402, U.S. District Court for the Northern District of Indiana, Hammond Division, 2007.

*Williams v. MBNA America Bank, NA*, Case No. 2:06-CV-13910, U.S. District Court for the Eastern District of Michigan, 2007.

*Willes v. State Farm Fire and Casualty Co. and State Farm Mutual Automobile Insurance Company*, Case No. 01-1457 BR, U.S. District Court for the District of Oregon, 2003.

*White v. First American Registry, Inc.*, Case No. 04 CV 1611 (LAK), U.S. District Court for the Southern District of New York, 2004.*

*Wood v. Capital One Auto Finance, Inc.*, Case No: 06-C-7, U.S. District Court for the Eastern District of Wisconsin, Milwaukee Division, 2008.
        * Cases marked with an asterisk are those where I gave deposition testimony.
        ** I also testified at jury trials in these cases.  In each case, the jury returned a verdict for my client.

SER265

*Anne P. Fortney*
*Curriculum Vitae*

## Professional Associations

- 1982-Present      Member, Consumer Financial Services Committee of the American Bar Association Business Law Section; Chair, Consumer Communications Subcommittee (1983-1986); Vice-Chair, Privacy Subcommittee (1991-1992); Chair, Privacy Subcommittee (1993-1995); Vice-Chair, FTC Activities Subcommittee (1997-2000); Chair, Federal and State Practice Subcommittee (2000-2003).

- 1995-Present      Member, Governing Committee of the Conference on Consumer Finance Law (1995 – present); Vice-President (1999-2006); President (2006-2009); Chairman (2009-2012).

- 1996-Present      Founding Member, American College of Consumer Financial Services Lawyers.

- 1992-1995      Vice-Chair, Financial Services Committee of the American Bar Association Administrative Law Section.

## Recent Presentations at Industry Conferences and Programs

- American Bar Association Consumer Financial Services Committee (multiple times, 1997-2012).
- American Conference Institute (multiple times, 2001-2006).
- American Financial Services Association (multiple times, 1989-2009).
- Consumer Bankers Association (March and August 2001).
- Conference on Consumer Finance Law (multiple times, 1995-2004).
- Consumer Data Industry Association (multiple times, 1997-2011).
- Consumer Industry Research Council (multiple times, 2000-2005).
- Credit Card Bank Compliance Association (multiple times, 2002-2007).
- Experian Law Conferences (multiple times, 1998-2012).
- Hudson Cook Housing and Auto Finance Workshop (multiple times, 2004-2012).
- National Association of Dealer Counsel (multiple times, 2006-2007).
- National Automobile Dealers Association (2007).
- National Retail Federation ("NRF") (Aug. 2000).
- NRF Credit Managers Division (Sept. 1997 and Sept. 2000).
- Payment Card Institute (2009 and 2010).
- Practicing Law Institute (multiple times, 1998-2000).

SER266

*Anne P. Fortney*
*Curriculum Vitae*

## Publications

- *CARLAW ®Compliance Series* Dealer Compliance Guide - Risk-Based Pricing (2010).
- *A Dealer Guide to Adverse Action Notices*, National Automobile Dealers Association Management Series (2007; 2010).
- *Federal Laws Applicable to Consumer Data Security Breaches*, 59 Consumer Fin. L. Q. 229 (2005).
- *Uniform National Standards for a Nationwide Industry – FCRA Preemption of State Laws under the FACT Act*, 58 Consumer Fin. L. Q. 259 (2004).
- *Auto Finance Litigation Under the Equal Credit Opportunity Act*, 57 Consumer Fin. L. Q. 227 (2003).
- *Selected Fair Credit Reporting and Privacy Issues and Developments*, 56 Consumer Fin. L. Q. 58 (2002).
- *How to Comply With the Fair Credit Reporting Act* (Associated Credit Bureaus, Inc. 2000).
- *How to Comply With the Fair Credit Reporting Act* (Associated Credit Bureaus, Inc. 1997).
- *Fair Lending Law Developments*, 55 Bus. Law. 1309 (2000).
- *Fair Credit Reporting Act Potential Liability of Furnishers and Users of Consumer Reports*, 1114 PLI/Corp 361 (April-May 1999).
- *Fair Lending Law Developments*, 54 Bus. Law. 1329 (1999).
- *Recent Fair Lending Developments Affecting Auto Lenders and Lessors*, 52 Consumer Fin. L. Q. 358 (1998).
- *The New Fair Credit Reporting Act – New Duties; New Liabilities; New Questions*, 52 Consumer Fin. L. Q. 17 (1998).
- *Fair Credit Reporting Act Duties of Furnishers and Users of Consumer Reports*, 1048 PLI/Comm 9 (April-May 1998).
- *Fair Credit Reporting Act Creates New Duties for Employers*, Credit World (May/June 1998).
- *An Argument for Retaining the Uniform Commercial Code*, 51 Consumer Fin. L. Q. 315 (1997).
- *Privacy, Consumer Credit Reporting, and Fair Lending Developments*, 51 Consumer Fin. L. Q. 41 (1997).
- *Fair Lending Issues Affecting Subprime Credit Markets*, 50 Consumer Fin. L. Q. Rep. 290 (1996).

| 9th Circuit Case Number(s) | 12-57246 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Jan 27, 2014 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)    /s/ Michael J. Saltz

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)